EXHIBIT

J

exhibitsticker.com

**CITY OF SHEBOYGAN**

**DEPARTMENTAL CORRESPONDENCE**

**TO:** Todd Wolf      **FROM:** Charles C. Adams
City Administrator      City Attorney

**SUBJECT:** Powers of Mayor, Administrator, and Common Council

**DATE:** January 21, 2021

You asked to meet to discuss the respective powers of the mayor, administrator, and common council. In preparation for that meeting, I have drafted this memo as an outline for our meeting and as a document you can keep on hand for later reference.

**I. FORMS OF MUNICIPAL GOVERNMENT IN WISCONSIN**

    **A. Three Types of Municipal Governments**

In Wisconsin there are many types of governments. Most people are aware of state, county, and municipal government, as well as school districts and technical college districts.

However, beyond that, there are many other types of special purpose governments, such as sewerage districts, housing authorities, and the Miller Park construction district. There are only three forms of local general-purpose ("municipal") governments: towns, villages, and cities.

        **1. Towns**

Cities and villages are full municipal corporations, while towns are a lesser form of government, designed not to provide the full spectrum of services found in cities and villages. As such, towns have a very different form of government from cities and villages. For example, they hold an annual town meeting where residents can discuss and vote on many issues of town governance.

        **2. Villages**

Villages are more like cities—they have a level of home rule under the state constitution and they are governed by elected representatives. Unlike cities, however, villages do not have separate executive and legislative functions. Villages are led by a board of trustees. One of those trustees is the Village President. Both executive and legislative functions are united

within the Village Board. A village may appoint a Village Administrator, who in many cases has rather broad authority both in executive and legislative functions.

### 3. Cities

Cities also enjoy a level of constitutional home rule. However, executive and legislative functions are generally separated. It may be helpful to think of the difference at the federal level between Presidential power (executive power) and Congress (legislative power.) This illustration isn't perfect, but it does provide a framework for thinking through the exercise of authority in Wisconsin cities.

## B. Two Types of City Governance

### 1. Mayor-Council

Cities in Wisconsin generally operate under what is termed the Mayor-Council form of government. Mayors in this system are often called "strong mayors" and have a large degree of control and responsibility over the executive functions of municipal government. In fact, in Wisconsin, mayors are designated as the chief executive officer of a city with a Mayor-Council form of government. This form of government is set forth in Chapter 62 of the Wisconsin Statutes. That said, some commentators describe Wisconsin mayors as "weak mayors" because they do not have the nearly unfettered authority that mayors in some major U.S. cities have. Some powers are retained by the common council.

### 2. Council-Manager

Cities do have the option of two other forms of governance. One, the commission model, has disappeared in Wisconsin, though it is technically an option. The other is the Council-Manager form of government in which an elected city council appoints a City Manager to oversee day-to-day municipal operations, draft a budget, and implement and enforce the council's initiatives. This form of government is set forth in Chapter 64 of the Wisconsin Statutes.

### 3. Mayor-Council as the default form of city government

Unless a City specifically chooses to adopt the Council-Manager form of government, it must follow the Mayor-Council form of government. A 2016 survey suggests that only about 10% of cities

in Wisconsin have chosen to be governed under the Council-Manager form of governance.

### 4. Distinguishing the types of authority exercised by various municipal officials

Before moving on to the various roles and authorities granted to the mayor and the administrator under state law and city ordinances, it is worth discussing the difference between legislative powers (which are exercised or delegated by the common council), executive powers (which are exercised or delegated by the mayor), and administrative powers (which may be exercised or delegated in multiple ways.)

