**Department of Workforce Development**
**Equal Rights Division**
819 N. 6th Street Rm 723
Milwaukee, WI 53203
Telephone: (414) 227-4384
Fax: (414) 227-4084



**STATE OF WISCONSIN**

**Tony Evers**, Governor
**Amy Pechacek**, Secretary-designee

DATED AND MAILED: **NOVEMBER 10, 2022**

INITIAL DETERMINATION - NO PROBABLE/PROBABLE CAUSE



EXHIBIT

N

Complainant:
VICKY A SCHNEIDER

vs.

Respondent(s):
CITY OF SHEBOYGAN
828 CENTER AV #204
SHEBOYGAN WI 53081

ERD Case No.: CR202200171
EEOC Case No: 26G202200443

---

I. <u>THE DIVISION DECIDED</u>:

There is no probable cause to believe the Respondent(s) violated the Wisconsin Fair Employment Law, sec. 111.31-111.395, Stats., by:

  A. discriminating against the Complainant in terms or conditions of employment because of sex.

This part of the complaint is therefore <u>dismissed.</u>

<u>HOWEVER:</u>

There is probable cause to believe the Respondent(s) may have violated the Wisconsin Fair Employment Law, sec 111.31-111.395, Stats. by:

  A. discriminating against the Complainant because the Complainant opposed a discriminatory practice under that Act.

This part of the complaint will continue to be processed.

II. <u>THIS MEANS</u>:

The Division found no reason to hold a formal hearing on that part of the complaint involving sex discrimination and the Division is dismissing that part of the complaint.

The Division found reason to hold a formal hearing on that part of the complaint involving discrimination based on opposition to decide if the Respondent violated the Wisconsin Fair Employment Act.

III. THE NEXT STEP IS:

**The dismissal of that part of the complaint involving sex discrimination will become final unless the Complainant submits a written appeal letter to the Division. The appeal letter must be received within 30 days of the date this determination was mailed. The appeal letter cannot be transmitted or received via email.** (The DATE OF MAILING is stamped at the top of the Initial Determination.) **The appeal must be mailed to:**

EQUAL RIGHTS DIVISION
819 N 6th ST
ROOM 723
MILWAUKEE WI 53203-1687

In the appeal letter, the Complainant must state the specific reasons for appealing. The Division will close that part of the complaint involving sex discrimination without further action if no timely appeal is received.

This case will be certified for a formal hearing. If the Complainant appeals the no probable cause portion of this decision, a hearing will be held on those issues first. If the Administrative Law Judge finds probable cause after that hearing, a second hearing will be held on the merits of the complaint. If the Complainant does not appeal the no probable cause portions of this determination, the Administrative Law Judge will conduct a merits hearing on the probable cause portion of the complaint. A notice of hearing stating the date, time, and place of hearing will be sent to the parties in the near future. This notice will also include an information sheet, as well as a copy of the statutes and administrative code. At the hearing, the parties will be given the opportunity to present evidence to support their cases. Neither the Initial Determination, nor the evidence presented to the Equal Rights Division during the investigation of this case, will automatically become part of the record at hearing. <u>The Administrative Law Judge will only consider evidence presented at the hearing</u>.

Contact the Administrative Law Judge by letter if you wish to pursue settlement of this case prior to hearing. The Administrative Law Judge will assist in resolving the case if the parties voice interest. The parties may wish to consult with an attorney for legal advice.

IV. DATE OF FILING AND/OR INITIAL WRITTEN CONTACT:

   A. The Complainant first contacted the Division in writing on 01/18/2022 alleging employment discrimination. The Division accepted the Complainant's complaint on 01/20/2022.

V. THE DIVISION DECIDED THERE WAS NO PROBABLE CAUSE AS TO PART OF THE COMPLAINT AND PROBABLE CAUSE AS TO OTHER PARTS OF THE COMPLAINT BASED ON THE FOLLOWING INFORMATION:

   A. The Respondent is a Wisconsin municipality that provides a full range of municipal services.

B. The Complainant was hired in March 2019 as the Director of Senior Services. In May 2020, the Complainant applied for the position as Human Resources' Director and was transferred to the position in June 2020.

C. The Complainant alleged the Respondent engaged in or permitted harassment and discriminated against her in terms or conditions of employment because of her sex and opposition to discrimination in the workplace.

