# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

TODD WOLF,

       Plaintiff,                             Case No.: 23-cv-149

v.

CITY OF SHEBOYGAN, MAYOR RYAN
SORENSON in his individual and official capacity,
CITY ATTORNEY CHARLES ADAMS in his
individual and official capacity, ALDERWOMAN
BARBARA FELDE, in her individual and official
capacity, ALDERWOMAN ROBERTA FILICKYPENESKI,
in her individual and official capacity,
ALDERWOMAN AMANDA SALAZAR, in her
individual and official capacity, ALDERWOMAN
ANGELA RAMEY, in her individual and official
capacity, ALDERWOMAN BETTY ACKLEY, in her
individual and official capacity, ALDERMAN
ZACHARY RUST, in his individual and official
capacity, ALDERMAN DEAN DEKKER, in his
individual and official capacity, ALDERWOMAN
GRAZIA PERRELLA, in her individual and official
capacity, PRESIDENT SHEBOYGAN AREA SCHOOL
DISTRICT MARY LYNNE DONOHUE, in her
individual capacity; MAYA HILTY; and JILL HALL,

       Defendants.

---

**DEFENDANTS CITY OF SHEBOYGAN, MAYOR RYAN SORENSON, CITY ATTORNEY CHARLES ADAMS, ALDERPERSON BETTY ACKLEY, ALDERPERSON DEAN DEKKER, ALDERPERSON BARBARA FELDE, ALDERPERSON ROBERTA FILICKY-PENESKI, ALDERPERSON GRAZIA PERRELLA, ALDERPERSON ANGELA RAMEY, ALDERPERSON ZACHARY RUST AND ALDERPERSON AMANDA SALAZAR'S BRIEF IN SUPPORT OF THEIR FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Dated at Milwaukee, Wisconsin this 29th day of March 2023.

**MWH LAW GROUP LLP**

Attorneys for Defendants City of Sheboygan, Mayor Ryan Sorenson, City Attorney Charles Adams, Alderperson Betty Ackley, Alderperson Dean Dekker, Alderperson Barbara Felde, Alderperson Roberta Filicky-Peneski, Alderperson Grazia Perrella, Alderperson Angela Ramey, Alderperson Zachary Rust And Alderperson Amanda Salazar, and President Sheboygan Area School District Mary Lynne Donohue

By: _/s/ Electronically signed by Warren E. Buliox_

Warren E. Buliox          SBN 1056215
Julie T. Bittner          SBN 1128144
Kerrie M. Murphy          SBN 1122869
735 N. Water Street, Suite 610
Milwaukee, WI 53202
Telephone: (414) 436-0353
Facsimile: (414) 436-0354
_warren.buliox@mwhlawgroup.com_
_julie.bittner@mwhlawgroup.com_
_kerrie.murphy@mwhlawgroup.com_

# TABLE OF CONTENTS

I. Introduction ........................................................................................................3

II. Legal Standard for a Motion to Dismiss ............................................................3

III. Statement of the Facts ........................................................................................5

    A. Facts Alleged By Plaintiff Relating To Plaintiff's First Amendment Violation Claims .......................................................................................................5

    B. Facts Alleged By Plaintiff Relating To His Claim That The City Of Sheboygan Violated Wis. Stat. Section 895.446 ........................................................9

IV. Argument ..........................................................................................................10

    A. Plaintiff's First Amendment Retaliation Claim Must Be Dismissed Because Plaintiff Has Failed To State A Claim As A Matter of Law ...............................10

        1. Plaintiff Did Not Engage In Constitutionally Protected Speech During His November 7th Recorded Interview Or At The Sheboygan GOP Annual Meeting On November 28th ...............................................................11

            a. November 7, 2022, Statements ....................................................12
            b. November 28, 2022, Statements ..................................................16

        2. Plaintiff's First Amendment Retaliation Claim Must Be Dismissed Because The Complaint Alleges No Facts That Plaintiff's Speech Was 'At Least A Motivating Factor' In The Defendants' Decision To Terminate Him ...............................................................................17

        3. Plaintiff's Alleged Denial Of His Right To Vote Must Be Dismissed As A Matter Of Law ...............................................................................20

        4. Plaintiff's Claim That He Was Deprived Of His Right To Police and Fire Protection In Violation of His First Amendment Rights Must Be Dismissed As A Matter Of Law ...............................................................22

    B. Plaintiff's Claim That the City of Sheboygan Violated Wis. Stat. Sec. 895.446 Must Be Dismissed As A Matter Of Law .................................................23

    C. The Official Capacity Suits in Claims One And Three Against The Individually Named Defendants Must Be Dismissed As A Matter Of Law ............................26

    D. Plaintiff's Claim For Declaratory Judgment In Relation To Claims One, Two, Three and Four Must Be Dismissed As A Matter Of Law ...............................27

V. Conclusion .......................................................................................................27

# TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................4

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) .....................................11, 12, 15, 16, 17

*Green v. Mansour,* 474 U.S. 64 (1985)...........................................................27

*Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. 274 (1977).....................19


**Wisconsin Court of Appeals**

*Schuepbach v. Leistikow Props., LLC,* 2020 Wisc. App. LEXIS 48 (Wis. Ct. App., January 30, 2020) ...........................................................................................................24


**Eastern District Wisconsin**

*Bey v. Walker,* 2011 U.S. Dist. LEXIS 66222 (E.D. Wis., June 20, 2011) ...................................20

*Henige v. Bd. of Regents of the Univ. of Wis. Sys.*, 2021 U.S. Dist. LEXIS 26222 (E.D. Wis., February 11, 2021)...................................................................................10, 14, 15

*Hobbs v. Shesky*, 2022 U.S. Dist. LEXIS 202037 (E.D. Wis., November 7, 2022).....................26


**Seventh Circuit Cases**

*Abcarian v. McDonald,* 617 F.3d 931 (7th Cir. 2010)......................................12, 13, 15

*David v. City of Chicago,* 889 F.3d 842 (7th Cir. 2018)....................................20

*Denius v. Dunlap,* 330 F.3d 919 (7th Cir. 2003) ...............................................21

*Hatcher v. Bd. of Trs. of S. Ill. Univ.* 829 F.3d 531 (7th Cir. 2016) .......................11, 15

*Kentucky v. Graham,* 473 U.S. 159 (1985).........................................................26

*Kidwell v. Eisenhauer,* 679 F.3d 957 (7th Cir. 2012) .......................................18

*Lett v. City of Chicago,* 946 F.3d 398 (7th Cir. 2019) ..............................11, 12, 17, 20

*Massey v. Johnson,* 457 F.3d 711 (7th Cir. 2006) ........................................10, 19

*McArdle v. Peoria Sch. Dist. No. 150,* 705 F.3d 751 (7th Cir. 2013)..........................15

