# Exhibit 6



**User Name:** Brooke Klingbeil
**Date and Time:** Monday, March 27, 2023 1:11:00PM CDT
**Job Number:** 193541383

## Document (1)

1. *Henige v. Bd. of Regents of the Univ. of Wis. Sys., 2021 U.S. Dist. LEXIS 26222*

   **Client/Matter:** -None-

   **Search Terms:** • Henige v. Bd. of Regents of the Univ. of Wis. Sys., 2021 U.S. Dist. LEXIS 26222 * 9–10, 2021 WL 520403 (E.D. Wis., February 11, 2021).

   **Search Type:** Natural Language - Expanded Results

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

 Cited

As of: March 27, 2023 6:11 PM Z

# [Henige v. Bd. of Regents of the Univ. of Wis. Sys.](#)

United States District Court for the Eastern District of Wisconsin

February 11, 2021, Decided; February 11, 2021, Filed

Case No. 20-CV-6

**Reporter**
2021 U.S. Dist. LEXIS 26222 *; 2021 WL 510403

CHRISTOPHER C. HENIGE, Plaintiff, v. BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM, et al., Defendants.

## Core Terms

alleges, individual defendant, faculty, Chair, official capacity, due process, colleagues, comments, spoke, defendants', harassment, immunity, motion to dismiss, open meeting, accreditation, accommodate, deprivation, termination, hostile, fails, matter of public concern, factual allegations, work environment, disciplinary, complaints, disability, violations, damages, notice, amend

**Counsel:** [*1] Christopher C Henige, Plaintiff, Pro se, Fredonia, NY.

For Board of Regents of the University of Wisconsin System, John Behling, Jose Delgado, Tony Evers, Eve Hall, Tim Higgins, Mike Jones, Tracey Klein, Regina Miller, Janice Mueller, Drew Peterson, Ryan Ring, Bryan Steil, Mark Tyler, Gerald Whitburn, Jessica Lathrop, Elizabeth Olson, Alvaro Taveira, Anthony Gulig, Richard Leitheiser, Barbara Weston, Richard Telfer, Beverly Kopper, Susan Elrod, Greg Cook, Robert Mertens, Susan Messer, Renee Melton, Sara Kuhl, Shannon Bradbury, Defendants: Gesina S Carson, Jeffery A Simcox, Wisconsin Department of Justice, Office of the Attorney General, Madison, WI.

**Judges:** NANCY JOSEPH, United States Magistrate Judge.

**Opinion by:** NANCY JOSEPH

## Opinion

### DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS

Christopher C. Henige, formerly a tenured professor at the University of Wisconsin-Whitewater (the "University"), brings this *pro se* action against the Board of Regents of the University of Wisconsin System (the "Board"), John Behling, José Delgado, Tony Evers, Eve Hall, Tim Higgins, Mike Jones, Tracey Klein, Regina Miller, Janice Mueller, Drew Peterson, Ryan Ring, Bryan Steil, Mark Tyler, Gerald Whitburn, Jessica Lathrop, Susan Elrod, [*2] Greg Cook, Robert Mertens, Susan Messer, Renée Melton, Sara Kuhl, Shannon Bradbury, Elizabeth Olson, Alvaro Taveira, Anthony Gulig, Richard Leitheiser, Barbara Weston, Richard Telfer, and Beverly Kopper for violations of the [First](#) and [Fourteenth Amendments](#) pursuant to [42 U.S.C. § 1983](#), [Title VII of the Civil Rights Act of 1964 ("Title VII")](#), the [Americans with Disabilities Act (the "ADA")](#), and state law. The defendants have moved to dismiss all of Henige's claims pursuant to [Fed. R. Civ. P. 12(b)(6)](#) for failure to state a claim upon which relief can be granted. For the reasons that follow, the defendants' motion to dismiss is granted.

### BACKGROUND

In August 2001, Henige, a male, began his employment in the University's Department of Art and Design (the "Department") within the College of Arts and Communication. (Compl. ¶¶ 3, 16, Docket # 1.) During the course of his employment, Henige progressively held the roles of Associate Professor, Assistant Department Chair, and Department Chair. (*Id.*) As Assistant Chair from around July 2007 to June 2008, Henige coordinated the Department's efforts to gain accreditation from the National Association of Schools of Art and Design. (*Id.* ¶ 17.) During his three-year term as Department Chair from July 2008 to June [*3] 2011, Henige oversaw the Department's daily operations, scheduled courses, advised students, managed budgets and personnel, and maintained accreditation data. (*Id.* ¶

18.) Additionally, Henige served on the General Education Review Committee and as its chair, on the Curriculum Committee, on the Instructional Technology Advisory Group, and on the Faculty Senate during his employment. (*Id.* ¶ 19.) Henige received awards for teaching and service to general education. (*Id.* ¶ 20.) He was also viewed by students and colleagues as "an innovator in teaching and a champion of student and faculty rights." (*Id.* ¶ 21.)

