IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TODD WOLF,

    Plaintiff,

v.                                                                  Case No. 23-CV-149

CITY OF SHEBOYGAN, ET AL.,

    Defendants.

**BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

**INTRODUCTION**

Defendant Jill Pedigo Hall ("Hall") is one of fourteen defendants named by Plaintiff Todd Wolf ("Wolf") in a 63-page complaint that contains over 450 numbered paragraphs and attaches 45 exhibits (comprising 200 additional pages). Dkt. 1. The allegations contained in the complaint approximately span the two-and-a-half years Wolf served as the City Administrator for the City of Sheboygan (July 27, 2020 to January 9, 2023). Only one of the complaint's five causes of action is directed at Hall—a § 1983 claim that Hall conspired to violate Wolf's Fourteenth Amendment due process rights in connection with her investigation of Wolf, which began in mid-November 2022. *Id.* at 54-59. In light of the enormous breadth of the complaint and the extensive time period involved, Hall hereby moves the court to exercise its inherent authority to screen Wolf's complaint and dismiss it for Wolf's failure to comply with Federal Rules of Civil Procedure 8 and 20.

In the alternative, Hall moves the court to dismiss Wolf's complaint, pursuant to Federal Rule of Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Simply put, Wolf's claims against Hall fail because she is a private party who was not acting under state

1

law with regard to her interaction with Wolf. Accordingly, she cannot be held liable under § 1983. Yet even if Hall were not a private actor, Wolf's cause of action against her would still fail because Wolf has not established an underlying violation of any constitutionally protected interest.

## **RELEVANT ALLEGATIONS**

The allegations set forth against Hall are, in pertinent part, as follows:

- "Defendant Jill Pedigo Hall ('Hall') is an attorney with Von Brieson [sic] and Roper. Hall has known Defendant Donohue for over thirty (30) years. Hall was contracted by Adams and Sheboygan's Common Council to investigate Plaintiff Todd Wolf. On information and belief, Hall was selected based on her association with Donohue to retain attorney-client privilege of the City's purported 'investigation' into Plaintiff Todd Wolf and in his removal by the Common Council. Hall is sued in her individual capacity." Compl. ¶ 17.

- "The only information Mr. Wolf received about the 'investigation' was on December 6, 2022, when Adams orally stated that Defendant Attorney Jill Pedigo Hall ('Hall') was conducting the 'investigation,' and it related to emails that Mr. Wolf sent to Hilty."[1] Compl. ¶ 225.

- "Hall arranged for an interview with Mr. Wolf to be held via Zoom on December 20 at 10:00 AM." Compl. ¶ 228.

- "Hall stated to Mr. Wolf's attorney on December 16 that her interview would only include Mr. Wolf and herself without his attorney present. A true and accurate copy of the email from Hall is attached as Exhibit JJ."[2] Compl. ¶ 229.

- "Hall's interview with Mr. Wolf lasted approximately five (5) hours, and Hall never once told Mr. Wolf exactly what the 'allegations' were that she was investigating." Compl. ¶ 239.

- "At several points during Hall's interview with Mr. Wolf, where she had denied his attorney be present with him, Hall appeared to be cross-examining Mr. Wolf to try and elicit specific responses to see whether he had 'ever' committed any wrongdoing at all,

---

[1] Exhibit HH, attached to the Complaint and referenced in paragraph 224 of the Complaint, indicates that Hall was retained to conduct the investigation on November 14, 2022. Dkt. 1-34 at 3.
[2] The email states as follows: "Thank you. I can confirm this will be a private zoom meeting between myself and Mr. Wolf only. A zoom invitation will be sent to the email address below. Have a good weekend, Jill Hall." Compl., Ex. JJ (Dkt. 1-36).

2

including accusing Mr. Wolf of violations based on statements that others made in his defense after the Council publicly placed him under 'investigation' for his 'conduct.'" Compl. ¶ 240.

- 'Hall implied to Mr. Wolf that the Council wanted her report to be in 'oral form' rather than 'written form.'" Compl. ¶ 241.

- "Hall told Mr. Wolf that she had 'known [Defendant Mary Lynne Donohue] for over thirty years' during the interview." Compl. ¶ 242 (bracketed text in original).

- "On information and belief, Hall was made aware of exonerating evidence that favored Mr. Wolf during her 'investigation.'" Compl. ¶ 244.

