

TAGLaw International Lawyers

**Jill Pedigo Hall**
Direct Telephone
(608) 661-3966
jill.hall@vonbriesen.com

# ATTORNEY-CLIENT PRIVILEGED COMMUNICATION

TO:      Charles Adams
            Sheboygan City Attorney

FROM:   Jill Pedigo Hall
            von Briesen & Roper, s.c.

RE:       Investigation of City Administrator Todd Wolf

DATE:    February 6, 2023

The City of Sheboygan ("City") retained the firm of von Briesen & Roper, s.c., and specifically this reporter, to investigate matters regarding the activities and communications of City Administrator Todd Wolf ("Wolf") and also to investigate allegations published by Wolf against two citizens who are members of the steering committee of an organization focused on Diversity, Equity, Inclusion and Belonging ("DEIB") called The Collective.

The defined scope of the investigation included consideration of historic complaints against Wolf, as well as a complaint of retaliation and defamation by one City Director, Emily Rendall-Araujo. In addition, this reporter was asked to investigate allegations of bribery and extortion against two members of The Collective that Wolf published.

This reporter initiated the investigation on November 14, 2022, through preliminary communications with the City Attorney and study of pertinent documentation. Interviews commenced on November 21, 2022, and concluded with follow-up communications on January 2, 2023.

## INVESTIGATION PROCESS

Twenty-four (24) individuals were interviewed in the course of this investigation, including City Department Directors, employees, and some citizens.

Additionally, this reporter reviewed and considered a substantial number of relevant documents and policies, including emails, policies, Codes of Conduct, the City Administrator Job Description, Wolf's personnel file, newspaper and media articles, and transcripts of public speeches by Wolf's counsel.

**QUESTION INVESTIGATED**

Was there sufficient evidence that Wolf's conduct or communications after August 22, 2022 violated Common Council directives, City policies, and/or the law, sufficient to warrant a hearing before the Council for possible consideration of his termination or other discipline?

**EXECUTIVE SUMMARY**

Sufficient evidence could support a conclusion that by Wolf's failing to comply with specific Council directives, and disregarding legal recommendations of the City Attorney and outside counsel, all not to discuss pending personnel matters, he engaged in conduct that could be regarded as violating City policies against insubordination so as to warrant a hearing before the Council. Additionally, sufficient evidence exists to support a conclusion that Wolf's publicly naming Emily Rendall-Araujo, ascribing unsubstantiated conduct and malicious political motives to her, and indicating publicly that she should be disciplined, could constitute violations of City policies against retaliation, harassment and insubordination, so as to warrant a hearing before the Council. Further, sufficient evidence exists that could support a conclusion that Wolf's repeat public assertions of extortion and bribery by two named citizens are entirely unsupported in fact and could support a further conclusion that he engaged in untrue and inappropriate communications regarding the two named citizens so as to warrant a hearing before the Council. Finally, sufficient evidence could support a conclusion that through his conduct as described in the foregoing, Wolf violated the ICMA Code of Ethics Tenets 3, 7, and 11 sufficient to warrant consideration of filing a complaint with the ICMA by the Council.

In weighing action on this sufficient evidence, the burden of conducting a hearing should be recognized as a complex and challenging effort, similar to, or exceeding, the complexity of this investigation. The hearing process would require significant time, in preparation for testimony and at hearing of many City employees, creating significant personal hardship for those individuals, and interfering with their ability to perform their jobs. Moreover, the Council would be faced with considering and weighing a ponderous amount of evidence, including weighing the credibility of City coworkers.

The following provides a summary of the evidence identified in the investigation.

**POLICY VIOLATIONS – Insubordination, Retaliation, and Harassment**

Actions and communications that can be attributed to Wolf, in which he disclosed and commented on pending personnel disciplinary matters, could be regarded as violating City policies against insubordination, retaliation and harassment. Email communications and testimony provided in the course of the investigation show that the City Attorney and private legal counsel advised Wolf that he did not need to talk with the press in September 2022; that if he did, he should not comment on personnel matters. Council leadership also advised against his doing so. The evidence, however, shows that Wolf carried on a wide-ranging and unfettered discussion during a press interview on September 20, 2022. Among other topics, he talked extensively about personnel matters and discipline regarding a Director who had disclosed Pelishek's utterance of a racial slur in a meeting. Sufficient evidence suggests that Wolf initiated a second interview with the same media reporter without including the Mayor. Wolf denied to this reporter that he initiated the second interview. In the resulting October 10, 2022 newspaper article, the Administrator is quoted as referencing discipline that could be taken against an anonymous Director and predicted that "the employee [who disclosed] is going to have problems." The Administrator did not deny that he made the statement to this reporter, qualifying it by saying he did not "recall if [he] said it *exactly* that way." Council will need to weigh all relevant evidence and make a determination with regard to the questions of what Wolf stated to the media, whether he violated City policies against retaliation and insubordination, and direction not to discuss personnel matters.

