IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TODD WOLF,

    Plaintiff

v.

                              CASE NO. 23-CV-149

CITY OF SHEBOYGAN, ET AL.,

    Defendants

## DEFENDANT MAYA HILTY'S BRIEF IN SUPPORT OF FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) MOTION TO DISMISS AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Maya Hilty ("Hilty") submits this brief in support of her motion to dismiss the two claims Plaintiff Todd Wolf ("Wolf") brings against her in his Amended Complaint – a 42 U.S.C. § 1983 claim (Claim Five) and a civil conspiracy claim (Claim Eight). For the reasons stated below, both claims against Hilty fail to state a claim upon which relief can be granted.

## INTRODUCTION

Defendant Maya Hilty is a local government reporter for the *Sheboygan Press*. She covers Sheboygan government and politics. Todd Wolf's lawsuit arises out of a local political controversy that Hilty covered throughout the fall of 2022. According to Wolf's amended complaint, after he turned down requests for public funds from a group devoted to diversity, equity and inclusion initiatives, Sheboygan city officials placed him under investigation, prohibited him from accessing properties or speaking with city workers, and eventually terminated him as City Administrator without due process because he was "found 'guilty' of violating Sheboygan's Orwellian 'Ministry of Truth' ordinance." (ECF Dkt. 36 ("Am. Compl.")

¶ 2). Publishing news reports about such a political controversy based on sources connected to that controversy is a routine practice of all news organizations. Nevertheless, Wolf's theory is that Hilty conspired with city officials to report on the controversy in order to create enough public outcry to justify his eventual termination. Wolf's claims against Hilty fail for one overriding reason – they are not plausible on their face. Rather than providing any factual content that would allow the Court to draw a reasonable inference that the local government reporter willingly entered into an agreement with her sources to violate Wolf's due process rights, Wolf's allegations against Hilty are nothing more than conclusory and speculative claims that she "acted under color of law" by willingly participating in a conspiracy to violate his due process rights. Those claims fail as a matter of law and should be dismissed with prejudice.

## BACKGROUND

On January 9, 2023, the Sheboygan Common Council voted to terminate Wolf, who had served as City Administrator since June 2020. Wolf had been placed on paid leave pending an internal investigation into Wolf's conduct. Hilty, the local government reporter for the *Sheboygan Press*, reported on the local controversy throughout the fall of 2022 – publishing multiple stories in the *Press*.

After his firing, Wolf filed his initial 63-page lawsuit against 13 people, including Hilty, on February 6, 2023. (Dkt. 1). Wolf alleged that Hilty conspired with city officials to violate his due process rights because she wrote articles that generated "public outcry" against Wolf that, he contends, ultimately led to his removal as City Administrator. As Hilty argued in her motion to dismiss the original complaint (Dkt. 35), Wolf's claim was both legally and factually meritless because a §1983 claim against a private citizen, like Hilty, must allege that there was a concerted

2

effort between a state actor and the private citizen to violate a constitutional right.[1] Wolf's claim failed to meet that requirement.

Now with the benefit of defendants' arguments as to the deficiencies of his § 1983 claim, Wolf has filed an amended complaint attempting to plead around the fatal flaws that defendants addressed in their respective motions to dismiss. (Dkts. 28, 32 and 34). The amended complaint also brings a new civil conspiracy claim against Hilty. For the same reasons his original claim against Hilty failed as a matter of law, so do his two claims against Hilty as alleged in his amended complaint. Publishing news reports about local government controversies based on sources connected to that controversy is not conspiratorial conduct. It is a reporter's job. And Wolf's conclusory and speculative allegations that Hilty's reporting was part of a conspiracy fall far short of his *Twombly/Iqbal* pleading requirements. Despite Wolf's new unsupported allegations in the amended complaint, he still has failed to plausibly allege that, by doing her job as the local government reporter, there was a concerted effort or even a general understanding between city officials and Hilty to violate Wolf's constitutional due process right or, for that matter, to commit any tortious act.

