TODD WOLF,

    Plaintiff,

v.                                                Case No. 23-CV-149

CITY OF SHEBOYGAN, ET AL.,

    Defendants.

## BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

### INTRODUCTION

Defendant Jill Pedigo Hall ("Hall") is one of fourteen defendants named by Plaintiff Todd Wolf ("Wolf") in a 68-page amended complaint that contains 467 numbered paragraphs and attaches 17 exhibits. Dkt. 36. The allegations contained in the amended complaint span the two-and-a-half years Wolf served as the City Administrator for the City of Sheboygan (July 27, 2020 to January 9, 2023). Only three of the amended complaint's ten causes of action are directed at Hall—two § 1983 claims that Hall (among others) violated Wolf's Fourteenth Amendment due process rights and a state law claim that Hall (among others) intentionally inflicted emotional distress on Wolf—in connection with her investigation of Wolf, for which she was retained by the City of Sheboygan in November 2022. *Id*. ¶¶ 359-395, 430-439. In light of the enormous breadth of the amended complaint and the extensive time period involved, Hall hereby moves the court to exercise its inherent authority to screen Wolf's amended complaint and dismiss it for Wolf's failure to comply with Federal Rules of Civil Procedure 8 and 20.

1

In the alternative, Hall moves the court to dismiss Wolf's amended complaint, pursuant to Federal Rule of Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Simply put, Wolf's claims against Hall fail because she is a private party who was not acting under color of state law with regard to her interaction with Wolf. Accordingly, she cannot be held liable under § 1983. Yet even if Hall were not a private actor, Wolf's cause of action against her would still fail because Wolf has not established an underlying violation of any constitutionally protected interest.

With regard to the new state-law claim set forth against her, Hall respectfully requests that the court decline to exercise supplemental jurisdiction once it dismisses the § 1983 claims set against her. *See Wright v. Associated Ins. Companies Inc*., 29 F.3d 1244, 1251 (7th Cir. 1994) (when all federal claims have been dismissed, the general practice in federal court is to decline to exercise supplemental jurisdiction over the related state-law claims).

## **RELEVANT ALLEGATIONS**

The allegations set forth against Hall in the amended complaint are, in pertinent part, as follows:

- "Defendant Jill Pedigo Hall ('Hall') is an attorney based in Madison, Wisconsin. Hall has known Defendant Donohue for over thirty (30) years. Hall was contracted by the Defendant city officials in Sheboygan, Wisconsin, to investigate Mr. Wolf on Donohue's request and authored a misleading 'report' that contained false information about Mr. Wolf. The injuries suffered by Mr. Wolf as a result of Hall's actions material to this complaint occurred in Sheboygan, Wisconsin." Am. Compl. ¶ 19.

- "Hall and Donohue have known each other for over thirty years." *Id*. ¶ 209.

- "On information and belief, Hall agreed with Donohue and Sorenson in November 2022 to conduct a biased investigation to deliver a report to the Common Council that would convince any swing Council votes to fire Mr. Wolf for 'cause.'" *Id*. ¶ 210.

- "On information and belief, during her investigation between mid-November and December 2022, Hall separated city employee witnesses into two categories: those who were 'supporters' of Mr. Wolf and those who did not support Mr. Wolf." *Id*. ¶ 211.

- "On information and belief, Hall learned from employee eyewitnesses and testimonies that Mr. Wolf told the truth about the DEIB lunch threats and about Rendall setting up Pelishek in order to harass him as 'racist' and clam 'retaliation for reporting racism' against Mr. Wolf." *Id*. ¶ 212.

- "On information and belief, Hall told employee witness [sic] they were not allowed to record her interview with him [sic] and were not allowed to take handwritten notes of her interview with them." *Id*. ¶ 213.

- "On information and belief, Hall refused to accept any evidence or records from city employees that she categorized as 'supporters' of Mr. Wolf." *Id*. ¶ 214.

