IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TODD WOLF,

    Plaintiff

v.

CASE NO. 23-CV-149

CITY OF SHEBOYGAN, ET AL.,

    Defendants

**DEFENDANT MAYA HILTY'S REPLY BRIEF IN SUPPORT OF HER MOTION TO DISMISS AMENDED COMPLAINT**

    Plaintiff Todd Wolf's ("Wolf") two claims against local reporter Maya Hilty ("Hilty") should be dismissed. Publishing news stories about local politics based on public and private sources and source material is a routine practice of local news reporters. Those practices fall comfortably within the protections of the First Amendment to the U.S. Constitution. Wolf's claims against Hilty are all based on allegations that she simply performed her job as the local political reporter for the *Sheboygan Press*. They do not constitute participation in a conspiracy.

    Wolf's opposition to Hilty's motion to dismiss falls far short of explaining how his Amended Complaint plausibly alleges that she acted "under color of law" such that her motion to dismiss Wolf's 42 U.S.C. section 1983 conspiracy claim should be denied. To the contrary, Wolf's opposition highlights the fatal deficiencies of his Amended Complaint by summarizing the twelve allegations made against Hilty in support of his claim against her. Those twelve allegations fail to provide a plausible, factual basis for a claim that Hilty, a private journalist, conspired with public officials to deprive Wolf of his constitutional rights. Wolf's section 1983

claim against Hilty must, therefore, be dismissed. The Court should also dismiss Wolf's civil conspiracy claim against Hilty, as Wolf's opposition brief fails to even respond to Hilty's arguments why the civil conspiracy claim fails to state a claim upon which relief can be granted.

## ARGUMENT

### I. Wolf's Opposition Brief Makes Clear That He Has Not Plausibly Stated A Section 1983 Claim Against Hilty.

Wolf's opposition brief is notably light on citations to case law, at least in the section rebutting Hilty's motion to dismiss his section 1983 claim against her. Wolf cites to two cases to support the viability of his claim against the reporter. Those two cases simply articulate the test for liability. Wolf concedes that, in order to state a claim against Hilty under section 1983, he must allege "that: (1) a state official and [Hilty] reached an understanding to deprive [him] of his constitutional rights; and (2) [Hilty and other private] individual(s) were 'willful participants in joint activity with the State or its agents.'" *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citation omitted); *see also* Opp'n Br. at 23 (Dkt. 51).

The majority of Wolf's opposition explains why he believes he has plausibly alleged a civil rights claim. Those arguments, of course, have little relevance to establishing the threshold requirement that Hilty was a willful participant in a conspiracy with city officials to deprive Wolf of his constitutional rights. Wolf's ad hominem attacks on Hilty's journalistic integrity do nothing to support a section 1983 claim against her. Nor do the twelve allegations summarized in his opposition brief as set forth below –

2

> *(1) Published multiple articles about the Sheboygan DEIB and related political activist outfits and regularly quoted Donohue's DEIB leaders, including those who were present at the October 5 lunch. (Am. Compl. ¶18).[1]*

First, this is not precisely what paragraph 18 of the Amended Complaint alleges. Paragraph 18 reads, in relevant part: "Hilty has used her platform with the Sheboygan Press to advocate for DEIB financing and ideologies." Am. Compl. ¶ 18 (Dkt. 36). Second, and more importantly, this allegation does nothing to support a plausible inference that Hilty was a willful participant in a conspiracy to violate Wolf's constitutional rights. Hilty was the local government reporter who regularly interviewed and quoted local political actors and activists. Therefore, the allegation simply confirms that she was actively engaged in her duties as a reporter.

> *(2) Hilty contacted Mr. Wolf directly for a comment on September 12 specifically for an interview on "Pelishek making a racial slur"; and Mr. Wolf told her that she could interview both he and Sorenson together on September 20. (Id. Ex. 11).*

Again, Hilty was a local government reporter: reaching out to a local official like Wolf about matters of public interest was her job. This allegation does not plausibly support a claim that Hilty conspired with local public officials to deprive Wolf of his civil rights. Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient to survive a motion to dismiss. *Brooks v. Ross*, 578 F.3d 574, 581–82 (7th Cir. 2009) ("The behavior [plaintiff] has alleged that the defendants engaged in is just as consistent with lawful conduct as it is with wrongdoing. Without more, [plaintiff's] allegations are too vague to provide notice to defendants of the contours of his § 1983 due process claim."); *Flores v. United Airlines*, No. 18 C 6571, 2021 WL 843415, at *2 (N.D. Ill. Mar. 5, 2021). Indeed, this allegation is far

---

[1] This and the other italicized excerpts are found at pages 23-24 of Wolf's opposition brief. Dkt. 51 at 26-27.

more consistent with Hilty's standard reporting duties than it is with her alleged involvement in a conspiracy.

