IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TODD WOLF,

    Plaintiff,

v.                                Case No. 23-CV-149

CITY OF SHEBOYGAN, ET AL.,

    Defendants.

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

The first two sentences of Wolf's response amply demonstrate why his claims against Hall fail and must be dismissed. There, Mr. Wolf argues that, on November 7, 2022, he was placed under investigation and fired "[w]ithin hours" of sending a letter to the Common Council in which he expressed "concerns about harassment of city employee [sic] and to inform them that a non-registered 'diversity, equity, inclusion, and belonging' collective (DEIB group) had made threats for city money." Dkt. 51 at 1. However, at that time, Hall had not even been retained to investigate Mr. Wolf. Rather, Hall's investigation did not begin until November 14, 2022. *See* Am. Compl. ¶ 211 ("during her investigation between mid-November and December 2022 . . ."); *see also id.*, Ex. 15 at 1 (indicating Hall's investigation began November 14, 2022).[1] Mr. Wolf is, again, inappropriately lumping Ms. Hall (a private attorney) with wrongful actions allegedly taken by

---

[1] *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (holding that when an exhibit attached to a complaint "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss") (citations omitted).

1

"the City Defendants" prior to her retention by the City of Sheboygan and prior to the start of her own investigation of Wolf.[2]

Tellingly, Plaintiff's response is primarily directed at "the City Defendants" and their arguments while making little to no mention of Hall and the various arguments she raised in her Motion to Dismiss and supporting brief. Indeed, Wolf's failure to even acknowledge—let alone address—Hall's arguments in support of her motion to dismiss constitutes waiver and requires the dismissal of Wolf's claims against her.

## I. The Amended Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 8

In her response, Hall argued that the Court should dismiss the amended complaint because of its failure to comply with Fed. R. Civ. P. 8(a)(2), which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Dkt. 43. As the Seventh Circuit has previously warned, neither courts nor defendants should be forced "to forever sift through [the complaint's] pages in search of [an] understanding" of the nature of the plaintiff's claims. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990). Wolf did not heed this warning.

Rather, Wolf's amended complaint contains 467 numbered paragraphs spread over 68 pages—and attaching 17 exhibits—containing vague and conclusory allegations of conduct involving fourteen defendants (including both public and private actors) over a two-plus year period. Wolf's pleading is precisely the type of "prolix and confusing complaint" that warrants dismissal to avoid the needless expenditure of resources by Hall and this Court. *Vicom*, 20 F.3d at 776. Indeed, most of Plaintiff's allegations regarding Hall are based on nothing more than

---

[2] Illustrative of such indiscriminate "lumping" is Wolf's argument that he "did plead conspiracy liability for Hall" while also conceding that Hall was not involved in the underlying "conspiratorial agreement" that occurred before Hall was retained. *See* Dkt/ 51 at 2-3 ("Mr. Wolf alleges sufficient facts that [Defendant] Donohue acted in a joint agreement with City officials to violate Mr. Wolf's constitutional rights.").

2

"information and belief." However, "[i]f plaintiff has nothing on which [he] can base a clear and direct allegation that [he] has suffered an injury, this litigation is grounded on pure speculation, something that *Twombly* . . . and *Iqbal* . . . prohibit." *Brickstructures, Inc. v. Coaster Dynamix, Inc,* No.16-CV-10969, 2017 WL 4310671, at *4 (Sept. 28, 2017*); see also Phoenix Entm't. Partners, LLC v. Orlando Beer Garden, Inc*., No. 6:16-cv-80-Orl-31DAB, 2016 WL 1567590, at *5 (M.D. Fla. Mar. 30, 2016) ("allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard").

In his response, Wolf conspicuously fails to acknowledge—let along address—any of the arguments Hall sets forth—pursuant to Fed. R. Civ. P. 8—in her motion to dismiss. This constitutes waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver.") (citations omitted); *see also Raab v. Wendel*, No. 16-CV-1396, 2019 WL 1060856, at *29 (E.D. Wis. Mar. 6, 2019) (a party that fails to respond to arguments in a motion brief "concedes those points") (citations omitted). Accordingly, Wolf's claims against Hall should be dismissed.