Legislative powers clearly include enacting legislation. As such, the common council retains authority over adopting a budget, determining the services a municipality will provide, or enacting land use regulations. Development of citywide policies may also be seen as a legislative function, one that is often delegated to an administrator or others.[1]

Executive powers include directing staff; interpreting policies; creating procedures, internal guidance, and forms to assist with the execution of policies that have been approved by the legislative branch; determining the details of carrying out services the governing body has decided to provide; and making other decisions related to matters where legislation is silent as to the details.[2]

Administrative powers include such things as carrying out very specific instructions, signing checks, etc.[3] Administrative powers are often described as "ministerial duties" and are often considered to be contained within executive authority.[4]

Legislative power, as opposed to executive power and administrative power, "is the authority to make laws, but not to enforce them, or appoint the agents charged with the duty of such enforcement."[5] In drawing the difference between legislative power and executive power, the test for deciding what is legislative and what is executive or administrative "has been said to be whether

---

[1] Davis, Maria and Silverman, Claire: "Roles and Authority of Governing Body Members," published in the June 2019 issue of The Municipality, p. 19-20
[2] *Ibid.*
[3] *Ibid.*
[4] 2A McQuillin Mun. Corp. sec. 10:6 (3d ed.) (footnotes omitted).
[5] *Ibid.*

the ordinance is one making a new law, or one executing a law already in existence."[6]

The line between legislative acts and executive acts is not always entirely clear. As such, the lines dividing the authority of a mayor and that of an administrator are also not always clear cut.

## II. SHEBOYGAN'S FORM OF GOVERNMENT

### A. Role of the Mayor

Sheboygan operates under the Mayor-Council form of government. As such, the mayor is the chief executive officer of the city, and the common council generally exercises legislative authority.

#### 1. As chief executive officer of the city

The mayor is the city's chief executive officer.[7] As such, the mayor exercises executive authority on behalf of a city by ensuring that city ordinances and state laws are observed and enforced, overseeing day-to-day operations, and making sure that all city officers and employees discharge their duties.

#### 2. Relationship with the common council

The mayor is considered to be a member of the common council[8], albeit a member with a different role and authority from an alderperson. The mayor cannot vote except in a case of a tie,[9] but he or she presides over council meetings and can veto acts or decisions of the council.[10] In Sheboygan, the mayor not only has general veto power, but can exercise a partial budget veto, thereby disapproving of any annual budget item.[11]

Mayors also have the authority to provide any information and make such recommendations to the common council as he or she sees fit.[12] As presiding officer, the mayor also exercises control over the council agenda, though there are provisions in the city code to allow the common council to place items on the agenda over the objection of the mayor.[13] The mayor makes the

---

[6] *Ibid.*
[7] Wis. Stat. §62.09(8)(a)
[8] Wis. Stat. §62.11(1)
[9] Sheboygan Municipal Code, §2-135
[10] Wis. Stat. §62.09(8)(c)
[11] Code, §2-137
[12] Wis. Stat. §62.09(8)(b)
[13] Code, §2-170

decision whether to call special meetings.[14] The mayor makes most appointments to boards, commissions, and committees,[15] and serves *ex officio*[16] on a number of city boards and commissions, in some cases as the chair.

### 3. Emergency powers of the mayor

The mayor also has certain emergency powers. The mayor may declare an emergency if, due to the emergency conditions, the common council is unable to meet with sufficient promptness to declare the emergency[17]. (Though, such a declaration is subject to ratification, alteration, modification, or repeal by the common council once they can meet.)[18] The mayor specifically has authority to declare snow emergencies or to issue emergency orders closing streets, sidewalks, and city parking areas.[19]

### 4. Ultimate head in charge of police and fire departments

Because Sheboygan has not granted the optional powers it could grant the Police and Fire Commission, the Mayor of Sheboygan is the ultimate head of the city's police and fire departments.[20]

### 5. Other powers and duties of the mayor

Some lesser known powers of the mayor include the following: the mayor serves with the City Attorney and the Director of Public Works and Engineering on a board that determines compensation for all encroachments.[21] The mayor may consent or withhold consent from the appointment of the cemetery and parks supervisor (and his or her assistants) as special police officers within the cemetery,[22] as well as approve any auxiliary police officers.[23] The mayor must approve any gift or reward from a person (or friends or benefactors of such person) who was in

---

[14] Code, §2-114
[15] See, e.g., Code, §2-222
[16] Note that many people misunderstand the term *ex officio* to mean "non-voting." The term does not mean "non-voting," but rather means that a person is serving in an office or position solely by virtue of their office. For example, the mayor serves *ex officio* as the chair of the capital improvements commission. He or she has a vote, but upon leaving the office of mayor, the new mayor takes that position with no need for appointment or confirmation.
[17] Code, §42-101(a)
[18] Code, §42-101(b)
[19] Code, §42-104(a)
[20] Wis. Stat. §62.09(8)(d)
[21] Code, §110-112
[22] Code, §34-93
[23] Code, §54-68

custody or was discharged from custody.[24] The mayor may request that the required record of arrests to be provided to the common council be done so more than just quarterly.[25] The mayor must approve any parade permits issued in connection with a circus, a dog or pony show, or a menagerie.[26]

### B. Role of the City Administrator

City administrators are not statutorily-created positions. The position is created by a city under its home rule powers. As such, there is a wide variety of authority granted to such administrators.