D. In July 2020, the Respondent hired Todd Wolf as its City Administrator. The Respondent indicated that upon evaluating various services and departments Mr. Wolf began to initiate changes under his authority and looked to a reorganization of the Human Resources department. The Respondent asserted that in working through that process Mr. Wolf had concerns with the Complainant's ability to implement the reorganization of the Human Resources Department as well as her over-all expertise in Human Resources. The Respondent stated the Complainant did not have any appreciable prior experience working in a human resources department or holding a position of Human Resources Director in the past. The Respondent contended that there appeared to be concerns with the Complainant's ability to train and manage her staff and that Mr. Wolf suggested she gain further expertise by joining such organizations as the Society for Human Resources Management and seek further schooling and training related to human resources and technology. In December 2020, Mr. Wolf completed the Complainant's annual evaluation and indicated that she "Exceeds Expectations" in such areas of Flexibility/Adaptability, Attendance, and Attitude and noted "Opportunity for Development" in the areas of Knowledge of Work, Collaboration, Meeting Work Commitments, and Technology.

E. The Complainant argued that she had experience working in Human Resources and holds a Master's degree in Management and Organizational Behavior with an emphasis in Human Resources. The Complainant also argued Mr. Wolf expressed no concerns about her performance or skills other than minimally in the December 2020 evaluation.

F. In January 2021, an internal discrimination complaint was filed by a female police officer regarding certain allegations involving other male police officers. The matter was initially investigated by the police department and the male officers were issued suspensions.

G. According to the Complainant, in February 2021 she became aware of the situation in the police department that involved a female officer and the alleged sharing of nude photos. The Complainant indicated that it was not until July 7, 2021, while in the process of scheduling an exit interview for the complaining officer that she learned the full scope of the allegations that involved sexual misconduct by male police officers toward female co-officers. The Complainant asserted that the allegations revealed a pattern of abuse and harassment from a number of male officers toward female officers. The Complainant stated that between late July 2021 and through September 2021 she expressed serious concerns that the female officer's complaints were not being taken seriously and a cover up was under foot, and she openly questioned the sufficiency of the Respondent's remedial efforts to address the sexual harassment and other inappropriate sexual behavior involving employees. The Complainant contended that on September 14, 2021, she expressed her concerns in a meeting with Mr. Wolf, Ryan Sorenson (Mayor), and Charles Adams (City Attorney) about the allegations and how she believed the discipline was inadequate and the male officers were essentially getting off easy for behaviors that were far worse than the discipline imposed would suggest. The Complainant also contended that in response Mr. Wolf told her to stay in her lane and stated he did not want the situation to "taint" her and the work she was

doing. The Complainant argued that Mr. Wolf then began engaging in a campaign to marginalize, disparage, and discredit her.

H. The Respondent indicated that as part of her responsibilities as Human Resources Director the Complainant continued the investigation of the internal complaint until it decided to have the matter referred to an outside attorney to handle the investigation and make recommendations. The Respondent contended that the consensus was that an outside attorney would add a more neutral, outside view in addressing the matter and that it was a good faith effort to have a full and fair outside investigation done so it could effectively address the internal complaint. The Respondent argued that the Complainant seemed to resent having the matter referred to an outside investigator and that Mr. Wolf had to advise her not to interfere with the investigation when it appeared she was still interjecting herself into the matter.

I. The Complainant argued that she embraced the involvement of an outside investigator and that the Respondent never advised her to not interfere with the investigation. The Complainant indicated that prior to the external investigation she was not involved in the investigation as it had been handled internally by the police department itself and that on July 28, 2021, Mr. Wolf assigned her as the Respondent's contact to work with the external investigator.