*McCauley v. City of Chicago,* 671 F.3d 611 (7th Cir. 2011)....................................4, 18

*Parra v. Neal*, 614 F.3d 635 (7th Cir. 2010)......................................................22

*Reed v. Palmer,* 906 F.3d 540 (7th Cir. 2018)...................................................22

*Spiegla v. Hull*, 481 F.3d 961 (7th Cir. 2007)...............................................14, 19

*Sweet v. Town of Bargersville,* 18 F.4th 273 (7th Cir. 2021) .................................18

*Swetlik v. Crawford,* 738 F.3d 818 (7th Cir. 2013)............................................11

*Tamayo v. Blagojevich,* 526 F.3d 1074 (7th Cir. 2008).......................................15

*Toney v. Burris,* 829 F.2d 622 (7th Cir. 1987)..................................................27

*Vose v. Kliment,* 506 F.3d 565 (7th Cir. 2007) ...............................................15

*Wilson v. Price,* 624 F.3d 389 (7th Cir. 2010).................................................18

*Wright v. Associated Ins. Cos.,* 29 F.3d 1244 (7th Cir. 1994) ................................7, 24


**Other Court Cases**

*Bova v. U.S. Bank, N.A.*, 446 F.Supp.2d 926 (S.D. Ill. 2006)......................................21

*Estate of Miller v. Storey,* 2017 WI 99, 378 Wis. 2d 358, 903 N.W.2d 759 ..............................24

*Miller v. Apropos Tech, Inc.*, 2003 U.S. Dist. LEXIS 5074 (N.D. Ill., March 31, 2003)..........7, 24

**<u>Other Authorities</u>**

Fed. R. Civ. P. 12(b)(6)....................................................................................................3, 4

Wis. Stat. § 895.446..........................................................................................3, 9, 23, 26

Wis. Stat. § 943.20.....................................................................................................................23

# I.    INTRODUCTION

Plaintiff Todd Wolf filed the present litigation on February 6, 2023, asserting five claims. This Partial Motion to Dismiss seeks dismissal of Claims One and Five. In Claim One**,** Plaintiff asserts that he was terminated in retaliation for exercising his First Amendment rights to freedom of speech as well as violations of his First Amendment right to vote and access the City's police or fire departments in case of emergency. Plaintiff asserts these claimed violations against the City of Sheboygan as well as claims in both their official and individual capacities against Mayor Ryan Sorenson, City Attorney Charles Adams, Alderperson Betty Ackley, Alderperson Dean Dekker, Alderperson Barbara Felde, Alderperson Roberta Filicky-Peneski, Alderperson Grazia Perrella, Alderperson Angela Ramey, Alderperson Zachary Rust, and Alderperson Amanda Salazar. In Claim Five, Plaintiff alleges that the City of Sheboygan unlawfully converted his personal property in violation of Wis. Stat. § 895.446.

For the reasons set forth below, Defendants move the Court to dismiss Claims One and Five pursuant to Federal Rule of Civil Procedure 12(b)(6) as a matter of law because Plaintiff has failed to state a claim upon which relief may be granted. Defendants further move the Court to dismiss the official capacity claims asserted against these individually named Defendants in Claims One and Three as well as the claim for declaratory judgment asserted by Plaintiff in Claims One through Four as a matter of law because Plaintiff has failed to state a claim upon which relief may be granted.

# II.    LEGAL STANDARD FOR A MOTION TO DISMISS

A party may assert that a complaint fails to state a claim upon which relief can be granted by a pre-answer motion. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint for failure to state a claim upon which

relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly,* 550 U.S. at 570.

In examining a pleading under Fed. R. Civ. P. 12(b)(6), a court conducts a two-step analysis. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 556). First, the court must "accept the well-pleaded facts in the complaint as true while separating out legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal,* 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations plausibly suggest an entitlement to relief." *Id.* (citing *Iqbal,* 556 U.S. at 681) (internal quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). These "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. It is not enough for a plaintiff to plead facts that are "merely consistent with" liability "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 678–79 (alteration in original) (quotations omitted). Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Allegations that state legal conclusions or "[t]hreadbare recitals of a cause of action's elements . . . are not entitled to the assumption of truth." *Iqbal*, 556. U.S. at 663–64.

## III.    STATEMENT OF THE FACTS

### A.  Facts Alleged By Plaintiff Relating To His First Amendment Violation Claims.

In support of his claim that Defendants violated his First Amendment rights, Plaintiff alleges that he held the position of City Administrator for the City of Sheboygan from June 2020 – January 9, 2023. (Pltf's Compl. ¶'s 29, 257-258) The City Administrator's duties are outlined as the "authority and powers prescribed by the common council." (Pltf's Compl. ¶ 47) "As part of his duties prescribed by the Common Council, Plaintiff introduced an annual budget to the Common Council for the next year by October of the previous year, for the Council's adoption and implementation." (Pltf's Compl. ¶ 50) "The City Administrator is authorized, when necessary, to suggest that the Council put out a Request for Proposal ("RFP") when necessary for specific department or City needs within the purview of the annual budget each year." (Pltf's Compl. ¶ 53) "An RFP is a resolution memorandum sent out to the public asking for proposals to be submitted to the City to assume specific roles, jobs, or contracted assignments based on city needs as specific to the RFP." (Pltf's Compl. ¶ 54)

In January 2022, the City's Human Resources Director filed a complaint with the Wisconsin Department of Workforce Development ("DWD") claiming that Plaintiff was discriminating and retaliating against her. (Pltf's Compl. ¶ 92) On August 22, 2022, Chad Pelishek, the City's Director of Planning and Development, repeated a racial slur at a department head meeting, while describing that it had been said by a community member during a neighborhood meeting. (Pltf's Compl. ¶¶'s 105-106) Information that a racial slur was repeated during the department head meeting was disclosed to one or more members of the public. (Pltf's Compl. ¶

108) Plaintiff arranged a meeting with himself, Defendant Hilty and Defendant Sorenson on September 20, 2022. (Pltf's Compl. ¶'s 116, 119) Despite giving an interview to Defendant Hilty, Plaintiff asked her not to publish information related to the use of the racial slur at the department head meeting. (Pltf's Compl. ¶ 127)