Henige was subject to various disciplinary proceedings during his time at the University. On June 20, 2013, then-chancellor Richard Telfer issued a letter of counseling to Henige in response to a complaint filed against him by "McPhail and McGuire," presumably two of Henige's colleagues. (*Id.* ¶ 50.) The Board later described the letter as part of "progressive discipline" but Telfer never informed Henige of the existence of a formal complaint and represented it as nothing more than a letter. (*Id.*) Between December 30, 2013 and May 12, 2014, Henige was subject to disciplinary proceedings **[*4]** stemming from complaints filed against him by McPhail (*id.* ¶ 52) and was ultimately suspended for three days without pay (*Id.* ¶ 54). Between February 17, 2015 and June 29, 2015, Telfer and a hearing panel considered complaints against Henige filed by McPhail and Susan Messer, a Department faculty member. (*Id.* ¶ 55.) Henige was ultimately suspended without pay for one month. (*Id.* ¶ 56.) Between September 14, 2015 and November 24, 2015, Telfer and a panel convened following a complaint against Henige filed by Department faculty member Renée Melton (*id.* ¶ 62), for which Henige was suspended without pay for one semester (*Id.* ¶ 63).

Finally, between February 21, 2017 and February 12, 2018, then-chancellor Beverly Kopper and the Faculty Appeals, Grievances, and Disciplinary Hearing Committee convened following a complaint filed against Henige by Robert Mertens, an associate dean in the College of Arts and Communication. (*Id.* ¶ 68.) On October 27, 2017, the Faculty Appeals, Grievances, and Disciplinary Hearing Committee recommended that Henige be dismissed from his tenured position. (*Id.* ¶ 45.) Henige was ultimately dismissed on February 12, 2018. (*Id.* ¶ 73.)

Henige claims that the defendants **[*5]** retaliated against him for *First Amendment* protected speech, subjected him to repeated disciplinary proceedings that deprived him of his property right in his tenured position without due process of law, and discriminated against him based on sex and disability. The Board is the governing body responsible for the University. (*Id.* ¶ 9.) Defendants Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, and Whitburn were members of the Board at the time of Henige's dismissal (*id.* ¶ 10) and Defendant Lathrop was executive secretary of the Board (*Id.* ¶ 11). Defendants Telfer and Kopper were, at all times relevant to Henige's complaint, chancellors of the University. (*Id.* ¶ 13.) At the time of Henige's dismissal, Defendant Elrod was University provost; Defendant Cook was assistant vice chancellor of academic affairs; Defendant Kuhl was vice chancellor of marketing and media relations; and Defendant Mertens was associate dean of the College of Arts and Communication. (*Id.* ¶¶ 14-16, 18.) Defendants Messer and Melton were faculty members in the Department at the time of Henige's dismissal. (*Id.* ¶ 20.) Finally, Defendant Bradbury was the labor relations manager **[*6]** of the University of Wisconsin-Milwaukee when Henige was dismissed. (*Id.* ¶ 21.)

**STANDARD OF REVIEW**

A motion to dismiss under *Fed. R. Civ. P. 12(b)(6)* challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" *556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555* (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011)*. First, the court must "accept the well-pleaded facts in the complaint **[*7]** as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal, 556*

*U.S. at 680*). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal, 556 U.S. at 681*). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *556 U.S. at 679*. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago, 755 F.3d 605, 607 (7th Cir. 2014)*.

**ANALYSIS**

Henige asserts five causes of action against the defendants: (1) violation of his *First Amendment* right to free speech via *42 U.S.C. § 1983*; (2) violation of his right to due process under the *Fourteenth Amendment* via *42 U.S.C. § 1983*; (3) violation of Title VII; (4) violation of the ADA; and (5) tortious interference of business relations. I will address each cause of action in turn.

1. *First Amendment* Retaliation Claim under *§ 1983* (Count I)

In Count I of the complaint, Henige alleges that all of the defendants violated his *First Amendment* rights when he was fired in retaliation for protected **[*8]** speech. The *First Amendment*, applicable to the states through the *Fourteenth Amendment*, prohibits a public employer from retaliating against an employee for engaging in protected speech. *Milwaukee Deputy Sheriff's Ass'n v. Clarke, 574 F.3d 370, 376 (7th Cir. 2009)*. The defendants assert that Count I must be dismissed for several reasons: (1) the Board is not a person for the purposes of any *§ 1983* claim; (2) sovereign immunity bars suit against the individual defendants in their official capacities; and (3) Henige's speech was not constitutionally protected.