- "On information and belief, Hall never disclosed any favorable or exonerating evidence to the Council." Compl. ¶ 245.

- "On January 3, 2023, the Common Council posted a 'special meeting' Agenda for a closed session on January 4 to discuss the investigation by Hall into Mr. Wolf. A true and accurate copy of the Agenda for the January 4, 2023, Council meeting is attached as Exhibit LL." Compl. ¶ 246.

- "On information and belief, Hall appeared via Zoom video during the January 4 closed session." Compl. ¶ 247.

- "During the January 4 closed session, Hall provided only a vague oral investigation conclusion ('investigation synopsis') in which Hall stated that there was 'evidence to suggest' Mr. Wolf violated the City's Directives and laws. A copy of the January 4 Minutes that Adams released to the public is attached to this complaint as Exhibit MM." Compl. ¶ 248.

- "On information and belief, Hall did not discuss what 'evidence' she had found, what laws Mr. Wolf is alleged to have violated, nor whether there was any exonerating information that favored Mr. Wolf." Compl. ¶ 249.

- "To date, Mr. Wolf has never been told what 'evidence' was used in Hall's determining his 'guilt' and 'violations' of law during her January 4 'investigation synopsis.'" Compl. ¶ 273.

Based on these allegations, Wolf now brings a single § 1983 claim against Hall—in addition to co-defendants Donohue, Hilty, Sorenson and Adams—for "conspiracy to violate Mr.

3

Wolf's fourteenth amendment due process rights (liberty)." Compl. at 54-59. In support of this claim, Wolf sets forth additional allegations, as follows[3]:

- "Mr. Wolf was deprived of his right to his position and reputation by being subjected to a 'sham' investigation through fabricated evidence, and then being slandered and stigmatized when he was permanently removed as City Administrator on January 9." Compl. ¶ 7.

- "Donohue, Sorenson, Adams, and Hilty devised a single agreement in September 2022 to frame Mr. Wolf for leaking confidential information and inciting a 'public outcry' and fabricating false 'cause' to remove him as City Administrator with eight Council votes." Compl. ¶ 8.

- "On information and belief, Hall agreed to assist this plan in mid-November 2022 to manipulate Mr. Wolf into finding any wrongdoing on his part and then report falsely to Council that Mr. Wolf had violated laws to ensure his removal." Compl. ¶ 9.

- "This plan was devised to remove Mr. Wolf as City Administrator to ensure funding and implementation of Sheboygan DEIB affiliated persons that Mr. Wolf had not supported by destroying his credibility and reputation in creating 'cause' to fire him." Compl. ¶ 10.

- "The plan also aimed to destroy Mr. Wolf's respected standing and influence throughout the Sheboygan government and private businesses that he had built over the previous twenty years so that Mr. Wolf could not undermine the efforts of the Sheboygan DEIB to obtain funding and influence throughout the public and private sectors in Sheboygan." Compl. ¶ 11.

- "In furtherance of the plan, Adams and Hall ensured a 'sham investigation' by refusing to (1) allow Mr. Wolf his attorney during the interview, (2) provide details of the allegations against Mr. Wolf, (3) advising Council to remove Mr. Wolf without cause to conceal their false evidence and deny Mr. Wolf a chance to be heard." Compl. ¶ 21.

- "In furtherance of the plan, Donohue ensured that her associate of 'more than thirty years,' Jill Hall would conduct the 'investigation' to solidify Mr. Wolf's removal and funding for her Sheboygan DEIB RFP, that she sent to Council after Hilty's October articles." Compl. ¶ 23.

---

[3] The paragraphs set forth under the fourth cause of action begin at "1," rather than sequentially at the last numbered paragraph "388." To avoid confusion, undersigned counsel notes that the paragraphs cited below are those that appear on pages 54 to 59 of the complaint.

4

- "On information and belief, Hall used her 'employee interviews' to determine and report to the defendants which employees' testimonies would exonerate Mr. Wolf so that Adams could assess whether to allow Mr. Wolf a hearing." Compl. ¶ 28.

- "In furtherance of the plan, Hall intentionally concealed evidence that exonerated Mr. Wolf when she gave her 'oral investigation synopsis' to the Council on January 4 on orders from Adams or Sorenson." Compl. ¶ 29.