Additionally, after the Common Council specifically instructed Wolf on November 7, 2022, that he was not authorized to speak to the media about City matters, he launched a press release and it was followed by multiple media and political appearances by his private legal counsel on his behalf. Wolf stated that he approved his counsel's comments, stating, "They are the same comments made on my behalf. I agreed with what she said…. I believe the statement that she provided – the story line was the same as she had said in the past so approved."

Substantial evidence further suggests that beginning November 7, 2022, Wolf began to name Ms. Rendall-Araujo, publicly ascribing destructive political motives to her disclosure of the racial slur incident. One example of this was an assertion made in Wolf's November 8, 2022 press release wherein he claims that "she contacted multiple people in her political network to distort the facts and target Pelishek and Wolf." The press release expanded upon her alleged motives, stating, "It is yet to be determined whether Rendall-Araujo has been coordinating with any elected official or DEIB activists in efforts to target Wolf." No evidence supports the repeated allegations, made in multiple public forums, of such motives against Ms. Rendall-Araujo. Evidence suggests that Ms. Rendall-Araujo reported only to a group of five friends on August 22, 2022, but did not talk with media at any time on the matter of Pelishek uttering a racial slur on August 22, 2022.

Additional evidence suggests that Wolf was informed by the Mayor on October 17, 2022, that other Directors had talked "outside" the City government with external parties regarding Pelishek's racial slur during the August 22, 2022 meeting. Evidence suggests that despite that information, Wolf chose to believe and continued to assert that Ms. Rendall-Araujo was the only Director who disclosed the fact of Pelishek uttering a racial slur in the August 22, 2022 meeting. This is demonstrated by comments made by Wolf and his legal counsel in the October 10, 2022 *Sheboygan Press* article, in his November 7, 2022 letter to the Council which was clearly a public

record, in his November 8, 2022 press release, and in his counsel's published statements to the Republican Party, two media outlets and on *Average Joe*. When asked why he had focused on Ms. Rendall-Araujo, Wolf stated to this reporter that he "didn't have the evidence or facts" to support other Directors talking to outside parties. There is no evidence that he ever sought to obtain such evidence or facts, but instead, as late as December 6, 2022, continued to assert discipline would be appropriately taken against only Ms. Rendall-Araujo for her disclosure. Wolf stated the following to this reporter: "I don't go into disciplinary or the details. I don't talk about personnel matters or discipline to anyone." Thus, there is sufficient evidence to warrant a hearing to determine whether or not Wolf chose to single out Ms. Rendall-Araujo with the press and in public, in violation of City policies against retaliation, harassment and insubordination, and also in violation of the Council directive not to discuss City matters with the press.

**INAPPROPRIATE AND INSUBORDINATE COMMUNICATIONS REGARDING AN EMPLOYEE**

Additional evidence of Wolf's continuing negative public comment and focus on Ms. Rendall-Araujo, in disregard of the Council directive not to discuss City matters with the press, warrants the Council's consideration of whether such conduct constituted insubordinate and inappropriate comment on a City employee, and created possible legal risk for the City. For example, between November 7, 2022 and December 6, 2022, in numerous public statements, Wolf expanded his commentary regarding Ms. Rendall-Araujo to include comment on her alleged motives, communications and character. These include statements by Wolf's attorney such as "she demanded Pelishek repeat the racial slur" and that "she contacted multiple people in her political network to distort the facts and target Pelishek and Wolf."

However, in the course of the investigation *no* attendee of the August 22, 2022 meeting, including Mr. Pelishek himself, supported Wolf's repeated assertion that Ms. Rendall-Araujo "demanded" that Mr. Pelishek repeat the racial slur. Evidence suggests that Ms. Rendall-Araujo told Wolf on August 24, 2022, that she went to her friends' group for advice on how to address the issue of a Director's use of the racial slur. Evidence also suggests that Wolf continued to publicly attribute untoward motives toward Ms. Rendall-Araujo's choice. Council will need to weigh all relevant evidence and make a determination with regard to the questions of what Wolf stated to the media, whether he violated City policies against retaliation and insubordination, and whether he made inappropriate and harmful communications regarding a City employee.