As with his initial complaint, Wolf's amended complaint is a sprawling 68 pages that includes 450 allegations. This brief only addresses the allegations relevant to Hilty and her alleged role in a conspiracy to deprive Wolf of his constitutional due process rights. To the extent the amended complaint alleges concerted efforts and understandings, those allegations are

---

[1] On April 26, 2023, the Court dismissed Hilty's motion to dismiss as moot because Wolf filed the amended complaint. To the extent that the amended complaint contains many of the same allegations against Hilty, she incorporates by reference in the present motion to dismiss her arguments as to why Wolf's § 1983 claim fails as a matter of law. (Dkt. 35). In addition, Hilty incorporates by reference Defendant Hill's argument that Wolf's §1983 claim should also be dismissed insofar as he did not have a constitutionally protected interest in his employment. (*See* Dkt. 33 at 11-15.)

void of any supportive factual content. None of Wolf's new allegations reference or cite newly discovered facts or evidence; rather, they are either pled "on information and belief" or are completely speculative. As explained below, those conclusory and speculative allegations may be disregarded by the Court.

For instance, Wolf alleges that "Hilty has used her platform with the Sheboygan Press to advocate for DEIB financing and ideologies." (Am. Compl. ¶ 18.) Essentially Wolf's fanciful theory is that because Hilty is allegedly sympathetic to diversity, equity and inclusion ideologies, she agreed to conspire with city officials to report on Wolf's conduct in a way that would lead to his allegedly unlawful termination because his ideologies may not align with hers. Wolf alleges that Hilty pursued sources, conducted interviews of private and public individuals, and reported on the public dispute involving Wolf's alleged conduct that ultimately led to the City Council voting to terminate him. In his amended complaint, Wolf now also merely speculates that Hilty showed "draft versions" of her articles to Sheboygan Mayor Ryan Sorenson and Sheboygan Area School District President Mary Donohue to "make sure that her statements would be sufficient to incite 'public outcry' and convince the 'swing vote' Council members that Mr. Wolf was 'so dumb,' incompetent and needed to be fired." (Am. Compl. ¶ 117.) Wolf also alleges, without any factual support, that Hilty met with Sorenson "almost every week" in November 2022 and communicated via private messaging apps on their phones. (Am. Compl. ¶ 182.) And finally, Wolf theorizes that Sorenson told Hilty to publish an article with false information. (Am. Compl. ¶ 177.) In sum, all that Wolf alleges in his amended complaint is that Hilty performed her job by pursuing sources, confirming quotes and reporting on a local political controversy – if those actions amounted to a conspiracy, all journalists would be exposed to such claims by aggrieved public officials.

# STANDARD

To survive a motion to dismiss, a complaint must state a claim for relief that is plausible on its face. *Park Pet Shop, Inc. v. City of Chi.*, 872 F.3d 495, 499 (7th Cir. 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads **_factual content_** that allows the court to draw the reasonable inference that the defendant is liable' as alleged in the complaint." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (emphasis added). "[B]are allegation[s] of conspiracy [are] not enough to survive a motion to dismiss for failure to state a claim." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). The Court need not accept conclusory allegations as true for purposes of this motion. *Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334 (7th Cir. 2015) (citation omitted) (holding that "allegations in the form of legal conclusions are insufficient" to survive a motion to dismiss.) *See also McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Nor does the Court need to accept wildly speculative allegations as to defendants' purported activities that Wolf alleges evidence Hilty's participation in a conspiracy to violate his constitutional due process rights. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011) ("[If] some of the plaintiff's factual allegations are unrealistic or nonsensical and others not, some contradict others, and some are "speculative" in the sense of implausible and ungrounded[, t]he district court has to consider all these features of a complaint en route to deciding whether the complaint has enough substance to warrant putting the defendant to the expense of discovery.")