- "Hall accepted emails and documentary evidence from Sorenson in December 2022 and did not prohibit Sorenson from providing her with documentary evidence." *Id*. ¶ 215.

- "On information and belief, Hall conducted all her interviews via video conference and not in person." *Id*. ¶ 216.

- "In December 2022, despite having conducted all her investigation interviews over video conference, Hall asked Mr. Wolf to drive from his home in Sheboygan to her office in Madison, Wisconsin for her interview with him." *Id*. ¶ 217.

- "When Mr. Wolf agreed to her conditions, Hall stated that she would conduct his interview over video conference." *Id*. ¶ 218.

- "On information and belief, Hall intended to claim that Mr. Wolf was 'not cooperative' with her investigation if he had refused the 4+ hour roundtrip drive to her Madison offices." *Id*. ¶ 219.

- "Hall's interview with Mr. Wolf was scheduled many days in advance for December 20, at 10:00 AM." *Id*. ¶ 220.

- "Hall did not allow nor offer for Mr. Wolf's attorney to be present at her interview with Mr. Wolf on December 20, and Hall knew that Mr. Wolf had not read Adams' December 20 investigation instructions letter when she started her interview with Mr. Wolf." *Id*. ¶ 221.

- "Hall interviewed Mr. Wolf in an interrogation-type prosecution manner for nearly five hours about endless facets of information without his attorney present and never once

3

told Mr. Wolf exactly what the charges or allegations were that she was 'investigating.'" *Id.* ¶ 222.

- "On information and belief, in late December, Hall told Donohue, Sorenson, and Adams that Mr. Wolf's testimony lined up with the employee witnesses and that Mr. Wolf would be fully exonerated to the Council if he and the employees were allowed to testify at a hearing." *Id.* ¶ 223.

- "On information and belief, Hall agreed to suggest to Council that there was 'cause' to fire Mr. Wolf but that allowing Mr. Wolf a hearing would be 'costly' and 'harmful' to the employees in an 'oral synopsis' so that the employees would not testify before Council." *Id.* ¶ 224.

- "On information and belief, as of the end of December 2022, Hall, Adams, Sorenson, and Donohue knew that eight members of the Common Council would not fire Mr. Wolf for 'cause,' or at all, if Mr. Wolf had a hearing with witnesses." *Id.* ¶ 226.

- "On January 4, 2023, Hall appeared via video conference to the Common Council, Adams, and Sorenson in closed session to provide an oral synopsis of her investigation conclusions ('oral synopsis')." *Id.* ¶ 227.

- "Hall stated that she discovered Mr. Wolf made false statements about DEIB lunch meeting with Guevara and Haack even though at least one employee eyewitness told her that Mr. Wolf's statements were true." *Id.* ¶ 228.

- "On information and belief, Hall told the Council there was 'cause' to fire Mr. Wolf for violating the Leave Directives, False Statements Policy, and Confidential Information Policy." *Id.* ¶ 229.

- "Hall concealed all exonerating information and witness testimony from the employee witnesses and made false statements that Mr. Wolf's account of the DEI lunch was 'not credible.'" *Id.* ¶ 230.

- "In her January 4 'oral synopsis,' Hall told the Council that a hearing for Mr. Wolf would be 'costly' to the city and harmful for the employees' wellbeing." *Id.* ¶ 231.

- "Based on Hall's 'oral synopsis,' the eight Defendant Alderpersons decided there was cause to fire Mr. Wolf." *Id.* ¶ 232.

- On January 9, 2023, the eight Defendant Alderpersons voted to remove Mr. Wolf as City Administrator based on Hall's 'investigation' without giving Mr. Wolf any notice of the charges, allegations, or a single hearing opportunity." *Id.* ¶ 238.