> *(3) Despite this information from Mr. Wolf, on September 16, Hilty met secretly with Sorenson outside of city hall when Mr. Wolf was out of the office. (Id. ¶ 103).*

While Wolf attempts to paint Hilty's conduct as nefarious by alleging she met with the mayor "secretly," the allegation still falls far short of establishing Hilty willfully participated in a conspiracy to violate Wolf's constitutional rights. Hilty was under no obligation to meet with Sorenson only in the presence of Wolf, nor was she ever under an obligation to report any of her meetings with Sorenson to Wolf. Wolf never alleges as much. *See, generally,* Am. Compl. This allegation is yet another example of Hilty performing her job as the local government reporter. Indeed, Hilty would not have been doing her job had she not been pursuing interviews with the mayor of the city that she was covering as a reporter. The allegation cannot support a purported conspiracy between the two to infringe on Wolf's rights. *See Brooks*, 578 F.3d at 581–82; *Flores*, 2021 WL 843415, at *2.

> *(4) Hilty showed drafts of her "racial slur" article to Rendall—who is not mentioned anywhere in the article by name. (Id. Ex. 5).*

Notably, Wolf makes this allegation in his Amended Complaint "[o]n information and belief." Am. Compl. ¶ 117. The Court need not accept this and other speculative allegations as true. *See Verfuerth v. Orion Energy Sys., Inc.*, 65 F. Supp. 3d 640, 647 (E.D. Wis. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 551, 557, (2007) (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible)). Even if the Court were to accept the allegation as true, it is standard practice for journalists to consult with sources before publishing an article. Therefore, like so many other allegations related to Hilty, the conduct alleged here,

4

even when viewed under the most Wolf-friendly lens, is at least as consistent with lawful, journalistic practice as it is with an inference that Hilty was somehow participating in a conspiracy against Wolf. *See Brooks* 578 F.3d at 581-82. It should also be noted that Rendall is not a defendant nor an alleged co-conspirator. *See* Am. Compl. The allegation is, therefore, irrelevant to whether Hilty willfully participated in a conspiracy with a state actor to violate Wolf's constitutional rights.

> *(5) Five days after Mr. Wolf rejected the DEIB meeting request, Hilty published her slur article, and Sorenson immediately told the public to email Council with "public outcry" calling for Mr. Wolf to be removed for cause. (Id. Ex. 4).*

Yet again, this allegation simply notes that Hilty published an article on a local controversy—in other words: she did her job. This is just another allegation as consistent with lawful conduct as it is with Wolf's desire to draw a nefarious inference against Hilty. This provides a good example of the "parallel conduct" the Supreme Court ruled cannot sufficiently support a claim for conspiracy. *See Twombly*, 550 U.S. at 556-57, 564-65 & n.9 (concluding that allegations of "parallel conduct and a bare assertion of conspiracy will not suffice" to state a claim.)

> *(6) Hilty's October articles laid out how Mr. Wolf was neglectful and potentially guilty of malfeasance. (Id. ¶127).*

Wolf attached one of Hilty's October 2022 articles to his amended complaint. *See* Am. Compl., Ex. 4 (Dkt. 36-4). That article never uses the words "guilt," "malfeasance," or any of their derivatives. *Id.* The article does include a quote from a community member that describes Wolf's, and other city leaders', response to the slur incident as constituting "negligence." *Id.* However, earlier in the article, that same community member is quoted as saying "we don't believe in retribution," and that she and other community members were not looking for anyone to be "punished." *Id.* The article also includes extensive quotes from Wolf himself. *Id.* Thus, if

5

anything, the cited article provides evidence of a balanced approach to reporting on a matter of public importance and how community members and city leaders reacted to it.  In other words, it is precisely the type of work product you would expect from a local government reporter—not evidence of a reporter's efforts to conspire to violate someone's constitutional rights.  *See Thomas v. City of New York*, No. 17-cv-06079, 2018 WL 5791965, at *14 (E.D. N.Y. Nov. 5, 2018) (citation omitted) ("It is well-established that 'actions by journalists in publishing a newspaper article do not constitute the requisite "state action" to support state action claims.'").