## II. The Amended Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 20

In her response, Hall argued that the Court has "considerable discretion" and "flexibility" in applying Rule 20 and determining whether the amended complaint contains plausible allegations to satisfy them. *See* Dkt. 43. *See also UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("[u]nrelated claims against different defendants belong in different suits") (omitting citation); *Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Assocs Identified on Schedule A*, 334 F.R.D. 182, 189–90 (N.D. Ill. 2020) ("Rule 20(a)'s purpose of promoting judicial economy and trial convenience would not be served by allowing the number of defendants in this case because the ensuing discovery and variety of defenses could prove unwieldy for a single case.") (citation omitted)).

In his amended complaint, Wolf has improperly lumped together all of his claims against fourteen defendants (regarding events and conduct spanning two-plus years) and has failed to allege coordinated action—beyond sheer speculation (*i.e.*, "information and belief")—between them and Hall, or any right to relief that arises out of the same transaction or occurrence or series of transactions or occurrences. Under *Twombly*, complaints that simply lump together multiple defendants through generalized allegations of collective wrongdoing do "not plausibly allege a claim for relief against any one defendant" and "den[y] each individual defendant fair notice of what the plaintiff alleges that the individual defendant did wrong." *Alejandro v. Quiros*, 2021 WL 5324905, at *5 (D. Conn. Nov. 16, 2021) (dismissing complaint). Here, Wolf does not plead sufficient plausible *facts* identifying the specific participation of Hall in the alleged, collective wrongdoing, or otherwise establish a basis for holding her liable for a Section 1983 violation as a private actor. This is fatal to Wolf's claims against Hall. *See, e.g.,Embree v. Wyndham Worldwide Corp.*, 2018 WL 3943045, at *2 (M.D. Fla. Aug. 16, 2018) (dismissing with prejudice second amended complaint that "lack[ed] allegations of specific wrongdoing as to each Defendant and instead lumps multiple Defendants together without sufficient basis"); *Kludt v. MCF-Rush City*, 2018 W: 3059680 (D. Minn. May 30, 2018) (dismissing complaint with generalized allegations against group of defendants because "none of the allegations . . . allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged'") (internal quotations omitted); *ThinkBronze, LLC v. Wise Unicorn Ind. Ltd.*, 2013 WL 12120260 (C.D. Cal. Feb. 7, 2013) (dismissing complaint and observing that "[cross-plaintiff's] argument that *Twombly* does not require that it plead facts showing the participation of each defendant . . . is not supported by case law"); *Van Dyke Ford, Inc. v. Ford Motor Co.*, 339 F. Supp. 277, 281 (E.D. Wis. 1975) (dismissing claim supported by conclusory and "ambiguous allegation against unidentified

'defendants'" that lacked "any allegations of [defendant's] participation"). Consistent with this case law, dismissal of Wolf's conclusory claims against Hall is proper here.

Moreover, as with Wolf's failure to address Hall's arguments pursuant to Fed. R. Civ. P. 8, Wolf conspicuously fails to acknowledge—let along address—any of the arguments Hall sets forth pursuant to Fed. R. Civ. P. 20. This, again, constitutes waiver. *See Bonte*, 624 F.3d at 466 ("Failure to respond to an argument … results in waiver.") (citations omitted); *see also Raab,* 2019 WL 1060856, at *29 (a party that fails to respond to arguments in a motion brief "concedes those points") (citations omitted). Accordingly, Wolf's claims against Hall should be dismissed.

### III. The Amended Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)

The only substantive response Wolf offers with regard to Hall's motion to dismiss consists of little more than two pages of Wolf's thirty-page brief. *See* Dkt. 51 at 20-22. There, Wolf contends that Hall's "status as a private attorney does not immunize her from liability" under § 1983. *Id*. at 20. However, "[t]he under-color-of-state-law element means that § 1983 does not permit suits based on private conduct, no matter how discriminatory or wrongful." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (internal quotation marks and citation omitted).