#### 1. History of the position

In Sheboygan, the position was first created in 2011.[27] The position was initially called "chief administrative officer," and that terminology still appears in some places in the Municipal Code.[28] The chief administrative officer was also the finance director and held the role of treasurer.

In 2016, when the first appointee decided to retire at the end of his term, the common council was divided on whether to continue the position. A proposal to eliminate the position and give all authority granted to the chief administrative officer to the mayor, except those already held by the treasurer[29] was defeated. Instead, the common council simply hired a new person to the position, but began to refer to that person as the City Administrator.

Some of the financial duties of the job were transferred to the finance director (including the duties of treasurer, along with the duties as comptroller she already had), and a number of city policies were changed to reflect the thought that the administrator should be involved more broadly in administering the day-to-day work of all of the departments.

As such, the common council, via resolution, authorized changes in policies that authorized the administrator to do performance

---

[24] Code, §54-106
[25] Code, §54-65
[26] Code, §14-164
[27] Ord. No. 24-11-12, passed October 3, 2011
[28] See, e.g., Chapter 2, Article III, Division 5 of the Code, which establishes the position, sets the method of appointment and term, and sets forth the duties of the position.
[29] The first chief administrative officer also exercised the role of treasurer and comptroller.

reviews for department heads.[30] Note, however, that said authority does not supplant the duty and authority of the mayor granted by statute to ensure that all city officers and employees discharge their duties.[31]

## 2. General role of administrator

Since the administrator is not an official with statutory authority, any determination of power is set forth by ordinance. City ordinances may not overrule state statutes. The administrator is a creature of the common council, and the common council may generally delegate its authority to the administrator, though it may not remove authority statutorily granted to the mayor. Where the statutes are not clear on what authority is granted to the common council versus the mayor, it may be possible for both officers to hold dual authority, especially when, as has been the case for the past eight years, there is general accord between the mayor and the administrator over who will primarily exercise certain types of authority. That said, where it is not clear that a particular power is granted solely to either the mayor or the common council, it can be helpful to recall that the mayor general fulfills the role of the executive branch and the administrator fulfills the role of the legislative branch.

The Sheboygan Municipal Code provides little guidance as to the duties and authority of the administrator in the specific portion of the statute that sets forth the duties, noting only that the person "shall perform the duties and shall have the authority and powers prescribed by the common council."[32] However, other sections of the Code set forth specific duties and authority that have been delegated to the administrator.

The duties and powers delegated to the administrator by the common council include those set forth in the following paragraphs.

---

[30] Note that technically the city has both offices and departments. The elected heads of offices (City Clerk, City Attorney, and Municipal Judge) are also generally referred to as department heads, but their offices are not overseen by the City Administrator. The non-elected heads of offices (treasurer/comptroller, assessor, police chief, and fire chief) are also generally referred to as department heads and the City Administrator does performance reviews for these officers. As noted later in this memo, there are potential issues with this process, especially as it relates to the police and fire chiefs.
[31] Wis. Stat. §62.09(8)(a)
[32] Code, §2-342

### 3. Role of the administrator as relates directly to the common council or its committees

The administrator is one of several officials who have the privilege of the floor at common council meetings without the need for a special motion to open the floor.[33]

The administrator is required to meet annually with the finance and personnel committee to project goals and objectives for the ensuing budget year.[34]

The administrator has the duty to establish and maintain a purchasing policy, and notify the common council of any changes.[35] It is pursuant to that policy that the common council has delegated authority to the administrator to settle most claims (both by and against the city) without prior common council approval.