J. According to the Complainant, after raising her concerns with the Respondent, Mr. Wolf reduced her staff from three HR Generalists to two; Mr. Wolf moved the Human Resources Department to the second floor storage room at City Hall and told her "this is what you are getting;" an Assistant City Attorney warned her that Mr. Wolf was actively marginalizing her; Mr. Wolf's assistant, at his instruction, consistently interfered with, criticized, and shamed her and the Human Resources department; Mr. Wolf disparaged her to other city officials including telling an Alderperson that she was "obsessing" about the sexual harassment; Mayor Sorenson warned her on October 4, 2021, that Mr. Wolf had her "under the microscope" because of her concerns about the sexual harassment case and was using other Human Resources employees to spy on her; a newly hired HR Generalist, Nicole Geschke, informed her in October 2021 that another HR Generalist, Jennifer Wray, had been directed by Mr. Wolf to spy on her and report back to him; Mayor Sorenson informed her on October 6, 2021 that Mr. Wolf had been "gaslighting" and "gatekeeping" her, had kept her out of meetings and communications, and had disparaged her to council leadership that she was obsessive about the sexual harassment complaint; Mayor Sorenson expressed to her that she was being treated with abuse by Mr. Wolf; Mayor Sorenson later confirmed that at least two of her subordinates (Ms. Wray and Sandy Halvorsen) had been solicited by Mr. Wolf to monitor and report to him about her; Mayor Sorenson told her on November 8, 2021, that Mr. Wolf had placed a target on her back and had her staff involved and against her; and Mr. Wolf admitted on November 11, 2021, that he was using her staff to actively marginalize and work against her and that the deterioration of their relationship was because of the "police thing."

K. On November 29, 2021, the Complainant began an FMLA leave of absence.

L. The Respondent argued that the Complainant did not engage in statutorily protected activity and that as Human Resources Director it was her responsibility to enforce policies that prohibit harassment and other discrimination in the workplace. The Respondent further argued that the Complainant was not treated less favorably than similarly situated employees and that the Complainant offered no evidence of any adverse employment action related to her sex. The Respondent contended that prior to the filing and investigation of the internal complaint in the police department Mr. Wolf

had concerns with the Complainant's over-all skill level and the Complainant was struggling.

M. The Complainant asserted that until she expressed concerns and openly questioned the Respondent's handling of the sexual harassment complaints Mr. Wolf fully supported her. The Complainant indicated that Mr. Wolf expressed his full support for her publicly and on record at numerous Common Council meetings throughout 2020 and 2021, sent her text messages on July 14, 2021, and July 15, 2021, telling her she was great for the position and thanking her for all she did, and frequently had lunch with her during the business day. The Complainant argued she is a female and was the only female involved in the investigation of severe allegations or sexual misconduct and discrimination.

VI. <u>INVESTIGATOR'S EXPLANATION:</u>

A. The evidence submitted by the parties suggests the Respondent may have permitted harassment and discrimination in terms or conditions of employment because the Complainant opposed a discriminatory practice. The Complainant provided detailed and sufficient information regarding concerns she raised with the Respondent about its handling of a sexual harassment complaint and the specific actions the Respondent took against her after raising those concerns. The concerns the Complainant raised likely fall under statutorily protected activity as it appears the Complainant's stated concerns were surrounding the treatment of the female reporting employee versus the treatment of the accused male employees. The spying, disparaging remarks, exclusion from meetings and communications, and other alleged acts of retaliation appear to be adverse actions as they likely materially changed the Complainant's terms or conditions of employment and might well have dissuaded a reasonable perform from opposing any discriminatory act. While the Respondent argued the Complainant had performance issues previously, the Respondent failed to explain how such issues were connected to the acts of retaliation the Complainant alleged. Considering the timing of the actions, the lack of a legitimate explanation for those actions, and the various comments Mr. Wolf was alleged to have made about the Complainant's actions surrounding the sexual harassment case, there is probable cause to believe the Respondent may have retaliated against the Complainant due to her protected oppositional activity.

B. It does not appear that the Respondent permitted harassment and discrimination in terms or conditions of employment because of the Complainant's sex. There was no evidence submitted that suggests the parties involved may have held a bias against the Complainant because of her sex or that a similarly-situated male would have been treated more favorably if he engaged in similar protected activity.

Catherine R Eskridge
Equal Rights Officer

cc:
Complainant:
VICKY A SCHNEIDER

Respondent:
CITY OF SHEBOYGAN
HUMAN RESOURCES
828 CENTER AV #204
SHEBOYGAN WI 53081

Respondent's Attorney:
JAMES R MACY
VON BRIESEN & ROPER SC
55 JEWELERS PARK DR STE 400
NEENAH WI 54956

Complainant's Attorney:
PETER J FOX
FOX & FOX SC
111 E WISCONSIN AVE STE 1925
MILWAUKEE WI 53202