Plaintiff asked City employee Abby Block to arrange a meeting with Ale Guevara and Jamie Hack, members of Sheboygan's DEIB community-based group. (Pltf's Compl. ¶'s 131, 133) Ms. Block and Mr. Pelishek also attended the lunch meeting with Plaintiff, Ms. Guevara, and Ms. Haack on October 5, 2022. (Pltf's Compl. ¶ 135) Plaintiff claims that at the meeting, Ms. Guevara and Ms. Haack told him that their budget to do DEI work for the City was $70,000 and when Plaintiff refused to pay them City money, Ms. Guevara and Ms. Haack responded that if he didn't pay the Sheboygan DEIB, they would oppose him, his policies and anyone he used for diversity that was not them. (Pltf's Compl. ¶'s 136-140) Five days after the lunch, Defendant Hilty published an article about the racial slur incident. (Pltf's Compl. ¶ 141) In the article, Ms. Guevara was quoted as being "concerned about equity and inclusion issues in [Sheboygan's] government." (Pltf's Compl. ¶ 142)

Following publication of Defendant Hilty's article, Plaintiff alleges he was ordered by Alderpersons Felde and Filicky-Peneski and Mayor Sorenson "'not to speak to the media' about anything." (Pltf's Compl. ¶ 146) At an October 17, 2022, Common Council meeting, members of the public, including Ms. Haack, asked Common Council to re-evaluate Plaintiff's position. (Pltf's Compl. ¶ 150) In the following weeks, the Common Council discussed how to address the matter. (Pltf's Compl. ¶'s 153–154)

On November 7, 2022, Plaintiff sent each Alderperson on the Common Council an email entitled "Confidential: Extremely Urgent Notice and information report to Sheboygan Common

Council." (Pltf's Compl. ¶ 166, Ex. Z) The email contained two attachments, one of which was a letter to the Common Council members. *Id.* In his letter, Plaintiff reported to Common Council, for the first time, that Ms. Guevara and Ms. Haack had "threatened, bribed and engaged in potential extortion," during his lunch meeting with them on October 5th, more than a month prior to his letter to Council.[1] (Buliox Declaration ¶ 3, Ex. 1 - Plaintiff's 11/7/2022 Letter to Common Council) Plaintiff noted in his letter that the fact that Ms. Guevara was quoted in an article published by Ms. Hilty on October 10th and Ms. Haack spoke out publicly against him and Mr. Pelishek during the Common Council's meeting on October 17th was evidence that Ms. Guevara and Ms. Haack made good on the threats they made during the October 5th lunch when he refused to pay them a blank check. (Ex. 1, p. 1-2) Plaintiff told Common Council in his letter that he will never cave to political threats, bribes, or extortion efforts from political activists when it comes to City Partnerships and City money. *Id.* p. 2.

Plaintiff also advised Common Council in his November 7th letter that he intended to "write up" Ms. Rendall-Araujo "for demanding that Mr. Pelishek repeat [the racial slur] and who leaked that statement in a false light," and he wanted their support to do so without fear of further action being taken against him or his position. *Id.* at p. 3–4. Plaintiff also advised Common Council that he had kept detailed confidential records related to the prior Director of Human Resources [Vicky Schneider] and had more information on that situation to share with them. *Id.* at p. 4. On November 7, 2022, at the Common Council meeting, eight of the ten Alderpersons voted to place Plaintiff on

---

[1] This jurisdiction has long held that when evaluating a motion to dismiss, a court may consider documents that are referred to in a party's complaint and are central to the plaintiff's claim. *See Miller v. Apropos Tech., Inc.*, 2003 U.S. Dist. LEXIS 5074 (N.D. Ill., March 31, 2003) (citing *Wright v. Associated Ins. Cos.*, 29 F.3d 1244 (7th Cir. 1994)). Here, Plaintiff refers to the November 7, 2022, letter he sent to Common Council but did not attach it. This Court may consider that letter, which Defendants have attached to this Partial Motion to Dismiss.

paid administrative leave for the purpose of hiring outside counsel to investigate allegations and concerns regarding his conduct. (Pltf's Compl. ¶¶'s 172–173)

At approximately 10:00 p.m. that evening, Plaintiff gave a recorded interview to a local radio station that was scheduled to be broadcasted November 8th during the morning radio news show. (Pltf's Compl. ¶ 179) In his recorded interview, Plaintiff stated that "he denied a request for $70,000 of taxpayer money to members of the Sheboygan DEIB group" who stated they would "oppose" him if he didn't give them money and that these individuals went to Common Council and "they listened," that he was "blindsided" to learn of his suspension "without any notice, details, allegations, or cause against him and "escorted out of the City like a criminal;" and he also expressed concern about the way that it was handled so surprisingly without any notice "in the dark of night." (Pltf's Compl. ¶¶'s 180-183) At 11:30 p.m. that evening, Plaintiff received a letter from City Attorney Adams that directed him not to speak with any City employees or individuals conducting City business and that he was not authorized to speak to the media about City matters. (Pltf's Compl. ¶¶'s 187, 190, Ex. AA)

On November 23, 2022, Plaintiff was contacted and asked to speak at the Sheboygan County Republican Party annual caucus meeting. (Pltf's Compl. ¶ 197) Plaintiff accepted the invitation and a press release was issued at noon on November 28th announcing that he would be speaking at the event. (Pltf's Compl. ¶¶'s 198, 201, Ex. BB) Plaintiff received a letter from City Attorney Adams at 4:45 p.m. on November 28th advising him that the Common Council had been informed of his speaking event at the Sheboygan County Republican event and reminded him that he was not authorized to speak with any City employees or individuals conducting City business and that he was not to speak to the media about City matters. (Pltf's Compl. ¶¶'s 202-203, Ex. CC)

On January 4, 2023, during a closed session, Attorney Jill Hall advised Common Council of the results of the investigation she had conducted in relation to Plaintiff's communications, conduct and leadership and certain allegations of inappropriate and illegal conduct made by Plaintiff. (Pltf's Compl. ¶¶'s 231, 232, 248, Ex. KK) On January 6, 2023, Common Council posted an Agenda that advised it would be voting to remove Plaintiff without cause at the Common Council Meeting on January 9, 2023. (Pltf's Compl. ¶255, Ex. NN) Common Council voted eight to two to terminate Plaintiff without cause on January 9, 2023. (Pltf's Compl. ¶ 258)

**B. Facts Alleged By Plaintiff Relating To His Claim That The City Of Sheboygan Violated Wis. Stat. Section 895.446.**

In support of this claim that the City violated Wis. § 895.446, Plaintiff alleges that the City unlawfully converted his personal belongings that remained in his office at City Hall after he was placed on administrative leave on November 7, 2022. He claims that "immediately following the meeting [on November 7th,] Adams approached [Plaintiff], asked him to turn over his City laptop, and personally escorted [Plaintiff] out of City Hall without giving him an opportunity to gather any of his personal belongings." (Pltf's Compl. ¶ 175) "In November, [Plaintiff] requested, through his attorney, just a few of [his] personal documents and contemporaneous handwritten notes from his office, but Adams stated that neither [Plaintiff] nor his attorney were allowed to enter [Plaintiff's] office." (Pltf's Compl. ¶ 216) "Adams said he would gather any documents that [Plaintiff] wanted, but [Plaintiff] felt uncomfortable about that and decided he would wait until he was allowed to enter his office again." (Pltf's Compl. ¶ 217) "On January 10, [Plaintiff], through his legal representative, emailed Adams and the City's outside legal counsel requesting that they grant immediate access to [Plaintiff's] City Administrator office to gather his personal belongings. (Pltf's Compl. Claim Five ¶ 47) "To date, neither Adams nor any representative from the City has ever responded to [Plaintiff's] requests to obtain his personal belongings." (Pltf's Compl. ¶¶'s 218,