1.1 Proper Defendants for *§ 1983* Action

I will begin by addressing the proper defendants for Henige's *§ 1983* claim. *Section 1983* prohibits unconstitutional actions by persons acting under the color of state law. *Cosgriff v. Cty. of Winnebago, 876 F.3d 912, 915 (7th Cir. 2017)*. However, states are not "persons" for the purpose of *§ 1983* claims. *Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)*. This means that Henige cannot sue the Board which is an arm of the state and not a "person" subject to suit under *§ 1983*. *Joseph v. Bd. of Regents of Univ. of Wis. Sys., 432 F.3d 746, 748-49 (7th Cir. 2005)*. Accordingly, Count I against the Board is dismissed.

Henige also cannot sue all of the individual defendants in their official capacities. The *Eleventh Amendment* generally bars actions in federal court against a state, state agencies, or state officials acting in their official capacities. *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't, 510 F.3d 681, 695 (7th Cir. 2007)*. However, pursuant to the Supreme Court's decision in *Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)*, a plaintiff may sue state officials for prospective equitable **[*9]** relief for ongoing violations of federal law. In this case, in the introduction to his complaint, Henige generally states that he seeks "declaratory and injunctive relief." (Compl. ¶ 2.) However, for Count I, Henige only alleges that he is "entitled to recover lost wages—back and future, damages for emotional pain and suffering, attorney's fees and costs, and pre-judgment interest in excess of $275,000" (*id.* ¶ 91) and punitive damages in excess of $66 million (*Id.* ¶ 92). Further, the complaint contains no allegations with respect to Count I that demonstrate that Henige seeks prospective relief for an ongoing violation of federal law by the individual defendants. Therefore, Count I against the individual defendants in their official capacities is dismissed.

1.2 Sufficiency of *First Amendment* Claim

The defendants next contend that Count I of the complaint fails to set forth sufficient facts to establish that Henige engaged in *First Amendment* protected speech. To state a *First Amendment* retaliation claim, Henige must allege that: (1) his speech was constitutionally protected; (2) he suffered a deprivation that would likely deter speech in the future; and (3) his speech was "at least a motivating factor" in the defendants' decision **[*10]** to take the retaliatory action. *Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006)*. A public employee's speech is constitutionally protected if the speech was made as a private citizen and addressed a matter of public concern. *Forgue v. City of Chi., 873 F.3d 962, 966 (7th Cir. 2017)*. Whether speech is constitutionally protected is a question of law. *Id.*

Henige alleges that, from August 2011 to February 2018, he made numerous public statements that were

critical of the University. (Compl. ¶ 23.) Henige asserts that he:

- Relayed to administrators students' concerns that they were being delayed in their graduation by a lack of available required courses and that time-to-degree and credits-to-degree for the Bachelor of Fine Arts programs were much higher than the University promises. (*Id.* ¶ 26.)

- Expressed concern to administrators that the art history program did not meet the standards for accreditation by the National Association of Schools of Art and Design and various factors, such as staffing shortages, suggested that the program could never meet those standards. (*Id.* ¶ 29.)

- Told administrators of students' concerns that reviews of student progress were not being conducted in accordance with documents provided by the University and the Department, and that "students had been disadvantaged [*11] by a different process that they were not prepared for." (*Id.* ¶ 32.)

- Expressed numerous concerns regarding the performance of Deborah Wilk, a junior art history colleague, to Wilk's immediate supervisors. (*Id.* ¶ 33.)

- Expressed concerns regarding interim Department Chair Michael Flanagan, including that Flanagan had "knowingly violated a non-contact order by initiating contact with [Henige], then reported to others that it was [Henige] who had violated the order." (*Id.* ¶ 35.)

- Conveyed to administrators, colleagues, and the Chair of the Faculty Senate his concerns about the failures of administrators and faculty to comply with the requirements of the Faculty Personnel Rules. (*Id.* ¶ 37.)

- Submitted several opinion pieces to the school newspaper about the failure of administrators and faculty to comply with the requirements of the Faculty Personnel Rules and criticizing changes to the rules that stripped faculty of their existing rights and protections, which Henige had been consistently denied. (*Id.* ¶ 38.)

- Told administrators and colleagues he was concerned that administrators were advising faculty that records relating to past disciplinary matters were private and unknowable. (*Id. [*12]* ¶ 39.)