- "**Donohue, Hilty and Hall acted as private citizens** in conjunction with the City official defendants to deprive Mr. Wolf of his clearly established due process rights to liberty and property." Compl. ¶ 32 (emphasis added).

- "Donohue, Hilty, Hall, Sorenson, and Adams willfully participated in carrying out a single agreement to stigmatize Mr. Wolf as a liar and criminal within the context of his removal as City Administrator by Council." Compl. ¶ 33.

- "Hall intentionally facilitated and turned a blind eye by knowing the plan to deprive Mr. Wolf of his constitutional rights and denying Mr. Wolf legal counsel while concealing exonerating information to create the appearance of his alleged 'guilt' that would convince eight alderpersons to vote for his removal without a hearing." Compl. ¶ 35.

- "The defendants' plan to conjure false allegations against Mr. Wolf to convince eight Council members to remove him and publicly stigmatize his reputation, and their many combined acts in furtherance of that plan, directly resulted in the deprivation of Mr. Wolf's clearly established due process rights." Compl. ¶ 36.

- "Based on the defendants' many overt acts, Mr. Wolf has suffered severe emotional, mental, and financial injuries including the loss of his position, severe damage to his reputation, and no ability to provide financially for himself or his family." Compl. ¶ 37.

## **LEGAL STANDARD**

Fed. R. Civ. P. 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court has the discretion to screen Wolf's complaint as an exercise of its inherent authority to manage its cases. *Gintner v. Schira*, No. 21-cv-224-wmc, 2021 WL 3418960, at *1 (W.D. Wis. Aug. 5, 2021) (citing *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999)).

5

Fed. R. Civ. P. 20 provides that defendants can be joined together in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). The Court has "considerable discretion" and "flexibility" in applying this rule and determining whether the complaint contains plausible allegations to satisfy them. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018).

To survive a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Fosnight v. Jones*, 41 F.4th 916, 921-22 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 922 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). "The '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [the] presumption of truth." *Id*.; *see also Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 794 (7th Cir. 2013) (legal conclusions couched as factual allegations).

6

# ARGUMENT

## I. The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 8(a)(2)

The Court should screen and dismiss the complaint because its failure to comply with the Federal Rules of Civil Procedure is readily apparent. Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8 is to provide the court and the defendants fair notice of the nature of the plaintiff's claims. *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 775 (7th Cir. 1994). Neither the court nor the defendants should be forced "to forever sift through [the complaint's] pages in search of [an] understanding" of the nature of the plaintiff's claims. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990). Here, Wolf's complaint plainly fails to satisfy this requirement. At 453 numbered paragraphs spread over 63 pages—and attaching 45 exhibits (comprising 200 additional pages)—containing vague and conclusory allegations of conspiratorial conduct involving fourteen defendants (including both public and private actors) over a two-plus year period, the complaint is precisely the type of "prolix and confusing complaint" that warrants dismissal to avoid the needless expenditure of resources by defendants and the court. *Vicom*, 20 F.3d at 776.

## II. The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 20

The Court has "considerable discretion" and "flexibility" in applying Rule 20 and determining whether the complaint contains plausible allegations to satisfy them. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) (noting that district courts have "considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes"). But this flexibility is not unlimited. The Seventh Circuit has emphasized that "[u]nrelated claims against different defendants belong in different suits." *Id.* (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). Here, the ensuing discovery and variety of defenses set

7

forth by the fourteen defendants alone would prove unwieldy for a single case. *See Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Assocs Identified on Schedule A*, 334 F.R.D. 182, 189–90 (N.D. Ill. 2020) ("Rule 20(a)'s purpose of promoting judicial economy and trial convenience would not be served by allowing the number of defendants in this case because the ensuing discovery and variety of defenses could prove unwieldy for a single case.") (citation omitted)).