**INAPPROPRIATE AND INSUBORDINATE ACCUSATIONS AGAINST CITIZENS**

Finally, sufficient evidence warrants the Council's consideration of whether Wolf's communications and accusations against Jamie Haack and Alejandra Guevara constituted insubordinate and inappropriate comment against citizens, and created possible legal risk for the City, all in violation of numerous City policies. Wolf publicly alleged in his letter to the Council on November 7, 2022, his November 8, 2022 press release, and in subsequent media events that

Jamie Haack and Alejandra Guevara attempted to bribe and extort money from him on October 5, 2022. Further evidence provided directly by Wolf himself suggests that he created the claims in response to public criticism by Ms. Haack and Ms. Guevara after the meeting took place. In his interview with this reporter, Wolf stated that he made the initial criminal accusations of bribery and extortion against the two women in his November 7, 2022 letter to the Common Council, "in the spirit of trying to get people's attention." He went on to say:

> "Bribery – the more and more I thought about the Black Pig. Were they asking for money? They had said some very negative things alluded to in the meeting. If I didn't give them what they were asking … Did they tell us that we needed to pay them $70,000?... In the beginning I did not think they were acting criminally. Were they asking for money? … I didn't take it seriously until I saw things adding up. I can't remember how they termed it … There were comments on Facebook that beat me up. Jamie was making statements in public. It started to look like something that was being pushed to the bribery concept … I didn't think it was a big deal until the articles with their names."

Wolf verified to this reporter that he never reported this alleged criminal conduct to law enforcement. Nevertheless, additional substantial evidence demonstrates that he continued to repeat the allegations to the media. Ultimately, there is sufficient evidence to support a hearing to determine the veracity of Wolf's allegations against the two citizens and whether his allegations constituted violations of multiple City policies.

In considering such questions, substantial evidence suggests that Ms. Haack and Ms. Guevara were not seeking money from the City nor to contract with the City around DEIB work. Instead, testimony from all meeting participants, except Wolf, and related documentation support a finding that in the meeting on October 5, 2022, the pair advised Wolf that the City must include DEI work in the budget and that any new Human Resources Director hired should have DEI as a priority. No attendee of the October 5, 2022 meeting, except Wolf, provided evidence supporting Wolf's claim that the women demanded $70,000 from the City. The evidence suggests that, although The Collective believed that it might spend $70,000 for a consultant to structure its own DEIB efforts, the women did not plan to seek that from the City. Evidence shows that Ms. Haack expressed that the work of The Collective might "not be a good fit for government grant money." Thus, sufficient evidence exists for the Council to call into question Wolf's claim that the women had demanded $70,000 from him on October 5, 2022. It is noted that counsel for Ms. Haack and Ms. Guevara issued a cease and desist letter to the City based upon the repeated published claims of bribery and extortion by Wolf and his counsel creating liability risk for the City.

Finally, sufficient evidence exists to warrant a hearing to whether or not certain comments made by Wolf and his authorized representative against the Mayor and female members of the Common Council were untrue and damaging to reputation in violation of multiple City policies. As examples, among numerous other published comments, evidence demonstrates that Wolf has publicly described his administrative suspension was a "political power grab by Mayor Ryan Sorenson and his political allies to have unfettered access to taxpayer money to hand out with zero

oversight." Wolf has asserted in multiple media forums that the Mayor and Council women are part of an "organized, coordinated and unlawful plot" against Wolf and that the "whole racial thing is a distraction." As regards this, Wolf's counsel stated, "This is Mob 101." Council will need to weigh all relevant evidence and make a determination with regard to the questions of what Wolf and his authorized counsel stated to the media, whether he violated City policies against retaliation and insubordination, and whether he made inappropriate and harmful communications regarding a City officials and citizens in violation of multiple City policies.

**VIOLATIONS OF THE ICMA CODE OF ETHICS**

The foregoing outline of the evidence identified in the investigation which was sufficient to warrant a hearing by the Council could also provide basis for the Council to file a complaint alleging Wolf's breach of the ICMA Code of Ethics with the ICMA. Specifically, such evidence could be sufficient to support a complaint of Wolf's breach of the following tenets in the ICMA Code of Ethics:

**Tenet 3.** Demonstrate by word and action the highest standards of ethical conduct and integrity in all public, professional, and personal relationships in order that the member may merit the trust and respect of the elected and appointed officials, employees, and the public.

**Tenet 7.** Refrain from all political activities which undermine public confidence in professional administrators…

**Tenet 11.** Handle all matters of personnel on the basis of merit so that fairness and impartiality govern a member's decisions, pertaining to appointments, pay adjustments, promotions, and discipline.

`CONCLUSION

Sufficient evidence obtained in the course of this reporter's investigation exists to warrant a hearing before the Common Council to determine whether or not Administrator Wolf's conduct constitutes (1) violations of Common Council directives, (2) violation of City policies, (3) exposed the City to possible liability and (4) Violations of the ICMA Code of Ethics sufficient to warrant the City's filing of a complaint of unethical conduct with the ICMA. As previously stated, such a hearing would involve complex fact finding and questions of credibility involving many City employees and citizens, and significant document analysis creating a burden on City personnel and working relationships.