# ARGUMENT

## I. Wolf's § 1983 Claim Against Hilty Fails as a Matter of Law.

A newspaper reporter is not a state actor and cannot be held liable under § 1983 for publishing the news. *See Chi. Joint Bd., Amalgamated Clothing Workers of Am., AFL-CIO v. Chi. Trib. Co.*, 435 F.2d 470, 474 (7th Cir. 1970). As the Seventh Circuit has made clear:

> [T]he function of the press from the days the Constitution was written to the present time has never been conceived as anything but a private enterprise, free and independent of government control and supervision. Rather than state power and participation pervading the operation of the press, the news media and the government have had a history of disassociation.

*Id.; see Wellman v. Williamson Daily News, Inc.*, 582 F. Supp. 1526, 1527 (S.D. W. Va. 1984) and *Skinner v. Dwyer*, No. 91-CV-238, 1992 WL 265995, at *2 (N.D. N.Y. Sept. 9, 1992).

Here, the news media (Hilty) and the government (City of Sheboygan) are disassociated and, therefore, when pleading a § 1983 conspiracy claim involving a private individual, like Hilty, Wolf must allege "that: (1) a state official and [Hilty] reached an understanding to deprive [him] of his constitutional rights; and (2) those individual(s) were '***willful participants*** in joint activity with the State or its agents.'" *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citation omitted) (emphasis added). "The purpose of § 1983 is to deter state actors, and private individuals in collaboration with state officials, from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution." *Id*. (citation omitted).

To state a § 1983 conspiracy claim against Hilty, Wolf must demonstrate that his alleged deprivation of a constitutional right resulted from Hilty acting under color of law. *Id.*; *see Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir 2019). "For an individual to act under color of law, there must be evidence of a *concerted effort* between a state actor and that individual." *Fries*, 146 F.3d at 457 (emphasis in original) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152

(1970)).  Here, Wolf's amended complaint fails to include any **_factual content_** that would allow the Court to draw a reasonable inference that Hilty reached an understanding with city officials to deprive Wolf of his constitutional rights or that she was a willful participant in such a scheme. Nowhere in the amended complaint does Wolf allege that Hilty exploited a "badge of authority" to deprive him of his constitutional rights.  Instead, he complains of how she pursued him as a source for her stories – again, those pursuits do not evidence conspiratorial conduct.

Nor are Wolf's grievances with Hilty's investigation as a journalist and conclusory allegations that she was motivated to create public outcry sufficient to state a claim.  Wolf's original complaint alleged that Defendants "devised a single agreement in September 2022 to frame Mr. Wolf for leaking confidential information and inciting a 'public outcry' and fabricating false 'cause' to remove him as City Administrator with eight Council votes." (Dkt. 1, Compl. Claim Four ¶ 8.) He alleged that Hilty was one of the private citizens who acted, "in conjunction with the City official defendants to deprive Mr. Wolf of his clearly established due process rights to liberty and property." (*Id*., Compl. Claim Four ¶ 32.)  Absent from Wolf's conspiracy theory are allegations as to how, by doing her job, Hilty agreed to deprive Wolf of his constitutional rights.  Mere allegations of joint action or a conspiracy *do not* demonstrate that Hilty acted under color of state law and are not sufficient to survive a motion to dismiss.  *See Fries*, 146 F.3d at 458; *see also Carpets by Carload, Inc. v. Warren,* 368 F. Supp. 1075, 1079 (E.D. Wis. 1973) (concluding that a state actor's notification of a matter of public record and interest to a newspaper does not constitute "state action" or a "conspiracy" for purposes of § 1983) and *Thomas v. City of New York*, No. 17-cv-06079, 2018 WL 5791965, at *14 (E.D. N.Y. Nov. 5, 2018) (citation omitted) ("It is well-established that 'actions by journalists in publishing a newspaper article do not constitute the requisite "state action" to support state action claims.'")