Based on these allegations, Wolf now brings two § 1983 claims against Hall—in addition to almost all of the co-defendants—for "violation of Mr. Wolf's 14th Amendment Proceudral Due

4

Process Rights (Property)" ("Claim Five") and "violation of Mr. Wolf's 14th Amendment Due Process Liberty Rights" ("Claim Six"). *Id.* ¶¶ 359-395. In support of this claim, Wolf sets forth additional allegations in which Hall is named, as follows:

- "Hall acted under color of law by agreeing with Donohue and Sorenson in November 2022 to conduct a biased witch hunt investigation, conceal exonerating information, and convince any Council 'swing votes' to fire and remove Mr. Wolf." *Id.* ¶ 373.

- "Hall willfully participated with Sorenson, Adams, and Donohue to separate employees by 'supporters' of Mr. Wolf, conceal their testimonies from the Council, and then, when Hall realized that a hearing with employee witnesses would fully exonerate Mr. Wolf, Hall told the Council in her 'oral synopsis' that a hearing would be 'costly' and hard on employees so that Sorenson and Adams could convince Council to fire Mr. Wolf without cause or a hearing." *Id.* ¶ 374.

- "The joint and combined actions of the Defendants to conduct a biased sham investigation and then specifically deny Mr. Wolf a hearing or any notice of the actual charges against him caused the deprivation of Mr. Wolf's procedural due process property rights." *Id.* ¶ 375.

- "Individually and in his official capacity, Adams directly participated by authorizing the public release of Hall's February 6 'investigation' report one month after Mr. Wolf had been publicly fired without any hearing based solely on Hall's investigation stating that Mr. Wolf made 'false statements' about the DEIB leaders." *Id.* ¶ 387.

- "Adams acted maliciously and with reckless disregard for Mr. Wolf's liberty rights when he immediately authorized the full public release of Hall's final report two days after a public announcement was posted that Mr. Wolf was a finalist for another City Manager position." *Id.* ¶ 388.

- "Hall acted under color of law by agreeing with Donohue and Sorenson in January 2023 to draft a 'final report' about her sham 'investigation' that the city Defendants could immediately authorize for release to the public without any draft or preliminary report to Mr. Wolf." *Id.* ¶ 390.

- "Hall willfully participated with Sorenson and Adams by drafting and sending her report on February 6, 2023, that stated false and stigmatizing information that Mr. Wolf was retaliatory and harassing against female employees, repeatedly dishonest, and committed violations of policies." *Id.* ¶ 391.

- "Hall acted maliciously and with callous disregard for Mr. Wolf's liberty rights because Hall knew, or should have known, that Mr. Wolf was publicly fired solely based on her 'investigation,' that Mr. Wolf was denied a name clearing hearing opportunity prior to his firing, and that Sorenson publicly stated on January 10 he intended to immediately release Hall's report to the public in conjunction with Mr. Wolf's firing." *Id.* ¶ 392.

- "As a direct result of the Defendants statements, public releases, and combined acts of the Defendants, Mr. Wolf's Fourteenth Amendment liberty rights were violated, and he has lost multiple employment opportunities in his chosen field—now even being denied employment in the private sector." *Id.* ¶ 393.

- "The Defendants' joint actions and conduct under color of law all caused the violation of Mr. Wolf's Fourteenth Amendment liberty rights." *Id.* ¶ 394.

- "The Defendants conduct and actions have caused Mr. Wolf to suffer severe financial and emotional damages and inability to find any profession in his chosen field." *Id.* ¶ 395.

Wolf also brings a state law claim against Hall—in addition to co-defendants Donohue and Sorenson—for intentional infliction of emotional distress. *Id.* ¶¶ 430-439. In support of this claim, Wolf sets forth additional allegations against Hall, as follows:

- "Hall engaged in extreme and outrageous conduct by using her internal 'investigation' to conduct a five-hour 'interrogation' of Mr. Wolf without his attorney present, refusing to ever once tell Mr. Wolf exactly what she was investigating, knowing Mr. Wolf had no knowledge of the 'charges' she was investigating, and then intentionally concealing and falsifying employee witness evidence in her 'oral synopsis' and 'final report' so that the city officials could 'immediately' publish that Mr. Wolf was harassing and retaliating against Rendall, a habitual liar, and guilty of multiple policy and ethical violations as City Administrator—all based on knowing and intentional false information." *Id.* ¶ 437.