> *7) Immediately following the publication of Hilty's third October article about Mr. Wolf listing DEI failures and concerns, Donohue emailed the Common Council to, once again, ask for funding to hire her DEIB group to allocate city resources as consultants. (Id. ¶ 128).*

To properly state a claim for relief, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable." *Park Pet Shop, Inc. v. City of Chi.*, 872 F.3d 495, 499 (7th Cir. 2017) (citation omitted).  To allege conspiracy, a plaintiff cannot, as previously stated, merely raise allegations of "parallel conduct and a bare assertion of conspiracy." *See Twombly*, 550 U.S. at 556-57, 564-65 & n.9.  Thus, without factually supported allegations that Hilty and Donohue reached an understanding to deprive Wolf of his rights and were engaged in a concerted effort to carry out their plot, Wolf's section 1983 claim against Hilty fails.  Here, this conclusory allegation is nothing more than an assertion of parallel conduct that cannot support Wolf's claims against Hilty.

> *(8) Hilty contacted Mr. Wolf on his private cell phone directly to comment during his leave after she received a communication from Mr. Wolf 's attorney to direct all communications to her. (Id. ¶ 183).*

Hilty is a reporter, not an attorney.  She was, and is, under no obligation to communicate with Wolf through an intermediary.  Therefore, this allegation cannot support a claim that Hilty reached an understanding with public officials to deprive Wolf of his rights and then engaged in

a concerted effort to do so. *See Fries*, 146 F.3d at 458 (citation omitted) (affirming dismissal of section 1983 conspiracy claim involving private individual defendants because "mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss").

> *(9) In November 2022, when Mr. Wolf was on leave, Hilty asked Mr. Wolf to comment on information that she knew Mr. Wolf believed was confidential information. (Id. ¶ 184).*

It is the role of a journalist to root out information the government seeks to keep quiet. Wolf tries in vain to draw an inference that Hilty sought his comment to set up his termination based on an unauthorized release of confidential information. But such an inference is not supported by any factual allegations in the Amended Complaint. *See, generally,* Am. Compl.; *see also Park Pet Shop*, 872 F.3d at 499 (holding facial plausibility can only be supported by "factual content that allows the court to draw the *reasonable inference* that the defendant is liable." (emphasis added)) (citation omitted). It is much more likely that the conduct alleged was consistent with Hilty attempting to shine a light on secret goings-on in local government on behalf of her readers.

> *(10) After Mr. Wolf declined to comment on confidential information for Hilty's December 2022 article, Hilty published an article on December 16 stating that Mr. Wolf disclosed to her that Pelishek made a racial slur—implying falsely that Mr. Wolf leaked the information to her. (Id. ¶¶ 186-87).*

This allegation misstates the December 2022 article. While Wolf, notably, did not attach the December 2022 article to his Amended Complaint, the article is referred to in the Amended Complaint and is central to Wolf's claims. Wolf makes this clear in his opposition brief, stating "Mr. Wolf has alleged sufficient factual grounds to create a plausible inference that Hilty agreed with Sorenson to publish false information *in her December 2022 article* solely for Sorenson to use as 'cause' to remove [Wolf] for Hall's investigation." Opp'n Br. at 24 (emphasis in

7

original). Thus, the Court can consider the December 2022 article without converting Hilty's motion to dismiss to one for summary judgment. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Hilty's December 2022 article makes clear that none of the statements attributed to Wolf in the article came from comments he made for the December 2022 article. *See* Aff. of Maxted Lenz ¶ 2, Ex. A. Hilty cites to an email she had obtained sent by Wolf to city council members. *Id.* at 2. Hilty later quotes from interviews Wolf gave on the slur incident "in September" 2022. *Id.* at 4. Therefore, Wolf's allegation that Hilty purportedly conjured false statements from him in December 2022 is belied by the very article he references, in which Hilty carefully cites the sources of all of her quotes from Wolf—none of which are from interviews in December 2022. As the document incorporated by the complaint contradicts the allegation above, the Court should disregard it. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (holding that when an exhibit attached or incorporated by a complaint "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss") (citations omitted).