Here, Wolf's allegations clearly establish that Hall, at all relevant times, was a private attorney simply conducting an investigation for a municipality and advising it of its results. Am. Compl. ¶ 19; *see also id*., Exhibit 15 (February 6, 2023 legal memorandum detailing the City of Sheboygan's retention of von Briesen & Roper and Hall). It is well-established that private attorneys who merely advise public entities are not acting under color of state law for purposes of a section 1983 lawsuit. *See, e.g., Raines v. Indianapolis Public Schools*, 52 F. App'x 828, 830 (7th Cir. 2002); *Dyer v. Maryland State Bd. of Educ*., 187 F. Supp. 3d 599, 614-16 (D. Md. 2016) (collecting cases and rejecting § 1983 claim by a former member of a board against attorneys who

performed legal services in connection with the removal); *see also Brady v. Somersworth Sch. Dist., Sch. Bd.*, No. 16-cv-069- JD, 2016 WL 3248247, at *3 (D.N.H. June 13, 2016) (collecting cases).

In response, Wolf cites one case—*Kenosha v. Unified School District*, Case No. 22-cv-0269, 2022 WL 14637129 (E.D. Wis. Oct. 25, 2022)—for the proposition that a private attorney can be subject to a § 1983 claim, at least through the motion-to-dismiss phase. Dkt. 51 at 21. However, the alleged facts in *Kenosha* are much more highly developed than—and distinguishable from—the speculative allegations (*i.e.*, "on information and belief") that Wolf sets forth here. In *Kenosha*, the coordinated wrongful conduct at issue was between a private attorney ("Lewis") and a school superintendent, which occurred before, during and after a ***public*** hearing regarding the plaintiff's potential termination as a teacher. *Id.* at *2 ("[The Superintendent] and Lewis conducted themselves improperly at the public hearing."). For example, Lewis directed and "coached" testimony at the public hearing in a concerted effort to persuade the school board to terminate the teacher. *Id.* After the public hearing, at which the teacher ultimately prevailed, Lewis drafted a negative license referral that was eventually signed and filed with the Wisconsin Department of Public Institution ("DPI"). *Id.* However, DPI subsequently found that the license referral drafted by Lewis was inaccurate. *Id.* Based on the alleged conduct of Lewis, in direct coordination with the superintendent, the court held that "[t]his type of coordinated activity . . . could constitute a meeting of the minds sufficient to render Lewis's actions to be under color of law. *Id.* at * 5.

By contrast to the *Kenosha* case—in which the only individual defendants were Lewis and the Superintendent—this case spans over two years and involves thirteen other defendants with whom Hall only had limited contact once she was retained in mid-November 2022. Moreover, in contrast to the detailed allegations in *Kenosha* regarding Lewis's intimate and long-standing

coordinated activities to terminate the plaintiff, Hall is only alleged to have provided an "oral synopsis" to the Common Council in closed session (on January 4, 2022) as to whether a hearing was necessary, as well as a final report on February 6, 2023. *See* Am. Compl. ¶¶ 211, 350. With regard to the "oral synopsis," Wolf only engages in speculation as to what Hall said during that closed session. *Id*. at ¶ 229 ("On information and belief, Hall told the Council . . ."). Otherwise, Hall's final report (attached to the Amended Complaint as Exhibit 15) establishes that there was nothing unusual about her investigation, and nothing about what any future hearing should conclude. Indeed, the final report reveals that Hall was only asked to determine whether a hearing was even warranted, not whether Wolf should be terminated (which is the position of adverse advocacy Lewis took before and at the public hearing in *Kenosha*) (emphasis added):

> **QUESTION INVESTIGATED**
>
> Was there sufficient evidence that Wolf's conduct or communications after August 22, 2022 violated Common Council directives, City policies, and/or the law, **sufficient to warrant a hearing** before the Council for possible consideration of his termination or other discipline?
>
> **EXECUTIVE SUMMARY**
>
> Sufficient evidence could support a conclusion that by Wolf's failing to comply with specific Council directives, and disregarding legal recommendations of the City Attorney and outside counsel, all not to discuss pending personnel matters, he engaged in conduct that could be regarded as violating City policies against insubordination so as to warrant a hearing before the Council. Additionally, sufficient evidence exists to support a conclusion that Wolf's publicly naming Emily Rendall-Araujo, ascribing unsubstantiated conduct and malicious political motives to her, and indicating publicly that she should be disciplined, could constitute violations of City policies against retaliation, harassment and insubordination, so as to warrant a hearing before the Council. Further, sufficient evidence exists that could support a conclusion that Wolf's repeat