### 4. Role of the administrator related to appointments of department heads

While appointments to committees, commissions, and boards are all under the bailiwick of the mayor, the administrator has been granted some input into the appointment of some employees. The common council appoints the following positions after receiving recommendations from both the mayor and the administrator:

    City assessor[36]
    Director of human resources and labor relations[37]
    Director of information technology[38]
    Director of planning and development[39]
    Director of public works[40]
    Finance Director/Treasurer[41]

### 5. Role of the administrator related to financial matters and the budget

The administrator is charged with reviewing departmental budget requests for the following year; obtaining and setting out the

---

[33] Code, §2-35
[34] Code, §2-901
[35] Code, §2-338
[36] Code, §2-415
[37] Code, §2-420(b)
[38] Code, §2-419(b)
[39] Code, §86-92
[40] Code, §2-397(b)
[41] Code, §2-937(a); and note that currently this includes the comptroller role, as discussed above.

format for departmental and special fund receipts, disbursement, and estimates for the following year[42]; submitting a preliminary budget to the finance committee[43]; working with committee chairs to consider departmental estimates and budget requests; making budget recommendations to go to the committees overseeing each respective department, office, or fund[44]; and preparing and submitting to the common council a proposed executive budget.[45]

### 6. Role of the administrator related to employee and labor relations

The administrator is charged with maintaining the city's employee classification and compensation program.[46] This includes budgetary authority,[47] annual reviews of the table of organization[48], authority to approve mid-year-changes to the table of organization without common council approval,[49] and authority to approve modifications (including addition and deletions of positions) that do not require budgetary changes without common council approval.[50]

The administrator must approve any substantive job description changes and salary grade changes.[51] He or she also must approve paying any new hires at an initial rate greater than the midpoint of the wage or salary range for the position (but no higher than the top of said range.)[52]

The administrator has an important role in dealing with temporary vacancies in job positions. When there is a temporary vacancy (between two weeks and six months) in a non-represented position, the administrator receives recommendations about how to fill those positions with subordinate employees, and has the authority to act on them.[53] He or she must then determine within six months of the vacancy beginning whether the opening shall remain or whether the table of organization needs changing. Unless it results in a change in the budget, he or she can

---

[42] Code, §2-902(a)
[43] Code, §2-902(b)
[44] Code, §2-902(c)
[45] Code, §2-904
[46] Code, §82-1(a)
[47] Code, §82-1(b)(2)
[48] Code, §82-1(b)(4)
[49] *Ibid.*, see also Code, §82-24(b)
[50] Code, §82-1(b)(5)
[51] Code, §82-66
[52] Code, §82-62
[53] Code, §82-57(a)

implement that change and follow the rules for reclassifying the employee.[54]

The administrator has authority to abolish certain positions in the interest of economy, lack of work or funds, or other just causes, resulting in the termination of an employee for other than cause.[55] Whenever that abolishment results in reduction of the number of employees in a class code to a number other than zero, the administrator has authority to consider factors to determine who is laid off, except when collective bargaining agreements control the determination.[56]

The administrator has the authority to approve paid training leave of three weeks or less in a given year without common council approval, and must recommend to the finance and personnel committee any paid training leave of more than three weeks (with a maximum of 12 weeks in a calendar year.)[57] He or she must also recommend to the common council any "special leave" for attendance at extended courses at recognized universities or colleges.[58] The administrator may authorize leaves of absence without pay for up to three months in a calendar year without approval by the common council.[59]

### 7. Role of the administrator related to the senior center

The administrator has the authority to establish and direct policy for the senior center, develop a mission statement, establish goals, be involved in the selection of the supervisor (but not, interestingly, the joint authority to appoint, which rests solely with the mayor), and to establish bylaws for the center.[60] The administrator may also set evening, Friday, and weekend hours for the center.[61] The administrator oversees the management and operation as well as the budget and financial activities of the senior, with input from the senior activity center commission.[62] The administrator is required to report annually to the common council on the status of the management

---

[54] Code, §82-57(b)
[55] Code, §82-25
[56] *Ibid.*
[57] Code, §82-93
[58] Code, §82-96
[59] Code, §82-92
[60] Code, §2-730(a)
[61] Code, §2-730(b)
[62] Code, §2-730(c) and (d)

and operation of the senior center[63] and shall encourage and promote gifts and donations to the senior center.[64]