219 and Claim Five ¶ 48) Plaintiff further claims that "upon information and belief, Adams and Sorenson have trespassed into [Plaintiff's] office and removed, altered, destroyed or fabricated information to harm [Plaintiff] during the investigation and their actions have harmed, damaged, injured [Plaintiff's] personal property and belongings within his previous office." (Pltf's Compl. Claim Five, ¶ 49)

## IV.    ARGUMENT

### A. Plaintiff's First Amendment Retaliation Claim Must Be Dismissed Because Plaintiff Has Failed To State A Claim As A Matter of Law.

Plaintiff brings Claim One against the City of Sheboygan, Mayor Sorenson, City Attorney Adams and Alderpersons Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar. (Pltf's Compl. P. 39) Plaintiff asserts this claim against the individually named Defendants in both their official and individual capacities. Defendants are entitled to dismissal as a matter of law because (1) Plaintiff's speech was not constitutionally protected; (2) Plaintiff's speech was not a motivating factor in the decision to terminate him; and (3) Defendants did not violate Plaintiff's First Amendment right to vote or access police and fire protection in case of emergency.

To state a First Amendment retaliation claim, a public employee must allege three specific elements: (1) his speech was constitutionally protected; (2) he suffered a deprivation that would likely deter him from exercising his First Amendment rights; and (3) his speech was 'at least a motivating factor' in the defendant's decision to take the retaliatory action. *See Henige v. Bd. of Regents of the Univ. of Wis. Sys.*, 2021 U.S. Dist. LEXIS 26222 * 9–10, 2021 WL 520403 (E.D. Wis., February 11, 2021) (citing *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). Here, Plaintiff only alleges two instances of protected speech. Plaintiff claims that his "speech as a private citizen on November 8th and 28th on matters of public concern was, at least in part, a direct motivating factor in his being fired as City Administrator." (Pltf's Compl. ¶ 297) These two

instances more specifically involved (1) statements Plaintiff made during a recorded interview that he gave on the evening of November 7th, which aired the next morning on a local radio show and (2) conversations he claims that he had during a Sheboygan County GOP event on November 28th. (Pltf's Compl. ¶¶'s 280, 281, 286)

For the reasons more fully explained below, Plaintiff has neither alleged sufficient facts that his November 7th recorded interview or November 28th statements he made at the Sheboygan GOP annual meeting were constitutionally protected nor has he alleged facts that show the speech was a motivating factor in the Defendants' decision to terminate him.

1. **Plaintiff Did Not Engage In Constitutionally Protected Speech During His November 7th Recorded Interview Or At The Sheboygan GOP Annual Meeting On November 28th.**

"For a public employee to prove retaliation in violation of the First Amendment, he must first establish that his speech was constitutionally protected." *Lett v. City of Chicago,* 946 F.3d 398, 400 (7th Cir. 2019). "Although the First Amendment offers public employees some protection, it does not empower them to constitutionalize the employee grievance." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)) (internal quotations omitted). A public employee's speech is only protected if (1) he spoke as a private citizen rather than in his capacity as a public employee; (2) he spoke on a matter of public concern; and (3) his interest in expressing the speech is not outweighed by the state's interests as an employer in promoting effective and efficient public services. *Id.* (citing *Swetlik v. Crawford,* 738 F.3d 818, 825 (7th Cir. 2013)) (internal quotations omitted).

The threshold inquiry regarding whether Plaintiff spoke as a private citizen must be satisfied first. *See Hatcher v. Bd. of Trs. of S. Ill. Univ.* 829 F.3d 531, 538 (7th Cir. 2016). "This is because 'restricting speech that owes its existence to a public employee's professional

responsibilities does not infringe on any liberties the employee might have enjoyed as a private citizen.'" *Id.* (citing *Garcetti,* 547 U.S. at 422). "A mere speculative possibility that an employee speaks as a citizen is no longer enough to satisfy federal notice pleading requirements." *Id.* (citing *Abcarian v. McDonald,* 617 F.3d 931, 937 (7th Cir. 2010)). Here, it is quite clear that Plaintiff spoke in his capacity as a public employee during his November 7th recorded interview and on November 28th when he spoke at the Sheboygan GOP annual meeting.

In 2006, the United States Supreme Court in *Garcetti* articulated the rule that "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti,* 547 U.S. at 421. According to *Garcetti,* the key question is whether the employee makes the relevant speech "pursuant to [his] official duties." *Id.* **"In other words, [the Court] asks itself whether the speech owes its existence to a public employee's professional responsibilities."** *Lett,* 946 F.3d at 400; *see also Garcetti.* 547 U.S. at 421 (emphasis added). **"If it does, then the employee speaks in his capacity as an employee rather than a private person and his speech is not protected."** *Id.* (emphasis added).

### a. November 7, 2022, Statements.

The first instance of claimed protected speech involves statements Plaintiff made to the local radio station in a recorded interview he gave to WBHL on November 7th, which aired on November 8th. Plaintiff's Complaint includes three paragraphs that describe the actual statements Plaintiff claims are protected speech that he made during the November 7th recorded interview. Those three paragraphs are set forth below.

> 180. "[Plaintiff] stated that he 'denied a request for $70,000 of taxpayer money to members of the Sheboygan DEIB group' who stated they would 'oppose' him if he didn't give them money and these individuals went to the Common Council and 'they listened.'"

181. "[Plaintiff] stated that he was 'blindsided' to learn of his suspension 'without any notice, details, allegations or cause against himself' and 'escorted out of the City like a criminal.'"

182. "[Plaintiff] also expressed concern about the way this was handled so surprisingly without any notice 'in the dark of night.'"