- Told faculty that, pursuant to the Wisconsin Open Records Law Compliance Guide, any documents related to personnel actions on campus became matters of public record once an investigation was complete. (*Id.*)

- Told faculty that they were in violation of the Wisconsin Open Meetings Law because he was excluded from meetings under threat of disciplinary action, and that under *Wis. Stat. § 19.96*, they may be subject to fines for knowingly participating in such meetings. (*Id.* ¶ 41.)

Henige does not provide specific dates for his comments, but rather alleges a seven-year period for all of his statements. Additionally, Henige provides no specificity as to whom his comments were addressed, but instead uses terms like "faculty members" and "administrators."

The only factual allegation that can be liberally construed as connecting his termination to his speech is Henige's reference to the order finalizing his termination. He alleges that the order finalizing his termination referenced some, but not all, of his alleged comments as just cause for his termination: whether the Department could meet accreditation standards; his "attacks" on Wilk and Flanagan; his assertion that members of the Department and the [*13] administration were deceiving other Department members about privacy of information; and his citation of the penalties for violating the Wisconsin Open Meetings Law. As such, in analyzing whether Henige's complaint states a *First Amendment* retaliation claim, I will only consider the statements Henige made that allegedly served as just cause for his termination. Henige fails to allege that the remainder of his alleged statements (as articulated above) were "at least a motivating factor" in the defendants' decision to take retaliatory action. Thus, those statements cannot serve as a basis for a *First Amendment* retaliation claim and will not be addressed further.

The threshold inquiry for a *First Amendment* retaliation claim is whether Henige spoke as a citizen or pursuant to his official duties. *Spiegla v. Hull, 481 F.3d 961, 965 (7th Cir. 2007)*. When a public employee speaks on matters pursuant to employment duties, that speech is not protected under the *First Amendment*. *Hatcher v. Bd. of Trs. of S. Ill. Univ., 829 F.3d 531, 538 (7th Cir. 2016)*, *overruled on other grounds by Ortiz v. Werner*

*Enterprises, Inc., 834 F.3d 760 (7th Cir. 2016)*. When determining whether a plaintiff spoke as an employee or as a citizen, courts take a practical view of the facts alleged in the complaint, looking to the employee's level of responsibility and the context in which the statements were made. *Abcarian v. McDonald, 617 F.3d 931, 937 (7th Cir. 2010)*. Further, a mere speculative possibility that Henige [*14] spoke as a citizen is not sufficient to satisfy the pleading requirements of *Rule 8*. *Id.* Instead, Henige must plead specific facts to plausibly suggest that his speech was made as a private citizen, not as a public employee. *Hatcher, 829 F.3d at 538*.

The speech at issue must also involve a matter of public concern. Whether a government employee's speech addresses a matter of public concern depends upon "the content, form, and context of [the speech] as revealed by the whole record." *Gustafson v. Jones, 290 F.3d 895, 906-07 (7th Cir. 2002)* (internal citation omitted). Of the three factors, content is most important. *Id.* The "public concern" element is satisfied if the speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee. *Id.*

As for Henige's comments about whether the Department could meet accreditation standards, the factual allegations in the complaint do not plausibly suggest that Henige spoke as a citizen rather than as public employee pursuant to his official duties. The complaint contains no allegations regarding the scope of Henige's job duties. The defendants argue that Henige's comments were made pursuant to his roles as Assistant Chair, [*15] Chair, and tenured faculty member. (Defs.' Br. at 31, Docket # 8.) In response, Henige argues that the relevant speech occurred after his time as Assistant Chair and Chair of the Department ended, and pursuant to the University's own directives, his only responsibilities were to teach and conduct research. (Pl.'s Resp. at 13, Docket # 10.) In any event, the circumstances surrounding the comments about accreditation standards indicate that Henige spoke pursuant to his official responsibilities. Henige complained through internal channels about a matter that was connected to his responsibility to teach his students. The complaint does not allege any facts to support an inference that Henige stepped out of his role as a professor to speak as a citizen. See *Abcarian, 617 F.3d at 937*. Therefore, Henige does not sufficiently allege that the comments regarding whether the Department could meet accreditation standards were protected speech.

Neither does the complaint plausibly suggest that Henige spoke as a citizen regarding his comments about Michael Flanagan or Deborah Wilk. The allegations in the complaint do not suggest that when Henige criticized Wilk's performance to her immediate supervisors, he spoke as a private [*16] citizen. Neither does Henige suggest how his complaint about Flanagan violating a non-contact order was made as a citizen. In *Kubiak v. City of Chicago, 810 F.3d 476, 481-82 (7th Cir. 2016)*, the Seventh Circuit held that a police officer who was verbally assaulted by a fellow officer spoke pursuant to her official duties when she reported the officer's misconduct. The court, rejecting an "overly narrow" view of a public employee's official duties, found that the plaintiff-officer did not speak as a citizen because, generally, "an employee who is verbally assaulted by a colleague would be expected to report the inappropriate behavior to a supervisor." *Id.* Similarly, in this case, Henige reported what he felt was inappropriate behavior by a colleague—that Flanagan violated a non-contact order and subsequently told others that it was Henige who violated the order. Henige has not alleged facts to plausibly suggest that he spoke as a citizen when he criticized his colleagues.