In his complaint, Wolf has improperly lumped together all of his claims against fourteen defendants (regarding events and conduct spanning two-plus years) and has failed to allege coordinated action—beyond sheer speculation—between them and Hall or any right to relief that arises out of the same transaction or occurrence or series of transactions or occurrences. Simply put, Plaintiff does not allege any readily apparent connection between Hall and the other defendants regarding a conspiracy over that extensive time period. "Most courts agree that, in general, 'simply committing the same type of violation in the same way does not link defendants together for the purposes of joinder.'" *Bose Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule "A"*, 334 F.R.D. 511, 514 (N.D. Ill. 2020) (quoting *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014)); *see also McDowell v. Morgan Stanley & Co., Inc.*, 645 F. Supp. 2d 690, 697 (N.D. Ill. 2009) ("One or more defendants' similar conduct, without anything more, does not rise to a sufficient level that would justify joining those defendants in a single action pursuant to Rule 20.") (citations omitted)); *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) (Rule 20 "requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts."). Here, Hall and the defendants' alleged actions cannot be reasonably viewed as arising out of the same transaction or occurrence or raising common issues of law or fact between them. Indeed, Wolf's allegation that Donohue, Sorenson,

Adams and Hilty "devised a single agreement in September 2022 to frame Mr. Wolf . . . and fabricat[e] false 'cause' to remove him as City Administrator with eight Council votes" occurred a full month before Hall was even retained by the City of Sheboygan to investigate Wolf. Compl. at 55, ¶ 8.

Although Fed. R. Civ. P. 21 states "[m]isjoinder of parties is not a ground for dismissing an action," it does not say that misjoinder is not a ground for dismissing a complaint against a defendant. Fed. R. Civ. P. 21; *see also Lovell*, 888 F.3d at 863 ("The proper remedy for violations of Rules 18 and 20 is severance or dismissal without prejudice, not dismissal with prejudice."). The Rule provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." But, here, for the court to exercise its discretion to drop parties and/or sever claims here would require the court's resources and tax its independence to try and re-engineer the lawsuit in order to conform to the joinder rules by connecting the dots as to what specific defendants should match up, for what claims based upon which alleged facts.

### III. The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)

Wolf's complaint should be dismissed against Hall because Hall is a private actor. Section 1983 "provides a right of action for constitutional deprivations that occur 'under color of' state law." *Alarm Detection Systems, Inc. v. Village of Schaumburg*, 930 F.3d 812, 825 (7th Cir. 2019). "The under-color-of-state-law element means that § 1983 does not permit suits based on private conduct, no matter how discriminatory or wrongful." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (internal quotation marks and citation omitted). "Thus, private actors . . . cannot usually be sued under § 1983." *Alarm Detection Systems, Inc.*, 930 F.3d at 825.

Here, Hall is a private actor who cannot be sued under § 1983. Specifically, the allegations in the Complaint establish that Hall, at all relevant times, was a private attorney at an outside law

9

firm. Compl. ¶ 17; *see also id*. at 58, ¶ 32 (referring to Hall as a "private citizen[]"). It is well-established that private attorneys who merely advise public entities are not acting under color of state law for purposes of a section 1983 lawsuit. *See, e.g., Raines v. Indianapolis Public Schools*, 52 F. App'x 828, 830 (7th Cir. 2002); *Dyer v. Maryland State Bd. of Educ.*, 187 F. Supp. 3d 599, 614-16 (D. Md. 2016) (collecting cases and rejecting § 1983 claim by a former member of a board against attorneys who performed legal services in connection with the removal); *see also Brady v. Somersworth Sch. Dist., Sch. Bd.*, No. 16-cv-069- JD, 2016 WL 3248247, at *3 (D.N.H. June 13, 2016) (collecting cases).

Although a private citizen can theoretically act under color of law pursuant to a "conspiracy theory" of § 1983 liability, *Spiegel*, 916 F.3d at 616, such a theory of liability requires that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Id*. (internal quotation marks and citations omitted). However, "[m]ere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Id*. (internal quotation marks, brackets, and citation omitted). Here, the specific facts alleged regarding Hall fail to establish she was a willful participant in a conspiracy that was intended to deprive Wolf of his constitutional rights. In particular, the complaint contains ***no*** specific allegations that Hall even spoke to the two government officials identified as being part of the alleged conspiracy set forth in Wolf's fourth cause of action—namely, Mayor Ryan Sorenson ("Sorenson") and City Attorney Charles Adams ("Adams"). *See* Compl. at 54-59.

Wolf takes issue with how Hall interviewed him on December 20, 2022, and how she orally reported her preliminary findings to the Common Council in closed session on January 4, 2023.