7

Case 2:23-cv-00149-WED   Filed 05/02/23   Page 7 of 16   Document 41

To be clear, Wolf's new allegations, made in a futile effort to plead around the fact that actions by journalists in publishing newspaper articles do not constitute the requisite "state action" to support a § 1983 claim against a private citizen, are conclusory, speculative, and fail to reference any supportive factual content. For instance, Wolf now alleges in his amended complaint that:

- Individually and in his official capacity, Sorenson directly participated by . . . telling Hilty to publish false information that Mr. Wolf disclosed 'confidential information' about Pelishek and Rendall to her in September so that he could show Hall and Council there was 'cause' to fire Mr. Wolf under the *Confidential Information* policy. (Am. Compl. ¶ 368.)

- Hilty acted under color of law by agreeing with Sorenson and Donohue in November 2022 to publish false information that Hall could use as 'evidence' for her 'investigation' against Mr. Wolf to convince eight members of the Council to fire Mr. Wolf for violating the *Leave Directives*, *Confidential Information* Policy, and *False Statements* Ordinance. (Am. Compl. ¶ 370.)

- Hilty willfully participated with Sorenson by attempting to entice Mr. Wolf to comment on his Confidential Email, meeting every week with Sorenson and communicating with him through private chats in November 2022, and then publishing her December 16 article that falsely stated *Mr. Wolf* disclosed Pelishek's name and the August 22 slur incident for her October 'slur articles,' so that Sorenson could immediately send her December 16 article to Hall to use as 'evidence' that there was cause to fire Mr. Wolf for disclosing 'confidential information.' (Am. Compl. ¶ 371.)

Wolf provides no factual support whatsoever for his allegation that Sorenson told Hilty to publish false information about Wolf. Nor does he or can he support his allegation that Hilty agreed to publish false information that the city's outside counsel could use in her investigation of Wolf. Moreover, Wolf's allegation that Hilty met with Sorenson every week in November 2022 and communicated with him through private chats is not tethered to any factual content and, therefore, should be disregarded by the Court. *See Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (citations omitted) (noting that federal courts need not entertain claims "if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' 'wholly insubstantial,'

8

'obviously frivolous,' 'plainly unsubstantial,' or 'no longer open to discussion.'") Regardless, even if the allegation were true, frequent communications with a source are not evidence of a conspiracy.

Wolf's conclusory allegation that Hilty "willfully participated with Sorenson" to interview Wolf in a way that would lead to a "for cause" dismissal is also nonsensical. (Am. Compl. ¶ 371.) He alleges that Hilty attempted to have Wolf provide her with a statement so that Sorenson would have "evidence" that supported a "for cause" dismissal for disclosing confidential information. (*Id.*) However, under Wolf's theory, any such agreement would have comported with Wolf's procedural due process rights because a "for cause" termination would have necessitated a hearing. Completely absent from Wolf's amended complaint is any allegation that Hilty somehow willfully participated in an agreement with city officials to report on the local controversy in a way that would lead to Wolf's dismissal *without* cause. Accordingly, Wolf's § 1983 claim against Hilty must be dismissed because he fails to allege that she willfully participated in a conspiracy to violate his due process rights. *See Atkins*, 631 F.3d at 832.

While Wolf describes how Hilty sought and conducted interviews and reviewed source material for multiple articles that she wrote about the city's investigation into his conduct, there is no factual content in his amended complaint demonstrating "the existence of any joint action, concerted effort, or even a general understanding" between city officials and Hilty. *See Fries*, 146 F.3d at 458; *see also Loveland v. Centinario*, No. 10-CV-811, 2010 WL 4103008, at *2 (E.D. Wis. Oct. 18, 2010) (citation omitted) (dismissing § 1983 conspiracy claim because the complaint consisted of "nothing more than 'mere allegations' of conspiracy and nothing to indicate 'joint action, concerted effort, or even a general understanding'" between state actor and

9

private citizen). Again, Wolf simply alleges that Hilty did her job by investigating, talking to sources, and writing articles about local government issues.