- "Hall intended to cause Mr. Wolf severe emotional distress in December when she interrogated him for five hours about statements of his attorney, when she intentionally falsified witness information to force him to lash out against employees or suffer a breakdown from believing they lied about him, and then again intended to cause him emotional distress when she authored and released her 'final report' for the city to immediately release to the public that would cause him to be hated and ridiculed by citizens based on her false statements—all hoping that Mr. Wolf's emotional breakdown would make him seem 'unstable' in any claim he may have against her---a longtime 'attorney.'" *Id.* ¶ 438.

6

- "The emotional distress that Mr. Wolf has suffered because of the named Defendants' extreme and outrageous conduct has been physically and mentally debilitating causing Mr. Wolf to cease his prior engagements in different commissions, lose friends and colleagues, unable to engage in public events for fear of harassment and blame as dangerous and a liar, all of which have cause physical ailments to his body that have required continual and lasting psychological and physical medical attention." *Id*. ¶ 439.

## **LEGAL STANDARD**

Fed. R. Civ. P. 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court has the discretion to screen Wolf's amended complaint as an exercise of its inherent authority to manage its cases. *Gintner v. Schira*, No. 21-cv-224-wmc, 2021 WL 3418960, at *1 (W.D. Wis. Aug. 5, 2021) (citing *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999)).

Fed. R. Civ. P. 20 provides that defendants can be joined together in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). The Court has "considerable discretion" and "flexibility" in applying this rule and determining whether the amended complaint contains plausible allegations to satisfy them. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018).

To survive a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the amended complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Fosnight v. Jones*, 41 F.4th 916, 921-22 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 922 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that

7

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). "The '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [the] presumption of truth." *Id.*; *see also Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 794 (7th Cir. 2013) (legal conclusions couched as factual allegations).

## ARGUMENT

### I. The Amended Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 8

The Court should screen and dismiss the amended complaint because its failure to comply with the Federal Rules of Civil Procedure is readily apparent. Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8 is to provide the court and the defendants fair notice of the nature of the plaintiff's claims. *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 775 (7th Cir. 1994). Neither the court nor the defendants should be forced "to forever sift through [the complaint's] pages in search of [an] understanding" of the nature of the plaintiff's claims. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990).

Here, Wolf's amended complaint plainly fails to satisfy this requirement. At 467 numbered paragraphs spread over 68 pages—and attaching 17 exhibits—containing vague and conclusory allegations of conduct involving fourteen defendants (including both public and private actors) over a two-plus year period, the amended complaint is precisely the type of "prolix and confusing complaint" that warrants dismissal to avoid the needless expenditure of resources by defendants and the court. *Vicom*, 20 F.3d at 776. Indeed, most of Plaintiff's allegations regarding Ms. Hall are based on nothing more than "information and belief." *See supra*. Simply put, "[i]f plaintiff

8

has nothing on which [he] can base a clear and direct allegation that [he] has suffered an injury, this litigation is grounded on pure speculation, something that *Twombly* . . . and *Iqbal* . . . prohibit, based not on Rule 9(b) but on Rule 8." *Brickstructures, Inc. v. Coaster Dynamix, Inc,* No.16-CV-10969, 2017 WL 4310671, at *4 (Sept. 28, 2017*).* *See also Phoenix Entm't. Partners, LLC v. Orlando Beer Garden, Inc*., No. 6:16-cv-80-Orl-31DAB, 2016 WL 1567590, at *5 (M.D. Fla. Mar. 30, 2016) ("allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard," citing *In re Superior Air Parts, Inc*., 486 B.R. 728, 741 (Bankr. N.D. Tex. 2012)); *Carson Optical, Inc. v. Prym Consumer USA, Inc*., 11 F. Supp. 3d 317, 344 (E.D.N.Y. 2014) ("plaintiff's cursory reference to consumer surveys 'based upon information and belief' that the average consumer 'would' associate the enumerated feature as coming from a single source is speculative and insufficient to support an inference of secondary meaning"). Accordingly, the amended complaint should be dismissed on this basis alone.