*(11) Sorenson immediately emailed Hilty's December 16 article to Hall during the investigation. (Id. Ex. 10).*

This is, again, nothing more than parallel conduct that is not sufficient to support a claim of conspiracy. *See Twombly*, 550 U.S. at 556-57, 564-65 & n.9. The allegation also includes no references to Hilty communicating, or acting in concert, with government officials, and for her part, merely mentions that Hilty published an article. As this is far more consistent with her role

as a local government reporter than with a claim that she was engaged in a broad conspiracy to unconstitutionally fire Wolf, it cannot support Wolf's section 1983 claim.

> *(12) Hall's investigation report says that Pelishek disclosed confidential information in violation of city policies. (Id. Exs. 12 & 15).*

With this, Wolf has lost the plot. In the previous allegations cited in his opposition brief, Wolf claims Hilty and her co-defendants conspired to produce cause to fire Wolf for, among other things, leaking confidential information. But here Wolf is claiming the investigation ultimately found Pelishek leaked the relevant information, which runs counter to the very conspiracy Wolf alleges Hilty participated in. Even if this was a scrivener's error, and Wolf meant to type his own name instead of Pelishek's, none of the allegations above, and none of the allegations in the amended complaint, allege Hilty and Hall, two private actors, were ever even in contact with each other. *See, generally,* Am. Compl. Thus, this allegation fails to support Wolf's alleged section 1983 conspiracy.

The remainder of Wolf's section 1983 argument, as it pertains to Hilty, accuses Hilty of acting as a propaganda arm for the local government and warns the Court that granting Hilty's motion would "carv[e] out a specific [immunity] for 'journalists' who *go beyond the scope* of their employer's mandates and conspire to aid the government in constitutional deprivations." Opp'n Br. at 25 (emphasis in original). The Court should not countenance such scare tactics.

As Wolf writes in his brief: "Determining plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Opp'n Br. at 7 (citation omitted). A common sense reading of the allegations above and included in Wolf's amended complaint demonstrates that, at all times relevant to the amended complaint, Hilty was nothing more than an independent journalist doing her best to provide a balanced account of a controversy within the local government. Hilty's reporting does not plausibly evidence her

9

reaching "an understanding [with state officials] to deprive the plaintiff of his constitutional rights" nor that Hilty was a "willful participant in joint activity with the State or its agents." *Fries*, 146 F.3d at 457. For that reason, and for all the reasons stated above and in Hilty's initial brief, Wolf's section 1983 conspiracy claim against Hilty must be dismissed.

### II. Wolf's Civil Conspiracy Claim Against Hilty Must Be Dismissed, As He Did Not Respond To Hilty's Arguments In His Opposition Brief.

Wolf's opposition brief does not address any of Hilty's arguments in favor of dismissing his civil conspiracy claim. Wolf has, therefore, conceded that his civil conspiracy claim against Hilty should be dismissed. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver.") (citations omitted); *Raab v. Wendel*, No. 16-CV-1396, 2019 WL 1060856, at *29 (E.D. Wis. Mar. 6, 2019) (holding that a party that fails to respond to points made in a motion brief "concedes those points") (citations omitted). Moreover, even if the Court did not find Wolf has conceded Hilty's civil conspiracy arguments (which it should), the discussion above makes clear that Wolf has failed to plausibly allege "the formation and operation of the conspiracy" and "the wrongful act or acts done pursuant thereto," as required by Wisconsin law. *Onderdonk v. Lamb*, 79 Wis. 2d 241, 247, 255 N.W.2d 507 (1977). The Court should dismiss the state law civil conspiracy claim, accordingly.

### CONCLUSION

For the reasons stated above and in Hilty's initial brief, the Court should dismiss Plaintiff's claims against Hilty with prejudice.

Dated this 12th day of June, 2023.

GODFREY & KAHN, S.C.

*s/Brian C. Spahn*
Brian C. Spahn
State Bar No. 1060080
Maxted Lenz
State Bar No. 1104692

P.O. ADDRESS:
833 East Michigan
Milwaukee, WI 53202
Phone: 414-287-9314
Fax: 414-273-5198
bspahn@gklaw.com
mlenz@gklaw.com