> public assertions of extortion and bribery by two named citizens are entirely unsupported in fact and could support a further conclusion that he engaged in untrue and inappropriate communications regarding the two named citizens so as to warrant a hearing before the Council. Finally, sufficient evidence could support a conclusion that through his conduct as described in the foregoing, Wolf violated the ICMA Code of Ethics Tenets 3, 7, and 11 sufficient to warrant consideration of filing a complaint with the ICMA by the Council.
>
> In weighing action on this sufficient evidence, the burden of conducting a hearing should be recognized as a complex and challenging effort, similar to, or exceeding, the complexity of this investigation. The hearing process would require significant time, in preparation for testimony and at hearing of many City employees, creating significant personal hardship for those individuals, and interfering with their ability to perform their jobs. Moreover, the Council would be faced with considering and weighing a ponderous amount of evidence, including weighing the credibility of City coworkers.
>
> ***
>
> **CONCLUSION**
>
> Sufficient evidence obtained in the course of this reporter's investigation exists to warrant a hearing before the Common Council to determine whether or not Administrator Wolf's conduct constitutes (1) violations of Common Council directives, (2) violation of City policies, (3) exposed the City to possible liability and (4) Violations of the ICMA Code of Ethics sufficient to warrant the City's filing of a complaint of unethical conduct with the ICMA. As previously stated, such a hearing would involve complex fact finding and questions of credibility involving many City employees and citizens, and significant document analysis creating a burden on City personnel and working relationships.

Determining whether a hearing "is warranted" is not taking a position on what the results of that hearing should be with regard to Wolf's termination, as was the case in *Kenosha*.

If there was any alleged "meeting of the minds" between Defendants in order to deprive Wolf of his constitutional rights it was alleged to have occurred before Hall was even retained and began her investigation. *See supra* page 1. Wolf's timeline, in short, does not support Wolf's

conspiratorial allegations against Hall. Accordingly, Wolf's implausible speculation as to what Hall may have done once she was retained—other than conducting a normal investigation as outside counsel and reporting its findings to the appropriate bodies—cannot stave off dismissal here. *See, e.g., Verfuerth v. Orion Energy Sys., Inc.*, 65 F. Supp. 3d 640, 647 (E.D. Wis. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 551, 557, (2007) (declining to take as true the conclusory allegation "upon information and belief" that parties entered a conspiracy without enough facts to make that statement plausible)).

Indeed, even if Hall was not a private actor, Wolf's amended complaint would still fail because Wolf did not even have a constitutionally protected interest in his employment. Nor can Wolf establish a constitutional violation regarding injury to his reputation. Hall outlined these arguments in her motion to dismiss. *See* Dkt. 43 at 13-17. However, as Wolf failed to address Hall's arguments directly, Wolf has waived and conceded them. *See Bonte*, 624 F.3d at 466 ("Failure to respond to an argument … results in waiver.") (citations omitted); *see also Raab,* 2019 WL 1060856, at *29 (a party that fails to respond to arguments in a motion brief "concedes those points") (citations omitted). Accordingly, Wolf's claims against Hall should be dismissed.

## CONCLUSION

For the foregoing reasons, Hall respectfully requests that the Court dismiss Wolf's amended complaint as to her, with prejudice.

Dated this 13th day of June, 2023.

                                                         VON BRIESEN & ROPER, S.C.

                                                         By: *s/ Joseph M. Russell*
                                                               Joseph M. Russell, SBN 1092211
                                                               411 E. Wisconsin Ave., Suite 1000
                                                               Milwaukee, WI 53202

P: 414-287-1400
F: 414-276-6281
E: [joseph.russell@vonbriesen.com](mailto:joseph.russell@vonbriesen.com)