### 8. Other miscellaneous duties and authorities of the administrator

The administrator has the authority to set the normal working hours for city hall, though he or she must provide reasonable notice of any changes.[65]

The administrator is the legal custodian of his or her records, as well as the records of his or her department.[66]

The administrator has general authority to ask for advice from non-residents of the city had having them participate on a team of employees or persons with special expertise for the purpose of advising the administrator on issues over which he or she makes reports or recommendations to the mayor or common council.[67] Note that the mayor has similar authority, though the purposes may be broader. Note also that none of this necessarily absolves the members of those advisory panels from following public meeting or open records statutes—those issues would be determined on a case-by-case basis.

The administrator has the duty to post all city-owned, occupied, or controlled buildings as places where the carrying of a weapon or firearm is prohibited. However, he or she also has the authority to determine certain building or portions of building should not be so posted, keep a record of all such places, and report them to the common council as soon as he or she determines to remove the posting.[68]

The administrator has the right to object to the issuance of commercial quadricycle licenses before they are issued by the clerk. The clerk must take such objections into account, but retains the authority to make the final decision.[69]

---

[63] Code, §2-730(e)
[64] Code, §2-730(f)
[65] Code, §2-221
[66] Code, §2-838
[67] Code, §2-428
[68] Code, §70-251(c)(2)
[69] Code, §130-141(d)

### C. Other officials with statutory authority

Several other officials are named city officials and granted specific authority in cities.

#### 1. Alderpersons

Alderpersons, along with the mayor make up the common council. However, as individuals they have no authority. Except for the powers of the mayor noted above, all of the power of the common council must be exercised by the common council as a whole. Individual alders have no authority to do anything in particular. That said, committee chairs do have inherent authority to run their committees pursuant to the rules of order. This includes control of the agenda, though just as with the mayor, there are ways to bypass a recalcitrant committee chair that refuses to deal with a matter referred to his or her committee.

#### 2. Clerk

The clerk has a lengthy list of duties in the statutes and city ordinances. Like many of the officers of the city, the duties of the position go far beyond the actual authority to take individual action. However, the clerk, like the other officers other than alders, does have some limited authority. For the clerk, that includes the power to countersign all ordinances and resolutions adopted by the common council, to administer oaths and affirmations, to correct minor errors in common council documents, to create a consent agenda for common council meetings and decide which items go on that consent agenda, to draft and countersign certain financial payments, to issue some licenses, and to appoint a deputy clerk.[70]

#### 3. Treasurer and Comptroller

The offices of treasurer and comptroller are separate offices in state statutes. However, those roles are commonly merged. (In fact in smaller Wisconsin cities, these roles are also merged with the role of the clerk.)

The treasurer collects and deposits funds, keeps accounts, makes reports to common council, must execute and file an official bond, and may appoint a deputy.[71] The comptroller has additional statutory duties related to finances, contracts, claims, and

---
[70] Wis. Stat. §62.09(11)
[71] Wis. Stat. §62.09(9)

sign contracts where funds have been provided to pay the liability of the contract.[72]

It may be worth noting that pursuant to statute, it is the comptroller who has the authority to direct and approve all disbursements.[73] As such, the comptroller is the person with the authority under state law to issue checks and wire transfers, and does not require additional authority from another. This was the case when the comptroller role was separate from the chief administrative officer/finance director, and remains the case today with regard to the administrator, though the comptroller also has the authority to appoint a deputy, and there is no reason the administrator could not also be the deputy comptroller.

In Sheboygan, the role of both the treasurer and the comptroller is currently filled by the finance director.[74]

### 4. Assessor

The assessor, who must be certified by the Department of Revenue, is responsible for all appraisal and assessment services to the City.[75] Cities may appoint a corporation or an independent contractor as the assessor.[76]

### 5. City Attorney

The city attorney is responsible for all legal business of the city and must give written legal opinions when requested by city officers, which must be kept on file by the clerk. The attorney drafts all ordinances, bonds, and instruments. He or she also has access to and examines tax and assessment rolls and proceedings. He or she may appoint an assistant and may employ and compensate special counsel as needed. As the person in charge of the legal business, all legal matters of the city must pass through his or her office—departments may not hire their own counsel, though they may work with the city attorney to have him or her hire outside counsel when appropriate. The city attorney has authority to make non-policy determinations related to litigation—for example, while the attorney cannot approve global settlements that require funds, he or she can make decisions on the fly in court, choose outside counsel, and enter