(Pltf's Compl. ¶¶'s 180-182)

Plaintiff claims that he gave his recorded interview on November 7th in his capacity as a private citizen, on his own time, in his home, after being placed on paid administrative leave. (Pltf's Compl. ¶ 280) However, the inquiry is not limited to when and where statements are made. The Seventh Circuit in *Abcarian* emphasized that when "determining whether a plaintiff spoke as an employee or as a citizen, we take a practical view of the facts alleged in the complaint, looking to the employee's level of responsibility and the context in which the statements were made." *Abcarian*, 617 F.3d at 937. In *Abcarian*, the Plaintiff alleged a First Amendment retaliation claim against the University of Illinois and various employees. But Dr. Abcarian, the Court noted:

> was not merely a staff physician with limited authority. He was, among other things, the Service Chief of the Department of Surgery . . . as well as Head of the Department of Surgery. Abcarian had significant authority and responsibility over a wide range of issues affecting the surgical departments at both institutions and therefore had a broader responsibility to speak in the course of his employment obligations.

*Id.* In light of the significant and broad scope of responsibility Dr. Abcarian held, the court determined that the statements he made on topics such as "risk management, the fees charged to physicians, and surgeon abuse of prescription medications, among other things" were weighed considerably as statements made within his administrative role, as opposed to a mere citizen role. *Id.*

This Court's recent decision in *Henige* also provides clear, useful guidance on how Plaintiff's claims in this case should be analyzed. In *Henige*, the Court was confronted with a Motion to Dismiss following the complaint of a former tenured professor at the University of Wisconsin-Whitewater who was dismissed by the university after "various disciplinary proceedings" between 2013 and 2018. *Henige*, 2021 U.S. Dist. LEXIS at *3. Mr. Henige filed suit claiming the Board of Regents had, in part, "retaliated against him for First Amendment protected speech." *Id.* at *5. In determining which alleged speech(es) could be "liberally construed as connecting his termination to [such] speech," the Court considered references made in Mr. Henige's termination order to his comments on whether the University's Department of Art and Design "could meet accreditation standards; his 'attacks' on [Department colleagues' performances]; his assertion that members of the Department and the administration were deceiving other Department members about privacy of information; and his citation of the penalties for violating the Wisconsin Open Meetings Law." *Id.* at 12–13.

The Court's analysis of the retaliation claim given those instances of speech noted that the "threshold inquiry" was whether Mr. Henige "spoke as a citizen or pursuant to his official duties." *Id.* at 13 (citing *Spiegla v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007)). In *Henige*, the Court concluded that none of the 'termination-connected speeches' could plausibly suggest that Mr. Henige spoke as a citizen or on a matter of public concern. *Id.* at 15–18. Despite the Complaint containing "no allegations regarding the scope of Henige's job duties," the Court could reasonably conclude that the alleged speech related to department accreditation standards or the performance of colleagues had no suggestion of speech made as a private citizen. Furthermore, comments related to "the defendants' compliance with public records and open meetings laws . . . were solely internal," and were focused on Mr. Henige's "personal grievances." *Id.* at 17–18.

The analysis in *Abcarian and Henige* compel the same conclusion here. Plaintiff's Complaint acknowledges that a local radio station invited him to provide a statement in response to the Council's decision to place him on administrative leave. (Pltf's Compl. ¶ 178) The statements that Plaintiff identifies he made during his November 7th interview with WHBL relate to Common Council placing him on administrative leave earlier that evening. (Pltf's Compl. ¶¶'s 180-182) Consequently, they involved his own personal grievance and not a matter of public concern. As such Plaintiff does not allege facts sufficient to establish the first *Garcetti* element.

Further, to the extent Plaintiff argues that the alleged extortion attempt is a matter of public concern, the Seventh Circuit has repeatedly held that when an employee speaks about misconduct affecting an area within his responsibilities that speech is made pursuant to his employment even when if he was not strictly required to make it. *See Hatcher,* 829 F.3d at 539 (citing *Vose v. Kliment,* 506 F.3d 565, 570 (7th Cir. 2007) (finding that while sergeant went "above and beyond in reporting misconduct of detectives not under his supervision, it was not beyond his official duty to ensure security and property of his unit's operations."); *Tamayo v. Blagojevich,* 526 F.3d 1074, 1091 (7th Cir. 2008) (agency administrator had a duty to see law was administered properly, which encompassed duty to bring alleged wrongdoing within agency to relevant public authorities); *McArdle v. Peoria Sch. Dist. No. 150,* 705 F.3d 751, 754 (7th Cir. 2013) (holding that school official speaking about predecessor and superior's misconduct was speech about matters that directly affected her area of responsibility).

Here, Plaintiff's statement involved a matter directly related to his role as City Administrator; as well as an alleged incident that directly involved him in his role as City Administrator for the City of Sheboygan: that is, the alleged "request for $70,000 of taxpayer money to members of the Sheboygan DEIB group who stated they would 'oppose' him if he didn't

give them money." (Pltf's Compl. ¶ 180) In other words, this is not a situation where Plaintiff spoke generally about the role of DEIB groups or the current political climate related to DEI funding or even more generically related to local funding of initiatives spearheaded by citizens. Rather, Plaintiff spoke about an incident of alleged threats, bribery, and extortion that he claimed he had been subjected to in his role as City Administrator due to his involvement in City finances, budget oversight and RFP's for the City. (Pltf's Compl. ¶¶'s 47, 50, 53, 54)

Clearly the statements Plaintiff made during his recorded interview on November 7th involved matters that directly affected his areas of responsibility as City Administrator; and therefore, was not constitutionally protected speech under the First Amendment.

### b. November 28, 2022, Statements.

In support of his second claimed instance of constitutionally protected speech, Plaintiff alleges that he engaged in "conversations at the Sheboygan County GOP event on November 28th that involved general concerns about the Sheboygan DEIB collective and the reach they had over businesses and City officials." (Pltf's Compl. ¶ 286) Plaintiff has an even more difficult time avoiding dismissal here because Plaintiff's Complaint fails to identify the specific statements made at the November 28th event that he claims are protected First Amendment speech. However, assuming for arguments sake that Plaintiff's single allegation containing a general description of his conversations at the November 28th meeting is sufficient to avoid dismissal, it would still not qualify as First Amendment protected speech.

Plaintiff's attempt to downplay his communications as not taking the form of a "public address" but rather, as more individualized communications with smaller groups or "various people in the back of the room," (Pltf's Compl. ¶ 206) has no significance under the *Garcetti* jurisprudence of First Amendment retaliation claims. According to *Garcetti,* the key question is

whether the employee makes the relevant speech "pursuant to [his] official duties." *Id.* **"In other words, [the Court] asks itself whether the speech owes its existence to a public employee's professional responsibilities."** *Lett,* 946 F.3d at 400; *see also Garcetti.* 547 U.S. at 421 (emphasis added). **"If it does, then the employee speaks in his capacity as an employee rather than a private person and his speech is not protected."** *Id.* (emphasis added).