This leaves Henige's comments related to potential violations of the Wisconsin Open Meetings Law. Even taking a broad view of a professor's duties, ensuring the availability of open meetings is probably not among them. See *Rose v. Haney, No. 16-CV-5088, 2017 U.S. Dist. LEXIS 69984, 2017 WL 1833188, at \*5 (N.D. Ill. May 8, 2017)* (concluding that an adjunct professor's speech about the [*17] requirements for public meetings under Illinois law was not made in the adjunct's capacity as an employee). Assuming that Henige's comments were made as a citizen, they still must address a matter of public concern. In *Meade v. Moraine Valley Cmty. Coll., 770 F.3d 680, 684 (7th Cir. 2014)*, the Seventh Circuit concluded that a letter written by a community college adjunct professor that criticized the college's treatment of adjuncts addressed several matters of public concern. The court noted that the letter did not contain the plaintiff's own experiences or gripes, but "emphasized that she was writing as the head of a union whose members were concerned about the way the college treated them as a group." *Id. at 685*. Moreover, the plaintiff attempted to link the treatment of adjunct faculty to student performance in her letter. *Id.*

Looking to the content, form, and context of Henige's statements, he did not speak on a matter of public concern when he challenged the defendants' compliance with public records and open meetings laws.

Henige's communications on these subjects were solely internal. Moreover, Henige complained that *he* had been unlawfully excluded from faculty meetings. And even though public records relating to past disciplinary matters or open meetings **[*18]** might be of some interest to the public, the factual allegations in the complaint suggest that Henige spoke to express his personal grievances. For all of these reasons, Count I fails to state a claim and is dismissed.

2. Fourteenth Amendment Procedural Due Process Claim under § 1983 (Count II)

In Count II, Henige alleges that the Board, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Bradbury, Cook, Mertens, Kuhl, and Kopper violated Henige's federal constitutional right to due process. The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The defendants argue that Count II should be dismissed because: (1) the Board is not a person subject to suit under § 1983; (2) sovereign immunity bars suit against the individual defendants in their official capacities; and (3) the claim fails on the merits because the complaint demonstrates that Henige was afforded adequate pre-deprivation and post-deprivation process.

2.1 Proper Defendants

Henige sues the Board in Count II pursuant to § 1983. As explained above, the Board is an arm of the state not subject **[*19]** to suit for § 1983 claims. As a result, Count II against the Board is dismissed.

Eleventh Amendment immunity bars Henige's suit against the individual defendants in their official capacities. The *Ex Parte Young* exception does not apply because Henige alleges that he is "entitled to recover lost wages—back and future, damages for emotional pain and suffering, attorney's fees and costs, and pre-judgment interest in excess of $275,000" (Compl. ¶ 96) and punitive damages in excess of $66 million in Count II (*Id.* ¶ 97). Further, the complaint contains no allegations with respect to Count II that demonstrate that he seeks injunctive relief for any ongoing violation of federal law. As a result, Count II is dismissed against the individual defendants in their official capacities.

2.2 Sufficiency of Due Process Claim

The defendants argue that Count II fails to state a claim upon which relief can be granted because the facts in the complaint establish that Henige received adequate due process. To state a procedural due process claim, Henige must allege: (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding the deprivation. Michalowicz v. Vill. of Bedford Park, 528 F.3d 530, 534 (7th Cir. 2008). It is well established that tenured professors have **[*20]** a protected interest in their continued employment. Wozniak v. Adesida, 932 F.3d 1008, 1010 (7th Cir. 2019). At issue is whether the complaint sufficiently alleges that Henige was deprived of his employment without due process.

The cornerstone of due process is notice and the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (citation and quotation marks omitted). The nature and extent of the process a public employee is due before termination depends on the adequacy of any post-termination hearing that was available. Carmody v. Bd. of Trs. of Univ. of Ill., 747 F.3d 470, 474 (7th Cir. 2014). "[W]hen there is an opportunity for a full post-termination hearing, due process does not require an employer to provide full 'trial-type rights' such as the right to present or cross-examine witnesses at the pre-termination hearing." Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205, 389 F.3d 685, 691 (7th Cir. 2004) (internal citation omitted). Instead, the public employee is entitled to only "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Pugel v. Bd. of Trs. of Univ. of Ill., 378 F.3d 659, 663 (7th Cir. 2004) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)). Moreover, "the chosen decisionmaker must be impartial." Head v. Chi. Sch. Reform Bd. of Trs., 225 F.3d 794, 804 (7th Cir. 2000).