10

*See* Compl. ¶¶ 228, 241. However, none of the alleged acts by Hall demonstrate an understanding or purpose of depriving Wolf of his constitutional rights in conspiracy with government officials (*i.e.*, Sorenson or Adams). Rather, they reflect acts that one would expect from outside counsel who is conducting an investigation for a Wisconsin municipality. There are no allegations in the complaint that suffice to establish that Hall can be liable under § 1983. Wolf's only substantive factual allegations are that Hall knew defendant Donohue (who is also described as a "private citizen[]," Compl. at 58, ¶ 32) for approximately thirty years, that she interviewed Wolf without his lawyer present and that she orally reported her preliminary findings to the Common Council in closed session on January 4, 2023. Again, these factual allegations do not demonstrate any actions by Hall that would cross the line from a private attorney acting on behalf of a municipal client to a willful participant in a conspiracy that was intended to deprive Wolf of his constitutional rights. The allegations in the complaint establish only that, as an outside attorney, she provided legal advice in closed session that Wolf claims impacted his termination. This is not evidence of Hall's participation in a conspiracy; concluding thus would convert every outside lawyer to a public entity into a state actor for purposes of § 1983 conspiracy claims. That, of course, is not the law. *See generally Dyer*, 187 F. Supp. 3d at 614-16. In sum, the Complaint fails to include factual allegations that make it plausible Hall—a private actor—can be held liable under § 1983 under a conspiracy theory of liability. For this reason, Hall's § 1983 claims against Hall must be dismissed.

Indeed, even if Hall was not a private actor, Wolf's complaint would still fail because Wolf did not even have a constitutionally protected interest in his employment. Nor can Wolf establish a constitutional violation regarding injury to his reputation. These two arguments are addressed below, in turn.

11

### A. Wolf's Alleged Constitutionally Protected Interest (Employment)

For a public employee to demonstrate a cognizable constitutional interest in employment, the employee "must be able to show . . . some legitimate expectation of continued employment." *Meade v. Moraine Valley Community College*, 770 F.3d 680, 686 (7th Cir. 2014). "In the employment context, a plaintiff generally is required to show that the terms of his employment provide for termination only 'for cause' or otherwise evince 'mutually explicit understandings' of continued employment." *Cole v. Milwaukee Area Technical College Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). Such an expectation arises via contractual language limiting the employer's discretion to fire the employee. *Meade*, 770 F.3d at 686. Here, however, Wolf's contract with the City of Sheboygan establishes that his employment was discretionary and that he served at the pleasure of the Common Council: "For the purpose of this agreement, termination shall occur: . . . If 80% of the City Council votes to terminate Employee in accordance with a properly posted and duly authorized public meeting." Compl., Ex. H at ¶ 12(a). There is no "for cause" requirement contained in Wolf's employment agreement; moreover, Wolf readily concedes that eight of the ten City Council members voted to terminate him, which is consistent with proper termination under the agreement. *See, e.g.,* Compl. ¶ 258. The employment agreement's severance provisions further demonstrate that the Common Council could terminate Wolf without cause, as it separately contemplates the type of severance due *if* termination is "for cause," rather than without cause. Compl., Ex. H at ¶ 13(e) ("*If* the Employee is terminated for cause . . . ") (emphasis added). Accordingly, under the explicit terms of his employment agreement, Wolf had no cognizable property interest in his continued employment with the City and has not been deprived of a constitutionally protected interest. *See Covell v. Menkis*, 595 F.3d 673, 677 (7th Cir. 2010).

### B. Wolf's Alleged Constitutionally Protected Interest (Reputation)

Wolf also alleges a constitutional violation with regard to speculative injuries to his reputation. *See* Compl. at 53-59. In particular, he claims he was publicly stigmatized as a result of the January 9, 2023 Common Council meeting. *See, e.g.*, Compl. ¶¶ 257-259. However, Hall is not even alleged to have been a part of the January 9, 2023 meeting and is not alleged to have any role in the information disclosed regarding Wolf during it or following it. For this reason alone, the claim against Hall must fail. However, even if Hall was alleged to have disclosed alleged "stigamatizing" information to the public, the claim would still fail for the following reasons.