In addition, as with his initial complaint, many of the amended complaint's allegations that defendants reached an understanding to deprive him of his constitutional rights are pled "on information and belief." (*See* Am. Compl. ¶¶ 173, 177, 181-182, 188). And Wolf's apparent suspicion of Hilty's journalistic motives is based on his allegation that she has used her platform to advocate for DEIB financing and ideologies. (Am. Compl. ¶ 18.) Hilty's motives and ideologies are completely irrelevant. Further, "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her [is] not enough" to state a claim. *Cooney*, 583 F.3d at 971. Instead, allegations of a conspiracy "must further be supported by some factual allegations suggesting such a 'meeting of the minds.'" *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206 (7th Cir. 1980) (citation omitted). Wolf's amended complaint is void of any factual allegations suggesting that there was any "meeting of the minds" between Hilty and city officials to violate his constitutional rights.

Wolf also alleges that, "[o]n information and belief, Hilty showed 'draft versions' of her article to the DEIB leaders, Rendall, Donohue, and Sorenson prior to publication to make sure that her statements would be sufficient to incite 'public outcry,' and convince the 'swing vote' Council members that Mr. Wolf was 'so dumb,' incompetent and needed to be fired." (Am. Compl. ¶ 117.) Even taken as true, a newspaper reporter confirming the accuracy of a quote in an article does not evidence a conspiracy. Wolf then alleges, "[o]n information and belief, on November 29, Hilty attempted to entice Mr. Wolf and his attorney by sending a single-spaced two-page list of 'questions' for her upcoming article asking 'what evidence' Mr. Wolf had against the DEIB and city officials so that she could publish the DEIB leader and Rendall's

10

names blaming Mr. Wolf for disclosing that information." (Am. Compl. ¶ 184.) Again, this alleged conduct is consistent with a newspaper reporter requesting comment from the subject of a story and falls far short of plausibly alleging that Hilty willfully participated in a conspiracy to violate Wolf's due process rights. Here, the notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

In the end, when stripped of the conclusory, speculative, and "upon information and belief" allegations against Hilty, the amended complaint, as it pertains to Hilty, is reduced to a recount of how Hilty simply did her job. Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient to survive a motion to dismiss. *Flores v. United Airlines*, No. 18 C 6571, 2021 WL 843415, at *2 (N.D. Ill. Mar. 5, 2021.) Hilty's reporting on a public controversy does not evidence a reaching of "an understanding [with state officials] to deprive the plaintiff of his constitutional rights" nor that Hilty was a "willful participant in joint activity with the State or its agents.'" *Fries*, 146 F.3d at 457. The Northern District of New York's decision in *Skinner v. Dwyer* is instructive. In *Skinner*, plaintiff alleged a newspaper and local law enforcement official conspired to violate his constitutional rights by releasing the details of a grand jury investigation to the public. 1992 WL 265995, at *1. In support of his allegation of conspiracy, the plaintiff cited three newspaper articles reporting on his arrest and indictment for robbery. *Id.* The *Skinner* court made clear that "[a] newspaper does not act under color of law when it publishes news received from police or other state officials." *Id.* at *2. The court held that "a plaintiff's conclusory allegation that a nonstate actor conspired with a state actor does not suffice to state a section 1983 violation." *Id.*

> Publishing news reports about state criminal prosecutions, based on sources connected with the police or prosecutors, is a routine practice of all news organizations. Such reports are not published 'under color of law.' To hold otherwise [based on such bald assertions] would be to declare all news outlets

11

state actors and to justify section 1983 actions by criminal defendants whenever there has been pretrial publicity of any sort or content.

*Id.* (citation omitted); *see Leise v. Vt. Hum. Rts. Comm'n*, No. 22-cv-00009, 2023 WL 2633341, at *25 (D. Vt. Mar. 24, 2023) (dismissing § 1983 conspiracy claim against newspaper because complaint included mere conclusory allegation that newspaper acted in concert with state actor.)