**II. The Amended Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 20**

The Court has "considerable discretion" and "flexibility" in applying Rule 20 and determining whether the amended complaint contains plausible allegations to satisfy them. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) (noting that district courts have "considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes"). But this flexibility is not unlimited. The Seventh Circuit has emphasized that "[u]nrelated claims against different defendants belong in different suits." *Id*. (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). Here, the ensuing discovery and variety of defenses set forth by the fourteen defendants alone would prove unwieldy for a single case. *See Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Assocs Identified on Schedule A*, 334 F.R.D. 182, 189–90 (N.D. Ill. 2020) ("Rule 20(a)'s purpose of promoting judicial economy and trial convenience would not be served by allowing the number of defendants in this case because the

9

ensuing discovery and variety of defenses could prove unwieldy for a single case.") (citation omitted)).

In his amended complaint, Wolf has improperly lumped together all of his claims against fourteen defendants (regarding events and conduct spanning two-plus years) and has failed to allege coordinated action—beyond sheer speculation (*i.e.*, "information and belief")—between them and Hall, or any right to relief that arises out of the same transaction or occurrence or series of transactions or occurrences. Simply put, Plaintiff does not allege any readily apparent connection between Hall and the other defendants over that extensive time period that would suggest that Hall, as a private actor, was acting under "the color of law." "Most courts agree that, in general, 'simply committing the same type of violation in the same way does not link defendants together for the purposes of joinder.'" *Bose Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule "A"*, 334 F.R.D. 511, 514 (N.D. Ill. 2020) (quoting *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014)); *see also McDowell v. Morgan Stanley & Co., Inc.*, 645 F. Supp. 2d 690, 697 (N.D. Ill. 2009) ("One or more defendants' similar conduct, without anything more, does not rise to a sufficient level that would justify joining those defendants in a single action pursuant to Rule 20.") (citations omitted)); *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) (Rule 20 "requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts."). Here, Hall and the defendants' alleged actions cannot be reasonably viewed as arising out of the same transaction or occurrence or raising common issues of law or fact between them. Indeed, Hall was not even retained by the City of Sheboygan to investigate Wolf until November 2022. Am. Compl. ¶ 211.

Although Fed. R. Civ. P. 21 states "[m]isjoinder of parties is not a ground for dismissing an action," it does not say that misjoinder is not a ground for dismissing a complaint against a

single defendant. Fed. R. Civ. P. 21; *see also Lovell*, 888 F.3d at 863 ("The proper remedy for violations of Rules 18 and 20 is severance or dismissal without prejudice, not dismissal with prejudice."). The Rule provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Here, the Court should exercise its discretion to dismiss Hall.

### III. The Amended Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)

Wolf's amended complaint should be dismissed against Hall because Hall is a private actor. Section 1983 "provides a right of action for constitutional deprivations that occur 'under color of' state law." *Alarm Detection Systems, Inc. v. Village of Schaumburg*, 930 F.3d 812, 825 (7th Cir. 2019). "The under-color-of-state-law element means that § 1983 does not permit suits based on private conduct, no matter how discriminatory or wrongful." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (internal quotation marks and citation omitted). "Thus, private actors . . . cannot usually be sued under § 1983." *Alarm Detection Systems, Inc.*, 930 F.3d at 825.