---

[72] Wis. Stat. §62.09(10)
[73] Wis. Stat. §62.09(10)(c)
[74] Code, §2-937(a) and (c)
[75] Wis. Stat. §62.09(1)(a)
[76] Wis. Stat. §62.09(1)(c)

into agreements related to how to conduct the legal business of the city.[77]

### 6. Police and Fire Chiefs

The police chief and fire chief are designated officers appointed by the police and fire commission. The fire chief has no specific statutory duties, though the police chief does have duties related to reporting.[78] However, both serve under the direction of the mayor and must obey all lawful written orders of the mayor or the common council.

### 7. Constable

While rare, the office of constable is available to cities that have not abolished the position.[79] It is not clear whether Sheboygan ever abolished the position officially. However, the powers of constables (mostly related to service of process and dealing with disorderly or intoxicated people) have been granted to police officers and the police chief.[80]

### 8. Other positions with authority

The Municipal Code creates several other specific positions within the City, most of whom are considered city department heads. Appointment to some is a joint role of the mayor and administrator; others may have other ways of being appointed. While outside the scope of this memo, it should be noted that there are some powers delegated by the common council to those other positions. While the mayor and the administrator may have some role in overseeing the work of those employees, the delegated powers set out in the code belong to them and not to others.

## III. Open Questions

There are a few potential conflicts between the administrator's authority and the mayor's authority. Some of them are discussed above, others are set forth in the following section. This is by no means an exhaustive list of issues.

---

[77] Wis. Stat. §62.09(12)
[78] Wis. Stat. §62.09(13)
[79] Wis. Stat. §62.09(15)
[80] Code, §54-102

### A. Appointing department heads

The mayor and the administrator have joint authority to recommend appointment of people to many department head positions. There is no clear path should the mayor and administrator disagree on who to appoint. On the one hand, the mayor controls the agenda. On the other, as the representative of the common council, the administrator certainly has the authority to present his or her opinion. There are likely procedural methods using common council rules to deal with this issue should it ever arise. But even common council procedural rules cannot prevent gridlock in case of a divided common council.

### B. Budget preparation

The common council requires the administrator to prepare and submit a budget. In the past, there was a question as to whether that is properly the mayor's role, and a former mayor attempted to push an alternate mayoral budget. While the statutes do not specifically require or authorize the mayor to prepare and submit a budget, the mayor's executive authority would enable him or her to manage that budget. However, since passing a budget and setting budget policy is certainly within the purview of the common council, I am convinced that this power is properly delegated to the administrator.

### C. Personnel matters

The administrator was recently granted significant authority over personnel regulations and benefits.[81] At the time of said grant, the administrator, the human resources director, and the common council were all informed by legal counsel that the broad grant could potentially result in some level of conflict with the mayor's role as chief executive officer of the city and his or her authority to ensure that all city officers and employees are discharging their duties. The common council made the policy decision to go ahead with what an activist mayor could have perceived as a partial encroachment on his or her authority. That said, many of the duties set out in Chapter 82 could be said to be policy-related, not executive in nature. Because there is a wide range of authority granted in this chapter, potential conflicts may need to be dealt with on a case-by-case basis. However, it is clear that the mayor likely has statutory authority to insist on being involved in performance reviews of

---

[81] See chapter 82, Sheboygan Municipal Code.

department heads and reviews with the elected officials within the executive branch (city clerk and city attorney.)

### D. Senior Activity Center

While the common council has delegated authority to the administrator to direct and supervise management of the senior center and oversee the budget and financial activities of the senior center, the code does not carefully distinguish between policy and legislative matters, which are the purview of the common council and can thereby be delegated to the administrator, and those related to the day-to-day activities, execution of polices, and oversight of employees. Additionally, since the mayor has the authority to appoint the members of the senior activities center commission (subject to an up-or-down vote by the common council); the mayor could exercise some level of control through his or her appointees.