Here, Plaintiff admits that he was contacted and asked to speak at the event on or about November 23rd. (Pltf's Compl. ¶ 197) The press release issued at noon on November 28th announced that "City Administrator, Todd Wolf, will speak at our caucus tonight. . . Tonight will be an opportunity to hear from Todd directly!" (Pltf's Compl. ¶ 201, Ex. BB) Therefore, inarguably, Plaintiff attended the event in his capacity as the City Administrator. Further, the admitted subject matter of the conversations Plaintiff claims are protected -- the Sheboygan DEIB collective and its reach over City business and City officials -- were unquestionably communications involving topics related to Plaintiff's duties as City Administrator involving to City finances, budget oversight and RFP's for the City. (Pltf's Compl. ¶¶'s 47, 50, 53, 54) Plaintiff has not and cannot plausibly demonstrate that he stepped out of his role as City Administrator when he spoke to the attendees of the political caucus meeting on November 28, 2022.

> **2. Plaintiff's First Amendment Retaliation Claim Must Be Dismissed Because The Complaint Alleges No Facts That Plaintiff's Speech Was 'At Least A Motivating Factor' In The Defendants' Decision To Terminate Him.**

Even if Plaintiff's speech on November 7th and 28th was constitutionally protected under *Garcetti*, Plaintiff has not alleged sufficient facts to satisfy the third element of a First Amendment retaliation claim. Notably, Plaintiff's 63-page Complaint included only three conclusory statements alleging that his speech on November 7th and 28th were motivating factors in the City's decision to terminate Plaintiff's position as City Administrator:

297. Mr. Wolf's speech as a private citizen on November 8 and 28 on matters of public concern was, at least in part, a direct motivating factor in his being fired as City Administrator.

308. The "November Directives" on Mr. Wolf were the moving force behind his being fired and removed as City Administrator on January 9 based on the "investigation synopsis" that stated, in part, Mr. Wolf violated the "directives" and according to statements from Dekker and Sorenson related to Mr. Wolf being fired because of the "investigation."

310. The Defendants took an adverse employment action and retaliated by firing and removing Mr. Wolf as City Administrator on January 9 based, at least in part, on Mr. Wolf's statements on November 8 and 28 that, according to the City, was a "violation" of their "directives."

(Pltf's Compl. ¶¶'s 297, 308, 310) Plaintiff's conclusory statements above are unsupported legal conclusions that this Court is not bound by, and as such, Plaintiff "may not avoid dismissal of his complaint simply by alleging bare legal conclusions which fail to outline the bases of his claims." *McCauley,* 671 F.3d at 616; (citing *Iqbal*, 556 U.S. at 680-681; *see also Wilson v. Price,* 624 F.3d 389, 396 (7th Cir. 2010) (citation omitted)).

The Seventh Circuit does allow a party to rely on circumstantial evidence, including suspicious timing. *See Sweet v. Town of Bargersville*, 18 F.4th 273, 279 (7th Cir. 2021). However, for claims relying on suspicious timing, as Plaintiff implicitly argues in this matter, the timing between his allegedly protected speech on November 7th and November 28th is too distant from his termination more than six to eight weeks later on January 9, 2023. The Seventh Circuit has specifically held that the timing between the alleged "protected activity and the adverse action must be very close – typically a period of days, not weeks or months." *See Sweet,* 18 F.4th at 279; *see also Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012).

The Seventh Circuit's decision in *Massey* held that "[t]o establish a causal link between the protected expression and a subsequent action by the employer, the plaintiff must show that the protected conduct was a substantial or motivating factor in the employer's decision." *Massey*, 457 F.3d at 716–17 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. 274, 287 (1977)) "A motivating factor does not amount to a but-for factor or to the only factor but is rather a factor that motivated the defendant's actions." *Id.* (citing *Spiegla,* 371 F.3d at 942).

In *Massey*, the Plaintiff alleged he was fired after he wrote a letter detailing a number of very personal and serious accusations against the Dean of the college Plaintiff worked at. *See id.* at 714. The Court determined that Plaintiff's argument was seemingly that the Dean's statement of desiring Massey be terminated "is evidence of a retaliatory attitude existing generally among university officials in the wake of his letter-writing. Put simply, he seems to be saying, 'Dean Johnson wanted me fired, and therefore so did her superiors.' We cannot accept this argument either." *Id.* at 718. Therefore, the Court found that Plaintiff had "not satisfied even his initial burden of producing evidence that links his termination to his protected speech." *Id.*

Here, Plaintiff makes an argument similar to *Massey* claiming that Mayor Sorenson and City Attorney Adams wanted him fired and therefore so did the Alderpersons that voted in favor of his termination. (Pltf's Compl. ¶'s 312-315) However, Plaintiff has not alleged any facts to support his conclusory allegations that he was terminated due to the alleged protected speeches he made on November 7th and 28th. Plaintiff's conclusory allegation that he was terminated for violating the "November Directives" are insufficient to satisfy the burden Plaintiff must allege sufficient facts that his termination is causally related to his alleged free speech on November 7th and 28th.

Further, even if Plaintiff was terminated, in part, for violating the instruction that while on paid administrative leave, he was to refrain from speaking to individuals conducting City business and the media about City matters, this jurisdiction has repeatedly held that "the fact that an employee may have good reasons to refuse an order, do not necessarily mean the employee has a cause of action under the First Amendment when he contravenes that order." *Lett,* 946 F.3d 401; (citing *David v. City of Chicago,* 889 F.3d 842, 845-46 (7th Cir. 2018)). In *Lett* and *Davis,* the Seventh Circuit dismissed both plaintiffs' First Amendment retaliation claims stating that they had acted as public employees when they engaged in their alleged free speech – which was refusing to alter their respective investigative reports. *Id.* Similarly, here, any decision by Plaintiff to violate the instruction not to speak to individuals conducting City business and the media about City matters would have been made in his capacity as a public employee and therefore, not protected conduct under the First Amendment.

### 3. Plaintiff's Alleged Denial Of His Right To Vote Must Be Dismissed As A Matter Of Law.

Plaintiff's Complaint includes allegations that the November 7th letter from City Attorney Adams "amounted to a severe Constitutional deprivation policy of his First Amendment rights," in relation to his ability to vote in the November 8th election. (Pltf's Compl. ¶ 291) Plaintiff also alleges that his "voting precinct was located in the City of Sheboygan," (Pltf's Compl. ¶ 292), however, his factual assertions in support of this claim end there. Interestingly, Plaintiff makes no allegation, for example, that he did not actually vote or that his specific voting precinct is located on City property. These failures are fatal and Plaintiff has failed to state a claim as a matter of law. *See Bey v. Walker,* 2011 U.S. Dist. LEXIS 66222 * 7 (E.D. WI, June 20, 2011) (Court held that Plaintiff's speculation on the impact of Wisconsin's photo identification law did not establish that they have sustained or are immediately in danger of sustaining some direct injury.")