Henige details at length the various ways his disciplinary proceedings allegedly did not comport with the University's Faculty Personnel Rules or open meetings laws; however, **[*21]** these failures cannot be the basis of a due process claim. *See* Wozniak, 932 F.3d at 1011 ("[Plaintiff] contends that the Committee and Board did not follow all of the University's rules and regulations for tenure-revocation proceedings, but this has nothing to do with the Constitution.").

Nevertheless, Henige argues that these violations of applicable procedures provide support for his claim that the pre-termination panel was biased against him. "[T]he constitutional standard for impermissible bias is high." *Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003)*. Those who adjudicate pre-termination hearings are presumed to act in good faith, honestly, and with integrity. *Head, 225 F.3d at 804*. To overcome this presumption and sufficiently allege impermissible bias, Henige must allege that the adjudicators had "a pecuniary interest in the proceeding, personal animosity toward [him], or actual prejudgment of [his] case." *Id.* Henige argues that bias is demonstrated because for each of his disciplinary proceedings, the panels had the authority to dismiss the proceedings for procedural violations but refused to do so. (Pl.'s Resp. at 9-10.) This bare allegation is not sufficient to plausibly allege impermissible bias.

As for the University's pre-termination procedures, Henige alleges that [*22] he never received sufficient notice detailing the reasons proposed for termination. (Pl.'s Resp. at 7.) He asserts that the defendants' claims were based entirely on his communications, which the defendants characterized as "harassing," but "refused in almost every instance to identify which language in those communications was allegedly 'harassing.'" (*Id.*) For the purposes of procedural due process, notice is constitutionally adequate if it is "reasonably calculated to apprise interested parties of the proceeding and afford them an opportunity to present their objections." *Head, 225 F.3d at 804*. Although Henige claims the notice he received was not specific enough, based on Henige's own allegations, he was notified about the general subject matter of each hearing and was provided hearings to dispute the disciplinary charges.

Henige states that although he was provided with a hearing in every case, his ability to defend himself was "severely curtailed . . . through the imposition of strict and wholly inadequate time limits on testimony." (Pl.'s Resp. at 8.) Henige also alleges that only one of the three hearings occurred within the deadlines for doing so. (*Id.* at 8-9.) Yet, Henige does not explain how these alleged [*23] delays resulted in him not being meaningfully heard for the purposes of due process under the Constitution.

As to post-deprivation due process, the defendants argue that *Wis. Stat. § 227.57* provides constitutionally adequate post-deprivation procedures. (Defs.' Br. at 24.) Henige argues that *Wis. Stat. § 227.57* addresses issues of procedure, but not does provide a remedy for bias. (Pl.'s Resp. at 10.) However, *Wis. Stat § 227.57* provides recourse for plaintiffs to challenge agency decisions and incorporates procedural due process requirements, including the impartiality of adjudicators. See *Nu-Roc Nursing Home, Inc. v. State Dept. of Health and Social Servs., 200 Wis.2d 405, 415 n.5, 546 N.W.2d 562, 566 (1996)* (noting that "Wisconsin has adopted *§ 227.57(4)*, STATS., to insure that the procedure before the administrative agency meets the due process requirements."). Because Henige has not sufficiently alleged either that he was deprived of pre-deprivation or post-deprivation due process, Count II does not state a claim upon which relief may be granted and is dismissed.

### 3. Title VII Claim (Count III)

In Count III, Henige alleges a violation of Title VII against the Board, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Kopper, Messer, and Melton. Title [*24] VII forbids an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." *42 U.S.C. § 2000e-2(a)(1)*. Title VII's statutory language encompasses claims of economic or tangible discrimination, as well as claims of discriminatorily hostile or abusive work environments. *Alamo v. Bliss, 864 F.3d 541, 549 (7th Cir. 2017)*.

Henige alleges that McPhail, McGuire, Messer, and Melton filed at least 19 complaints of either sexual harassment or sex discrimination against him during the course of his employment. (Compl. ¶ 75.) Henige asserts that, although each allegation against him was investigated and dismissed, the University failed to stop the allegations, which created a hostile work environment for all males in the Department. (*Id.* ¶ 77.) The defendants argue that Count III should be dismissed because: (1) as to the individual defendants, there is no individual liability under Title VII; and (2) the hostile work environment claim fails on the merits.