Wolf's claim regarding his reputation is what is known as an occupational liberty claim. To prevail on such a claim, a plaintiff must meet what is known as the "stigma plus" test. This test requires a plaintiff "to show that the state inflicted reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held." *Doe v. Purdue University*, 928 F.3d 652, 661 (7th Cir. 2019). To allege such a claim, "a plaintiff must plead that (1) the defendant made stigmatizing comments about him; (2) those comments were publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010). Finally, the alleged stigmatizing statements must be uttered incident to an adverse employment action, such as a termination of employment, taken against the plaintiff. *See, e.g., Goecks v. Pedley*, 732 F. Supp. 2d 828, 832-33 (W.D. Wis. 2010).

With respect to the first element, it "requires the employee to show that a public official made defamatory statements about him." *Strasburger v. Board of Education, Hardin County Community Unit School District No. 1*, 143 F.3d 351, 356 (7th Cir. 1998). "These statements must be false assertions of fact." *Id*. This element is not satisfied by "[t]rue but stigmatizing statements"

13

or by statements of opinion, even stigmatizing ones, so long as they do not imply false facts." *Id*. The statements must also come from the mouth of a public official. *Id*.

With respect to the second element, "[t]he public-disclosure element requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large." *Palka*, 623 F.3d at 454; *see also Covell*, 595 F.3d at 678 ("[S]tatements made to employees within a department are not considered public dissemination.").

With respect to the third element, a plaintiff must show that the stigmatizing comments resulted in the blacklisting of the plaintiff from employment in comparable jobs and "make it virtually impossible for the [plaintiff] to find new employment in his chosen field." *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001). A complaint must contain allegations sufficient to draw the reasonable inference the employee "has suffered a tangible loss of other employment opportunities." *Id*. at 671.

### 1. Wolf has not alleged a tangible loss of other employment opportunities.

This Court should dismiss Wolf's occupational liberty claim because the Complaint does not allege facts that allow for the inference that Wilson has suffered a tangible loss of other employment opportunities as a result of any publicly disclosed stigmatizing comments. Indeed, the Complaint lacks any allegations that Wolf has been turned down for employment due to the alleged stigmatizing statements made by any of the defendants. This Court can dismiss Wolf's reputation-based claim on this basis alone.

### 2. Most statements identified by Wolf were not publicly disclosed.

Next, this Court must dismiss Wolf's claim to the extent he relies on alleged statements that were not disseminated to the public by Hall. Indeed, the vast majority of statements identified by Wolf—vague as they are—appear to be communications internal to the Common Council (*i.e.*,

made in closed session). Such allegations do not suffice. *See, e.g., Taggart-Erkander v. Racine Unified Sch. Dist.*, No. 19-CV-435, 2019 WL 4060173, at *9 (E.D. Wis. Aug. 21, 2020). To the extent Wolf bases his claim on these communications, it fails as a matter of law.

### 3. Wolf has not identified any false assertions of fact.

Next, Wolf's complaint does not identify false and defamatory statements of fact about him. This failure subjects his claim to dismissal. *See, e.g., Hadley v. Du Page Cty.*, 715 F.2d 1238, 1247 (7th Cir. 1983) (failure to cite a specific statement made by the defendants); *Snowden v. Adams*, 814 F. Supp. 2d 854, 868 (C.D. Ill. 2011) (without providing actual document, it is impossible to determine whether the information contained therein was stigmatizing). Further, to the extent Wolf does reference specific statements, they are invariably always statements of opinion, not fact, or were true.

Further, the vast majority of the communications on which Wolf relies predate his termination (*e.g.*, the January 4 closed session meeting of the Common Council) and should not be considered an adverse employment action that would support a stigma-plus claim. *See, e.g., Klug v. Chicago School Reform Bd. of Trustees*, 197 F.3d 853 (7th Cir. 1999) (loss of overtime pay is not adverse employment action sufficient to state stigma-plus claim). Wolf's reputation-based claim must be dismissed because he fails to allege facts showing any statements made in closed session were both false and defamatory and publicly disseminated.

## CONCLUSION

For the foregoing reasons, Hall respectfully requests that the Court dismiss Wolf's Complaint as to her.

15

Dated this 31st day of March, 2023.

                                  VON BRIESEN & ROPER, S.C.

                                  By: *s/ Joseph M. Russell*
                                        Joseph M. Russell, SBN 1092211
                                        411 E. Wisconsin Ave., Suite 1000
                                        Milwaukee, WI  53202
                                        P:  414-287-1400
                                        F:  414-276-6281
                                        E:  joseph.russell@vonbriesen.com