The same reasoning applies here. Publishing news stories about a local political controversy, based on public and private sources and source material, is a routine practice of local news coverage. It is not a constitutional violation. It is the job of a reporter. Hilty's articles were not published "under color of law." To hold otherwise, based on Wolf's conclusory allegations, would be to declare nearly all news outlets are state actors and to justify § 1983 actions against journalists by aggrieved public officials whenever they challenge an adverse employment action that received coverage in the news media. Based on the allegations in Wolf's complaint, there is no conceivable set of facts under which Hilty could have been acting under color of law and, therefore, Wolf's conspiracy claim against her must be dismissed.

## II. Wolf's Civil Conspiracy Claim Against Hilty Also Fails as a Matter of Law.

Wolf's amended complaint adds a claim for civil conspiracy in violation of Wisconsin state law. To properly plead a cause of action for civil conspiracy, a "complaint must allege: (1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *Onderdonk v. Lamb*, 79 Wis. 2d 241, 247, 255 N.W.2d 507 (1977). In addition, "[u]nder Wisconsin law, a claim for civil conspiracy also requires an underlying tort to be actionable." *Fabick, Inc. v. FABCO Equip., Inc.*, No. 16-cv-172, 2017 WL 2465185, at *5 (W.D. Wis. June 7, 2017). In order to prove a conspiracy under Wisconsin law, "there must be facts that show some agreement, explicit or otherwise, between the alleged conspirators on the common end sought and some cooperation toward the attainment

12

of that end." *Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, ¶ 168, 285 Wis. 2d 236, 701 N.W.2d 523 (citation omitted). As with his § 1983 claim against Hilty, Wolf's civil conspiracy claim falls short of these requirements and must be dismissed.

Wolf's conclusory and speculative allegations against Hilty include:

- Hilty joined this agreement with Donohue and Sorenson on September 16, 2022, when she agreed to scare Mr. Wolf through an interview into writing an article harassing Pelishek as a 'racist' to force him to pay the DEIB leaders as consultants to allocate city resources. (Am. Compl. ¶ 425).

- In furtherance of this agreement, when Mr. Wolf rejected the DEIB threats for money in October, Hilty published a series of misleading and inflammatory articles that she showed Sorenson, Rendall, and Donohue first for approval, and falsely stated that Mr. Wolf was enabling pervasive 'racism' in the city because of the 'slur incident' while using Mr. Wolf's photo online as the face of her article 'City Leader Uses Racial Slur'— which was false. (Am. Compl. ¶ 426).[2]

- Hilty acted out of an irrational desire to destroy Mr. Wolf's reputation by joining Donohue and Sorenson's civil conspiracy and acted intentionally to further their objectives to get Sorenson power for DEIB funding by fabricating false information for Hall and the Council to use against Mr. Wolf to remove him. (Am. Compl. ¶ 427).

- The respective, joint, and concerted actions of Donohue, Sorenson, and Hilty in furtherance of their plan severely injured Mr. Wolf's credibility, employment, and reputation in the community and throughout the nation. (Am. Compl. ¶ 428).

- The co-conspirator Defendants' unlawful actions in a single common objective to cast Mr. Wolf publicly as failing in his position, dangerous, and retaliatory for DEI funding formed the basis of a civil conspiracy that severely and substantially injured Mr. Wolf. (Am. Compl. ¶ 429).

Simply put, these conclusory allegations are not plausible on their face as they do not include enough factual support to make an inference of an agreement among the defendants. *See Twombly*, 550 U.S. at 556-57, 564-65 & n.9 (concluding that allegations of "parallel conduct and a bare assertion of conspiracy will not suffice" nor will legal conclusions that defendants

---

[2] While paragraph 426 of the amended complaint alleges that the article's headline read, "City Leader Uses Racial Slur," the actual headline reads, "Sheboygan leader uses racist slur in meeting, then city administrator's response raises more concerns." (Am. Compl. Exh. 4).