Here, Hall is a private actor who cannot be sued under § 1983. Specifically, the allegations in the amended complaint establish that Hall, at all relevant times, was a private attorney at an outside law firm. Am. Compl. ¶ 19; *see also id.*, Exhibit 15 (February 6, 2023 legal memorandum detailing the City of Sheboygan's retention of von Briesen & Roper and Hall). It is well-established that private attorneys who merely advise public entities are not acting under color of state law for purposes of a section 1983 lawsuit. *See, e.g., Raines v. Indianapolis Public Schools*, 52 F. App'x 828, 830 (7th Cir. 2002); *Dyer v. Maryland State Bd. of Educ.*, 187 F. Supp. 3d 599, 614-16 (D. Md. 2016) (collecting cases and rejecting § 1983 claim by a former member of a board against attorneys who performed legal services in connection with the removal); *see also Brady v. Somersworth Sch. Dist., Sch. Bd.*, No. 16-cv-069- JD, 2016 WL 3248247, at *3 (D.N.H. June 13, 2016) (collecting cases).

11

Although a private citizen can theoretically act under color of law pursuant to a "conspiracy theory" of § 1983 liability, *Spiegel*, 916 F.3d at 616, such a theory of liability is not set forth in the amended complaint. Indeed, Plaintiff chose to remove any of the federal conspiracy claims in the amended complaint that had been set forth against Hall in the original complaint.[1]

Nevertheless, Wolf still seems to take issue with how Hall interviewed him on December 20, 2022, how she orally reported her preliminary findings to the Common Council in closed session on January 4, 2023, and how she drafted and submitted her investigative report. However, none of the alleged acts (not otherwise based "on information and belief") by Hall demonstrate an understanding or purpose of depriving Wolf of his constitutional rights. Rather, they reflect acts that one would expect from outside counsel who is conducting an investigation for a Wisconsin municipality. There are no allegations in the amended complaint that suffice to establish that Hall can be liable under § 1983.

Wolf's only substantive factual allegations are that Hall knew defendant Donohue for approximately thirty years, that she interviewed Wolf without his lawyer present, that she orally reported her preliminary findings to the Common Council in closed session on January 4, 2023 and that she submitted a final report on February 6, 2023. Again, these factual allegations do not demonstrate any actions by Hall that would cross the line from a private attorney acting on behalf of a municipal client to a state actor who would deprive Wolf of his constitutional rights. The allegations in the amended complaint establish only that, as an outside attorney, she provided legal advice in closed session that Wolf claims impacted his termination. This is not evidence of Hall's

---

[1] On April 26, 2023, the Court dismissed Hall's motion to dismiss as moot because Wolf filed his amended complaint. To the extent that the amended complaint contains many of the same general allegations suggesting Hall engaged in some type of conspiratorial conduct, she incorporates by reference in the present motion to dismiss her prior arguments (*see* Dkt. 31-32) as to why any such § 1983 conspiratorial claims fail as a matter of law.

intent to deprive Wolf of his constitutional rights; concluding thus would convert every outside lawyer to a public entity into a state actor for purposes of § 1983 claims. That, of course, is not the law. *See generally Dyer*, 187 F. Supp. 3d at 614-16. In sum, the amended complaint fails to include factual allegations that make it plausible Hall—a private actor—can be held liable under § 1983. For this reason, Hall's § 1983 claims against Hall must be dismissed.

Indeed, even if Hall was not a private actor, Wolf's amended complaint would still fail because Wolf did not even have a constitutionally protected interest in his employment. Nor can Wolf establish a constitutional violation regarding injury to his reputation. These two arguments are addressed below, in turn.