This Court may take judicial notice of property records and voting precincts, which are matters of public record. *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); *see also Bova v. U.S. Bank, N.A.*, 446 F.Supp.2d 926, 930 and n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites). A review of information on government websites shows that Plaintiff's residential address is 523 Columbus Avenue, Sheboygan, WI 53083.[2] Exhibit AA of Plaintiff's Complaint shows the letter that was served to Plaintiff at his home at "[redacted] Columbus Avenue" in Sheboygan. Furthermore, another government website shows that the precinct location for Plaintiff's residence address set forth above is First Congregational Church, 310 Bluff Avenue, Sheboygan, WI 53081,[3] and a map available on the City of Sheboygan website containing all ward precincts dated October 7, 2022, a month prior to the election in question, shows the First Congregational Church at 310 Bluff Avenue as being the precinct location for Wards 3, 4, and 5.[4] Public records further confirm that the property on which the First Congregational Church is located is owned by the Church. (Buliox Declaration ¶ 4, Ex. 2)

The foregoing public records and lack of factual allegations in the Plaintiff's Complaint demonstrate that there is no basis in fact to support this meritless claim. The November 7th letter issued by City Attorney Adams to Plaintiff did not violate Plaintiff's First Amendment right to vote and it should be dismissed as a matter of law.

---

[2] Sheboygan County Land Records Web Portal, Sheboygan County Treasurer's Office, www.treasurer.sheboygancounty.com/GCSWebPortal/Search.aspx (search Owner Last Name *Wolf*, First Name *Todd*) (accessed March 20, 2023).
[3] My Vote Wisconsin, State of Wisconsin Elections Commission, www.myvote.wi.gov/en-us/Find-My-Polling-Place (search *523 Columbus Avenue* in City *Sheboygan* with Zip *53083*) (accessed March 20, 2023).
[4] "City of Sheboygan Voting Wards and Locations," 10/7/2022, City of Sheboygan, https://www.sheboyganwi.gov/wp-content/uploads/2023/01/City-of-Sheboygan-Ward-Map-10-07-2022.pdf (last accessed on March 20, 2023).

**4. Plaintiff's Claim That He Was Deprived Of His Right To Police and Fire Protection In Violation of His First Amendment Rights Must Be Dismissed As A Matter Of Law.**

Plaintiff alleges that City Attorney Adams November 7th and 28th letters "left him unable to communicate with the City's Police or fire Departments in case of emergency." (Pltf's Compl. ¶¶'s 189, 196, 306) A review of these letters demonstrates the absurdity of Plaintiff's allegation, as neither communication restricts Plaintiff from seeking emergency services (or any other services provided by the City to its citizens). The November 7th and 28th letters merely state that Plaintiff was "not authorized to speak with any city employees or individuals conducting city business." (Pltf's Compl. Ex.'s AA, CC) Clearly a personal request by Plaintiff for fire or police services would not relate to *City business.* Moreover, Plaintiff makes no allegation that he actually needed to contact the police or fire departments at any time between November 7th and his termination on January 9th and was prevented from doing so by the letters issued to him on November 7th and 28th.

Further, as it pertains to Plaintiff's First Amendment rights on these grounds, a dismissal is also warranted on qualified immunity grounds because the First Amendment does not clearly establish a right recognized by courts to contact emergency services. *See Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018) (noting that a plaintiff can only overcome qualified immunity defenses in situations where the right alleged to have been violated was "clearly established at the time of the challenged conduct.") As such, Defendants are entitled to dismissal as a matter of law because he has failed to state a claim for a First Amendment violation of his rights. *See Parra v. Neal*, 614 F.3d 635 (7th Cir. 2010) (affirming a district court's dismissal where the Plaintiff's claim was "unsupported" and "meritless.").

**B. Plaintiff's Claim That the City of Sheboygan Violated Wis. Stat. § 895.446 Must Be Dismissed As A Matter Of Law.**

Wisconsin Statute § 895.446 provides a civil remedy for victims of crimes involving property damage or loss. Specifically, the statute reads:

> **895.446 Property damage or loss caused by crime; action for.**
>
> (1) Any person who suffers damage or loss by reason of intentional conduct that occurs on or after November 1, 1995, and that is prohibited under s. 943.01 , 943.20 , 943.21 , 943.24 , 943.26 , 943.34 , 943.395 , 943.41 , 943.50 , 943.61 , 943.74 , or 943.76 , or by reason of intentional conduct that occurs on or after April 28, 1998, and that is prohibited under s. 943.201 or 943.203 , or by reason of intentional conduct that occurs on or after July 1, 2004, and that is prohibited under s. 943.011 , 943.012 , or 943.017, has a cause of action against the person who caused the damage or loss.
> (2) The burden of proof in a civil action under sub. (1) is with the person who suffers damage or loss to prove a violation of [those subsections] by a preponderance of the credible evidence. A conviction under [those subsections] is not required to bring an action, obtain a judgment, or collect on that judgment under this section.

Of the seventeen specified criminal violations listed under the statute, the only potentially applicable criminal violation alleged by Plaintiff is **theft**, under Wis. Stat. 943.20, which states in relevant part:

> **943.20 Theft.**
>
> (1)  Acts. Whoever does any of the following may be penalized as provided in sub. (3):
> (a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property. . .
> (c) Having a legal interest in movable property, intentionally and without consent, takes such property out of the possession of a pledgee or other person having a superior right of possession, with intent thereby to deprive the pledgee or other person permanently of the possession of such property. . .
> Subparagraphs (b), (d) and (e) [omitted for purposes of this Motion]

In order to prove by a preponderance of the credible evidence that a civil theft has occurred, the plaintiff must show that defendant had **"the requisite intent to take possession of another's property without consent and to deprive the owner permanently of possession of the property."** *Schuepbach v. Leistikow Props., LLC,* 2020 Wisc. App. LEXIS 48 at *8 (Wis. Ct. App., January 30, 2020) (emphasis added) (citing *Estate of Miller v. Storey,* 2017 WI 99, 378 Wis. 2d 358, ¶ 40, and n. 16, 903 N.W.2d 759). In support of his civil theft claim, Plaintiff alleges that City Attorney Adams refused "to allow Mr. Wolf an opportunity to collect his personal belongings on November 7," (Pltf's Compl. Claim Five, ¶ 42); that "Adams stated that neither Mr. Wolf nor his legal representative were allowed in [Plaintiff's] office," (Pltf's Compl. Claim Five, ¶ 43); and that "[n]either Adams nor any representative from the City has ever responded to Mr. Wolf's requests to obtain his personal belongings." (Pltf's Compl. Claim Five, ¶ 48)