### 3.1 Individual Defendants

The defendants argue that Henige's Title VII claim against the individual defendants must be dismissed because [*25] Title VII does not allow for individual liability. I agree. Only employers may be held liable under Title VII. See *Passanti v. Cook Cty., 689 F.3d*

655, 677 n.4 (7th Cir. 2012) ("Title VII authorizes suit *only* against the employer. Individual people who are agents of the employer cannot be sued as employers under Title VII.") (emphasis in original). Accordingly, Henige's Title VII claims against Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Kopper, Messer, and Melton are dismissed.

3.2 Sufficiency of Title VII Hostile Work Environment Claim

To state a claim for hostile work environment, Henige must provide factual allegations to plausibly show that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his sex; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty., 804 F.3d 826, 834 (7th Cir. 2015). "Relevant to this inquiry are 'the severity of the alleged conduct, its frequency, whether it [wa]s physically threatening or humiliating (or merely offensive), and whether it unreasonably interfere[d] with [*26] the employee's work performance.'" Gates v. Bd. of Educ. of the City of Chicago, 916 F.3d 631, 636 (7th Cir. 2019) (quoting Robinson v. Perales, 894 F.3d 818, 828 (7th Cir. 2018)).

Henige alleges that several colleagues filed nineteen false complaints of sexual harassment and/or discrimination against him. These complaints were investigated and ultimately dismissed by the Board. Henige alleges that the Board's failure to take action to prevent his colleagues from filing these complaints created a hostile work environment. Henige asserts that he informed Director of Human Resources Judith Trampf of his concerns about these alleged false complaints but received no response. (Pl.'s Resp. at 2.) These facts do not plausibly suggest that Henige was subject to any harassment, let alone harassment because of his sex. Although Henige claims that the allegations were false, there are no facts to plausibly suggest that the allegations were made because Henige is male. For these reasons, Count III is dismissed.

*4. ADA Claim (Count IV)*

In Count IV, Henige alleges a violation of Title I of the ADA by the Board, Behling, Delgado, Evers, Hall, Higgins, Jones, Klein, Miller, Mueller, Peterson, Ring, Steil, Tyler, Whitburn, Lathrop, Olson, Taveira, Gulig, Leitheiser, Weston, Telfer, Kopper, Elrod, and Mertens. Henige alleges that he [*27] was discriminated against after he requested that his courses be moved online due to temporary mobility issues, but his accommodation was preconditioned on his acceptance of other conditions that violated his legal rights. The defendants contend that Count IV should be dismissed because: (1) sovereign immunity bars suit against the Board; (2) sovereign immunity bars suit against the individual defendants in their official capacities; (3) state employees in their personal capacities are not amenable to suit under the ADA; and (4) the ADA claim fails on the merits.

4.1 Proper Defendants

As to the Board, sovereign immunity applies. Wisconsin has not consented to suit under Title I of the ADA. Moreover, Congress has not validly abrogated state immunity with respect to Title I of the ADA. *See* Board of Trustees v. Garrett, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001); Takle v. Univ. of Wis. Hosp. & Clinics Auth., 402 F.3d 768 (7th Cir. 2005). Accordingly, Count IV against the Board is dismissed.

Henige's ADA claim against the individual defendants in their official capacities is also barred by the Eleventh Amendment. Despite generally requesting declaratory and injunctive relief in the introduction of the complaint, for Count IV, Henige does not seek any prospective injunctive relief for ongoing violations of federal law. Count IV states that Henige is [*28] "entitled to recover lost wages—back and future, damages for emotional pain and suffering, attorney's fees and costs, and pre-judgment interest in excess of $275,000" (Compl. ¶ 106) and punitive damages in excess of $66 million (*Id.* ¶ 107). As a result, the Ex Parte Young exception to Eleventh Amendment immunity does not apply. Count IV is dismissed against the individual defendants in their official capacities.

Finally, Henige's ADA claim against the individual defendants in their personal capacities must also be dismissed because state employees are not amenable to suit under the ADA. The ADA defines an employer as "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person." 42 U.S.C. § 12111(5)(A). Individuals who do not meet this statutory definition of an "employer" cannot be held liable under the ADA. United States E.E.O.C. v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1282 (7th Cir. 1995); *see also* Williams v. Banning, 72

F.3d 552, 553 ("[T]he ADA's definition of 'employer,' which (like Title VII) includes an employer's agents, is simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents."). The individual defendants are not "employers" for the purposes of the ADA. Therefore, Count IV against the individual defendants in [*29] their personal capacities is dismissed.