13

"engaged in a 'contract, combination or conspiracy'"). Wolf alleges that Hilty "joined this agreement with Donohue and Sorenson" and that she "agreed to scare Mr. Wolf." (Am. Compl. ¶ 425). Again, this is an assertion that the parties had an agreement, rather than an allegation of fact that "shows" that there was an agreement. *Mallett*, 2005 WI 129, ¶ 168. Similarly, Wolf's allegation that Hilty showed city officials her articles first for approval is both not supportive of a civil conspiracy claim and completely devoid of any supportive factual content.

Wolf's editorial comment that, "Hilty acted out of an irrational desire to destroy Mr. Wolf's reputation" also fails to support his claim. In reality, Wolf's amended complaint fails to plausibly allege that Hilty engaged in any wrongful acts. A wrongful act "must itself violate some recognized legal norm." *Gene Frederickson Trucking & Excavating, Inc. v. Wagner*, 2019 WI App 26, ¶ 13, 387 Wis. 2d 685, 928 N.W.2d 805 (unpublished). A government reporter reporting on the government does not. "A conspiracy is not, itself, a tort. It is the tort, and each tort, not the conspiracy, that is actionable." *Segall v. Hurwitz*, 114 Wis. 2d 471, 481, 339 N.W.2d 333 (Ct. App. 1983) (citation omitted). Here, Wolf's amended complaint fails to allege that Hilty engaged in in any tort; the only acts that Wolf does allege that Hilty engaged in were not wrongful. Rather, the actions Hilty is alleged to have participated in involved her pursuit of sources and reporting on local government events. Even if his allegations that Hilty "agreed to scare Mr. Wolf through an interview," and "published a series of misleading and inflammatory articles," were true (Am. Compl. ¶¶ 425-427), those acts did not violate a recognized legal norm and, therefore, cannot support a civil conspiracy claim.

As Hilty noted in her initial motion to dismiss, while Wolf has not brought a defamation claim against Hilty or the *Sheboygan Press*, Wisconsin provides newspapers and their reporters an absolute privilege in libel proceedings for the publication of "true and fair report[s]" of any

14

"public official proceeding." Wis. Stat. § 895.05(1). Hilty's reports on official meetings and Common Council investigations and votes would, thus, be absolutely privileged in a defamation action under Wisconsin law. Wolf would face additional hurdles in libel proceedings, as his status as a public official would require him to prove Hilty acted with "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Wolf cannot avoid these insurmountable legal hurdles by calling his claim civil conspiracy. In sum, as Wolf has failed to plausibly allege that Hilty engaged in any wrongful acts, his civil conspiracy claim fails as a matter of law.

### III. Wolf's Claims Against Hilty Should be Dismissed With Prejudice.

A plaintiff may amend his pleading once as a matter of course. Fed. R. Civ. P. 15. Future amendments are only permissible upon leave of court. Here, Wolf's amended complaint attempts to revive his claim against Hilty by supplementing his original complaint with new conclusory and speculative allegations and other allegations made "on information and belief." For the reasons stated above, Wolf's claims against Hilty should be dismissed because they do not plausibly state claims upon which relief may be granted. Unless and until Wolf provides the Court with a source of information beyond his own "information and belief," the Court should dismiss the claims against Hilty with prejudice. *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (citations omitted) ("An amendment is futile when it 'merely restates the same facts using different language, or reasserts a claim previously determined.' Similarly, an amendment may be futile when it fails to state a valid theory of liability or could not withstand a motion to dismiss.")

### CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff's claims against Hilty with prejudice.

Dated this 2nd day of May, 2023.

        GODFREY & KAHN, S.C.

        *s/Brian C. Spahn*
        Brian C. Spahn
        State Bar No. 1060080
        Mark Thomson
        State Bar No. 1120598

P.O. ADDRESS:
833 East Michigan
Milwaukee, WI 53202
Phone: 414-287-9314
Fax: 414-273-5198
bspahn@gklaw.com
mthomson@gklaw.com