### A. Wolf's Alleged Constitutionally Protected Interest (Employment)

For a public employee to demonstrate a cognizable constitutional interest in employment, the employee "must be able to show . . . some legitimate expectation of continued employment." *Meade v. Moraine Valley Community College*, 770 F.3d 680, 686 (7th Cir. 2014). "In the employment context, a plaintiff generally is required to show that the terms of his employment provide for termination only 'for cause' or otherwise evince 'mutually explicit understandings' of continued employment." *Cole v. Milwaukee Area Technical College Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). Such an expectation arises via contractual language limiting the employer's discretion to fire the employee. *Meade*, 770 F.3d at 686. Here, however, Wolf's contract with the City of Sheboygan establishes that his employment was discretionary and that he served at the pleasure of the Common Council: "For the purpose of this agreement, termination shall occur: . . . If 80% of the City Council votes to terminate Employee in accordance with a properly posted and duly authorized public meeting." Am. Compl., Ex. 3 at ¶ 12(a). There is no "for cause" requirement contained in Wolf's employment agreement; moreover, Wolf readily concedes that eight of the ten

13

Case 2:23-cv-00149-WED   Filed 05/02/23   Page 13 of 18   Document 43

City Council members voted to terminate him, which is consistent with proper termination under the agreement. *See, e.g.,* Am. Compl. ¶ 238. The employment agreement's severance provisions further demonstrate that the Common Council could terminate Wolf without cause, as it separately contemplates the type of severance due ***if*** termination is "for cause," rather than without cause. Am. Compl., Ex. 3 at ¶ 13(e) ("***If*** the Employee is terminated for cause . . . ") (emphasis added). Accordingly, under the explicit terms of his employment agreement, Wolf had no cognizable property interest in his continued employment with the City and has not been deprived of a constitutionally protected interest. *See Covell v. Menkis*, 595 F.3d 673, 677 (7th Cir. 2010).

### B. Wolf's Alleged Constitutionally Protected Interest (Reputation)

Wolf also alleges a constitutional violation with regard to speculative injuries to his reputation. *See, e.g.,* Am. Compl. ¶¶ 281-282, 379-380. In particular, he claims he was the subject of "stigmatizing information." *See, e.g.*, *id*. ¶ 391. However, Hall is not even alleged to have had any role in the information disclosed regarding Wolf during or following Wolf's termination. For this reason alone, the claim against Hall must fail. However, even if Hall was alleged to have disclosed alleged "stigamatizing" information to the public, the claim would still fail for the following reasons.

Wolf's claim regarding his reputation is what is known as an occupational liberty claim. To prevail on such a claim, a plaintiff must meet what is known as the "stigma plus" test. This test requires a plaintiff "to show that the state inflicted reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held." *Doe v. Purdue University*, 928 F.3d 652, 661 (7th Cir. 2019). To allege such a claim, "a plaintiff must plead that (1) the defendant made stigmatizing comments about him; (2) those comments were publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public

disclosure." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010). Finally, the alleged stigmatizing statements must be uttered incident to an adverse employment action, such as a termination of employment, taken against the plaintiff. *See, e.g., Goecks v. Pedley*, 732 F. Supp. 2d 828, 832-33 (W.D. Wis. 2010).

With respect to the first element, it "requires the employee to show that a public official made defamatory statements about him." *Strasburger v. Board of Education, Hardin County Community Unit School District No. 1*, 143 F.3d 351, 356 (7th Cir. 1998). "These statements must be false assertions of fact." *Id*. This element is not satisfied by "[t]rue but stigmatizing statements" or by statements of opinion, even stigmatizing ones, so long as they do not imply false facts." *Id*. The statements must also come from the mouth of a public official. *Id*.

With respect to the second element, "[t]he public-disclosure element requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large." *Palka*, 623 F.3d at 454; *see also Covell*, 595 F.3d at 678 ("[S]tatements made to employees within a department are not considered public dissemination.").

With respect to the third element, a plaintiff must show that the stigmatizing comments resulted in the blacklisting of the plaintiff from employment in comparable jobs and "make it virtually impossible for the [plaintiff] to find new employment in his chosen field." *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001). A complaint must contain allegations sufficient to draw the reasonable inference the employee "has suffered a tangible loss of other employment opportunities." *Id*. at 671.