Plaintiff has deliberately misrepresented the facts to this Court in support of Claim Five by failing to include other key communications on the issue between the parties. This jurisdiction has long held that, when evaluating a motion to dismiss, a court may consider documents that are referred to in a complaint and are central to the plaintiff's claim. *See Miller v. Apropos Tech, Inc.*, 2003 U.S. Dist. LEXIS 5074 (N.D. Ill., March 31, 2003) (citing *Wright v. Associated Ins. Cos.,* 29 F.3d 1244 (7th Cir. 1994)). Here, Plaintiff refers to his attorney's communications with City Attorney Adams in November 2022 (Pltf's Compl. Claim Five, ¶ 43), and a January 10th communication to City Attorney Adams (Pltf's Compl. Claim Five, ¶ 47), thereby referring to communications between the parties regarding Plaintiff's personal belongings in his Complaint which are central to Plaintiff's conversion claim. Consequently, this court may consider the additional texts and emails exchanged between City Attorney Adams and Plaintiff's counsel when evaluating the City's Motion to Dismiss Claim Five of Plaintiff's Complaint.

Notably, the letter that City Attorney Adams issued to Plaintiff on November 7th refutes any claim that the City intended to retain possession of Plaintiff's belongings without his consent and to permanently deprive him of his possessions. That letter explicitly advised Plaintiff that if he "would like to retrieve any of [his] belongings, please contact Attorney Adams to coordinate that." (Pltf's Compl. Ex. AA) Further, the email and text communications between City Attorney Adams and Plaintiff's counsel, which Plaintiff conspicuously failed to include among the 45+ attachments to his Complaint, irrefutably establish that City Attorney Adams engaged in subsequent efforts to provide Plaintiff with the opportunity to collect his personal belongings. (Buliox Declaration ¶¶'s 5–6, Ex.'s 3–4) These communications between the parties demonstrate that the City did not intend to take possession of Plaintiff's personal belongings without his consent and deprive him permanently of the possession of his belongings.

In addition to the previously described November 7th letter from City Attorney Adams, on November 16-18, 2022, Plaintiff's attorney and City Attorney Adams exchanged emails to schedule a time to meet for her to collect some of Plaintiff's personal belongings as well as to discuss the allegations against Plaintiff and the progress of the investigation. *Id.* at ¶ 5, Ex. 3, Pp. 2-8) On November 18th via text, City Attorney Adams and Plaintiff's counsel arranged to meet outside of City hall shortly after 4:00 p.m. so Plaintiff's counsel could collect the items that Plaintiff had requested from his office. (*Id.* at ¶ 6, Ex. 4) Unfortunately, the drawers to Plaintiff's desk were locked so City Attorney Adams was unable to retrieve the items that Plaintiff had requested. *Id.* On November 22, 2022, Plaintiff's attorney emailed Defendant Adams and noted that "[Plaintiff was] going to delay needing any further documents until we receive more information on the subject matter of this investigation," and requested only "college course materials on his computer." (*Id.* at ¶ 5, Ex. 3, P. 11 ) City Attorney Adams worked with the City's

IT department to copy the folders that Plaintiff had saved on his laptop relating to his college coursework to a flash drive and delivered that flash drive to Plaintiff's counsel in person on December 6, 2022. *Id.* at P. 10.

Based on the foregoing, there is no plausible view of the allegations presented in which the City unlawfully retained possession of Plaintiff's personal belongings without his consent and with the intent to deprive him permanently of the possession of his belongings, in violation of Wis. Stat. § 895.446. As such, the City is entitled to dismissal of Claim Five of Plaintiff's Complaint as a matter of law.

**C. The Official Capacity Suits in Claims One And Three Against The Individually Named Defendants Must Be Dismissed As A Matter Of Law.**

Defendants Sorenson, Adams, Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar move to dismiss the claims against them in their official capacities on the basis that those claims are duplicative of the claims brought against the City of Sheboygan, who is also a named Defendant in Claim One and Three. (Pltf's Compl. Pp. 39, 48) Each of the individuals that Plaintiff asserts Claims One and Three against are agents of the City of Sheboygan, either as Mayor, City Attorney, or Alderpersons. *Id.*

Binding precedent holds that "an official capacity suit, is in all respects other than name, to be treated as a suit against the entity. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *see also Hobbs v. Shesky*, 2022 U.S. Dist. LEXIS 202037 at *23 (E.D. Wis., November 7, 2022) ("By suing [city employees] in their 'official capacities,' the plaintiff did nothing more than sue the city . . . which he'd also sued. Suing the defendants in their 'official capacities' contributes nothing when a plaintiff has sued the governmental entity of which the defendant is a part."). Therefore, this Court should dismiss the official capacity claims against the individual persons named in Claims One and Three.

**D. Plaintiff's Claim For Declaratory Judgment In Relation To Claims One, Two, Three and Four Must Be Dismissed As A Matter Of Law.**

Plaintiff does not allege an ongoing violation of his First and Fourteenth Amendment rights. As such, there is no claim of a continuing violation of federal law in relation to Claims One, Two, Three and Four. In his Complaint, Plaintiff alleges only that Defendants violated his First Amendment rights when they terminated him in retaliation for protected speech that he engaged in on November 7th and November 28th, 2022, and that letters issued to him on those same dates violated his right to vote and access police and fire services. (Pltf's Compl. Claim One, pp. 39–45) In relation to Claims Two, Three and Four, Plaintiff alleges that Defendants violated his Fourteenth Amendment property and liberty rights when they terminated his employment as City Administrator without due process. (Pltf's Compl. Claim Two, Pp. 45–48; Claim Three, Pp. 48–53; Claim Four, Pp. 54–59)

A declaratory judgment is inappropriate where there is no claimed continuing violation of federal law or any threat of future violation. *See Green v. Mansour,* 474 U.S. 64 (1985); *Toney v. Burris,* 829 F.2d 622 (7th Cir. 1987). Therefore, this Court should dismiss Plaintiff's claim for declaratory judgment in relation to Claims One through Four as a matter of law.

**V.     CONCLUSION**

For the reasons stated above, Defendants City of Sheboygan, Mayor Ryan Sorenson, City Attorney Charles Adams, Alderperson Betty Ackley, Alderperson Dean Dekker, Alderperson Barbara Felde, Alderperson Roberta Filicky-Peneski, Alderperson Grazia Perrella, Alderperson Angela Ramey, Alderperson Zachary Rust, and Alderperson Amanda Salazar, respectfully request that this Honorable Court grant their Partial Motion to Dismiss dismissing Claims One and Five of Plaintiff's Complaint in their entirety; dismissing all official capacity claims against the individuals in Claims One and Three; dismissing Plaintiff's claims for declaratory judgment in

Claims One through Four and for whatever additional relief this Honorable Court deems just and proper.