4.2 Sufficiency of ADA Failure-to-Accommodate Claim

As an initial matter, as explained above, no defendant named in Count IV is proper for the purpose of Henige's ADA claim. However, Henige may amend his complaint to properly plead a claim under the Rehabilitation Act. "The Rehabilitation Act and the ADA provide expansive protections from discrimination for individuals with disabilities." A.H. by Holzmueller v. Illinois High Sch. Ass'n, 881 F.3d 587, 592 (7th Cir. 2018). And Section 504 of the Rehabilitation Act, which prohibits programs or activities receiving federal financial assistance from discriminating against qualified individuals with disabilities, 29 U.S.C. § 794(a), incorporates the standards applicable to Title I of the ADA. *Brumfield v. City of Chi.*, 735 F.3d 619, 630 (7th Cir. 2013) (citing 29 U.S.C. § 794(d)). Moreover, courts construe and apply the Rehabilitation Act and the ADA in a consistent manner. A.H. by Holzmueller, 881 F.3d at 592. Thus, I will consider the sufficiency of Henige's ADA claim.

To state a claim for failure to accommodate under either the ADA or the Rehabilitation Act, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) the defendant was aware of his disability; and (3) the defendant failed to reasonably accommodate his disability. Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits, 601 F.3d 674, 678 (7th Cir. 2010). Henige has alleged facts to support the elements of a failure to [*30] accommodate claim. Specifically, Henige alleges that he performed his teaching duties; that he requested that his courses be moved online to accommodate his temporary mobility issues; that Defendant Kopper granted this request; and that the accommodation was unreasonable because it was conditioned upon his acceptance of terms that Henige did not request. (Compl. ¶ 82; Pl.'s Resp. at 18-19.) The defendants argue that Henige fails to support his argument that the accommodation provided to him was not reasonable with applicable case law. (Defs.' Reply at 9, Docket # 11.) However, requiring Henige to prove this at the motion to dismiss stage would be inappropriate. That said, because Henige has not pleaded a claim pursuant to the Rehabilitation Act, Count IV will be dismissed, but with leave to amend.

5. State Law Tortious Interference of Business Relations Claim (Count V)

In Count V, Henige alleges that, under Wisconsin law, the Board, Lathrop, Telfer, Kopper, Elrod, Mertens, Messer, and Melton tortiously interfered with his future business opportunities by retaliating against him and punishing him for constitutionally protected conduct. (Compl. ¶ 110.) The defendants argue that Henige's [*31] state law tortious interference claim must be dismissed because Henige's requisite notice of claim pursuant to Wis. Stat. § 893.82(3), Wisconsin's tortious interference statute, was untimely. (Defs.' Br. at 35.) Henige concedes as much. (Pl.'s Resp. at 20.) Therefore, Count V is dismissed.

6. Qualified Immunity

The defendants contend that, even if Henige's claims do not fail on the merits, the individual defendants in their personal capacities are entitled to qualified immunity. As the validity of a qualified immunity defense depends on the facts of a case, generally, "dismissal at the pleading stage is inappropriate." Alvarado v. Litscher, 267 F.3d 648, 651-52 (7th Cir. 2001); *see also* Jacobs v. City of Chi., 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."). In any event, because Henige's complaint fails on other grounds, I need not address the defendants' arguments regarding qualified immunity at this time.

7. Leave to Amend

The Seventh Circuit instructs that when a plaintiff's complaint is dismissed under Rule 12(b)(6), the general rule is to give at least one opportunity to amend her complaint before the entire action is dismissed. Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana, 786 F.3d 510, 519 (7th Cir. 2015). The court has stated that unless "it is *certain* from the face of the complaint that any amendment would be [*32] futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Id.* (emphasis in original). Because it is not certain at this stage that amendment would be futile, Henige will be given leave to amend his complaint. Any amended complaint must be filed within fourteen (14) days of the

date of this decision and order. Moreover, Henige is given leave to replead his claims only against those defendants who are not immune from suit or otherwise prohibited by statute.

## CONCLUSION

Because Henige has failed to state a claim upon which relief may be granted under *42 U.S.C. § 1983*, Title VII, the ADA, and Wisconsin state law, the defendants' motion to dismiss is granted. However, Henige is granted leave to file an amended complaint consistent with this decision within fourteen (14) days.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion to dismiss (Docket # 8) is **GRANTED**. Count V is **DISMISSED WITH PREJUDICE**. The remainder of Henige's complaint is **DISMISSED WITHOUT PREJUDICE**. Any amended complaint must be filed within **fourteen (14) days** of the date of this decision and order.

Dated at Milwaukee, Wisconsin this 11th day of February, 2021.

BY THE **[*33]** COURT

/s/ Nancy Joseph

NANCY JOSEPH

United States Magistrate Judge

---

**End of Document**