### 1. Wolf has not alleged a tangible loss of other employment opportunities.

This Court should dismiss Wolf's occupational liberty claim because the amended complaint does not allege any facts that allow for the inference that Wolf has suffered a tangible loss of other employment opportunities as a result of any publicly disclosed stigmatizing comments. Indeed, the amended complaint lacks any specific allegations that Wolf has been turned down for employment due to the alleged stigmatizing statements made by any of the defendants. At most, he only vaguely alleges that he was turned down from an employment opportunity (Am. Compl. ¶ 278); however, he does not allege why he was turned down. This Court can dismiss Wolf's reputation-based claim on this basis alone. *See, e.g., Brickstructures, Inc. v. Coaster Dynamix, Inc,* No.16-CV-10969, 2017 WL 4310671, at *4 (Sept. 28, 2017) ("Whether plaintiff has sustained a reputational injury is not something outside the knowledge of plaintiff, that only discovery from the defendant can possibly uncover, but it is specifically about what has happened to plaintiff. If plaintiff has nothing on which it can base a clear and direct allegation that it has suffered an injury, this litigation is grounded on pure speculation, something that *Twombly* and *Iqbal* prohibit[.]").

### 2. Most statements identified by Wolf were not publicly disclosed.

This Court must dismiss Wolf's claim to the extent he relies on alleged statements that were not disseminated to the public by Hall. Indeed, the vast majority of statements identified by Wolf—vague as they are—appear to be communications internal to the Common Council (*i.e.*, made in closed session). Such allegations do not suffice. *See, e.g., Taggart-Erkander v. Racine Unified Sch. Dist.*, No. 19-CV-435, 2019 WL 4060173, at *9 (E.D. Wis. Aug. 21, 2020). To the extent Wolf bases his claim on these communications, it fails as a matter of law.

### 3. Wolf has not identified any false assertions of fact.

Wolf's amended complaint does not identify false and defamatory statements of fact about him. This failure subjects his claim to dismissal. *See, e.g., Hadley v. Du Page Cty.*, 715 F.2d 1238, 1247 (7th Cir. 1983) (failure to cite a specific statement made by the defendants); *Snowden v. Adams*, 814 F. Supp. 2d 854, 868 (C.D. Ill. 2011) (without providing actual document, it is impossible to determine whether the information contained therein was stigmatizing). Further, to the extent Wolf does reference specific statements, they are invariably always statements of opinion, not fact, or were true.

Further, the vast majority of the communications on which Wolf relies predate his termination (*e.g*., the January 4 closed session meeting of the Common Council) and should not be considered an adverse employment action that would support a stigma-plus claim. *See, e.g., Klug v. Chicago School Reform Bd. of Trustees*, 197 F.3d 853 (7th Cir. 1999) (loss of overtime pay is not adverse employment action sufficient to state stigma-plus claim). Wolf's reputation-based claim must be dismissed because he fails to allege facts showing any statements made in closed session were both false and defamatory and publicly disseminated.

## CONCLUSION

For the foregoing reasons, Hall respectfully requests that the Court dismiss Wolf's amended complaint as to her. Hall further requests that this dismissal be with prejudice, because Wolf has done nothing to cure the pleading defects contained in the original complaint with regard to the claims set forth against Hall. *See, e.g., Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) ("An amendment is futile when it 'merely restates the same facts using different language, or reasserts a claim previously determined.' Similarly, an amendment may be futile when it fails to state a valid theory of liability or could not withstand a motion to dismiss.") (citations omitted).

Dated this 2nd day of May, 2023.

                                 VON BRIESEN & ROPER, S.C.

                                 By: *s/ Joseph M. Russell*
                                       Joseph M. Russell, SBN 1092211
                                       411 E. Wisconsin Ave., Suite 1000
                                       Milwaukee, WI 53202
                                       P: 414-287-1400
                                       F: 414-276-6281
                                       E: joseph.russell@vonbriesen.com