TODD WOLF,

       Plaintiff,

                                         Case No. 23-cv-149

v.

CITY OF SHEBOYGAN, MAYOR RYAN
SORENSON in his individual and official
capacities, CITY ATTORNEY CHARLES
ADAMS in his individual and official capacities,
ALDERPERSONS ON SHEBOYGAN'S
COMMON COUNCIL, BARBARA FELDE,
ROBERTA FILICKY-PENESKI, AMANDA
SALAZAR, ANGELA RAMEY, BETTY
ACKLEY, ZACHARY RUST, DEAN DEKKER,
GRAZIA PERRELLA, all in their individual and
official capacities; SHEBOYGAN AREA
SCHOOL DISTRICT BOARD MEMBER
MARY LYNNE DONOHUE, in her individual
and official capacities; and JILL
PEDIGO HALL,

       Defendants.

---

**DEFENDANTS CITY OF SHEBOYGAN, MAYOR RYAN SORENSON,**
**CITY ATTORNEY CHARLES ADAMS, ALDERPERSONS BETTY ACKLEY,**
**DEAN DEKKER, BARBARA FELDE, ROBERTA FILICKY-PENESKI,**
**GRAZIA PERRELLA, ANGELA RAMEY, ZACHARY RUST, AMANDA**
**SALAZAR, AND SHEBOYGAN AREA SCHOOL DISTRICT BOARD MEMBER**
**MARY LYNNE DONOHUE'S ANSWER AND AFFIRMATIVE DEFENSES**
**TO PLAINTIFF'S AMENDED COMPLAINT**

---

     **NOW COME** Defendants City of Sheboygan, Mayor Ryan Sorenson, City Attorney

Charles Adams, Alderpersons Betty Ackley, Dean Dekker, Barbara Felde, Roberta Filicky-

Peneski, Grazia Perrella, Angela Ramey, Zachary Rust, Amanda Salazar, and Sheboygan Area

School District Board Member Mary Lynne Donohue ("Defendants") by and through their

undersigned attorneys, and submit the following Answer and Affirmative Defenses to Plaintiff's Amended Complaint as follows, denying each and every allegation of said Amended Complaint, except, and only to the extent, as is herein expressly admitted or qualified:

## INTRODUCTION

1. Sheboygan's City Administrator, Plaintiff Todd Wolf, was one of the most successful municipal officials Sheboygan County had while he served the citizens and led the employees with integrity and honor. Starting out as a decades-long successful private sector manager & highly admired Common Council President by all sides of the political aisle, Mr. Wolf began to clean up the wasteful spending at the city and truly work for the citizens and Sheboygan's city employees. Not only did Mr. Wolf help fund the City's long-needed clean water treatment project, he reduced costs to the citizens, cut government spending, and instituted new diversity and harassment training for employees.

**ANSWER: Defendants deny paragraph 1 of Plaintiff's Amended Complaint.**

2. After Mr. Wolf turned down multiple requests for public funds from one of the Defendants & her local group, he was publicly placed under investigation, prohibited from accessing public properties or speaking to city workers (including fire or police officers), threatened the day before the 2022 midterm elections, prohibited from gathering his personal belongings, and, without any due process, found "guilty" of violating the Sheboygan's Orwellian "Ministry of Truth" ordinance that imposes punishment, fines or potential jail time on any person that makes a so-called "false statement" about political corruption.

**ANSWER: Defendants deny paragraph 2 of Plaintiff's Amended Complaint.**

3. This is an action to stop Sheboygan's own system of justice that declares citizens and employees "guilty until proven innocent" while denying them constitutional due process of law.

**ANSWER: Defendants deny paragraph 3 of Plaintiff's Amended Complaint.**

4. This is an action to vindicate Mr. Wolf's reputation that each of the Defendants, in concert, willfully damaged, as well as his rights under the 1st and 14th Amendments to the United States Constitution.

**ANSWER: Defendants deny paragraph 4 of Plaintiff's Amended Complaint.**

**PARTIES**

5. Plaintiff, Todd Wolf, was the City Administrator for the City of Sheboygan from July 7, 2020, to January 9, 2023. At all times material to the facts alleged in the foregoing complaint, Todd Wolf was a citizen of the United States and resident of the State of Wisconsin, residing in Sheboygan, Wisconsin.

**ANSWER: Defendants admit paragraph 5 of Plaintiff's Amended Complaint.**

6. Defendant City of Sheboygan ("city") is a municipality, organized pursuant to a body politic under the laws of the State of Wisconsin, whose address is 828 Center Avenue, Sheboygan, Wisconsin.

**ANSWER: Defendants admit paragraph 6 of Plaintiff's Amended Complaint.**

7. Defendant Ryan Sorenson ("Sorenson") is the Mayor for the City of Sheboygan and was elected Mayor of Sheboygan on April 6, 2021. Sorenson has been the mayor of Sheboygan at all times material to the claims below. He is sued in his individual and official capacities.

**ANSWER: Ryan Sorenson admits that he is the Mayor of the City of Sheboygan and has held that position since April 20, 2021. Sorenson admits that Plaintiff's Amended Complaint states that he is being sued in his individual and official capacity. Sorenson denies the remaining allegations contained in paragraph 7 of Plaintiff's Amended Complaint.**

8. Defendant Charles Adams ("Adams") is the City Attorney for the City of Sheboygan and at all times material hereto. He is sued in his individual and official capacities.

**ANSWER: Charles Adams admits that he was elected to the position of City Attorney for the City of Sheboygan and has held that position since May 1, 2015. Adams admits that Plaintiff's Amended Complaint states that he is being sued in his individual and official capacity. Adams denies the remaining allegations contained in paragraph 8 of Plaintiff's Amended Complaint.**

9. Defendant Alderwoman Barbara Felde ("Felde") is the President of Sheboygan's Common Council and has been at all times material hereto. Along with Filicky-Peneski, Felde is considered "Council leadership." She is sued in her individual and official capacities.

**ANSWER: Barbara Felde denies paragraph 9 of Plaintiff's Amended Complaint as stated. Felde admits that she served as President of the Common Council for the 2022-2023 Common Council year. Felde no longer serves in that role.**

10. Defendant Roberta Filicky-Peneski ("Filicky-Peneski") is an Alderwoman and Vice President of Sheboygan's Common Council and has been at all times material hereto. Along with Felde, Felde is considered "Council leadership." She is sued in her individual and official capacities.

**ANSWER: Roberta Filicky-Peneski denies paragraph 10 of Plaintiff's Amended Complaint as stated. Filicky-Peneski admits that she served as Vice President for the 2022-2023 Common Council year. Filicky-Peneski no longer serves in that role.**

11.     Defendant Amanda Salazar ("Salazar") is an Alderwoman on Sheboygan's Common Council and has been at all times material hereto. She is sued in her individual and official capacities.

**ANSWER: Amanda Salazar admits paragraph 11 of Plaintiff's Amended Complaint.**

12.     Defendant Angela Ramey ("Ramey") is an Alderwoman on Sheboygan's Common Council and has been at all times material hereto. She is sued in her individual and official capacities.

**ANSWER: Angela Ramey admits paragraph 12 of Plaintiff's Amended Complaint.**

13.     Defendant Dean Dekker ("Dekker") is an Alderman on Sheboygan's Common Council and has been at all times hereto. He is sued in his individual and official capacities.

**ANSWER: Dean Dekker admits paragraph 13 of Plaintiff's Amended Complaint.**

14.     Defendant Betty Ackley ("Ackley") is an Alderwoman on Sheboygan's Common Council and has been at all times material hereto. She is sued in her individual and official capacities.

**ANSWER: Betty Ackley admits paragraph 14 of Plaintiff's Amended Complaint.**

15.     Defendant Zach Rust ("Rust") has been an Alderman on Sheboygan's Common Council at all times material hereto. He is sued in his individual and official capacities.

**ANSWER: Zach Rust admits paragraph 15 of Plaintiff's Amended Complaint.**

16.     Defendant Grazia Perrella ("Perrella") has been an Alderwoman on Sheboygan's Common Council at all times material hereto. She is sued in her individual and official capacities.

**ANSWER: Grazia Perrella admits paragraph 16 of Plaintiff's Amended Complaint.**

17.     Defendant Mary Lynne Donohue ("Donohue") is the President of the Sheboygan Area School District Board of Education located at 3330 Stahl Rd., Sheboygan, WI 53081 and has served in that role, or as an Alderwoman on Sheboygan's Common Council at all times material to this Complaint. In addition to her official roles, Donohue is also an attorney, co-chairman of the Democratic Party of Sheboygan County, has served as Chairman of the Board for Planned Parenthood of Wisconsin, and is the founder of the Sheboygan Justice Equity group under her Sheboygan "Diversity, Equity, Inclusion, and Belonging umbrella" (hereinafter "DEIB group"). She is sued in her individual and official capacities.

**ANSWER: Mary Lynne Donohue admits she currently serves as the President of the Sheboygan Area School District Board of Education and is also an attorney, co-chairman of the Democratic Party of Sheboygan County and has served as Chairwoman of the Board of Planned Parenthood of Wisconsin. Donohue admits she served as an Alderperson on Sheboygan's Common Council for several years. Donohue denies the remaining allegations of paragraph 17 of Plaintiff's Amended Complaint.**

18.     Defendant Maya Hilty ("Hilty") is a reporter for USA Today-Wisconsin Network's Sheboygan Press and has resided in Sheboygan, Wisconsin at all times material hereto. Between October 2022 – April 2023, Hilty has authored or helped author at least *nine*

articles targeting and falsely implying incorrect information about Mr. Wolf. Hilty has used her platform with the Sheboygan Press to advocate for DEIB financing and ideologies.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) Defendants provide no answer to paragraph 18 of Plaintiff's Amended Complaint.**

19.     Defendant Jill Pedigo Hall ("Hall") is an attorney based in Madison, Wisconsin. Hall has known Defendant Donohue for over thirty (30) years. Hall was contracted by the Defendant city officials in Sheboygan, Wisconsin, to investigate Mr. Wolf on Donohue's request and authored a misleading "report" that contained false information about Mr. Wolf. The injuries suffered by Mr. Wolf as a result of Hall's actions material to this complaint occurred in Sheboygan, Wisconsin.

**ANSWER: Defendants admit that Jill Pedigo Hall is an attorney with the law firm of von Briesen & Roper based in Madison, Wisconsin. Donohue admits she and Hall know each other but denies that they have had a professional or personal relationship for over 30 years. Defendants deny the remaining allegations contained in paragraph 19 of Plaintiff's Amended Complaint.**

## VENUE & JURISDICTION

20.     This case arises under the Constitution and laws of the United States, and subject matter jurisdiction is therefore proper under 28 U.S.C. §§ 1331 and 1343. This Court has authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§2201 and 2202, and Fed. R. Civ. P. 57. This Court has authority to award damages and to issue injunctive relief pursuant to 42 U.S.C. § 1983. This Court has authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**ANSWER: The allegations contained in paragraph 20 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent additional response is required, Defendants state that United States Code (U.S.C.) provisions and Federal Rules of Civil Procedure provisions cited herein speak for themselves and deny any allegation or reference to these provisions which is inconsistent with the actual, current text of the provision referenced and/or relevant case law. Defendants further deny any allegation or inference in this paragraph suggesting that Defendants, in any way, are either liable to the Plaintiff or violated Plaintiff's rights.**

21.     The events or omissions giving rise to this cause of action occurred in Sheboygan County, Wisconsin, which is within the Eastern District of Wisconsin, Milwaukee Division. Venue is therefore proper under 18 U.S.C. § 1391(b)(1) and (2).

**ANSWER: The allegations contained in paragraph 21 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent additional response is required, Defendants further deny any allegation or inference in this paragraph suggesting that Defendants, in any way, are either liable to the Plaintiff or violated Plaintiff's rights.**

**RELEVANT FACTUAL BACKGROUND**

(I)     **The City's Unconstitutional Speech Policies and Laws.**

    a.     <u>**Sheboygan Municipal Code of Ethics Sec. 2-272 "Confidential Information" Policy**</u>

22.     In June 2021, Defendants Felde and Ackley introduced an amendment to the Municipal Code prohibiting employees from disclosing "confidential information" about "the

8

government or affairs *of the city." A true and accurate copy of the relevant portions of the city's* Confidential Information Policy is attached as Exhibit 1.

**ANSWER: The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required and Defendants provide no answer to paragraph 22 of Plaintiff's Amended Complaint.**

23.     The code sections related to this provision do not contain any definition, list, or otherwise information about what constitutes "confidential information."

**ANSWER: The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. Defendants provide no answer to paragraph 23 of Plaintiff's Amended Complaint.**

24.     The *Confidential Information* policy forces employees to obtain prior approval via an "advisory opinion" from the Common Council based on the content of the potential information.

**ANSWER: The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. Defendants provide no answer to paragraph 24 of Plaintiff's Amended Complaint.**

25.     The policy states that the city may have "cause" to fire any city officer, employee, or agent that "disclose[s] confidential information concerning the...government or affairs of the city." *Id.*

**ANSWER: The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) Defendants provide no answer to paragraph 25 of Plaintiff's Amended Complaint.**

26.     The policy also prohibits public employees from using undefined "confidential information" about the "government or affairs of the city" to "advance the ... private interest of himself or herself or others" including any "political association" of the employee.

**ANSWER: The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. Defendants provide no answer to paragraph 26 of Plaintiff's Amended Complaint.**

27.     The policy's purpose recognizes that some public officials cannot avoid conflicts of interest and that certain public officials "cannot and should not be without all personal and economic interest in the decisions and policies of government." Sec. 2-263.

**ANSWER: The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. Defendants provide no answer to paragraph 27 of Plaintiff's Amended Complaint.**

28.     There is no definition of "confidential information" in any of the "Ethics Policies" nor in any other municipal ordinance in Sheboygan or state law.

**ANSWER: The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. Defendants provide no answer to paragraph 28 of Plaintiff's Amended Complaint.**

29.     On information and belief, Mr. Wolf was fired, in part, because of his alleged violations of the Confidential Information policy.

**ANSWER: The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. Defendants provide no answer to paragraph 29 of Plaintiff's Amended Complaint.**

    **b.** <u>**Sheboygan Municipal Code Section 82-3 – 82-6 "False Statements" Ordinance and Policy.**</u>

30.     In 2014, *then* Alderwoman Donohue, replaced the Personnel Regulations with new provisions that regulated present, future, and *past* employee speech placed after the "Medical Insurance" section entitled "False Statements," "Bribery," "Political Activities," and the enforcement provisions. A true and accurate copy of the relevant portions of the *False Statements* Ordinances is attached to this complaint as Exhibit 2.

**ANSWER: Defendants admit Exhibit 2 is copy of Municipal Code Chapter 82[1] in effect on March 13, 2023, the date Exhibit 2 was printed. Defendants admit Municipal Code Chapter 82 is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants deny the remaining allegations contained in paragraph 30 of Plaintiff's Amended Complaint.**

31.     The *False Statements* Ordinance threatens employees with discipline, up to termination, for making any "false statement" about public officials' "certification" or involvement in bribery, political activities, or other political corruption schemes. *Id.*

**ANSWER: Defendants admit the Municipal Code § 82-6 is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants deny the remaining allegations contained in paragraph 31 of Plaintiff's Amended Complaint.**

32.     The Ordinance, codified as Sheb. Mun. Ord. Section 82-3 & 82-6 applies to *past* officials and private citizens by threatening citations, fines, and potentially incarceration. *Id.*

**ANSWER: Defendants admit the Municipal Codes §§ 82-3, 82-6 are written documents which speak for themselves and any inconsistent characterizations thereof are denied. Defendants deny the remaining allegations contained in paragraph 32 of Plaintiff's Amended Complaint.**

33.     There are no provisions that tell employees or private citizens what procedures city officials will use to determine whether a statement is "false."

---

[1] The Amended Complaint refers to Exhibit 2 as Municipal Code Chapter 82. On March 23, 2023, ten days after the Exhibit was printed, the City adopted a recodification of its Code. That recodification did not change the substance of §§ 82-3–82-6, but did renumber them as §§ 18-3–18-6. *See* Sheboygan Mun. Code § 18-3–18-6 (available at https://sheboygan.municipalcodeonline.com/book?type=ordinances#nam e=Sec_2251_Disclosure_Of_Confidential_Information). To avoid confusion, Defendants will continue to refer to the former code section numbers since that is what Plaintiff references in his Amended Complaint.

**ANSWER: The Court entered an Order dismissing Claim Four – Violation of the Fourteenth Amendment Due Process (Vague) "False Statements" Ordinance. (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. Defendants provide no answer to paragraph 33 of Plaintiff's Amended Complaint.**

34. The Ordinance does not reference which public officials will determine the alleged "truth" or "falsity" of an employees' "statements," nor does it determine whether an official to whom such "statements" may pertain to *will be involved in determining the "falsity" of statements made about them.*

**ANSWER: The Court entered an Order dismissing Claim Four – Violation of the Fourteenth Amendment Due Process (Vague) "False Statements" Ordinance. (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. Defendants provide no answer to paragraph 34 of Plaintiff's Amended Complaint.**

35. The *False Statements* Ordinance threatens employees with being labeled as liars, dishonest, or making "false statements" about political corruption in connection with the employees' potential discipline or termination.

**ANSWER: Defendants deny paragraph 35 of Plaintiff's Amended Complaint.**

36. On information and belief, the Defendants also fired Mr. Wolf, in part, based on his alleged violations of the *False Statements* Ordinance in his Confidential Email and short recorded radio statement that Sheboygan DEIB leaders had threatened to oppose him after he denied their request for $70,000 at the DEIB lunch in October 2022.

**ANSWER: Defendants deny paragraph 36 of Plaintiff's Amended Complaint.**

13

(II)     **The Defendants Target Mr. Wolf as City Administrator.**

     a.  <u>The City Administrator Position in Sheboygan.</u>

37.     Wisconsin state law allows a municipality to create property interests in specific jobs by city ordinance where such an employee can only be fired for "cause" which is defined under city and state law as neglect of duty, inefficiency, or malfeasance in office. Wis. Stat. 17.12(1)(c)(2)(b).

**ANSWER: The allegations contained in paragraph 37 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny the allegations. To the extent paragraph 37 contains assertions of fact, Defendants deny that Wis. Stat. 17.12(1)(c)(2)(b) created a property interest in Plaintiff's City Administrator position.**

38.     Sheboygan has a "Mayor-Council" form of government, where the mayor is the head over the Fire and Police Departments for the City of Sheboygan and acts as the "presiding officer" over the Common Council. *See* Wis. Stat. § 62.09(8)(d).

**ANSWER: Defendants admit paragraph 38 of Plaintiff's Amended Complaint.**

39.     The mayor has not held power or authority over the City budget since 2011, when the City Administrator position was created to remove the mayor's power over the budget to allow a nonpartisan, experienced City Administrator to oversee public funds.

**ANSWER: Defendants deny paragraph 39 of Plaintiff's Amended Complaint. Defendants affirmatively state that Sheboygan Municipal Code § 2-124 specifically provides that the Mayor has general veto power and Sheboygan Municipal Code § 2–125 provides that the Mayor can also exercise a partial budget veto, thereby disapproving any annual budget item.**

14

40.     Sheboygan's General Ordinance 41-20-21 controls the City Administrator position ("City Administrator Ordinance") and includes a provision that states a City Administrator can only be removed for "cause" by a vote of eight Alderpersons on the Common Council. Sheb. Mun. Code Sec. 2-341.[2]

**ANSWER: The allegations contained in paragraph 40 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 40 contains assertions of fact, Defendants admit that Sheboygan's General Ordinance 2-341[3] is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.**

41.     This is no statutory mechanism under city or state law for Sheboygan's City Administrator to address or appeal a violation of his due process rights to notice and a hearing.

**ANSWER: Defendants deny paragraph 41 of Plaintiff's Amended Complaint.**

### b.  <u>Mr. Wolf's Successes as City Administrator.</u>

42.     Todd Wolf ("Mr. Wolf") was born in Ventura, California to an impoverished family and has spent the last forty years of his life living in Sheboygan, Wisconsin.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 42 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

---

[2] *Sheboygan Officials wants to take power from Mayor,* Pioneer Press (September 7, 2011), https://www.twincities.com/2011/09/07/sheboygan-officials-want-to-take-power-from-mayor/.

[3] The Amended Complaint refers to Sheboygan's General Ordinance 2-341. On March 23, 2023, the City adopted a recodification of its Code. That recodification did not change the substance of Sheboygan's General Ordinance 2-341, but did renumber it as § 2-328. *See* § 2-328, SMC (available at https://sheboygan.municipalcodeonline.com/book?type=ordinances#nam e=Sec_2251_Disclosure_Of_Confidential_Information). To avoid confusion, Defendants will continue to refer to the former code section numbers since that is what Plaintiff references in his Amended Complaint.

43.     Forced to be "on his own" at the age of seventeen, Mr. Wolf worked multiple jobs from a young age, eventually rising through the ranks to management because of his integrity, honesty, skill, and work ethic in the private sector.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 43 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

44.     Mr. Wolf put himself through college and obtained his master's degree while continuing to work full-time and being a devoted husband, father, and dedicated City of Sheboygan ("city") resident.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 44 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

45.     Beginning in 2011, Mr. Wolf began serving on various city commissions and committees to serve the people of Sheboygan and prepare to someday shift to full-time public service in Sheboygan.

**ANSWER: Defendants admit that Plaintiff has served on various City committees and commissions. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 45 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

46.     Mr. Wolf was elected as an Alderman on the Sheboygan Common Council in 2015, and from 2016-2020, Mr. Wolf served as Council President.

**ANSWER: Defendants deny paragraph 46 of Plaintiff's Amended Complaint as stated. Defendants affirmatively state that Plaintiff was selected by the Common Council**

on June 6, 2015, to fill a vacancy left by the resignation of Alderperson Eldon Burg. **Plaintiff was elected Vice President for the 2016-2017 Common Council year. He was elected President for the 2017-2018 Common Council year and served in that position until he was appointed to his position as City Administrator.**

47.     Donohue became concerned that Mr. Wolf was becoming one of the most influential voices in the city because he could bring all sides of the political aisle together, and as an Alderman and President of the Common Council, Mr. Wolf's character, honesty, and integrity were never questioned.

**ANSWER: Donohue denies paragraph 47 of Plaintiff's Amended Complaint.**

48.     Over time, Mr. Wolf's influence in the community began to outshine Donohue's— who is a longtime, well-known left-wing Democrat that opposes working with Republicans while Mr. Wolf was experienced in business management and able to work with all political factions to better the community.

**ANSWER: Defendants deny paragraph 48 of Plaintiff's Amended Complaint.**

49.     Mr. Wolf walked away from his successful private sector career when he became Sheboygan's City Administrator in July 2020—at the height of the COVID 19 pandemic.

**ANSWER: Defendants admit that Plaintiff was appointed to the City Administrator position effective July 7, 2020. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 49 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

50.     Mr. Wolf was concerned about the political climate and makeup of council even with the City Administrator Ordinance "cause" provision, so he asked for additional assurances

if he was agreeing to permanently walk away from his private sector career given his need for stability as he provided for his family.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny what Plaintiff was allegedly "concerned" about, and on that basis, deny same and demand strict proof thereof. Defendants deny the remaining allegations contained in paragraph 50 of Plaintiff's Amended Complaint.**

51.     Sheboygan former Mayor and previous Council codified additional assurances for Mr. Wolf in an agreement ("Additional Assurances agreement") that included entitling him to automatic severance pay if the Council took *any action* against him that the agreement defined as a termination including a "reduction in pay," modification of Mr. Wolf's job duties, or a termination without cause.

**ANSWER: Defendants admit only that the City of Sheboygan entered into an Employment Agreement with Plaintiff, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit 3. Defendants admit the Employment Agreement is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants deny the remaining allegations contained in paragraph 51 of Plaintiff's Amended Complaint.**

52.     The Agreement does not state that Mr. Wolf's "termination without cause" is valid, lawful, or effective; only that a "termination without cause" would entitle Mr. Wolf to an automatic payment as an additional benefit of his employment.

**ANSWER: Defendants admit only that the City of Sheboygan entered into an Employment Agreement with Plaintiff, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit 3. Defendants admit the Employment Agreement is a written**

document which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants deny the remaining allegations contained in paragraph 52 of Plaintiff's Amended Complaint.

53.     The Additional Assurances agreement was not waiver the "cause" provision in the City Administrator Ordinance based on Section 16 that expressly states, "nothing in the agreement shall contravene the [City Administrator] ordinance." A true and accurate copy of Mr. Wolf's Additional Assurances agreement and the City Administrator Ordinance is attached to this Complaint as Exhibit 3.

**ANSWER: Defendants admit only that the City of Sheboygan entered into an "Employment Agreement" with Plaintiff, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit 3. Defendants admit the Employment Agreement is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants deny the remaining allegations contained in paragraph 53 of Plaintiff's Amended Complaint.**

54.     The City Administrator Ordinance "cause" provision was in effect when Mr. Wolf signed his Additional Assurances Agreement in June 2020.

**ANSWER: Defendants admit only that the City of Sheboygan entered into an "Employment Agreement" with Plaintiff, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit 3. Defendants admit the Employment Agreement is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants admit the specific language of Municipal Code § 2-341 in effect at the time Plaintiff signed his Employment Agreement provided that "[t]he initial appointee's terms shall expire August 23, 2016, and said appointee may be removed only**

for cause by a three-fourths vote of the common council." **Defendants deny the remaining allegations contained in paragraph 54 of Plaintiff's Amended Complaint.**

55.     As City Administrator from 2020-2023, Mr. Wolf was highly admired, respected, and well-liked by nearly every employee and department head who worked with him, and all of Mr. Wolf's performance reviews by the Council were "outstanding" when he was City Administrator.

**ANSWER: Defendants deny that Plaintiff was highly admired, respected, and well-liked by "nearly every" employee and department head who worked with Plaintiff. Defendants deny that Plaintiff received outstanding marks in all areas of his performance reviews when he was a City Administrator.**

56.     Mr. Wolf achieved incredible success as Sheboygan's City Administrator, including *first-ever* internal audits, wage studies and increases, cutting large amounts of wasteful spending, and implementing long overdue processes into Sheboygan's City government.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contain in paragraph 56 of Plaintiff's Amended Complaint relative to Plaintiff's claimed "incredible success" as the term is vague and undefined, and on that basis, deny same and demand strict proof thereof. Defendants deny any allegation or inference that Plaintiff was solely responsible for the actions listed in paragraph 56 of Plaintiff's Amended Complaint.**

57.     As City Administrator, Mr. Wolf learned of failures by the City Attorneys' office, when he learned of ongoing complaints and personnel issues from Adams' refusals to advise the city's department heads on legal matters.

**ANSWER: Defendants deny paragraph 57 of Plaintiff's Amended Complaint.**

58.     In 2021, Mr. Wolf was informed that a city police officer had filed a sexual harassment complaint based, in some part, on incidents that had occurred before Mr. Wolf was City Administrator.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants admit paragraph 58 of Plaintiff's Amended Complaint.**

59.     When the City Attorney (Adams) was unwilling to investigate or handle the complaint, and the Mayor (Sorenson) was unable to take action as a young, 27-year old, Mr. Wolf helped Sorenson by retaining an outside law firm to investigate how Sheboygan's Police Department Internal Affairs Division ("IAD") handled the sexual harassment complaint.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny paragraph 59 of Plaintiff's Amended Complaint.**

60.     Mr. Wolf and Sorenson ensured that the external investigation was fully conducted without any outside interference so that it would be completed.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is**

required. To the extent a response is required, Defendants deny paragraph 60 of Plaintiff's Amended Complaint as stated. Defendants deny Plaintiff was involved in the retention of outside counsel or oversight of the external investigation.

61. At one point, the City's *then* Human Resources Director, Vicky Schneider ("Schneider"), tried to interfere with that external IAD police harassment investigation, and Mr. Wolf, along with Sorenson, did not allow her to interfere.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny paragraph 61 of Plaintiff's Amended Complaint as stated. Defendants deny that Ms. Schneider tried to interfere with the external investigation.**

62. The outside investigation into IAD was fully completed, and the complaining officer accepted a settlement from the city in 2021 following the completion of the investigation.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny paragraph 62 of Plaintiff's Amended Complaint as stated. Defendants admit that a settlement was reached with the complainant in relation to underlying sexual harassment complaint. Defendants deny the remaining allegations contained in paragraph 62 of Plaintiff's Amended Complaint.**

63.     In 2021, Mr. Wolf was nominated for Sheboygan County Chamber's "Most Valuable Player of the Team" award.

**ANSWER: Defendants admit paragraph 63 of Plaintiff's Amended Complaint.**

64.     On August 7, 2022, Mr. Wolf was awarded by Employ Humanity's nationwide search as an "Inspirational Leader" based on his "extraordinary ability to lead, serve and inspire."

**ANSWER: Defendants admit that Plaintiff was recognized as an Inspirational Leader by Employee Humanity on August 7, 2022. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 64 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

### c. The Defendants' ARPA endeavors and targeting campaign against Mr. Wolf.

65.     The federal government awarded $22.4 million to the City of Sheboygan under the American Rescue Plan Act ("ARPA"), which was passed by Congress on March 11, 2021.

**ANSWER: Defendants admit paragraph 65 of Plaintiff's Amended Complaint.**

66.     On March 18, 2021, Donohue, then an Alderwoman, set up a meeting with Mr. Wolf and other city leaders to seek city money for her "Sheboygan Justice Equity" group under her "Sheboygan DEIB umbrella" seeing ARPA and city money for her private groups.

**ANSWER: Donohue denies paragraph 66 of Plaintiff's Amended Complaint.**

67.     On information and belief, prior to Mr. Wolf being named City Administrator, Donohue had unfettered access to public city funds for her private and political endeavors under the former City Administrator Darrell Hofland.

**ANSWER: Defendants deny paragraph 67 of Plaintiff's Amended Complaint.**

68.     Now the City Administrator, Mr. Wolf explained to Donohue that he would never authorize ARPA funds for her DEI and private social initiatives because her requests did not qualify for ARPA's strict conditions.

**ANSWER: Donohue denies paragraph 68 of Plaintiff's Amended Complaint.**

69.     On information and belief, in March of 2021, Donohue told several persons, including Defendants Salazar and Sorenson, that she would make sure that the City Administrator (Wolf's) "powers" over the city's financial decisions went back to the mayor because Mr. Wolf rejected her ARPA funding requests.

**ANSWER: Donohue, Salazar and Sorenson deny paragraph 69 of Plaintiff's Amended Complaint.**

70.     Donohue ran and supported the campaign of Ryan Sorenson for mayor, and Sorenson was elected Mayor of Sheboygan on April 7, 2021.

**ANSWER: Donohue denies running the campaign of Ryan Sorenson for mayor. Defendants admit Sorenson was elected Mayor of Sheboygan on April 7, 2021.**

71.     Sorenson has repeatedly referred to Donohue as his "mentor" and "advisor" who he spoke to on an almost daily basis while Mr. Wolf was City Administrator.

**ANSWER: Sorenson admits that Donohue is one of a number of people that he has referred to as a mentor and admits to communicating with Donohue while Plaintiff was City Administrator. Sorenson denies the remaining allegations contained in paragraph 71 of Plaintiff's Amended Complaint.**

72.     On information and belief, the day after Sorenson was elected Mayor, Schneider exclaimed that the "power" was finally "going to go back to Ryan [Sorenson]" and would be taken away "from Todd [Wolf]."

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 72 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

73.     After the 2021 election, Defendant Amanda Salazar, whom Donohue selected to fill her Council seat, also stated that the "powers needed to go back" to the Mayor (Sorenson) and away from the City Administrator (Mr. Wolf).

**ANSWER: Defendants deny paragraph 73 of Plaintiff's Amended Complaint. Salazar denies the comment attributed to her.**

74.     In or around May 2021, Mr. Wolf and the city's Planning and Development Director, Chad Pelishek ("Pelishek"), put together a potential list of long-needed city programs that would lawfully comport with ARPA's guidelines, and Mr. Wolf immediately began to "earmark" ARPA funds including allocating the vast majority of the money to a new water treatment project to benefit all residents in Sheboygan.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 74 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

75.     Shortly after Mr. Wolf began to earmark ARPA funds in a legally compliant manner, Adams' told Mr. Wolf that ARPA guidelines required the city to pass new "amendments" to their Ethics Policies ("ARPA Amendments").

**ANSWER: Adams denies paragraph 75 of Plaintiff's Amended Complaint. Adams denies the comment attributed to him.**

76.     Adams' office drafted *Confidential Information* policy as part of the ARPA Amendments that stated the city would have "cause" to fire any city employee, including Mr.

Wolf, who disclosed *undefined alleged* "confidential information" about city affairs and that some public officials "cannot and should not be without all personal and economic interest in the decisions and policies of government." Sheb. Mun. Code, Sec. 2-263. *See* Ex. 1.

**ANSWER: Defendants admit that the City Attorney's office drafted General Ordinance 5-21-22[4] amending the City of Sheboygan's Code of Ethics, which are written documents that speak for themselves and any inconsistent characterizations thereof are denied. Defendants deny the remaining allegations contained in paragraph 76 of Plaintiff's Amended Complaint.**

77.     The federal ARPA terms and conditions do not require municipal recipients to adopt a policy prohibiting disclosures of "confidential information" about city affairs or conflicts of interest for ARPA funds going to private interest groups.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 77 of Plaintiff's Amended Complaint, and on that basis, deny. Defendants admit Ordinance 5-21-22 is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.**

78.     On information and belief, Donohue helped Adams' staff write the language for the ARPA Amendments *Confidential Information* Policy to discipline potential employees, like Mr. Wolf or Pelishek, who ever disclosed Donohue's efforts to obtain public or ARPA funds for her DEI/Equity groups.

---

[4] The Amended Complaint refers to Ordinance 5-21-22 and to § 2-263. General Ordinance 5-21-22 was the council document that amended § 2-261–2-276 of the Municipal Code, which includes § 2-263. On March 23, 2023, the City adopted a recodification of its Code. That recodification did not change the substance of § 2-263, but did renumber it as § 2-242. *See* § 2-242, SMC (available at https://sheboygan.municipalcodeonline.com/book?type=ordinances#nam e=Sec_2251_Disclosure_Of_Confidential_Information). To avoid confusion, Defendants will continue to refer to the former code section number since that is what Plaintiff references in his Amended Complaint.

**ANSWER: Donohue and Adams deny paragraph 78 of Plaintiff's Amended Complaint.**

79.     After Mr. Wolf rejected Donohue's ARPA requests, Donohue asked Mr. Wolf to hire a "DEI Consultant" within her DEI/Equity group "umbrella" who would "[i]dentify needed resources within city government to ensure the success of DEI plans."

**ANSWER: Donohue denies paragraph 79 of Plaintiff's Amended Complaint.**

80.     The city's ARPA funds are considered "resources within city government."

**ANSWER: Defendants admit paragraph 80 of Plaintiff's Amended Complaint.**

81.     Mr. Wolf rejected Donohue's DEI consultant request to use city budget money to assess most pressing department needs and obtain long-needed sexual harassment training for staff.

**ANSWER: Defendants deny paragraph 81 of Plaintiff's Amended Complaint.**

82.     On information and belief, when Donohue's "original" DEI leadership team agreed with Mr. Wolf that he should not be hiring them as consultants with city money until he assessed department needs, Donohue replaced these original leaders with three women to head the DEIB umbrella collective operations: Ale Guevara ("Guevara"), Jamie Haack ("Haack"), and Heather Cleveland. (Hereinafter "DEIB leaders").

**ANSWER: Donohue denies paragraph 82 of Plaintiff's Amended Complaint.**

83.     Sorenson later attempted to hire one of Donohue's DEIB leaders to write government grant proposals for the city that would directly finance one of the DEIB leader's private business, and Mr. Wolf told Sorenson that was illegal.

**ANSWER: Sorenson denies paragraph 83 of Plaintiff's Amended Complaint.**

84.     On information and belief, Donohue told Sorenson in 2021 that he needed to get female employees to complain about Mr. Wolf so that they could convince eight Alderpersons to turn over "power" of the city's finances to Sorenson and have "cause" to fire Mr. Wolf.

**ANSWER: Donohue and Sorenson deny paragraph 84 of Plaintiff's Amended Complaint.**

85.     On information and belief, between 2021 and 2022, Sorenson told several female employees at the city that Mr. Wolf was "toxic" and to "watch out" for him.

**ANSWER: Sorenson denies paragraph 85 of Plaintiff's Amended Complaint.**

86.     In fall of 2021, Sorenson told Schneider that Mr. Wolf had "a target" on her back and was discriminating and retaliating against her because she tried to interfere with the external IAD investigation. *See* supra ¶¶ 58-62.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Sorenson admits telling Schneider that it appeared she had a target on her back. Sorenson denies the remaining allegations contained in paragraph 86 of Plaintiff's Amended Complaint.**

87.     Based almost exclusively on the false statements from Sorenson, Schneider filed a complaint with the Wisconsin Department of Workforce Development ("DWD") in January 2022, accusing Mr. Wolf "retaliating" against her.

**ANSWER: Defendants admit that Schneider filed a complaint with the Wisconsin Department of Workforce Development alleging that Plaintiff was discriminating and retaliating against her. Defendants admit Schneider's Complaint is a written document**

which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants deny the remaining allegations contained in paragraph 87 of Plaintiff's Amended Complaint.

88.     The city retained an accomplished outside attorney to investigate Schneider's claim in 2022.

**ANSWER: Defendants admit the City of Sheboygan retained James Macy to defend against Ms. Schneider's DWD complaint. Defendants deny the remaining allegations contained in paragraph 88 of Plaintiff's Amended Complaint.**

89.     On information and belief, the outside attorney reported to Sorenson, Adams, and the Common Council in the summer of 2022 that Schneider's "retaliation" claim against Mr. Wolf was "meritless," and Mr. Wolf did not do anything wrong.

**ANSWER: Defendants deny paragraph 89 of Plaintiff's Amended Complaint.**

90.     On information and belief, after Donohue was informed that the outside attorney exonerated Mr. Wolf, so Donohue told Sorenson to have the Director of Senior Services, Emily Rendall-Araujo ("Rendall") to file another "retaliation" complaint against Mr. Wolf that would touch on "DEI" related matters so that the Council would find cause to fire Mr. Wolf or force Mr. Wolf to finally hire Donohue's "DEI consultant" to assess where city resources should go.

**ANSWER: Donohue and Sorenson deny paragraph 90 of Plaintiff's Amended Complaint.**

91.     When Mr. Wolf was awarded the national "Inspirational Leader" award in August 2022, Sorenson refused to publish the award on the city's public webpage or any city platform.

**ANSWER: Sorenson denies paragraph 91 of Plaintiff's Amended Complaint.**

92.     On information and belief, Donohue, Sorenson, and the Defendant city officials wanted to get rid of Mr. Wolf before the remaining non-earmarked ARPA funds were spent before the original deadline of June 2023.

**ANSWER: Defendants deny paragraph 92 of Plaintiff's Amended Complaint.**

93.     On information and belief, Donohue, Sorenson, and Rendall devised a plan to set up Mr. Wolf for another frivolous retaliation complaint by involving a DEI activist and political friend, "journalist" Maya Hilty with the Sheboygan Press.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. The Court entered an Order dismissing Plaintiff's claims against Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.) Therefore, Sorenson provides no answer to paragraph 93 of Plaintiff's Amended Complaint. Donohue denies the allegations contained in paragraph 93 of Plaintiff's Amended Complaint.**

94.     On information and belief, Sorenson took over control of the remaining non-earmarked ARPA funds in January 2023 and hired one of Donohue's DEI leaders as a consultant with the city as soon as Mr. Wolf was fired as City Administrator.

**ANSWER: Sorenson denies paragraph 94 of Plaintiff's Amended Complaint.**

d.  <u>The Racial Slur Incident.</u>

*(1) Mr. Wolf defends a city employee who expressed concerns about a citizen racism incident.*

95.     On information and belief, a city employee who attends citizen community neighborhood meetings told Pelishek that a mysterious citizen used a racial slur at a meeting, and the citizens running the meeting did not know how to respond.

ANSWER: Defendants admit, based upon information and belief, that a Planning and Development employee present at a community meeting on August 16, 2022, reported to Mr. Pelishek that a person in attendance at the meeting used a derogatory racial slur.

96.     On August 22, Pelishek expressed his concern as a private citizen about the citizen community racism incident at a city department head meeting.

ANSWER: Defendants deny paragraph 96 of Plaintiff's Amended Complaint. Defendants affirmatively state that during a department head meeting on August 22, 2022, Mr. Pelishek repeated the actual racial slur that was allegedly said during the August 16 neighborhood meeting.

97.     Rendall, a department head present at the meeting, asked Pelishek what racial slur was used, and Pelishek repeated the slur ("n-word") in responding to Rendall (hereinafter "August 22 meeting" or "slur incident").

ANSWER: Defendants deny paragraph 97 of Plaintiff's Amended Complaint.

98.     Within hours of the August 22 meeting, Sorenson told Mr. Wolf that Rendall was telling citizens in the public that there was racism in the city because Pelishek made a racial slur, and Sorenson encouraged Mr. Wolf to talk to Rendall about her misleading disclosures.

ANSWER: Sorenson admits he told Plaintiff that Ms. Rendall-Araujo discussed the fact that Mr. Pelishek had repeated a racial slur at the August 22, 2022, department head meeting with a small group of her associates that were not City employees. Sorenson denies the remaining allegations contained in paragraph 98 of Plaintiff's Amended Complaint.

99.     Mr. Wolf immediately arranged an "emergency" meeting for August 26 and properly addressed the August 22 "slur incident" with all department heads, outside expert professionals, and all those involved, as well as with Council Leadership.

**ANSWER: Defendants admit only that Plaintiff scheduled an emergency department head meeting for August 26, 2022, and asked Alonzo Kelly to be present at the meeting. Defendants deny the remaining allegations contained in paragraph 99 of Plaintiff's Amended Complaint.**

100.     On information and belief, Donohue's DEI leaders called Hilty and told her about the racial slur incident in early September 2022 and told her that Mr. Wolf was responsible for turning down their requests to be hired by the city.

**ANSWER: Donohue denies paragraph 100 of Plaintiff's Amended Complaint.**

101.     Hilty emailed only Mr. Wolf on September 12 to comment specifically on Pelishek using a racial slur at the August 22 meeting.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants admit paragraph 101 of Plaintiff's Amended Complaint based on information and belief.**

102.     Mr. Wolf immediately informed Council leadership, Sorenson and Adams that the media (Hilty) was informed about the slur incident, and Council leadership encouraged Mr. Wolf and Sorenson to meet together with Hilty about the slur incident.

**ANSWER: Defendants admit Felde and Filicky-Peneski advised Plaintiff that Sorenson should attend the requested interview with Plaintiff. Defendants deny the remaining allegations contained in paragraph 102 of Plaintiff's Amended Complaint.**

103.    Mr. Wolf set up a meeting for September 20 between himself, Sorenson, and Hilty, but unbeknownst to Mr. Wolf, left City Hall to have a private meeting with Hilty on September 16, when Mr. Wolf was out of the office.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 103 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

104.    On information and belief, Sorenson told Hilty about Pelishek and Mr. Wolf blocking DEI ARPA funds and about he and Donohue's plan to get funding for the DEIB group on September 16.

**ANSWER: Sorenson denies paragraph 104 of Plaintiff's Amended Complaint.**

105.    In the interviews, Mr. Wolf stated that he was disappointed in another employee (Rendall) who had disclosed the "slur incident" to the public because that hurt the employee (Pelishek) who was trying to address racism and caused harassment and humiliation for that employee (Pelishek).

**ANSWER: In answering paragraph 105 of Plaintiff's Amended Complaint, Sorenson admits that Plaintiff did not mention employee names during Plaintiff's interview with Hilty on September 20, 2022. Sorenson affirmatively states Plaintiff told Hilty that it was a director that "let the information out" in relation to the August 22, 2022, department meeting. Defendants further affirmatively state that at later dates, in**

other public / media communications, Plaintiff and his attorney referred to the director by name whom Plaintiff believed "let the information out."

106. Mr. Wolf did not mention a single employee name to Hilty during his interview, nor did he verify that Pelishek was the employee who said the slur, but only referenced "directors" or "employees" at the city.

**ANSWER: Sorenson admits that Plaintiff did not mention employee names during Plaintiff's interview with Hilty on September 20, 2022. Sorenson affirmatively states Plaintiff told Hilty that it was a director that "let the information out" in relation to the August 22, 2022, department meeting. Defendants further affirmatively state that at later dates, in other public / media communications, Plaintiff and his attorney referred to the director by name whom Plaintiff believed "let the information out."**

107. Following Hilty's interview and his growing concerns about how Hilty's article would harass Mr. Pelishek, Mr. Wolf arranged a "lunch" with Donohue's DEIB leaders for October 5.

**ANSWER: Defendants admit that Plaintiff asked Abby Block to arrange a lunch with Ale Guevara and Jamie Haack which occurred on October 5, 2022. Defendants deny the remaining allegations contained in paragraph 107 of Plaintiff's Amended Complaint.**

108. On information and belief, the DEIB leaders told Hilty about the October 5 meeting and asked her to hold off on publishing her article because they believed that Mr. Wolf might finally pay them as "consultants" for the city as Donohue's had requested in 2021.

**ANSWER: Defendants deny paragraph 108 of Plaintiff's Amended Complaint based upon information and belief.**

109.     Mr. Wolf asked a city employee, Abby Block (Ms. Block), to arrange the meeting because Ms. Block was associated and connected with the DEIB group.

**ANSWER: Defendants admit that Plaintiff asked Ms. Block to arrange a lunch with Ms. Guevara and Ms. Haack. Defendants deny the remaining allegations contained in paragraph 109 of Plaintiff's Amended Complaint.**

110.     On October 5, Pelishek, Mr. Wolf and Ms. Block headed to the lunch meeting (hereinafter "DEIB lunch"), and as they headed to the DEIB lunch, Ms. Block warned Mr. Wolf and Pelishek that the DEIB leaders would ask for money during the meeting.

**ANSWER: Defendants deny paragraph 110 of Plaintiff's Amended Complaint based upon information and belief.**

111.     At the DEIB lunch, one of the leaders, Guevara, asked Mr. Wolf specifically what his budget was for "DEI matters" and then requested a $70,000 budget for their DEIB "services."

**ANSWER: Defendants deny paragraph 111 of Plaintiff's Amended Complaint based upon information and belief.**

112.     Mr. Wolf stated he would not pay them any money or hire them.

**ANSWER: Defendants deny paragraph 112 of Plaintiff's Amended Complaint based upon information and belief.**

113.     Guevara then stated their group would "oppose" Mr. Wolf and any other expert he hired if he did not pay them because their "time is valuable."

**ANSWER: Defendants deny paragraph 113 of Plaintiff's Amended Complaint based upon information and belief.**

114.    Ms. Block, Mr. Pelishek, and Mr. Wolf left the DEIB lunch and all commented about how uncomfortable that became following Guevara's statements.

**ANSWER: Defendants deny paragraph 114 of Plaintiff's Amended Complaint based upon information and belief.**

115.    On information and belief, Guevara contacted Hilty on October 5 after the DEIB lunch and told Hilty to publish the article because Mr. Wolf refused to pay them; and Hilty agreed on or around early October 2022 to publish a series of articles about the slur, how Mr. Wolf was failing to address "racism" in the city, and discussing his incompetence as City Administrator because of "racism" to help Sorenson incite a "public outcry" and force Council to take action against Mr. Wolf.

**ANSWER: Defendants deny paragraph 115 of Plaintiff's Amended Complaint based upon information and belief.**

116.    Hilty published her first article entitled, "City Leader Uses Racial Slur" on October 10, 2022, and displayed prominently on the online version of her article is a photograph of Mr. Wolf—who has never used a racial slur. A true and accurate copy of Hilty's October 10 article is attached as Exhibit 4.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed and, as such, no responsive pleading is required. To the extent a response is required, Defendants admit only that Ms. Hilty published an article on October 10, 2022, which is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.**

117. On information and belief, Hilty showed "draft versions" of her article to the DEIB leaders, Rendall, Donohue, and Sorenson prior to publication to make sure that her statements would be sufficient to incite "public outcry," and convince the "swing vote" Council members that Mr. Wolf was "so dumb," incompetent and needed to be fired. A true and accurate copy of text messages between Rendall and Defendant Alderwoman Salazar about Hilty's article is attached as Exhibit 5.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed and, as such, no responsive pleading is required. To the extent a response is required, Sorenson and Donohue deny that Ms. Hilty showed draft versions of her article to them. Salazar admits that Exhibit 5 includes a copy of her text messages which is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants deny the remaining allegations contained in paragraph 117 of Plaintiff's Amended Complaint.**

118. Hilty quoted Guevara in her article stating that citizens were already "concerned about equity and inclusion issues in [Sheboygan's] government" and Guevara called on "city leaders" to "do something" about it. *See* Ex. 4.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed and, as such, no responsive pleading is required. To the extent a response is required, Defendants admit**

that Hilty's article is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.

119. On information and belief, Donohue and Sorenson told Rendall to file a "complaint" against Mr. Wolf because of Hilty's article conclusion that Mr. Wolf cared more about the director who leaked the "slur incident" to the public than about the "racial slur."

**ANSWER: Donohue and Sorenson deny paragraph 119 of Plaintiff's Amended Complaint.**

120. On information and belief, Rendall filed a "complaint" for "retaliation for reporting racism" against Mr. Wolf in October 2022, even though it was *Pelishek* who reported racism on August 22.

**ANSWER: Defendants deny paragraph 120 of Plaintiff's Amended Complaint as stated. Adams admits that at some point following the August 22 department head meeting, Ms. Rendall-Araujo spoke with Adams about Plaintiff's treatment of her following the August 22, 2022, department head meeting. Defendants deny the remaining allegations contained in paragraph 120 of Plaintiff's Amended Complaint.**

121. Mr. Wolf has never been shown, nor has he ever seen any complaint from Rendall about him, and Rendall never "reported racism" to Mr. Wolf while he was City Administrator.

**ANSWER: In answering paragraph 121 of Plaintiff's Amended Complaint, Defendants admit that Ms. Rendall Araujo did not file a written complaint against Plaintiff. Defendants deny the remaining allegations contained in paragraph 121 of Plaintiff's Amended Complaint.**

122.     On information and belief, Adams and Sorenson concealed Rendall's complaint from Mr. Wolf so they could use it against him to convince the Council to fire him.

**ANSWER: Adams and Sorenson deny paragraph 122 of Plaintiff's Amended Complaint.**

123.     Immediately following Hilty's article, Sorenson asked the "public" to email the Common Council and write "outraged" emails about Mr. Wolf's failures based on Hilty's article.

**ANSWER: Sorenson denies paragraph 123 of Plaintiff's Amended Complaint.**

124.     One or more of the Defendant Alderwomen joined in the "outcry" against Mr. Wolf in October and were very pleased with the "angry" emails from the DEI/Progressive Women groups because it would convince the "undecided" swing votes to act against Mr. Wolf.

**ANSWER: Felde, Filicky-Peneski, Salazar, Ramey, Ackley, and Perrella deny paragraph 124 of Plaintiff's Amended Complaint.**

125.     When one female city employee wrote a long email to every Council member about the "slur incident" and how great a job Mr. Wolf and Pelishek had done to address diversity issues, Defendant Alderwoman Salazar texted Defendant Perrella, "not a good look." A true and accurate copy of a text message exchange between Salazar and Perrella is attached as Exhibit 6.

**ANSWER: Salazar and Perrella admit that Exhibit 6 includes a copy of an email from a City employee as well as a copy of text messages between Perrella and Salazar which are written documents which speak for themselves, and any inconsistent characterizations thereof are denied.**

126. Sorenson bragged to city employees that he made Mr. Wolf "cry" because of Hilty's articles. A true and accurate copy of text messages from Rendall to Salazar about Def. Ryan Sorenson is attached as Exhibit 7.

**ANSWER: Sorenson denies paragraph 126 of Plaintiff's Amended Complaint. Salazar affirmatively states that Exhibit 7 includes a copy of her text message which is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.**

127. As part of Hilty's agreement with Sorenson and Donohue, Hilty published a total of *three articles* specifically targeting Mr. Wolf as retaliatory and failing to address "racism" in City Hall all in the month of October 2022.

**ANSWER: Sorenson and Donohue deny paragraph 127 of Plaintiff's Amended Complaint.**

128. On October 27, in response to Hilty's articles, Donohue sent all ten Council members her proposal for DEI Consultant funding that Mr. Wolf had rejected following Hilty and Sorenson's fabricated public scandal. A true and accurate copy of Donohue's email to the Council and Defendant Alderwomen posts wanting for "DEI" work is attached as Exhibit 8.

**ANSWER: In answering paragraph 128 of Plaintiff's Amended Complaint, Donohue admits to sending an email to Common Council members dated October 28, 2022. Donohue admits Exhibit 8 includes a copy of the October 28, 2022, email which is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Ackley admits Exhibit 8 includes a copy of text messages which are written documents which speak for themselves, and any inconsistent characterizations thereof are**

denied. **Defendants deny the remaining allegations contained in paragraph 128 of Plaintiff's Amended Complaint.**

129.    On November 1, DEI leaders Guevara and Cleveland met with Sorenson privately in his office.

**ANSWER: Sorenson admits he met with Cleveland and Guevara on November 1, 2022, to discuss issues relating to refugees in the Sheboygan Community. Sorenson denies the remaining allegations contained in paragraph 129 of Plaintiff's Amended Complaint.**

130.    On information and belief, Sorenson told Guevara and Cleveland that he would hire them to assess "city resources" once Mr. Wolf was taken care of following Hilty's articles.

**ANSWER: Sorenson denies paragraph 130 of Plaintiff's Amended Complaint.**

131.    On November 7, 2022, at approximately 3:00 PM—three hours before the next Council meeting—Mr. Wolf sent an urgent email marked "Confidential" to all 10 Council members ("Confidential Email") that expressly addressed exactly how Rendall had set Pelishek up to make the "racial slur," that the DEIB leaders asked for money, and that he was concerned that Hilty's articles and the October "outcry" occurred because he turned down their money request at the DEIB lunch.

**ANSWER: Defendants admit Plaintiff sent an email and letter to Common Council dated November 7, 2022. The email and letter are written documents which speak for themselves, and any inconsistent characterizations thereof are denied.**

132.    Mr. Wolf's Confidential Email was not sent to Adams or Sorenson.

**ANSWER: Defendants admit that Plaintiff did not include Sorenson or Adams on the list of recipients to whom he sent his November 7, 2022, email and letter.**

133.   The goal of Mr. Wolf's Confidential Email was to explain the full situation to the Council and express his concern that Pelishek was being harassed for his statements as a concerned citizen, and whether Hilty and the DEI leaders had a connection with certain public officials.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the reason that Plaintiff sent his email and letter to Common Council dated November 7, 2022, and on that basis, deny same and demand strict proof thereof. Defendants affirmatively state that Plaintiff's November 7, 2022, email and letter are written documents which speak for themselves, and any inconsistent characterizations thereof are denied.**

134.   Mr. Wolf did not make any false statements about Rendall, Pelishek, or the DEIB lunch with Guevara in his Confidential Email.

**ANSWER: Defendants deny paragraph 134 of Plaintiff's Amended Complaint based upon information and belief.**

135.   On information and belief, Mr. Wolf's confidential letter was immediately sent to Donohue, who told Council members to suspend Mr. Wolf and investigate him under the *False Statements* Ordinance.

**ANSWER: Defendants deny paragraph 135 of Plaintiff's Amended Complaint.**

136.   At 6:00 PM on November 7, Mr. Wolf attended the public Council meeting in his usual capacity as City Administrator—receiving no response from any city official.

**ANSWER: Defendants deny paragraph 136 of Plaintiff's Amended Complaint as stated. Further answering, Defendants admit only that Sorenson, Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar did not communicate with Plaintiff**

**about his November 7 correspondence between the time he emailed it at 3:00 p.m. and the start of the Council meeting at 6:00 p.m.**

    **(III)**    **The Defendants' Public Investigation into Mr. Wolf.**

        **a.**   **11/7 Council Meeting and the November Directives.**

137.    During the Council meeting on November 7, the Council went into closed session with all ten Alderpersons, Adams, and Sorenson.

    **ANSWER: Defendants admit paragraph 137 of Plaintiff's Amended Complaint.**

138.    At approximately 9:00 PM, the Council returned from closed session, and in open session, Felde publicly read the following administrative motion:

> "I am making a motion to place Administrator [Todd] Wolf on paid administrative leave effective immediately, for the purpose of investigating allegations and concerns regarding his conduct with direction to authorize the city attorney to hire outside counsel to conduct the investigation."

    **ANSWER: Defendants admit paragraph 138 of Plaintiff's Amended Complaint. Defendants admit that the recording of the November 7, 2022, Common Council meeting speaks for itself, and any inconsistent characterizations thereof are denied.**

139.    Immediately after the meeting adjourned, Mr. Wolf was approached by Adams and ordered to turn over his work laptop while Adams escorted Mr. Wolf out of City Hall in front of the private citizen attendees present at the meeting.

    **ANSWER: In answering paragraph 139 of Plaintiff's Amended Complaint, Adams admits after the November 7, 2022, meeting he walked Plaintiff to Plaintiff's office and gave Plaintiff the opportunity to gather his personal belongings. Adams told Plaintiff he could not take the City issued laptop issued to him with him while he was on administrative leave. Adams witnessed Plaintiff place the laptop on its docking station in**

Plaintiff's office. Adams walked with Plaintiff from his office as he exited the building. Adams denies the remaining allegations contained in paragraph 139 of Plaintiff's Amended Complaint.

140.    Adams did not allow Mr. Wolf any opportunity to collect his personal belongings from his office.

**ANSWER: Adams denies the allegations in paragraph 140 of Plaintiff's Amended Complaint. Adams affirmatively states that, after the November 7, 2022, meeting, he walked Plaintiff to Plaintiff's office and gave Plaintiff the opportunity to gather his personal belongings. Plaintiff selected some personal belongings to take with him and placed them in a backpack, which he carried out with him along with his umbrella and coat.**

141.    Neither Adams nor any Council member or Sorenson gave Mr. Wolf any information about what the "allegations" into his "conduct" were, and Mr. Wolf arrived at his home at 9:30 PM.

**ANSWER: In answering paragraph 141 of Plaintiff's Amended Complaint, Adams, Sorenson, Felde, Filicky-Peneski, Salazar, Ramey, Ackley, Rust, Dekker, and Perrella admit they did not offer Plaintiff any additional details regarding the reason for his administrative leave. Defendants affirmatively state that Plaintiff was present at the November 7, 2022, Common Council meeting when Felde made a verbal motion to place Plaintiff on administrative leave, Plaintiff did not ask Defendants for any additional details about what conduct was being investigated or why he was placed on administrative leave. Adams further affirmatively states that he had communications directly with and provided documents to Plaintiff's counsel in response to numerous open records request**

that commenced in November 2022; he met with Plaintiff's attorney on December 6, 2022 and discussed the basis for the City's investigation; and sent a letter to Plaintiff and his attorney on December 20, 2022 regarding the investigation. Defendants further affirmatively state that Plaintiff obtained additional information from Hall regarding the areas of investigation during his interview with Hall.

142.    Mr. Wolf was contacted by a local radio station to provide a recorded comment about the Council's public investigation announcement into him, and Mr. Wolf made a short statement that was pre-recorded from his private home at about 10:30 PM for the next day's morning news show.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 142 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

143.    Mr. Wolf's recorded statement mentioned that he was escorted out of the building like a "criminal" after individuals from the Sheboygan DEIB group promised to "oppose" him if he didn't pay them.

**ANSWER: Defendants admit that Plaintiff gave a recorded interview to WHBL which aired at 6:15 a.m. on November 8, 2022. The recording speaks for itself, and any inconsistent characterizations thereof are denied.**

144.    At the time of Mr. Wolf's statement, the "Sheboygan DEIB" group was not legally registered in the Wisconsin Department of Financial Institutions database and there was no website or public platform that indicated DEIB leaders' names.

**ANSWER: Defendants admit paragraph 144 of Plaintiff's Amended Complaint.**

145.    The only reference Mr. Wolf made to City officials in his short, recorded statement was that the DEIB individuals "went to Council and they listened."

**ANSWER: Defendants admit that Plaintiff gave a recorded interview to WHBL which aired at 6:15 a.m. on November 8, 2022. The recording speaks for itself, and any inconsistent characterizations thereof are denied.**

146.    Mr. Wolf made no remark at all about internal matters, Pelishek and Rendall's "slur incident" nor did he name the DEIB "leaders" that he was referring to.

**ANSWER: Defendants admit that Plaintiff gave a recorded interview to WHBL which aired at 6:15 a.m. on November 8, 2022. The recording speaks for itself, and any inconsistent characterizations thereof are denied.**

147.    Mr. Wolf has never spoken to any media outlet in any way since his short, recorded statement on November 7.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 147 of Plaintiff's Amended Complaint, and on that basis, deny. Defendants affirmatively state that Plaintiff told Hilty that it was a director that "let the information out" in relation to the August 22, 2022, department meeting. Defendants further affirmatively state that Plaintiff and his attorney provided a press release to various media organizations and offered to submit to interviews shortly after Plaintiff gave his recorded statement on November 7, 2022. Defendants further affirmatively state that at later dates, in other public / media communications, Plaintiff and his attorney referred to the director by name whom Plaintiff believed "let the information out."**

148. On information and belief, Donohue learned around 9:30 PM that neither Adams nor the Council had placed "directives" on Mr. Wolf during his leave, Donohue drafted language for Felde, Sorenson, and Salazar to serve on Mr. Wolf to keep him silence about her DEIB group.

**ANSWER: Donohue denies paragraph 148 of Plaintiff's Amended Complaint.**

149. The Council told Adams to type a letter with the "directives language" and serve that letter on Mr. Wolf late at night after Mr. Wolf had already arrived at his home.

**ANSWER: Defendants admit that Common Council directed Adams to draft the November 7, 2022, letter that was hand delivered to Plaintiff. Defendants deny the remaining allegations contained in paragraph 149 of Plaintiff's Amended Complaint.**

150. At approximately 11:00 PM, Adams ordered the Sheboygan police department to serve Mr. Wolf with the directives, and Mr. Wolf was served the directive prohibitions ("Leave Directives") at his home, in front of his family, at approximately 11:30 PM on November 7. A true and accurate copy of the November *Leave Directives* served on Mr. Wolf is attached as Exhibit 9.

**ANSWER: Adams admits that he asked the police department to deliver a letter dated November 7, 2022, to Plaintiff at his residence. Defendants admit the November 7, 2022, letter is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants deny the remaining allegations contained in paragraph 150 of Plaintiff's Amended Complaint.**

151. The "Leave Directives" served on Mr. Wolf stated in relevant part:

> "Henceforth, you are not authorized to speak with any city employees or individuals conducting city business. This prohibition applied to all means of communications[sic]. You are not authorized to speak to the media about City matters. You are not allowed within

all City facilities except upon invitation by council leadership, Mayor Sorenson or the City Attorney. You may not access City emails or computer systems. Failure to abide these restrictions will be deemed insubordination and may subject you to discipline. If you would like to retrieve any of your belongings, please contact Attorney Adams to coordinate that. Mayor Sorenson, council leadership or the City Attorney's office may contact you in the near future regarding the investigation and related issues. Please make yourself available for those discussions." *Id.*

**ANSWER: Defendants admit the November 7, 2022, letter is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.**

152. The nationwide November midterm elections were held November 8, 2022, and Mr. Wolf's voting precinct is in the City of Sheboygan with every poll worker being considered a "City employee" on election day.

**ANSWER: Defendants admit that midterm elections were held on November 8, 2022. Defendants admit that Plaintiff's voting precinct is at First Congregational Church located at 310 Bluff Avenue, Sheboygan, WI, 53081. Defendants admit that volunteer poll workers are considered temporary City employees.**

153. The letter did not provide any exception for Mr. Wolf to "speak" to poll workers, police, or fire responders, nor did the letter provide any other narrowing instructions or definitions.

**ANSWER: The Court entered an Order dismissing Plaintiff's claim that the Leave Directives were unconstitutionally overbroad. (ECF No. 62, pg. 55.) To the extent the allegations in paragraph 153 relate to Plaintiff's overbreadth claims, the allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants admit the November 7, 2022, letter is a written document which speaks for itself, and any inconsistent characterizations**

thereof are denied. Defendants affirmatively state that Plaintiff stated that he did not understand the direction provided and never requested clarification of the language used in the November 7 letter. Defendants affirmatively state that based on information and belief, Plaintiff voted in the 2022 midterm elections.

154.    The Leave Directives did not specify which "City facilities" Mr. Wolf was not to "step foot on," and both the Sheboygan Police and Fire Departments are considered City facilities.

**ANSWER: The Court entered an Order dismissing Plaintiff's claim that the Leave Directives were unconstitutionally overbroad. (ECF No. 62, pg. 55.) To the extent the allegations in paragraph 154 relate to Plaintiff's overbreadth claims, the allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny that the November 7, 2022, letter to Plaintiff stated that he could not "step foot on" City properties. Defendants admit the November 7, 2022, letter is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.**

155.    At the time Adams served Mr. Wolf with the Leave Directives, the City had no knowledge that Mr. Wolf had recorded his short statement to the local radio station, and Mr. Wolf's only recent communication had been his Confidential Email earlier that afternoon about the DEIB group and his concerns about the harassment of Pelishek.

**ANSWER: Defendants admit paragraph 155 of Plaintiff's Amended Complaint.**

156.    Mr. Wolf's short, recorded statement aired on a local radio station on November 8, and in response, Sorenson publicly stated on November 9, that "the statements by the Administrator [Wolf] are false" before any investigation had started into Mr. Wolf.

**ANSWER: Defendants admit that Plaintiff gave a recorded interview to WHBL which aired at 6:15 a.m. on November 8, 2022. Sorenson affirmatively states that Plaintiff's attorney was quoted in an article on November 9, 2022, stating that that Plaintiff was put on leave as part of a political power grab and an attempt by the mayor to have unfettered access to taxpayer money to hand out with zero oversight to whomever he wanted. When contacted to provide a response to Plaintiff's attorneys statements in the article, Sorenson responded that "[his] personal opinion is that the statements that the administrator made are false and it is sad to see how this has turned out and how it is evolving." Defendants deny the remaining allegations contained in paragraph 156 of Plaintiff's Amended Complaint.**

157.    On information and belief, Adams said in November that he "would do anything" in his power "to get rid of Todd [ Wolf]."

**ANSWER: Adams denies paragraph 157 of Plaintiff's Amended Complaint.**

158.    In mid-November, the Chairman of the Republican Party of Sheboygan County asked Mr. Wolf to speak at a meeting on November 28.

**ANSWER: Defendants admit based on information and belief that Plaintiff was asked to speak as City Administrator at the County Republican party annual caucus meeting on November 28, 2022. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 158 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

159.    On information and belief, Donohue discovered that Mr. Wolf was going to speak at the event and told Sorenson to serve a "cease and desist letter" to Mr. Wolf to stop him from appearing at the event.

**ANSWER: Donohue and Sorenson deny paragraph 159 of Plaintiff's Amended Complaint.**

160. At approximately 4:45 PM on November 28, Adams, once again, had the Sheboygan Police Department personally serve another letter to Mr. Wolf that warned him about speaking at the Republican event based on the *Leave Directives*. Ex. 9 at p. 2.

**ANSWER: Defendants admit that upon learning that Plaintiff was scheduled to speak as City Administrator at the Sheboygan County Republican annual caucus that evening, Adams asked the police department to deliver a letter dated November 28, 2022, to Plaintiff at his residence. Defendants lack knowledge or information sufficient to admit or deny the time when the letter was actually delivered, and on that basis, deny. Defendants admit the November 28, 2022, letter is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.**

161. Mr. Wolf turned down the Republican Party speaking event and was scared to attend but stood in the back of the room, declining to say more than a few words to attendees because the *Leave Directives* prohibited "all forms of communication."

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 161 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

162. Mr. Wolf's attorney called the Republican Chairman and offered to speak at the Republican event about public issues involving DEI groups trying to influence government officials and using real discrimination by dividing people based on race, gender, and viewpoints.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 162 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof. Defendants affirmatively state that Plaintiff's attorney's speech at this event is a recorded statement which speaks for itself, and any inconsistent characterizations thereof are denied.**

163. On information and belief, Donohue told the wife of the former City Administrator and member of the Progressive Women group, Lauren Hofland, to attend the event and spy on Mr. Wolf, and Hofland shared her recordings with the Defendants.

**ANSWER: Donohue denies paragraph 163 of Plaintiff's Amended Complaint.**

164. On information and belief, after the Republican event, someone posted on the "Progressive Women of Sheboygan" Facebook page calling for immediate "retaliation" against Mr. Wolf and the Republican Party of Sheboygan County based on Mr. Wolf's attendance, but the post was quickly deleted.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 164 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

165. On information and belief, at the early stages of Mr. Wolf's "leave" period during the "investigation" ("investigation leave") Defendant Alderman Dekker was considered the "swing" vote for Mr. Wolf's eight-vote removal requirement.

**ANSWER: Defendants deny paragraph 165 of Plaintiff's Amended Complaint.**

166. Throughout the entirety of Mr. Wolf's "leave," Mr. Wolf never disclosed nor discussed the details of his Confidential Email to Council on November 7.

**ANSWER: Defendants deny paragraph 166 of Plaintiff's Amended Complaint.**

### b. Hall's "Investigation" while Mr. Wolf was on forced "Leave" and prohibited from accessing work files or entering city properties between November 8, 2022, and January 9, 2023.

#### (1) Donohue's Role during the "Investigation."

167.    On information and belief, Donohue contacted multiple "attorney" friends to help her and the Defendant officials to "investigate" Mr. Wolf to convince Dekker or one more Alderperson there was "cause" to fire Mr. Wolf.

**ANSWER: Donohue denies paragraph 167 of Plaintiff's Amended Complaint.**

168.    On information and belief, Donohue decided to use her friend of "thirty years," Jill Hall out of Madison to conduct a biased investigation to find any "cause" or reason to convince Dekker and the "swing" Alderpersons to fire Mr. Wolf.

**ANSWER: Donohue denies paragraph 168 of Plaintiff's Amended Complaint.**

169.    On information and belief, Donohue told another colleague attorney friend of hers in Madison, Diane Welsh, in December 2022 to send the city "cease and desist" letters for her DEIB leaders during Hall's "investigation" so that Sorenson and Salazar could tell the Council members to fire Mr. Wolf because he was a "legal liability" even though Mr. Wolf's Confidential Email to the Council on November 7 was privileged.

**ANSWER: Donohue denies paragraph 169 of Plaintiff's Amended Complaint.**

170.    Neither Mr. Wolf nor his attorney have ever received, nor seen, any "cease and desist" letter from Welsh or her associate for the DEIB leaders that was sent in December 2022.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 170 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

171.     On information and belief, Donohue told Sorenson, Adams, and Hall to investigate Mr. Wolf under the city's *False Statements* and *Confidential Information* Policies that she drafted as city ordinances so they could claim that Mr. Wolf violated "policies and laws."

**ANSWER: The Court entered an Order dismissing Claim Two of Plaintiff's Amended Complaint. (ECF No. 62, pg. 55.) The Court entered an Order dismissing Claim Four of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.7.2.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Donohue, Sorenson, and Adams deny paragraph 171 of Plaintiff's Amended Complaint.**

*(2) Sorenson's Role during the "Investigation."*

172.     On information and belief, Sorenson stated that he intended to use the investigation as "punishment" against Mr. Wolf because Mr. Wolf "embarrassed" the DEIB by exposing their financial endeavors with city funds.

**ANSWER: Sorenson denies paragraph 172 of Plaintiff's Amended Complaint.**

173.     On information and belief, Sorenson told Hilty on November 8 to entice Mr. Wolf into commenting on Mr. Wolf's Confidential Email so he could tell the Council that Mr. Wolf violated the *Leave Directives* and *Confidential Information* Policies during the investigation.

**ANSWER: Sorenson denies paragraph 173 of Plaintiff's Amended Complaint.**

174.     On information and belief, Sorenson destroyed and ordered the destruction of public records after Mr. Wolf's attorney requested them for Hall's "investigation," to conceal the defendants' involvement in the plan.

**ANSWER: Sorenson denies paragraph 174 of Plaintiff's Amended Complaint.**

175.    From November 7, 2022, to the present day, Sorenson has refused to respond to a single public records request from Mr. Wolf's attorney related to the "investigation."

**ANSWER: Sorenson denies paragraph 175 of Plaintiff's Amended Complaint.**

176.    On information and belief, Donohue had Sorenson direct Hall's investigation and Sorenson told Hall which "evidence" to use and which to ignore, including informing Hall to ignore all employee witnesses that were "supporters" of Mr. Wolf.

**ANSWER: Donohue and Sorenson deny paragraph 176 of Plaintiff's Amended Complaint.**

177.    On information and belief, Sorenson told Hilty at the end of November 2022 to publish an article falsely stating that Mr. Wolf was the person who leaked Pelishek's name to her for her "slur" articles so that Hall could use that false information as "evidence" that Mr. Wolf violated the *Confidential Information* Policy and *False Statements* Ordinance.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. The Court entered an Order dismissing Claim Two of Plaintiff's Amended Complaint. (ECF No. 62, pg. 55.) The Court entered an Order dismissing Claim Four of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.7.2.) The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The Court entered an Order dismissing Plaintiff's claims against Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.) As such, no responsive pleading is required.**

To the extent a response is required, Sorenson denies paragraph 177 of Plaintiff's Amended Complaint.

178. When Hilty complied in her December 16 article falsely stating that it was *Mr. Wolf* who disclosed Pelishek's name and the "slur incident" to her, Sorenson immediately emailed Hall the article that Hilty wrote. A true and accurate copy of Sorenson's email to Hall is attached as Exhibit 10.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The Court entered an Order dismissing Plaintiff's claims against Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.) As such, no responsive pleading is required. To the extent a response is required, Sorenson admits he emailed a copy of Ms. Hilty's December 16, 2022, article to Hall. Sorenson admits Exhibit 10 is a copy of the email, which is a written document which speaks for itself, and any inconsistent characterizations thereof is denied. Defendants deny the remaining allegations contained in paragraph 178 of Plaintiff's Amended Complaint.**

179. On information and belief, Sorenson met with other public officials in December 2022 to tell them that he was successful in getting rid of Mr. Wolf and would be able to offer them other positions soon with other employees he wanted to get rid of.

**ANSWER: Sorenson denies paragraph 179 of Plaintiff's Amended Complaint.**

180.    On information and belief, Sorenson entered Mr. Wolf's office over the Christmas holiday break in 2022 and destroyed, falsified, or altered Mr. Wolf's work records for Hall's investigation.

**ANSWER: Sorenson denies paragraph 180 of Plaintiff's Amended Complaint.**

*(3) Hilty's Role during the "Investigation."*

181.    On information and belief, Hilty agreed on November 8, 2022, to entice Mr. Wolf into violating the city's Leave Directives and Policies by repeatedly requesting comments from Mr. Wolf and his attorney about the investigation, DEIB, and Mr. Wolf's position with the city.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. No responsive pleading is required. To the extent this paragraph implicates or asserts allegations against Defendants and a response is required, Defendants deny paragraph 181 of Plaintiff's Amended Complaint.**

182.    On information and belief, Hilty met with Sorenson outside of City Hall almost every week in November 2022, and they communicated via private messaging apps on their phones.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The Court entered an Order dismissing Plaintiff's claims against**

Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.) As such, no responsive pleading is required. To the extent a response is required, Sorenson denies paragraph 182 of Plaintiff's Amended Complaint.

183.     Hilty contacted Mr. Wolf's personal phone directly on November 8 even though she received an email at 4:00 AM stating that all media should contact Mr. Wolf's attorney.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. No responsive pleading is required and Defendants provide no answer to paragraph 183 of Plaintiff's Amended Complaint.**

184.     On information and belief, on November 29, Hilty attempted to entice Mr. Wolf and his attorney by sending a single-spaced two-page list of "questions" for her upcoming article asking "what evidence" Mr. Wolf had against the DEIB and city officials so that she could publish the DEIB leader and Rendall's names blaming Mr. Wolf for disclosing that information.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. No responsive pleading is required and Defendants provide no answer to paragraph 184 of Plaintiff's Amended Complaint.**

185.     Mr. Wolf never commented to Hilty at any point during his "investigation leave."

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a defendant in this case and concern claims the Court has dismissed. No responsive pleading is required. To the extent this paragraph implicates or asserts allegations against Defendants and a response is required, Defendants lack knowledge or information sufficient to admit or deny the contents of every conversation Plaintiff may have had with Ms. Hilty and, on that basis, deny same and demand strict proof thereof.**

186.    Neither Mr. Wolf nor Mr. Wolf's attorney commented nor verified any information from Mr. Wolf's Confidential Email to Hilty for her December article.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. No responsive pleading is required. To the extent this paragraph implicates or asserts allegations against Defendants and a response is required, Defendants lack knowledge or information sufficient to admit or deny the contents of every communication Plaintiff or his attorney may have had with Hilty and, on that basis, deny same and demand strict proof thereof.**

187.    On December 16, Hilty published an article stating that *Mr. Wolf* told her that Sheboygan's "Planning and Development Director Chad Pelishek" made a racial slur even though Hilty knew about Pelishek stating a racial slur more than a week before she reached out to Mr. Wolf to comment on that. A true and accurate copy of Hilty's first email about the "slur" incident to Mr. Wolf is attached as Exhibit 11.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a**

Defendant in this case and concern claims the Court has dismissed. No responsive pleading is required and Defendants provide no answer to paragraph 187 of Plaintiff's Amended Complaint.

188. On information and belief, Hilty intended for Sorenson to send her December 16 article to Hall immediately to use as "evidence" in finding "cause" to fire Mr. Wolf.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. No responsive pleading is required and Defendants provide no answer to paragraph 188 of Plaintiff's Amended Complaint.**

189. On information and belief, Hilty published Guevara and Haack's names for the first time in her December 16 article so that Donohue's attorney friend, Diane Welsh, would send a frivolous "cease and desist" letter to the city and scare the Council into firing Mr. Wolf as a "legal liability."

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. To the extent this paragraph implicates or asserts allegations against Defendants and a response is required, Donohue denies paragraph 189 of Plaintiff's Amended Complaint.**

190. Hilty emailed Council Leadership in December 2022 to tell them that Mr. Wolf attended the Republican meeting and that Mr. Wolf's attorney spoke.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are directed at a party who is no longer a**

Defendant in this case and concern claims the Court has dismissed. No responsive pleading is required. To the extent this paragraph implicates or asserts allegations against Defendants and a response is required, Defendants admit that Hilty emailed Felde asking for a comment on the statement made by Plaintiff's attorney at the Republican Party of Sheboygan County meeting on November 28 that "what it seems like they're trying to do here is give the mayor back all that power that the city administrator had." Defendants deny the remaining allegations contained in paragraph 190 of Plaintiff's Amended Complaint.

### (4) Adams' Role during the "Investigation."

191. On information and belief, Adams stated he was "on the mayor [Sorenson]'s team" in "doing anything in his power" to get rid of Mr. Wolf during Hall's investigation.

**ANSWER: Adams denies paragraph 191 of Plaintiff's Amended Complaint.**

192. Adams authorized the public release of Mr. Wolf's entire Confidential Email to Hilty on November 9.

**ANSWER: Defendants admit that on November 9, 2022, the City provided Ms. Hilty a copy of Plaintiff's November 7, 2022, email to Common Council in response to an open records request.**

193. Mr. Wolf only authorized the release of his Confidential Email to his attorney to prepare for the investigation on November 10, but Adams did not provide Mr. Wolf's attorney with the Confidential Email for several weeks.

**ANSWER: Defendants admit that Plaintiff provided a signed "Personnel Records Release Authorization". Adams denies the remaining allegations contained in paragraph 193 of Plaintiff's Amended Complaint.**

194.    Adams did not inform Mr. Wolf that he released Mr. Wolf's Confidential Email to Hilty at any point.

**ANSWER: Adams admits paragraph 194 of Plaintiff's Amended Complaint. Adams affirmatively states that he was under no legal obligation to inform Plaintiff that his November 7 letter had been released pursuant to a proper open records request.**

195.    During Mr. Wolf's "investigation leave" period, Adams told Mr. Wolf's attorney she was not allowed to enter Mr. Wolf's office with him to gather Mr. Wolf's personal belongings.

**ANSWER: Adams denies the allegations in paragraph 195 of Plaintiff's Amended Complaint. Adams affirmatively states that he exchanged multiple emails and texts with Plaintiff's attorney to arrange for Plaintiff to pick up his remaining personal belongings. Those emails and texts are written documents which speak for themselves and any inconsistent characterizations thereof are denied.**

196.    During the "investigation," Adams did not let Mr. Wolf access a single work or city administrative document.

**ANSWER: In answering paragraph 196 of Plaintiff's Complaint, Defendants admit that Plaintiff was not allowed access to City documents during Plaintiff's administrative leave period.**

197.    Adams did not provide Mr. Wolf or his attorney with any information about the Hall or the investigation until December 6, 2022.

**ANSWER: Adams denies paragraph 197 of Plaintiff's Amended Complaint.**

198.    On December 6 and 7, Adams stated that Hall was only investigating emails Mr. Wolf wrote to Maya Hilty in September 2022.

**ANSWER: Adams denies paragraph 198 of Plaintiff's Amended Complaint.**

199.    On information and belief, Adams told Mr. Wolf's attorney that Hall was only investigating emails to Maya Hilty in September 2022 so that Mr. Wolf would not demand his attorney be present for Hall's witch hunt investigation interview with him.

**ANSWER: Adams denies paragraph 199 of Plaintiff's Amended Complaint.**

200.    On December 20, 2022, at 8:43 a.m.—*less than 90 minutes* before his scheduled interview with Hall—Adams sent Mr. Wolf an email and attachment letter with instructions ordering him to comply with Hall's investigation.

**ANSWER: Adams admits on December 20, 2022, at 8:43 a.m., he emailed a letter to Plaintiff and his attorney. The email is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.**

201.    Adams' December 20 "investigation instructions" letter did not list nor specify the charges and allegations against Mr. Wolf, and stated for the first time, that Mr. Wolf was being investigated for his alleged "communications, conduct and leadership and certain allegations of inappropriate and illegal conduct made by you"—information that Adams never provided to Mr. Wolf or his attorney on December 6 or at *any time* prior to December 20.

**ANSWER: Adams denies paragraph 201 of Plaintiff's Amended Complaint as stated. Adams affirmatively states that, in addition to the motion passed by Common Council on November 7, 2022, which was read aloud to Plaintiff, he had communications directly with and provided documents to Plaintiff's counsel in response to numerous open records request that commenced in November 2022 and met with Plaintiff's attorney on December 6, 2022 and discussed the basis for the City's investigation. Adams denies the remaining allegations contained in paragraph 201 of Plaintiff's Amended Complaint.**

63

202.    The December 20 letter did not tell Mr. Wolf that he was being investigated for retaliating against Rendall, making false statements, disclosing confidential information, or violating the *Leave Directives*.

**ANSWER: In answering paragraph 202 of Plaintiff's Amended Complaint, Defendants admit the December 20 letter is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.**

203.    Besides the *Leave Directives*, the only documents Adams sent to Mr. Wolf and his attorney for the purposes of the investigation was the December 20 email and a few September emails between Mr. Wolf and Hilty—all of which were meaningless and showed no wrongdoing.

**ANSWER: Defendants deny paragraph 203 of Plaintiff's Amended Complaint as stated. Adams affirmatively states that, in addition to the motion passed by Common Council on November 7, 2022, which was read aloud to Plaintiff, he had communications directly with and provided documents to Plaintiff's counsel in response to numerous open records request that commenced in November 2022 and met with Plaintiff's attorney on December 6, 2022, and discussed the basis for the City's investigation. Adams further affirmatively states that Plaintiff obtained additional information from Hall regarding the areas of investigation during his interview with Hall. Defendants deny the remaining allegations contained in paragraph 203 of Plaintiff's Amended Complaint.**

204.    Adams dated the December 20 letter "December 19" even though he intended to send Mr. Wolf the letter the day of his interview with Hall.

**ANSWER: Adams denies paragraph 204 of Plaintiff's Amended Complaint.**

205. Adams' letter demanded Mr. Wolf cooperate with Hall's request for City "records," stating that Mr. Wolf was not to "modify, alter, delete, or destroy any records" related to his "employment, [or] any official ... City business" even though Adams had prohibited Mr. Wolf from accessing his office or any of his business-related materials during all of Hall's investigation.

**ANSWER: In answering paragraph 205 of Plaintiff's Amended Complaint, Adams admits the letter is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Adams affirmatively states that the letter sent to Plaintiff on December 20, 2022, was also sent to Plaintiff's attorney. Adams denies the remaining allegations contained in paragraph 205 of Plaintiff's Amended Complaint.**

206. On information and belief, Adams advised the Common Council on January 4, 2023, to fire Mr. Wolf without cause so there would be no hearing following Sorenson and Hall's statements that the employee witnesses would exonerate Mr. Wolf to the Council.

**ANSWER: Adams denies paragraph 206 of Plaintiff's Amended Complaint.**

207. On information and belief, Adams and Sorenson convinced Dekker, the swing vote, to fire Mr. Wolf *without a hearing* based on Hall's January 4 "oral investigation synopsis."

**ANSWER: Adams, Sorenson, and Dekker deny paragraph 207 of Plaintiff's Amended Complaint.**

208. From November 7 to April 2023, Adams has refused to allow Mr. Wolf or his attorney access to Mr. Wolf's office to gather his personal belongings and documents to conceal stop, or prohibit Mr. Wolf from seeing what documents were altered, deleted, or destroyed from his office during Hall's investigation.

**ANSWER: Adams denies paragraph 208 of Plaintiff's Amended Complaint. Adams affirmatively states that, in addition to Plaintiff being given an opportunity to take his personal belongings on November 7, 2022, he exchanged multiple emails and texts with Plaintiff's attorney to arrange for Plaintiff to pick up his remaining personal belongings. Those emails and texts are written documents which speak for themselves, and any inconsistent characterizations thereof are denied.**

*(5) Hall's Role during the "Investigation."*

209.    Hall and Donohue have known each other for over thirty years.

**ANSWER: Donohue admits she and Hall know each other but denies that they have had a professional or personal relationship for over 30 years.**

210.    On information and belief, Hall agreed with Donohue and Sorenson in November 2022 to conduct a biased investigation to deliver a report to the Common Council that would convince any swing Council votes to fire Mr. Wolf for "cause."

**ANSWER: Donohue and Sorenson deny paragraph 210 of Plaintiff's Amended Complaint.**

211.    On information and belief, during her investigation between mid-November and December 2022, Hall separated city employee witnesses into two categories: those who were "supporters" or Mr. Wolf and those who did not support Mr. Wolf.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 211 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

212.    On information and belief, Hall learned from employee eyewitnesses and testimonies that Mr. Wolf told the truth about the DEIB lunch threats and about Rendall setting up Pelishek in order to harass him as "racist" and clam "retaliation for reporting racism" against Mr. Wolf.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants deny paragraph 212 of Plaintiff's Amended Complaint based on information and belief.**

213.    On information and belief, Hall told employee witness they were not allowed to record her interview with him and were not allowed to take handwritten notes of her interview with them.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 213 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

214.    On information and belief, Hall refused to accept any evidence or records from city employees that she categorized as "supporters" of Mr. Wolf.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 214 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

215.    Hall accepted emails and documentary evidence from Sorenson in December 2022 and did not prohibit Sorenson from providing her with documentary evidence.

**ANSWER: Sorenson admits paragraph 215 of Plaintiff's Amended Complaint.**

216.    On information and belief, Hall conducted all her interviews via video conference and not in person.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 216 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

217.    In December 2022, despite having conducted all her investigation interviews over video conference, Hall asked Mr. Wolf to drive from his home in Sheboygan to her office in Madison, Wisconsin for her interview with him.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 217 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

218.    When Mr. Wolf agreed to her conditions, Hall stated that she would conduct his interview over video conference.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations**

contained in paragraph 218 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.

219. On information and belief, Hall intended to claim that Mr. Wolf was "not cooperative" with her investigation if he had refused the 4+ hour roundtrip drive to her Madison offices.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 219 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

220. Hall's interview with Mr. Wolf was scheduled many days in advance for December 20, at 10:00 AM.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 220 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

221. Hall did not allow nor offer for Mr. Wolf's attorney to be present at her interview with Mr. Wolf on December 20, and Hall knew that Mr. Wolf had not read Adams' December 20 investigation instructions letter when she started her interview with Mr. Wolf.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations**

69

contained in paragraph 221 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.

222.    Hall interviewed Mr. Wolf in an interrogation-type prosecution manner for nearly five hours about endless facets of information without his attorney present and never once told Mr. Wolf exactly what the charges or allegations were that she was "investigating."

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 222 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

223.    On information and belief, in late December, Hall told Donohue, Sorenson, and Adams that Mr. Wolf's testimony lined up with the employee witnesses and that Mr. Wolf would be fully exonerated to the Council if he and the employees were allowed to testify at a hearing.

**ANSWER: Donohue, Sorenson, and Adams deny paragraph 223 of Plaintiff's Amended Complaint.**

224.    On information and belief, Hall agreed to suggest to Council that there was "cause" to fire Mr. Wolf but that allowing Mr. Wolf a hearing would be "costly" and "harmful" to the employees in an "oral synopsis" so that the employees would not testify before Council.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants deny paragraph 224 of Plaintiff's Amended Complaint.**

225.    On information and belief, Donohue told Adams and Sorenson to advise the Council to fire Mr. Wolf "without cause" so that they would not have to endure a "costly" and "burdensome" hearing to help the employees.

**ANSWER: Donohue, Adams, and Sorenson deny paragraph 225 of Plaintiff's Amended Complaint.**

226.    On information and belief, as of the end of December 2022, Hall, Adams, Sorenson, and Donohue knew that eight members of the Common Council would not fire Mr. Wolf for "cause," or at all, if Mr. Wolf had a hearing with witnesses.

**ANSWER: Adams, Sorenson, and Donohue deny paragraph 226 of Plaintiff's Amended Complaint.**

### c.    Hall's "Oral Investigation Synopsis" to the Council on January 4.

227.    On January 4, 2023, Hall appeared via video conference to the Common Council, Adams, and Sorenson in closed session to provide an oral synopsis of her investigation conclusions ("oral synopsis").

**ANSWER: Defendants admit paragraph 227 of Plaintiff's Amended Complaint.**

228.    Hall stated that she discovered Mr. Wolf made false statements about DEIB lunch meeting with Guevara and Haack even though at least one employee eyewitness told her that Mr. Wolf's statements were true.

**ANSWER: In answering paragraph 228 of Plaintiff's Amended Complaint, Defendants admit that Hall generally provided the information contained in her February 6, 2023, report as part of her oral report given during the January 4, 2023, closed session. Defendants deny the remaining allegations contained in paragraph 228 of Plaintiff's Amended Complaint based on information and belief.**

229.     On information and belief, Hall told the Council there was "cause" to fire Mr. Wolf for violating the *Leave Directives, False Statements* Policy, and *Confidential Information* Policy.

**ANSWER: Defendants admit that Hall generally provided the information contained in her February 6, 2023, report as part of her oral report given during the January 4, 2023, closed session. Defendants deny the remaining allegations contained in paragraph 229 of Plaintiff's Amended Complaint.**

230.     Hall concealed all exonerating information and witness testimony from the employee witnesses and made false statements that Mr. Wolf's account of the DEI lunch was "not credible." A true and accurate copy of the Closed Session Minutes from Hall's "oral synopsis" released by Adams is attached as Exhibit 12.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants admit Exhibit 12 is a copy of the January 4, 2023, Common Council closed session minutes which is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 230 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

231.     In her January 4 "oral synopsis," Hall told the Council that a hearing for Mr. Wolf would be "costly" to the city and harmful for the employees' wellbeing.

**ANSWER: In answering paragraph 231 of Plaintiff's Amended Complaint, Defendants admit that Ms. Hall advised that a hearing would require significant time and**

resources. **Defendants deny the remaining allegations contained in paragraph 231 of Plaintiff's Amended Complaint.**

232.    Based on Hall's "oral synopsis," the eight Defendant Alderpersons decided there was cause to fire Mr. Wolf.

**ANSWER: Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar admit that the Council considered three options regarding Plaintiff's employment including bringing him back to work, termination without cause, and termination for cause with a due process hearing. Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar admit they voted to terminate Plaintiff without cause. Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar deny the remaining allegations contained in paragraph 232 of Plaintiff's Amended Complaint.**

233.    On information and belief, after Hall's synopsis, Adams and Sorenson told the Council Mr. Wolf's "Additional Assurances" agreement allowed the Council to fire Mr. Wolf without cause so that they could avoid the "costly" and "harmful" hearing.

**ANSWER: Defendants deny paragraph 233 of Plaintiff's Amended Complaint as stated. Adams affirmatively states that Attorney James Macy advised Common Counsel that terminating Plaintiff without cause was a permitted course of action. When Common Council asked if Adams agreed, Adams indicated that outside counsel was the expert on such matters and Adams felt comfortable relying on their expertise. Adams and Sorenson deny the remaining allegations contained in paragraph 233 of Plaintiff's Amended Complaint.**

234.    Adams drafted an administrative resolution that falsely stated Mr. Wolf's "Additional Assurances" agreement gave them an option to fire Mr. Wolf "without cause"

despite the provision that nothing in that agreement would "contravene" the City Administrator Ordinance that Mr. Wolf could only be fired for cause.

**ANSWER: Adams admits he drafted Resolution No. 120-22-23. Defendants deny the remaining allegations contained in paragraph 234 of Plaintiff's Amended Complaint.**

235.    Mr. Wolf was not informed of the Council's closed session with Hall or of their decision until January 6 when the Defendant officials published their resolution online stating they intended to vote to fire Mr. Wolf "without cause" on January 9.

**ANSWER: In answering paragraph 235 of Plaintiff's Amended Complaint, Defendants admit the January 4, 2023, Agenda was publicly posted. The January 4, 2023, Agenda is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants admit that Plaintiff was not notified of Resolution No. 120-22-23 in advance of the January 6, 2023, publication of the January 9 Common Council Meeting Agenda. Defendants deny the remaining allegations contained in paragraph 235 of Plaintiff's Amended Complaint.**

236.    On information and belief, a citizen asked Felde what "without cause" meant on January 7, and Felde stated that she "couldn't answer that" but that "Mr. Wolf had no way of defending the charges against him."

**ANSWER: Felde denies paragraph 236 of Plaintiff's Amended Complaint.**

237.    During the January 9 public council meeting, Defendant Dekker made the following statement to the public:

> "After concerns were brought forward. .the majority of the council decided to hire an independent investigator. That investigation has concluded. . .[A]fter hearing [Hall's Jan. 4] synopsis, have come to the conclusion that this is in the best interests of our employees. .one employee doesn't stand over the rest of our employees. To put our

employees through something like this is not right. So that is why I support [firing Mr. Wolf without a hearing]."

**ANSWER: Dekker admits on January 9, 2023, he made a statement in an open session at the Common Council meeting. The recording of the January 9, 2023, Common Council meeting speaks for itself, and any inconsistent characterizations thereof are denied.**

238. On January 9, 2023, the eight Defendant Alderpersons voted to remove Mr. Wolf as City Administrator based on Hall's "investigation" without giving Mr. Wolf any notice of the charges, allegations, or a single hearing opportunity

**ANSWER: Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar admit they voted in favor of Resolution No. 120-22-23. The recording of the January 9, 2023, Common Council meeting speaks for itself, and any inconsistent characterizations thereof are denied. Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar deny the remaining allegations contained in paragraph 238 of Plaintiff's Amended Complaint.**

239. Between November 7, 2022 – January 9, 2023, Mr. Wolf was never once allowed to step foot on city properties, nor did Mr. Wolf enter City Hall at any point during the investigation through the final public Council meeting.

**ANSWER: Defendants deny the allegations contained in paragraph 239 of Plaintiff's Amended Complaint. Defendants affirmatively state that between November 8, 2022, and January 8, 2023, other than Adams communications with Plaintiff's counsel to arrange for Plaintiff to obtain his personal belongings from his office, Plaintiff did not ask to come onto City property or to attend any public Council meeting. Defendants**

**affirmatively state that Plaintiff did attend the public Council meeting on November 7, 2022, and January 9, 2023.**

240.    Mr. Wolf was fired as City Administrator on January 9, 2023.

**ANSWER: Defendants admit paragraph 240 of Plaintiff's Amended Complaint.**

**(IV)    The Defendants' False Public Disclosures about Mr. Wolf.**

**a.    Sorenson's public statements on January 10, 2023.**

241.    On January 10, two private citizens emailed Sorenson that they did not approve of Council's decision to fire and remove Mr. Wolf, and Sorenson responded separately to both private citizens with the following statements:

> "This decision was made by the city council after the completion of [Hall's] extensive investigation. The investigation raised significant concerns, including policy violations, ethic violations, and potential law violations, all of which lead to legal liability for the city. We will make sure you get a copy of [Hall's investigation] report once it is made public."

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson admits that on January 10, 2023, two private citizens emailed him and he responded to their emails. Sorenson admits the two January 10, 2023, emails and his responses are written documents which speak for themselves, and any inconsistent characterizations thereof are denied.**

242.    To one citizen, Sorenson stated that Mr. Wolf's short, recorded statement on November 8 about a "group pushing an agenda" were "false and not what happened." A true and accurate copy of Sorenson's emails to the private citizens is attached as Exhibit 13.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson admits Exhibit 13 is a copy of his January 10, 2023, emails which are written documents which speak for themselves, and any inconsistent characterizations thereof are denied.**

243.    In addition to the citizen emails, Sorenson made multiple statements to Hilty for publication in her newspaper article on January 10 in the Sheboygan Press that discussed at length how Hall's "investigation" findings resulted in Mr. Wolf's firing as City Administrator. A true and accurate copy of Sorenson's statements in Hilty's January 10 article is attached as Exhibit 14.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson admits Exhibit 14 is a copy of Hilty's January 10, 2023, article which is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.**

244. In the January 10 article, Sorenson stated, that Mr. Wolf had "interfered in [the] investigation by leaking details" of the investigation even though Mr. Wolf never received any details nor actual written charges of what Hall was investigating. *Id.*

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson admits the January 10, 2023, article is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Sorenson denies the remaining allegations contained in paragraph 244 of Plaintiff's Amended Complaint.**

245. Sorenson stated that Mr. Wolf was fired, in part, because the "investigation" found that Mr. Wolf was dishonest and kept "doubling down on" lies that Mr. Wolf "knew [weren't] true" and that Mr. Wolf's statements "could be proven false with other documentation." *Id.*

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson admits that the January 10, 2023, article is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Sorenson denies the remaining allegations contained in paragraph 245 of Plaintiff's Amended Complaint.**

246. Sorenson falsely stated that Mr. Wolf was warned about his dishonesty many times, even though Mr. Wolf had never been accused of dishonesty throughout his entire career nor told that he was being investigated for "dishonesty." *Id*.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson admits that the January 10, 2023, article is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Sorenson denies the remaining allegations contained in paragraph 246 of Plaintiff's Amended Complaint.**

247. Sorenson stated Mr. Wolf was fired, in part, because he was retaliating against employees stating, "people should feel safe to come to work...[and not] have to be fearful of retaliation." *Id.*

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson admits that the January 10, 2023, article is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Sorenson denies the remaining allegations contained in paragraph 247 of Plaintiff's Amended Complaint.**

248.   Sorenson stated that the city would publicly release Hall's "investigation" report and hoped Hall's "report" would "come[] sooner than later." *Id*.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson admits that the January 10, 2023, article is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Sorenson denies the remaining allegations contained in paragraph 248 of Plaintiff's Amended Complaint.**

249.   Sorenson statements in Hilty's January 10 Sheboygan Press article remain publicly available on the internet through the Sheboygan Press website.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Defendants admit paragraph 249 of Plaintiff's Amended Complaint.**

### b.   Hall and Adams' disclosures after Mr. Wolf was fired.

250.   On February 6, 2023, Hall drafted and sent her "final investigation report" to the city Defendants—one month after Sorenson's statements and Mr. Wolf's public firing without a hearing. A true and accurate copy of Hall's final investigation report is attached as Exhibit 15.

**ANSWER: In answering paragraph 250 of Plaintiff's Amended Complaint, Defendants admit Exhibit 15 is a copy of Hall's investigation report. Defendants admit Hall sent her investigation report to Adams on February 6, 2023. Defendants deny the remaining allegations contained in paragraph 250 of Plaintiff's Amended Complaint.**

251.    To date, neither Hall nor any of the Defendant city officials have ever provided Mr. Wolf with a preliminary or draft report of her "investigation" findings.

**ANSWER: Defendants deny paragraph 251 of Plaintiff's Amended Complaint. Defendants affirmatively state that Plaintiff attached a copy of Hall's investigation report as Exhibit 15 to Plaintiff's Amended Complaint.**

252.    In her report, Hall stated that Mr. Wolf "retaliated" against Rendall for reporting "racism" despite multiple employee eyewitnesses telling Hall that Rendall asked Pelishek to repeat the "slur" on August 22.

**ANSWER: In answering paragraph 252 of Plaintiff's Amended Complaint, Defendants admit that Hall's investigation report is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Defendants deny the remaining allegations contained in paragraph 252 of Plaintiff's Amended Complaint based on information and belief.**

253.    On information and belief, Hall made false statements in her report when she stated that no employee witness corroborated Mr. Wolf's account of the DEIB lunch and August 22 "slur incident."

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations**

contained in paragraph 253 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.

254.    Hall falsely stated that Mr. Wolf sent out press releases and had multiple media appearances even though the only media communication Mr. Wolf had after Hilty's September interview was his short, recorded statement to a local radio station that aired November 8.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants deny paragraph 254 of Plaintiff's Amended Complaint.**

255.    Hall intentionally misquoted Mr. Wolf's interview statements in her report and excluded relevant exculpatory information that favored Mr. Wolf.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 255 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

256.    Hall's six-page report contained false statements of fact on every page concluding that Mr. Wolf likely had retaliated and harassed Rendall and made multiple "false statements" about the DEIB lunch.

**ANSWER: The allegations of this paragraph are not directed to Defendants and no responsive pleading from Defendants is required. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 256 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

257. On February 7, *one day after Hall sent her report to the Defendant city officials*, Adams' office sent a city-wide email to over 450 city employees prohibiting them from speaking to Mr. Wolf *or Mr. Wolf's attorney*.

**ANSWER: In answering paragraph 257 of Plaintiff's Amended Complaint, Defendants admit that on February 7, 2023, Assistant City Attorney Majerus sent an email which is a written document which speaks for itself, and any inconsistent characterizations thereof are denied.**

258. On information and belief, Adams directed his staff to send the prohibition specifically to prohibit Mr. Wolf and the employee witnesses from disclosing the completely fabricated and false information in Hall's final investigation report.

**ANSWER: Adams denies paragraph 258 of Plaintiff's Amended Complaint.**

259. Sorenson and Adams authorized the public release of Hall's report on February 8.

**ANSWER: In answering paragraph 259 of Plaintiff's Amended Complaint, Adams admits he lawfully authorized the release of Hall's investigation report as required under the state public records law in response to open records requests received by the City of Sheboygan. Sorenson and Adams deny the remaining allegations contained in paragraph 259 of Plaintiff's Amended Complaint.**

c. <u>Sorenson's statements about Mr. Wolf & Sexual Harassment at the Police Department.</u>

260. On November 8, 2022, the day after Mr. Wolf was forcibly removed from City Hall and placed on "leave," Sorenson met with Wisconsin Watch reporters in his office.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the**

allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson admits a reporter from the Wisconsin Watch interviewed him for an article being written on gerrymandering and how it impacts the City of Sheboygan. The interview had nothing to do with Plaintiff. On November 8, 2022, the reporter was at City Hall to take Sorenson's picture for the article. Sorenson denies the remaining allegations contained in paragraph 260 of Plaintiff's Amended Complaint.

261. On information and belief, Sorenson told the Wisconsin Watch reporters about the 2021 police sexual harassment complaint.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson denies paragraph 261 of Plaintiff's Amended Complaint.**

262. On information and belief, Sorenson told the reporters false information that Mr. Wolf was the reason for sexual harassment in the police department, and that Mr. Wolf "stopped" the external investigation into the IAD's handling of the sexual harassment complaint that was fully completed in 2021.

**ANSWER: The Court entered an Order dismissing Claim Seven – State Law Claim – Defamation Per Se. (ECF No. 62.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before**

the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson denies paragraph 262 of Plaintiff's Amended Complaint.

263. The Wisconsin Watch reporters asked Mr. Wolf and his attorney for comment on Sorenson's information between November and December 2022—when Mr. Wolf was on "leave."

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 263 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

264. Neither Mr. Wolf nor his attorney were able to comment on or correct Sorenson's false statements because of the L*eave Directives* that had been placed on Mr. Wolf.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Defendants deny paragraph 264 of Plaintiff's Amended Complaint.**

265.     On information and belief, in late January 2023, Sorenson told several persons that a "big story" was coming out soon about Mr. Wolf and sexual harassment in the police department.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson denies paragraph 265 of Plaintiff's Amended Complaint.**

266.     The Wisconsin Watch, in conjunction with Hilty, published two articles in February 2023 about the sexual harassment complaints in 2021, and the articles falsely stated that the city's external IAD investigation was stopped early.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to dismissed claims, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Defendants admit that the Wisconsin Watch published two articles on February 6 and February 27, 2023, which are written documents which speak for themselves, and any inconsistent characterizations thereof are denied.**

267.     The articles did not ultimately or directly blame Mr. Wolf for the sexual harassment but implied that Mr. Wolf was fired just before the articles came out.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Defendants admit that the Wisconsin Watch published two articles on February 6 and February 27, 2023, which are written documents which speak for themselves, and any inconsistent characterizations thereof are denied.**

268.    On information and belief, Hilty told Sorenson that the Wisconsin Watch would not expressly blame Mr. Wolf as they had intended.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) These allegations are therefore directed at a party who is no longer a Defendant in this case and concern claims the Court has dismissed. No responsive pleading is required. To the extent this paragraph implicates or asserts allegations against Defendants and a response is required, Sorenson denies paragraph 268 of Plaintiff's Amended Complaint.**

269.    On information and belief, after the articles were published, Sorenson told multiple citizens throughout Sheboygan County that Mr. Wolf was also fired, in part, because he covered up sexual harassment, stopped the IAD investigation early, and that Mr. Wolf was responsible for the "sexual harassment" in the police department even though Sorenson knew that the investigation was fully completed and Mr. Wolf had no control or authority over the police and fire department employees.

**ANSWER: The Court entered an Order dismissing Claim Seven – State Law Claim – Defamation Per Se. (ECF No. 62.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson denies paragraph 269 of Plaintiff's Amended Complaint.**

270.    On information and belief, Sorenson stated to multiple people throughout the public that Mr. Wolf was "hated" by police officers because of his "sexual harassment" cover ups—an outrageously false statement since Mr. Wolf had no authority over the police and fire departments as City Administrator.

**ANSWER: The Court entered an Order dismissing Claim Seven – State Law Claim – Defamation Per Se. (ECF No. 62.) To the extent the allegations in this paragraph relate to Claim Seven of Plaintiff's Amended Complaint, these allegations are no longer before the Court and, as such, no responsive pleading is required in connection with the same. To the extent a response is required, Sorenson denies paragraph 270 of Plaintiff's Amended Complaint.**

271.    On information and belief, since Mr. Wolf was forced on "leave," Adams and Sorenson have held onto other unrelated sexual harassment complaints to find a way to use those against Mr. Wolf and other political opponent employees still working at the city.

**ANSWER: Adams and Sorenson deny paragraph 271 of Plaintiff's Amended Complaint.**

**(V)** **Mr. Wolf's ongoing injuries resulting from the Defendants' actions.**

272.    Mr. Wolf suffered a severe physical reaction based on his emotional stress in October following Hilty's "slur" articles and the negative emotional effects he was observing on many city employees and department heads who saw the harassment and retaliation campaigns that were being waged against Pelishek, city employees, and himself.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The Court entered an Order dismissing Claim Nine – State Law Claim – Intentional Infliction of Emotional Distress. (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny any and all allegations of unlawful acts as alleged in Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants otherwise provide no answer to paragraph 272 of Plaintiff's Amended Complaint.**

273.    Mr. Wolf worked with the city's Employee Assistance Program for medical attention prior to his forced "leave" in October and November 2022.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 273 of Plaintiff's Amended Complaint, and on that basis, deny.**

274.    As a direct result of the city's *Leave Directives* in November, Mr. Wolf suffered embarrassment, humiliation, and damage to his personal relationships when he was not allowed

to contact the city's fire or police departments and was prohibited from responding to friends of his that were city employees or did "business" with the city.

**ANSWER: The Court entered an Order dismissing Plaintiff's claim that the Leave Directives were unconstitutionally overbroad. (ECF No. 62, pg. 55.) To this extent the allegations in paragraph 274 relate to Plaintiff's overbreadth claims, the allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. The Court entered an Order dismissing Claim Nine – State Law Claim – Intentional Infliction of Emotional Distress. (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny paragraph 274 of Plaintiff's Amended Complaint. Defendants deny any and all allegations of unlawful acts as alleged in Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.**

275. Mr. Wolf's friendships were questioned when he could not respond to texts from friends nor discuss what was going on after the City's public announcement launching Hall's "investigation" into his conduct.

**ANSWER: The Court entered an Order dismissing Plaintiff's claim that the Leave Directives were unconstitutionally overbroad. (ECF No. 62, pg. 55.) To this extent the allegations in paragraph 275 relate to Plaintiff's overbreadth claims, the allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. The Court entered an Order dismissing Claim Nine – State Law Claim – Intentional Infliction of Emotional Distress. (ECF No. 62.) The allegations of this**

paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny paragraph 275 of Plaintiff's Amended Complaint. Defendants deny any and all allegations of unlawful acts as alleged in Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.

276. Following the Defendants *public announcement* on November 7 investigating Mr. Wolf's conduct, his public firing, the Defendants multiple false public statements about his harassment, retaliation, dishonesty, and character, Mr. Wolf has endured multiple medical visits for several emotional stress, and continuing physical side effects from the humiliation, stress, embarrassment, ridicule, and hostility because of the Defendants' actions.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The Court entered an Order dismissing Claim Nine – State Law Claim – Intentional Infliction of Emotional Distress. (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny paragraph 276 of Plaintiff's Amended Complaint. Defendants deny any and all allegations of unlawful acts as alleged in Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.**

277. Following the Defendants' public investigation announcement and *Leave Directives* in November, Mr. Wolf reached out to multiple recruiters and municipalities throughout Wisconsin but has been unable to find any position.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 277 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

278. Mr. Wolf was expressly rejected from one employment opportunity in a city far outside of Sheboygan after Sorenson's public statements to Hilty on January 10.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent that a response is required, Sorenson denies paragraph 278 of Plaintiff's Amended Complaint.**

279. Mr. Wolf can no longer receive calls back for his job applications in his chosen field of public administration, and because of the Defendants' actions, Mr. Wolf cannot even find employment back in the *private sector*, let alone in his chosen field.

**ANSWER: The allegations contained in paragraph 279 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 279 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny**

**any and all liability to Plaintiff. Defendants affirmatively state, based on information and belief, Plaintiff has obtained full time employment.**

280.   Mr. Wolf has been told by municipal recruiters that, despite his long-standing successes and experiences in management, the public releases by the Defendants in November 2022 and January 2023 will make it impossible for him to find municipal or public employment in any capacity.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny that any public statements by Defendants in November 2022 or January 2023 make it impossible for him to find municipal or public employment. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 280 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

281.   The Defendants public investigation, firing, and false statements about Mr. Wolf have permanently damaged his excellent reputation that he spent over 30+ in Sheboygan building as an excellent supervisor, leader, and financial manager.

**ANSWER: The allegations contained in paragraph 281 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 281 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable**

or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.

282.    Mr. Wolf cannot resurrect his former reputation and status without a favorable judgment because the Defendants conducted a public witch hunt into him and denied him all opportunities to clear his name and falsely stated he was a liar and dangerous to employees.

**ANSWER: The allegations contained in paragraph 282 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 282 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.**

283.    Mr. Wolf is not able to maintain his friendships with hundreds of people throughout Sheboygan because of the city's current gag orders on employees to not speak to Mr. Wolf.

**ANSWER: Defendants deny paragraph 283 of Plaintiff's Amended Complaint.**

284.    On information and belief, Sorenson has intimidated city employees from speaking to Mr. Wolf by threatening to subpoena Mr. Wolf's phone records which could result in discipline for any employees found to be communicating with him.

**ANSWER: Sorenson denies paragraph 284 of Plaintiff's Amended Complaint.**

285.    Mr. Wolf planned to work as Sheboygan's City Administrator for the next fifteen years—until his retirement, which would have earned him 15 years' worth of the City Administrator salary, benefits, and state pension.

**ANSWER: Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 285 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

286.    Other positions that Mr. Wolf has been expressly rejected from after those potential employers discovered the Defendants' false public disclosures about Mr. Wolf's character would have earned similar or higher salaries for the next fifteen years of Mr. Wolf's career.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny any and all allegations of unlawful acts as alleged in paragraph 286 of Plaintiff's Amended Complaint. Defendants lack knowledge or information sufficient to admit or deny the allegations contained in paragraph 286 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

287.    Mr. Wolf is regularly faced with harassing, false, and defamatory posts from citizens throughout Sheboygan on Facebook and the Progressive women groups calling him a harasser, liar, and danger to employees—celebrating his public firing.

**ANSWER: The Court entered an Order dismissing Claim Nine – State Law Claim – Intentional Infliction of Emotional Distress. (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny any and all allegations of**

unlawful acts as alleged in paragraph 287 of Plaintiff's Amended Complaint. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 287 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.

288.    Even in his private life, Mr. Wolf cannot attend even basic events because he, and his family, are forced to field questions or harassment about why he concealed sexual harassment in the police department or asking him why police officers hated him so much—none of which was true.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint – Defamation Per Se. (ECF No. 62, ¶ 4.11.) The Court entered an Order dismissing Claim Nine – State Law Claim – Intentional Infliction of Emotional Distress. (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, Defendants deny any and all allegations of unlawful acts as alleged in paragraph 288 of Plaintiff's Amended Complaint. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 288 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof.**

289.    Mr. Wolf has been forced to take side jobs doing home repairs for those people who will still associate with him because of the Defendants' actions.

**ANSWER: In answering paragraph 289 of Plaintiff's Amended Complaint, Defendants deny any and all allegations of unlawful acts. Defendants lack knowledge or**

**information sufficient to admit or deny the remaining allegations contained in paragraph 289 of Plaintiff's Amended Complaint, and on that basis, deny same and demand strict proof thereof. Defendants affirmatively state, based on information and belief, Plaintiff has obtained full time employment.**

290.    Since Adams denied Mr. Wolf any opportunity to obtain his personal belongings from his office, Mr. Wolf has suffered the loss of his father's original artwork—a priceless heirloom that Mr. Wolf will never be able to duplicate or replace.

**ANSWER: Adams denies paragraph 290 of Plaintiff's Amended Complaint. Adams affirmatively states that Plaintiff has obtained his personal belongings from his former office. Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants. Defendants deny any and all liability to Plaintiff.**

291.    In addition to his father's artwork that Adams' has denied Mr. Wolf from obtaining, Mr. Wolf has lost all the other personal belongings from his prior office at the city including other artwork, decorations, highly sensitive private and personal financial information, personal documents, records, and other personal belongings that Adams has refused to allow Mr. Wolf to obtain from November 7, 2022 – April 2023.

**ANSWER: Adams denies paragraph 291 of Plaintiff's Amended Complaint. Adams affirmatively states that he exchanged multiple emails and texts with Plaintiff's attorney to arrange for Plaintiff to pick up his remaining personal belongings. Those emails and texts are written documents which speak for themselves and any inconsistent characterizations thereof are denied. Adams affirmatively states that Plaintiff has**

obtained his personal belongings from his former office. Adams denies the remaining allegations contained in paragraph 291 of Plaintiff's Amended Complaint.

292.    Mr. Wolf has had to endure four holidays without the only memory of his father's artwork because Adams' had interfered and denied Mr. Wolf any chance to obtain his personal belongings since he was forced on "leave" on November 7, 2022.

**ANSWER: Adams denies paragraph 292 of Plaintiff's Amended Complaint. Adams affirmatively states that he exchanged multiple emails and texts with Plaintiff's attorney to arrange for Plaintiff to pick up his remaining personal belonging. Those emails and texts are written documents which speak for themselves and any inconsistent characterizations thereof are denied. Adams affirmatively states that Plaintiff has obtained his personal belongings from his former office. Adams denies the remaining allegations contained in paragraph 292 of Plaintiff's Amended Complaint.**

293.    On February 17, after Mr. Wolf filed his Original Complaint (ECF Dkt. 1), Mr. Wolf's attorney received a "cease and desist" letter from Donohue's colleague, Diane Welsh and her associate threatening Mr. Wolf from pleading relevant, factual information about Donohue's DEIB leaders in this judicial proceeding. A true and accurate copy of the *only* cease and desist letter Mr. Wolf (or his attorney) has received from Welsh and her associate, Eduardo Castro, is attached as Exhibit 16.

**ANSWER: Donohue admits Exhibit 16 is a copy of a cease-and-desist letter from Diane Welsh which is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Donohue denies she was involved in the decision to draft and send the cease-and-desist letter.**

**CAUSES OF ACTION**

**CLAIM ONE**
**VIOLATION OF MR. WOLF'S FIRST AMENDMENT RIGHTS**
**"LEAVE DIRECTIVES"**
**(42 U.S.C. § 1983)**
*SORENSON, ADAMS, DONOHUE, FELDE, FILICKY-PENESKI, SALAZAR, ACKLEY,*
*RAMEY, DEKKER, RUST, PERRELLA*

294.     Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER: Defendants reassert and incorporate their responses to the foregoing paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.**

295.     The First Amendment of the United States Constitution applied to the states through the Fourteenth Amendment prohibits the government from placing broad restraints on a public employee's potential expressive activities in their capacity as a private citizen.

**ANSWER: The allegations contained in paragraph 295 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

296.     The Defendant officials constructively suspended Mr. Wolf when they forced him on "administrative leave" because he was told to turn over his work computer and prohibited from accessing his office and all work files when Adams escorted him out of City Hall on November 7.

**ANSWER: The allegations contained in paragraph 296 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 296 contains assertions of fact, Defendants deny.**

297.    Mr. Wolf did not forfeit his First Amendment rights while he was constructively suspended solely because he was still "employed" by the City of Sheboygan.

**ANSWER: The allegations contained in paragraph 297 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 297 contains assertions of fact, Defendants deny.**

298.    The Defendants' *Leave Directives* were unconstitutionally overbroad and provided no alternative modes for Mr. Wolf to contact the fire and police departments or express himself as a private citizen by prohibiting "all forms of communication."

**ANSWER: The Court entered an Order dismissing Plaintiff's claim that the Leave Directives were unconstitutionally overbroad. (ECF No. 62, pg. 55.) To this extent the allegations in paragraph 298 relate to Plaintiff's overbreadth claims, the allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required.**

299.    The *Leave Directives* lacked a close or rational relationship to any legitimate interest the city had in the actual operation of government because denying Mr. Wolf's movement or speech to any of the 450+ city employees had no bearing on the city's efficient provision of services.

**ANSWER: The allegations contained in paragraph 299 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 299 contains assertions of fact, Defendants deny.**

300.    To the extent the *Leave Directives* were content based when Mr. Wolf was prohibited from speaking at "any event where the media might be present" about "city matters," the *Directives* were unconstitutionally overbroad and vague because the Defendants provided no definition of "city matters" nor any narrowing or clarifying instructions about "city matters."

**ANSWER: The Court entered an Order dismissing Plaintiff's claim that the Leave Directives were unconstitutionally overbroad. (ECF No. 62, pg. 55.) To this extent the allegations in paragraph 300 relate to Plaintiff's overbreadth claims, the allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, the allegations contained in paragraph 300 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 300 contains assertions of fact, Defendants deny.**

301.    By conditioning Mr. Wolf's continued employment with the city on his willingness to surrender nearly endless forms of Mr. Wolf's First Amendment rights to speech, expression, assembly, and association, the *Leave Directives* imposed unconstitutional conditions on Mr. Wolf.

**ANSWER: The Court entered an Order dismissing Plaintiff's claim that the Leave Directives were unconstitutionally overbroad. (ECF No. 62, pg. 55.) To this extent the allegations in paragraph 153 relate to Plaintiff's overbreadth claims, the allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required. To the extent a response is required, the allegations contained in paragraph 301 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is**

required, and on such basis, Defendants deny. To the extent paragraph 301 contains assertions of fact, Defendants deny.**

302.    The Defendants' required Mr. Wolf to surrender his Constitutionally protected rights to freedom of expression, due process, equal protection, assembly, and association to avoid discipline during Hall's investigation; and even when Mr. Wolf tried to comply, the Defendants' lied and fired him anyway for violating the unconstitutional *Leave Directives*.

**ANSWER: The allegations contained in paragraph 302 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 302 contains assertions of fact, Defendants deny.**

303.    The Defendants' harassment and unconstitutional conditions on Mr. Wolf through the *Leave Directives* violated his right to be free from unconstitutional conditions in violation of his First Amendment rights.

**ANSWER: The allegations contained in paragraph 303 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 303 contains assertions of fact, Defendants deny.**

304.    Mr. Wolf's interest in speaking about DEIB group threats and responding to the city's public announcement investigating his conduct outweighed the city's interests in wanting to create the appearance of government "inefficiency" so they could hire the DEIB group and fire Mr. Wolf.

**ANSWER: The allegations contained in paragraph 304 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis,**

**Defendants deny. To the extent paragraph 304 contains assertions of fact, Defendants deny.**

305. The Defendants' *Leave Directives* showed a deliberate indifference to Mr. Wolf's rights by prohibiting him from speaking to hundreds of people or stepping foot on City properties.

**ANSWER: The allegations contained in paragraph 305 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 305 contains assertions of fact, Defendants deny.**

306. The *Leave Directives* were the moving force and cause of the violations of Mr. Wolf's First Amendment rights to freedom of speech, expression, association, and assembly while he was constructively suspended.

**ANSWER: The allegations contained in paragraph 306 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 306 contains assertions of fact, Defendants deny.**

307. The Defendant officials' unconstitutional Leave Directives showed a deliberate indifference to Mr. Wolf's First Amendment rights by confining him to his home unable to step foot on "city properties" in his home city and unable to speak to over 450 city employees as well as countless persons that "do business with the city" which necessarily could mean nearly every citizen in Sheboygan.

**ANSWER: The allegations contained in paragraph 307 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis,**

Defendants deny. To the extent paragraph 307 contains assertions of fact, Defendants deny.

308.    The *Leave Directives* were the moving force behind the chilling of Mr. Wolf's speech and his severe injuries from being largely confined to his home unable to step foot on "city properties," prohibited from speaking to close friends, scared to speak to poll workers on November 8 election day, and unable to contact emergency public services during the holiday season.

**ANSWER: The allegations contained in paragraph 308 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 308 contains assertions of fact, Defendants deny.**

309.    Individually and in her official capacity, Donohue directly participated by drafting the language and scope of the *Leave Directives* and sending that to Sorenson, Felde, and Salazar to serve Mr. Wolf.

**ANSWER: Donohue denies the allegations contained in paragraph 309 of Plaintiff's Amended Complaint. Paragraph 309 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

310.    Individually and in their official capacities, Sorenson, Felde and Salazar used Donohue's scope, language, and draft of the Directives and directed Adams to re-type the *Leave Directives* into a letter to serve on Mr. Wolf during his constructive suspension.

**ANSWER: Defendants admit that Common Council directed Adams to draft the November 7, 2022, letter that was hand delivered to him. Sorenson, Felde, and Salazar deny the remaining allegations contained in paragraph 310 of Plaintiff's Amended Complaint. Paragraph 310 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

311. Individually and in his official capacity, Adams directly participated by re-typing the language from Donohue, Sorenson, Felde, and Salazar into a letter and ordering the Police Department to service the letter *Directives* on Mr. Wolf at his private home while he was constructively suspended.

**ANSWER: Adams admits that Common Council directed him to draft the November 7, 2022, letter. Adam admits he asked the police department to deliver a letter dated November 7, 2022, to Plaintiff at his residence. Adams denies the remaining allegations contained in paragraph 311 of Plaintiff's Amended Complaint. Paragraph 311 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

312. Individually and in their official capacities, Defendant Alderpersons Filicky-Peneksi, Ackley, Rust, Ramey, Perrella, and Dekker knew about the Leave Directives, condoned Adams' serving those on Mr. Wolf, and turned a blind eye to the violations of Mr. Wolf's First Amendment rights by enforcing the Directives in firing Mr. Wolf, based in part, on his failure to comply with the *Leave Directives*.

**ANSWER: Filicky-Peneksi, Ackley, Rust, Ramey, Perrella, and Dekker deny paragraph 312 of Plaintiff's Amended Complaint.**

313.    The named Defendants acted intentionally, maliciously and with callous disregard for Mr. Wolf's First Amendment rights by drafting, overseeing, and enforcing compliance with the unconstitutional Leave Directives.

**ANSWER: The allegations contained in paragraph 313 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 313 contains assertions of fact, Defendants deny.**

314.    Mr. Wolf's injuries and the chilling of his speech was a direct result of the Defendants' *Leave Directives* and their enforcement and threats within those directives.

**ANSWER: The allegations contained in paragraph 314 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 314 contains assertions of fact, Defendants deny.**

315.    The Defendants' joint actions and conduct under color of law all caused the violation of Mr. Wolf's First Amendment rights.

**ANSWER: The allegations contained in paragraph 315 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 315 contains assertions of fact, Defendants deny.**

316.    Mr. Wolf suffered humiliation, embarrassment, ridicule, and harm to his personal friendships because of the unconstitutional *Leave Directives* unable to attend meetings around Sheboygan to avoid anyone who might "do business" with the city.

**ANSWER: The allegations contained in paragraph 316 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 316 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 316 of the Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.**

<u>**CLAIM TWO**</u>
**VIOLATION OF THE FIRST AMENDMENT (OVERBREADTH)**
**"CONFIDENTIAL INFORMATION" POLICY (SHEB. MUN. CODE SEC. 2-272)**
**(42 U.S.C. § 1983)**
*CITY OF SHEBOYGAN, ADAMS*

317.    Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER: Defendants reassert and incorporate their responses to the foregoing paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.**

318 – 335.

**ANSWER: The Court entered an Order dismissing Claim Two of Plaintiff's Amended Complaint. (ECF No. 62, pg. 55.) Therefore, Defendants provide no answer to paragraphs 318 – 335 of Plaintiff's Amended Complaint.**

## CLAIM THREE
## VIOLATION OF THE FIRST AMENDMENT
## "FALSE STATEMENTS" ORDINANCE (SHEB. MUN. CODE SECS. 82-3 & 82-6)
## (42 U.S.C. § 1983)
### *CITY OF SHEBOYGAN*

336.    Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER: Defendants reassert and incorporate their responses to the foregoing paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.**

337.    The First Amendment prohibits the government from enacting laws that criminalize speech content where such restrictions are not necessary to further a compelling government interest.

**ANSWER: The allegations contained in paragraph 337 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

338.    The First Amendment also prohibits the government from placing content-based restrictions on the speech of public employees in their capacities as private citizens on matters of public concern.

**ANSWER: The allegations contained in paragraph 338 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

339.    Speech regarding bribery or potential political corruption of public officials is a matter of public concern.

**ANSWER: The allegations contained in paragraph 339 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

340.    The *False Statements* Ordinance ("Ordinance") and its enforcement mechanisms are facially unconstitutional because they impose fines and potentially jail time on *past employees* and private citizens who make any statements about public corruption that the government determines is "false" information.

**ANSWER: The allegations contained in paragraph 340 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

341.    The Ordinance is unconstitutionally broad because it not only prohibits and suppresses the potential *future* speech of all current, past, or future employees, the policies are enforced against *private citizens'* speech threatening to fine, imprison, and label them as "liars."

**ANSWER: The allegations contained in paragraph 341 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

342.    The Ordinance terms inherently violate countless First Amendment rights of protected speech, expression, and petition—since the Ordinance does not narrow the scope of punishable speech forms, and necessarily can apply to lawsuits or judicial proceedings—an application that was shown when Donohue's friend, Diane Welsh, sent a "cease and desist" letter to Mr. Wolf's attorney solely based on Mr. Wolf's Original Complaint in this civil case.

**ANSWER: The allegations contained in paragraph 342 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis,**

**Defendants deny. To the extent paragraph 342 contains assertions of fact, Defendants deny.**

343.    The Ordinance and its practices give unnamed public officials unbridled discretion to subjectively determine the subjective "truth" of speech content by countless public employees and private citizens about matters of public concern.

**ANSWER: The allegations contained in paragraph 343 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 343 contains assertions of fact, Defendants deny.**

344.    The Defendants' Ordinance and practices are highly susceptible to being used against employees—and private citizens—in a manner that discriminates based on speaker, content, or viewpoint.

**ANSWER: The allegations contained in paragraph 344 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 344 contains assertions of fact, Defendants deny.**

345.    The Defendants selectively enforce the Ordinance only against employees and private citizens that make statements about the political corruption of the Defendants' or their political allies whereby *the Defendants* are given the discretion to publicly stigmatize the potential speaker as "dishonest" or fire them without any due process.

**ANSWER: The allegations contained in paragraph 345 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis,**

**Defendants deny. To the extent paragraph 345 contains assertions of fact, Defendants deny.**

346.     The Ordinance's unconstitutionally broad terms have a severe chilling effect on the protected speech of countless current and future public employees who can be disciplined for statements made even in legal petitions or judicial proceedings—which are protected under the First Amendment.

**ANSWER: The allegations contained in paragraph 346 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 346 contains assertions of fact, Defendants deny.**

347.     The Ordinance's chilling effect on employees' that may speak as private citizens on matters of public concern necessarily applies to statements to family, friends, public forums, judicial proceedings, the media, or any other event.

**ANSWER: The allegations contained in paragraph 347 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 347 contains assertions of fact, Defendants deny.**

348.     The Defendants interest in avoiding accountability or "legal liability" from potential "defamation claims" because of the incompetence of their City Attorney is not a legitimate—let alone compelling—reason to chill the potential expressions of countless current, future, or past employees on matters of public concern.

**ANSWER: The allegations contained in paragraph 348 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis,**

**Defendants deny. To the extent paragraph 348 contains assertions of fact, Defendants deny.**

349. Mr. Wolf was injured by the Ordinance and its related practices when the Defendants' publicly announced an investigation into him without notice, constructively suspended him, and immediately released statements that Mr. Wolf was dishonest before Hall's sham investigation even began, based, in part on the *False Statements* Ordinance.

**ANSWER: The allegations contained in paragraph 349 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 349 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 349 of the Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.**

350. As a result of the Defendants' unconstitutional *False Statements* Ordinance and its practices as used against Mr. Wolf chilled his speech and Mr. Wolf suffered several physical, emotional, and mental injuries, including humiliation, harassment, and damage to his reputation as an honest City Administrator of upstanding integrity in Wisconsin.

**ANSWER: The allegations contained in paragraph 350 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 350 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 350 of the Amended Complaint; Defendants deny that Plaintiff has suffered any injuries,**

equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.

351. Even if the Defendants' alleged facts that Mr. Wolf's speech about the DEIB meeting or other political corruption concerns was not protected based on his status as City Administrator, the *False Statements* Ordinance and its practices chill the speech of countless employees and private citizens whose speech *is protected* under the First Amendment.

**ANSWER: The allegations contained in paragraph 351 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 351 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 351 of the Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.**

<u>CLAIM FOUR</u>
**VIOLATION OF THE FOURTEENTH AMENDMENT
DUE PROCESS (VAGUE)
"FALSE STATEMENTS" ORDINANCE
(42 U.S.C. § 1983)**
*CITY OF SHEBOYGAN*

352. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER: Defendants reassert and incorporate their responses to the foregoing paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.**

113

352–358.

**ANSWER: The Court entered an Order dismissing Claim Four of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.7.2.) Therefore, Defendants provide no answer to paragraphs 352-358 of Plaintiff's Amended Complaint.**

## CLAIM FIVE
### VIOLATION OF MR. WOLF'S 14th AMENDMENT
### PROCEDURAL DUE PROCESS RIGHTS (PROPERTY)
### (42 U.S.C. § 1983)
*SORENSON, ADAMS, HALL*

**As a preliminary answer, Defendants affirmatively state that the Court entered an Order dismissing Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar from Claim Five of Plaintiff's Amended Complaint. (ECF No. 62 ¶ 4.8.2.) The Court entered an Order dismissing Maya Hilty as a Defendant in this matter (ECF No. 59) and an Order dismissing Plaintiff's official capacity claims against Sorenson and Adams in Claim Five of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.8.3.)**

359. Plaintiff realleges and incorporates each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER: Defendants reassert and incorporate their responses to the foregoing paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.**

360. The Due Process Clause of the Fourteenth Amendment prohibits the government from "depriv[ing] any person of life, liberty, or property, without due process of law."

**ANSWER: The allegations contained in paragraph 360 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

361.    The Due Process Clause requires notice and a hearing before, or reasonably promptly after, a deprivation of a public employee's protected property rights.

**ANSWER: The allegations contained in paragraph 361 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

362.    As City Administrator, Mr. Wolf could not be fired or removed except for cause as defined under Wisconsin state law, and Mr. Wolf's employment agreement expressly did "not contravene" the ordinance that Mr. Wolf could only be removed and fired for "cause."

**ANSWER: The allegations contained in paragraph 362 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 362 contains assertions of fact, Defendants deny.**

363.    Mr. Wolf had a protected property interest in his position.

**ANSWER: The allegations contained in paragraph 363 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 363 contains assertions of fact, Defendants deny.**

364.    Mr. Wolf was denied his procedural due process property rights when he was denied actual notice of the charges, subjected to a sham biased "witch hunt" investigation, and then fired without any opportunity for a pre- or post-termination hearing.

**ANSWER: The allegations contained in paragraph 364 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 364 contains assertions of fact, Defendants**

deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 364 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.

365.    The eight Defendant Alderpersons on Common Council had final decision-making authority to give Mr. Wolf actual notice of the charges, and a hearing before, or reasonably after, he was fired by an administrative vote.

**ANSWER: The Court entered an Order dismissing Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar from Claim Five of Plaintiff's Amended Complaint. (ECF No. 62 ¶ 4.8.2.) Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar provide no answer to paragraph 365 of Plaintiff's Amended Complaint.**

366.    The Defendants' administrative resolution firing Mr. Wolf without a hearing or notice of the charges showed deliberate indifference to Mr. Wolf's procedural due process rights and was the moving force behind the deprivation of Mr. Wolf's right to notice and a hearing.

**ANSWER: The allegations contained in paragraph 366 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 366 contains assertions of fact, Defendants deny.**

367.    Individually and in their official capacities, Felde, Filicky-Peneski, Salazar, Ramey, Ackley, Perrella, Rust, and Dekker intentionally and with reckless disregard for Mr. Wolf's rights directly participated by voting to fire him "without cause" solely to deny Mr. Wolf any hearing opportunity in violation of his due process rights.

**ANSWER: The Court entered an Order dismissing Felde, Filicky-Peneski, Salazar, Ramey, Ackley, Perrella, Rust, and Dekker from Claim Five of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.8.2.) Therefore, Felde, Filicky-Peneski, Salazar, Ramey, Ackley, Perrella, Rust, and Dekker provide no answer to paragraph 367 of Plaintiff's Amended Complaint.**

368. Individually and in his official capacity, Sorenson directly participated by refusing to provide any requested records about the investigation, ordering records be deleted and destroyed during Hall's investigation, and telling Hilty to publish false information that Mr. Wolf disclosed "confidential information" about Pelishek and Rendall to her in September so that he could show Hall and Council there was "cause" to fire Mr. Wolf under the *Confidential Information* policy.

**ANSWER: The Court entered an Order dismissing Plaintiff's official capacity claims against Sorenson in Claim Five of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.8.3.) The allegations contained in paragraph 368 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 368 contains assertions of fact, Defendants deny. Paragraph 368 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

369. Individually and in his official capacity, Adams directly participated by concealing Rendall's "complaint" from Mr. Wolf and his attorney, lying about the "charges" Hall was investigating on December 6 and 7 so that Mr. Wolf could not be prepared for Hall's interview, sending "investigation instructions" less than 90 minutes before Hall's interview, and

then convincing and advising the Common Council to fire Mr. Wolf "without cause" so that he would not be given a hearing to expose Hall's sham investigation.

**ANSWER: The Court entered an Order dismissing Plaintiff's official capacity claims against Adams in Claim Five of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.8.3.) The allegations contained in paragraph 369 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 369 contains assertions of fact, Defendants deny. Paragraph 369 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

370.    Hilty acted under color of law by agreeing with Sorenson and Donohue in November 2022 to publish false information that Hall could use as "evidence" for her "investigation" against Mr. Wolf to convince eight members of the Council to fire Mr. Wolf for violating the *Leave Directives*, *Confidential Information* Policy, and *False Statements* Ordinance.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter, (ECF No. 59), and an Order dismissing Plaintiff's claims against Sorenson in Claim Five of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.8.3.) Therefore, Defendants provide no answer to paragraph 370 of Plaintiff's Amended Complaint.**

371.    Hilty willfully participated with Sorenson by attempting to entice Mr. Wolf to comment on his Confidential Email, meeting every week with Sorenson and communicating with him through private chats in November 2022, and then publishing her December 16 article that falsely stated *Mr. Wolf* disclosed Pelishek's name and the August 22 slur incident for her

October "slur articles," so that Sorenson could immediately send her December 16 article to Hall to use as "evidence" that there was cause to fire Mr. Wolf for disclosing "confidential information."

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter (ECF No. 59) and an Order dismissing Plaintiff's official capacity claims against Sorenson in Claim Five of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.8.3.) The allegations contained in paragraph 371 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 371 contains assertions of fact, Defendants deny. Paragraph 371 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

372.    Hilty acted maliciously and with callous disregard for Mr. Wolf's rights because she knew that Mr. Wolf never disclosed the August 22 "slur incident" to her.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) Therefore, Defendants provide no answer to paragraph 372 of Plaintiff's Amended Complaint.**

373.    Hall acted under color of law by agreeing with Donohue and Sorenson in November 2022 to conduct a biased witch hunt investigation, conceal exonerating information, and convince any Council "swing votes" to fire and remove Mr. Wolf.

**ANSWER: The Court entered an Order dismissing Plaintiff's official capacity claims against Sorenson in Claim Five of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.8.3.) The allegations contained in paragraph 373 of Plaintiff's Amended Complaint call**

**for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 373 contains assertions of fact, Defendants deny. Paragraph 373 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

374.    Hall willfully participated with Sorenson, Adams, and Donohue to separate employees by "supporters" of Mr. Wolf, conceal their testimonies from the Council, and then, when Hall realized that a hearing with employee witnesses would fully exonerate Mr. Wolf, Hall told the Council in her "oral synopsis" that a hearing would be "costly" and hard on employees so that Sorenson and Adams could convince Council to fire Mr. Wolf without cause or a hearing.

**ANSWER: The Court entered an Order dismissing Plaintiff's official capacity claims against Sorenson and Adams in Claim Five of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.8.3.) Defendants deny paragraph 374 of Plaintiff's Amended Complaint. Paragraph 374 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

375.    The joint and combined actions of the Defendants to conduct a biased sham investigation and then specifically deny Mr. Wolf a hearing or any notice of the actual charges against him caused the deprivation of Mr. Wolf's procedural due process property rights.

**ANSWER: The allegations contained in paragraph 375 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 375 contains assertions of fact, Defendants**

deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 375; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Paragraph 375 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.

376. The Defendants acted intentionally, maliciously, and with callous disregard for Mr. Wolf's Fourteenth Amendment property rights.

**ANSWER: The allegations contained in paragraph 376 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 376 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 376 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Paragraph 376 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

377. Mr. Wolf has suffered severe financial and emotional damage and injuries as well as the deprivation of his job, title, reputation, and standing in the community based on the intentional actions and omissions by the defendants.

**ANSWER: The allegations contained in paragraph 377 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 377 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 377 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.**

**CLAIM SIX**
**VIOLATION OF MR. WOLF'S 14th AMENDMENT DUE PROCESS**
**LIBERTY RIGHTS**
**(42 U.S.C. § 1983)**
*SORENSON, ADAMS, DONOHUE, HALL*

**As a preliminary answer, Defendants affirmatively state that the Court entered an Order dismissing Hall and Donohue from Claim Six of Plaintiff's Amended Complaint. (ECF No. 62 ¶¶'s 4.9.2 and 4.9.5)**

378.    Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER: Defendants reassert and incorporate their responses to the foregoing paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.**

379.    Mr. Wolf had a liberty interest in his excellent reputation, honesty, and integrity throughout the Sheboygan public and private sector as an award-winning Manager, City Administrator, and "Inspirational Leader" in Sheboygan County.

**ANSWER: The allegations contained in paragraph 379 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

380. The government is prohibited from disclosing stigmatizing information that hurts the reputation of a public employee in connection with the employees firing without notice of the allegations and an opportunity for a name-clearing hearing before an impartial tribunal—specifically in regard to stigmatizing charges and allegations that the government has made or intends to make public.

**ANSWER: The allegations contained in paragraph 380 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

381. The Fourteenth Amendment entitled Mr. Wolf to notice and an opportunity to clear his name in a hearing before the Council before the Defendants publicly disclosed on January 9 and 10, and then again on February 8, that Mr. Wolf was dangerous to employees, habitually dishonest, and guilty of retaliation, harassment, and "violations of laws" and ethics policies as justification for his firing on January 9.

**ANSWER: The allegations contained in paragraph 381 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

382. Mr. Wolf has never waived or relinquished his right to a public name clearing hearing before the Council.

**ANSWER: The allegations contained in paragraph 382 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny.**

383. Mr. Wolf was deprived of his constitutional liberty interests when Sorenson and Adams disclosed and authorized the public release of statements that Mr. Wolf was dishonest,

dangerous and retaliatory to employees, and violated "laws" pursuant to the city's unconstitutional *False Statements* policy and practices.

**ANSWER: The allegations contained in paragraph 383 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 383 contains assertions of fact, Defendants deny. Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Paragraph 383 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

384. The Defendants' *False Statements* policy and practices showed a deliberate indifference to Mr. Wolf's Fourteenth Amendment rights whereby Sorenson labeled Mr. Wolf "dishonest" on several occasions, including before Hall ever began her "investigation," to make sure that he was stigmatized as "dishonest" and then accused of "violating laws" in conjunction with his firing.

**ANSWER: The allegations contained in paragraph 384 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 384 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 384 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Paragraph 384 lacks any basis in fact**

and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.

385. Individually and in his official capacity, Sorenson directly participated in repeatedly and intentionally violating Mr. Wolf's liberty rights after Mr. Wolf was fired and denied a hearing by emailing private citizens that Mr. Wolf violated the law, lied about the DEIB leaders, and then publicly stating for Sheboygan Press January 10 article that Mr. Wolf was dangerous to employees, retaliated against them, was a habitual liar, and that Mr. Wolf was "warned" about his dishonesty— all of which Sorenson knew was categorically false.

**ANSWER: The allegations contained in paragraph 385 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Sorenson denies. To the extent paragraph 385 contains assertions of fact, Sorenson admits that the January 10 article is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Sorenson denies the remaining allegations contained in paragraph 385 of Plaintiff's Amended Complaint. Paragraph 385 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

386. Sorenson acted maliciously and with reckless disregard for Mr. Wolf's due process liberty rights to punish Mr. Wolf for exposing the DEIB leaders—one of whom Sorenson has now hired in Mr. Wolf's absence.

**ANSWER: The allegations contained in paragraph 386 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis,**

**Sorenson denies. To the extent paragraph 386 contains assertions of fact, Sorenson denies. Paragraph 386 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

387.    Individually and in his official capacity, Adams directly participated by authorizing the public release of Hall's February 6 "investigation" report one month after Mr. Wolf had been publicly fired without any hearing based solely on Hall's investigation stating that Mr. Wolf made "false statements" about the DEIB leaders.

**ANSWER: Defendants admit Hall sent her investigation report to Adams on February 6, 2023. Adams admits he authorized the release of Hall's investigation report in response to open records requests received by the City of Sheboygan. Adams denies the remaining allegations contained in paragraph 387 of Plaintiff's Amended Complaint.**

388.    Adams acted maliciously and with reckless disregard for Mr. Wolf's liberty rights when he immediately authorized the full public release of Hall's final report two days after a public announcement was posted that Mr. Wolf was a finalist for another City Manager position.

**ANSWER: The allegations contained in paragraph 388 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 388 contains assertions of fact, Defendants admit Hall sent her investigation report to Adams on February 6, 2023. Adams admits he authorized the release of Hall's investigation report in response to open records requests received by the City of Sheboygan. Adams denies the remaining allegations contained in paragraph 388 of Plaintiff's Amended Complaint. The allegations in Paragraph 388 that**

126

**Adams acted maliciously and with reckless disregard for Mr. Wolf's liberty rights lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

389.    Individually and in her official capacity, Donohue directed Sorenson to publicly stigmatize Mr. Wolf as being a "liar" about her DEIB leaders with malice and callous disregard for Mr. Wolf's liberty rights knowing that Mr. Wolf was fired without any opportunity for a public name clearing hearing.

**ANSWER: The Court entered an Order dismissing Plaintiff's claims against Donohue in Claim Six of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.9.5.) Therefore, Donohue provides no answer to paragraph 389 of Plaintiff's Amended Complaint. The allegations contained in paragraph 389 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Sorenson denies. To the extent paragraph 389 contains assertions of fact, Sorenson denies. Paragraph 389 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

390.    Hall acted under color of law by agreeing with Donohue and Sorenson in January 2023 to draft a "final report" about her sham "investigation" that the city Defendants could immediately authorize for release to the public without any draft or preliminary report to Mr. Wolf.

**ANSWER: The Court entered an Order dismissing Plaintiff's claims against Donohue and Hall in Claim Six of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.9.5.)**

**Therefore, Donohue provides no answer to paragraph 390 of Plaintiff's Amended Complaint. The allegations contained in paragraph 390 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Sorenson denies. To the extent paragraph 390 contains assertions of fact, Sorenson denies. Paragraph 390 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

391.    Hall willfully participated with Sorenson and Adams by drafting and sending her report on February 6, 2023, that stated false and stigmatizing information that Mr. Wolf was retaliatory and harassing against female employees, repeatedly dishonest, and committed violations of policies.

**ANSWER: The Court entered an Order dismissing Plaintiff's claims against Hall in Claim Six of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.9.5.) The allegations contained in paragraph 391 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Sorenson and Adams deny. To the extent paragraph 391 contains assertions of fact, Sorenson and Adams deny. Paragraph 391 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

392.    Hall acted maliciously and with callous disregard for Mr. Wolf's liberty rights because Hall knew, or should have known, that Mr. Wolf was publicly fired solely based on her "investigation," that Mr. Wolf was denied a name clearing hearing opportunity prior to his

firing, and that Sorenson publicly stated on January 10 he intended to immediately release Hall's report to the public in conjunction with Mr. Wolf's firing.

**ANSWER: The Court entered an Order dismissing Plaintiff's claims against Hall in Claim Five of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.9.2.) Therefore, Defendants provide no answer to paragraph 392 of Plaintiff's Amended Complaint.**

393.    As a direct result of the Defendants statements, public releases, and combined acts of the Defendants, Mr. Wolf's Fourteenth Amendment liberty rights were violated, and he has lost multiple employment opportunities in his chosen field—now even being denied employment in the private sector.

**ANSWER: The allegations contained in paragraph 393 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 393 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 393 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.**

394.    The Defendants' joint actions and conduct under color of law all caused the violation of Mr. Wolf's Fourteenth Amendment liberty rights.

**ANSWER: The allegations contained in paragraph 394 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 394 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 394 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any**

injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.

395. The Defendants conduct and actions have caused Mr. Wolf to suffer severe financial and emotional damages and inability to find any profession in his chosen field.

**ANSWER: The allegations contained in paragraph 395 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 395 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 395 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.**

## CLAIM SEVEN
### STATE LAW CLAIM: DEFAMATION PER SE
*SORENSON*

396. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER: Defendants reassert and incorporate their responses to the foregoing paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.**

397 – 416.

**ANSWER: The Court entered an Order dismissing Claim Seven of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.11.) Therefore, Defendants provide no answer to paragraphs 397 - 416 of Plaintiff's Amended Complaint.**

## CLAIM EIGHT
## STATE LAW CLAIM: CIVIL CONSPIRACY
### *SORENSON, DONOHUE, HILTY*

**As a preliminary answer, Defendants affirmatively state that the Court entered an Order dismissing Sorenson from Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62 ¶¶'s 4.12.) The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.)**

417.    Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER: Defendants reassert and incorporate their responses to the foregoing paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.**

418.    Under Wisconsin law a civil conspiracy is found where an injured plaintiff shows "[t]he formation and operation of the conspiracy; the wrongful act or acts done pursuant thereto; and the damage resulting from such act or acts." *Onderdonk v. Lamb*, 79 Wis. 2d 241, 247, 255 N.W.2d 507 (1977).

**ANSWER: The allegations contained in paragraph 418 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 418 contains assertions of fact, Donohue denies any and all allegations of unlawful acts as alleged in paragraph 418 of Plaintiff's Amended Complaint; Donohue denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Donohue; and Donohue denies any and all liability to Plaintiff. Moreover, with only one Defendant remaining in Claim Eight, Plaintiff fails to state a claim on a theory of civil conspiracy as a matter of law.**

419. A civil conspiracy is found where two or more persons engage in "some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." *Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, 1168, 701 N.W.2d 523.

**ANSWER: The allegations contained in paragraph 419 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 419 contains assertions of fact, Donohue denies any and all allegations of unlawful acts as alleged in paragraph 419 of Plaintiff's Amended Complaint; Donohue denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Donohue; and Donohue denies any and all liability to Plaintiff. Moreover, with only one Defendant remaining in Claim Eight, Plaintiff fails to state a claim on a theory of civil conspiracy as a matter of law.**

420. Donohue and Sorenson reached an agreement and common objective in April 2021 to incite public scandals and frivolous complaints against Mr. Wolf that would force the Council to remove Mr. Wolf or give Mr. Wolf's financial "powers" to Sorenson so that Sorenson could give Donohue and her private DEI groups ARPA funds or hire her DEI consultant to allocate "city resources."

**ANSWER: The Court entered an Order dismissing Plaintiff's claims against Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.) Therefore, Sorenson provides no answer to paragraph 420 of Plaintiff's Amended Complaint. Donohue denies the allegations contained in paragraph 420 of Plaintiff's Amended Complaint. Moreover, with only one Defendant remaining in Claim Eight, Plaintiff fails to state a claim on a theory of civil conspiracy as a matter of law. Paragraph**

**420** lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.

421. Giving ARPA funds or public money to private interest groups that are not involved in ongoing infrastructure or are personally and politically connected to public officials in violation of public spending protocols for such public funds is unlawful.

**ANSWER: The allegations contained in paragraph 421 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 421 contains assertions of fact, Donohue denies. Moreover, with only one Defendant remaining in Claim Eight, Plaintiff fails to state a claim on a theory of civil conspiracy as a matter of law. Paragraph 421 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

422. Fabricating or falsifying "evidence" to defame and destroy the character of someone through false disclosures and statements so that public funds can be diverted to interested personal and private groups is an unlawful means to accomplish a public employee's removal from office.

**ANSWER: The allegations contained in paragraph 422 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 422 contains assertions of fact, Donohue denies any and all allegations of unlawful acts as alleged in paragraph 422 of Plaintiff's Amended Complaint; Donohue denies that Plaintiff has suffered any injuries, equitable or legal**

**wrongs, as the result of any alleged conduct by Donohue; and Donohue denies any and all liability to Plaintiff. Moreover, with only one Defendant remaining in Claim Eight, Plaintiff fails to state a claim on a theory of civil conspiracy as a matter of law.**

423.　In furtherance of this agreement, Donohue told Sorenson to have Rendall incite a "race-related" scandal and frivolous retaliation claim against Mr. Wolf to get the DEI consultant position that would assess City resources as he and Donohue wanted—rather than Mr. Wolf.

**ANSWER: The Court entered an Order dismissing Plaintiff's claims against Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.) Therefore, Sorenson provides no answer to paragraph 423 of Plaintiff's Amended Complaint. The allegations contained in paragraph 423 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Donohue denies. To the extent paragraph 423 contains assertions of fact, Donohue denies. Paragraph 423 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

424.　Donohue and Sorenson acted maliciously, intentionally, and willfully in a civil conspiracy to remove Mr. Wolf's authority over the city's budget and ARPA funds and giving that back to Sorenson as mayor by destroying Mr. Wolf's reputation in the community so that he could not expose Donohue's private efforts for public funds—all to ensure DEIB consultant and reallocation of public resources with ARPA and public funds once Mr. Wolf was out of the way.

**ANSWER: The Court entered an Order dismissing Plaintiff's claims against Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.)**

Therefore, Sorenson provides no answer to paragraph 424 of Plaintiff's Amended Complaint. The allegations contained in paragraph 424 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Donohue denies. To the extent paragraph 424 contains assertions of fact, Donohue denies. Paragraph 424 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.

425.    Hilty joined this agreement with Donohue and Sorenson on September 16, 2022, when she agreed to scare Mr. Wolf through an interview into writing an article harassing Pelishek as a "racist" to force him to pay the DEIB leaders as consultants to allocate city resources.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter (ECF No. 59) and an Order dismissing Plaintiff's claims against Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.) Therefore, Sorenson provides no answer to paragraph 425 of Plaintiff's Amended Complaint. The allegations contained in paragraph 425 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Donohue denies. To the extent paragraph 425 contains assertions of fact, Donohue denies. Paragraph 425 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

426.    In furtherance of this agreement, when Mr. Wolf rejected the DEIB threats for money in October, Hilty published a series of misleading and inflammatory articles that she

showed Sorenson, Rendall, and Donohue first for approval, and falsely stated that Mr. Wolf was enabling pervasive "racism" in the city because of the "slur incident" while using Mr. Wolf's photo online as the face of her article "City Leader Uses Racial Slur"—which was false.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter (ECF No. 59.) and an Order dismissing Plaintiff's claims against Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.) Therefore, Sorenson provides no answer to paragraph 426 of Plaintiff's Amended Complaint. The allegations contained in paragraph 426 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 426 contains assertions of fact, Defendants deny. Paragraph 426 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

427.    Hilty acted out of an irrational desire to destroy Mr. Wolf's reputation by joining Donohue and Sorenson's civil conspiracy and acted intentionally to further their objectives to get Sorenson power for DEIB funding by fabricating false information for Hall and the Council to use against Mr. Wolf to remove him.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter (ECF No. 59) and an Order dismissing Plaintiff's claims against Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.) Therefore, Sorenson provides no answer to paragraph 427 of Plaintiff's Amended Complaint. The allegations contained in paragraph 427 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Donohue denies. To the extent**

paragraph 427 contains assertions of fact, Donohue denies. Paragraph 427 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.

428.    The respective, joint, and concerted actions of Donohue, Sorenson, and Hilty in furtherance of their plan severely injured Mr. Wolf's credibility, employment, and reputation in the community and throughout the nation.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter (ECF No. 59.) and an Order dismissing Plaintiff's claims against Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.) Therefore, Sorenson provides no answer to paragraph 428 of Plaintiff's Amended Complaint. The allegations contained in paragraph 428 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Donohue denies. To the extent paragraph 428 contains assertions of fact, Donohue denies. Paragraph 428 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

429.    The co-conspirator Defendants' unlawful actions in a single common objective to cast Mr. Wolf publicly as failing in his position, dangerous, and retaliatory for DEI funding formed the basis of a civil conspiracy that severely and substantially injured Mr. Wolf.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter (ECF No. 59) and an Order dismissing Plaintiff's claims against Sorenson in Claim Eight of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.12.) Therefore, Sorenson**

provides no answer to paragraph 429 of Plaintiff's Amended Complaint. The allegations contained in paragraph 429 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Donohue denies. To the extent paragraph 429 contains assertions of fact, Donohue denies. Paragraph 429 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.

**CLAIM NINE**
**STATE LAW CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
*DONOHUE, SORENSON, HALL*

430.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER: Defendants reassert and incorporate their responses to the foregoing paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.**

431 – 439.

**ANSWER: The Court entered an Order dismissing Claim Nine of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.13.) Therefore, Defendants provide no answer to paragraphs 431 – 439 of Plaintiff's Amended Complaint.**

**CLAIM TEN**
**STATE LAW CLAIM: CONVERSION**
*ADAMS*

440.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER: Defendants reassert and incorporate their responses to the foregoing paragraphs of Plaintiff's Amended Complaint as if fully set forth herein.**

441.    Wisconsin state law recognizes a claim for conversion where a defendant exercises dominion or control over the personal property of a plaintiff by wrongfully refusing to surrender property originally lawfully obtained." *Production Credit Assosication v. Nowatzski*, 90 Wis. 2d 344, 354, (1979) (citations omitted).

**ANSWER: The allegations contained in paragraph 441 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 441 contains assertions of fact, Adams denies any and all allegations of unlawful acts as alleged in paragraph 441 of Plaintiff's Amended Complaint; Adams denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Adams; and Adams denies any and all liability to Plaintiff.**

442.    Mr. Wolf has suffered severe injuries being deprived of a priceless artwork from his father that is a very valuable family heirloom, valuable decorations and other items of personal value, countless, private and very sensitive documents involving personal, family, and financial information, and other personal belongings.

**ANSWER: The allegations contained in paragraph 442 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Defendants deny. To the extent paragraph 442 contains assertions of fact, Defendants deny. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 442 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff.**

443. Adams' converted Mr. Wolf's personal belongings from his former office when he prohibited Mr. Wolf from obtaining his personal belongings on November 7, refused to allow Mr. Wolf or Mr. Wolf's attorney access to his office in City Hall to gather Mr. Wolf's personal belongings while Mr. Wolf was on leave, and then refused to respond or allow Mr. Wolf or his attorney access to Mr. Wolf's office to gather his personal belongings after Mr. Wolf was fired on January 9, 2023.

**ANSWER: Adams admits after the November 7, 2022, meeting he walked Plaintiff to Plaintiff's office and gave Plaintiff the opportunity to gather his personal belongings. Adams told Plaintiff he could not take the City issued laptop issued to him with him while he was on administrative leave. Adams witnessed Plaintiff place the laptop on its docking station in Plaintiff's office. Adams denies the remaining allegations contained in paragraph 443 of Plaintiff's Amended Complaint. Paragraph 443 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

444. As of April 2023, Mr. Wolf has not been permitted to gather his personal belongings from his City Administrator office and has no knowledge of whether those items have been destroyed, damaged, or otherwise converted unlawfully by Adams' refusals to allow Mr. Wolf access to his former office in City Hall.

**ANSWER: Defendants deny paragraph 444 of Plaintiff's Amended Complaint as stated. In addition to Plaintiff being given an opportunity to take his personal belongings on November 7, 2022, Adams admits exchanging multiple emails and texts with Plaintiff's attorney to arrange for Plaintiff to pick up his remaining personal belongings. Those**

emails and texts are written documents which speak for themselves and any inconsistent characterizations thereof are denied. Adams denies the remaining allegations contained in paragraph 444 of Plaintiff's Amended Complaint. Adams affirmatively states that Plaintiff has been allowed to collect his personal belongings from his former office. Paragraph 444 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.

445.    Adams' refusal to surrender Mr. Wolf's personal property has resulted in severe injuries, deprivation of his personal belongings, and interference with Mr. Wolf's use and enjoyment of his personal belongings since he was constructively suspended on November 7 and then fired on January 9.

**ANSWER: The allegations contained in paragraph 445 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Adams denies. To the extent paragraph 445 contains assertions of fact, Adams denies. Adams denies any and all allegations of unlawful acts as alleged in Plaintiff's Amended Complaint; Adams denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Adams; and Adams denies any and all liability to Plaintiff. Adams affirmatively states that Plaintiff has been allowed to collect his personal belongings from his former office. Paragraph 445 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

446. Mr. Wolf never consented to Adams' or the city retaining his personal belongings, documents, and possessions in his office after Mr. Wolf was fired.

**ANSWER: The allegations contained in paragraph 446 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Adams denies. To the extent paragraph 446 contains assertions of fact, Adams denies. Adams denies any and all allegations of unlawful acts as alleged in Plaintiff's Amended Complaint; Adams denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Adams; and Adams denies any and all liability to Plaintiff.**

447. Adams was bound by a ministerial duty to turn over Mr. Wolf's personal belongings from his office when Adams' assumed the duty as the only contact for Mr. Wolf to retrieve his "personal belongings" when the *Leave Directives* letter that told Mr. Wolf to contact Adams to coordinate retrieving his belongings.

**ANSWER: The allegations contained in paragraph 447 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Adams denies. To the extent paragraph 447 contains assertions of fact, Adams admits the November 7, 2022, letter is a written document which speaks for itself, and any inconsistent characterizations thereof are denied. Adams denies any and all allegations of unlawful acts as alleged in Plaintiff's Amended Complaint; Adams denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Adams; and Adams denies any and all liability to Plaintiff.**

448. Even if Adams' claimed his duty was discretionary, Adams' acted maliciously, willfully, and intentionally by denying Mr. Wolf and his attorney from gathering his personal

belongings between November 7, 2022, up to April 2023 solely to conceal evidence that might show Mr. Wolf's office records were destroyed, altered, removed, or fabricated for Hall's sham investigation—all of which Mr. Wolf would know if he entered his office.

**ANSWER: The allegations contained in paragraph 448 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Adams denies. To the extent paragraph 448 contains assertions of fact, Adams denies. Adams denies any and all allegations of unlawful acts as alleged in paragraph 448 of Plaintiff's Amended Complaint; Adams denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Adams; and Adams denies any and all liability to Plaintiff. Adams affirmatively states that Plaintiff has been allowed to collect his personal belongings from his former office. Paragraph 448 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

449. As a result of Adams' unlawful conversion of Mr. Wolf's personal belongings in his office, Mr. Wolf has suffered incalculable damages from the loss of his father's artwork that can never be duplicated or replaced, as well as sensitive and personal documents, financial, and historical family records, all of which Mr. Wolf maintained in his City Administrator office.

**ANSWER: The allegations contained in paragraph 449 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Adams denies. To the extent paragraph 449 contains assertions of fact, Adams denies. Adams denies any and all allegations of unlawful acts as alleged in paragraph 449 of Plaintiff's Amended Complaint; Adams denies that Plaintiff has suffered any injuries,**

equitable or legal wrongs, as the result of any alleged conduct by Adams; and Adams denies any and all liability to Plaintiff.

450.    Adams' malicious, willful, and intentional conversion of Mr. Wolf's personal belongings and priceless family heirlooms injured Mr. Wolf and resulted in priceless amounts of severe damage to his personal belongings in his former office in City Hall.

**ANSWER: The allegations contained in paragraph 450 of Plaintiff's Amended Complaint call for a legal conclusion for which no answer is required, and on such basis, Adams denies. To the extent paragraph 450 contains assertions of fact, Adams denies. Adams denies any and all allegations of unlawful acts as alleged in paragraph 450 of Plaintiff's Amended Complaint; Adams denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Adams; and Adams denies any and all liability to Plaintiff. Adams affirmatively states that Plaintiff has been allowed to collect his personal belongings from his former office. Paragraph 450 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.**

### REQUEST FOR RELIEF

Plaintiff Todd Wolf, therefore, requests the following relief:

451.    A declaratory judgment that the City of Sheboygan's *False Statements* Ordinance and practices (82-3 & 82-6) is facially void and unconstitutional under the First Amendment.

**ANSWER: The Court entered an Order dismissing Claim Four of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.7.2.) Defendants deny any and all allegations of**

unlawful acts as alleged in paragraph 451 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.

452. A declaratory judgment that the City's *Confidential Information* Policy (Mun. Code Sec. 2-272) and practices of selective enforcement is unconstitutional.

**ANSWER: The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) Defendants deny any and all allegations of unlawful acts as alleged in paragraph 452 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.**

453. A permanent injunction prohibiting the city Defendants from enforcing their *Confidential Information* policy and practices against public employees protected speech on matters of public concern.

**ANSWER: The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) Moreover, as a former employee, Plaintiff lacks standing to assert this claim for relief. Defendants deny any and all allegations of unlawful acts as alleged in paragraph 453 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged**

conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.

454. A declaratory judgment that the Defendants violated Mr. Wolf's First Amendment rights.

**ANSWER: The Court entered an Order dismissing Claim One in relation to Plaintiff's claim that the Leave Directives were unconstitutionally overbroad. (ECF No. 62, pg. 55.) The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). Defendants deny any and all allegations of unlawful acts as alleged in paragraph 454 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.**

455. A declaratory judgment that the Defendants violated Mr. Wolf's Fourteenth Amendment due process rights.

**ANSWER: The Court entered an Order dismissing Claim Four – Violation of the Fourteenth Amendment Due Process (Vague) "False Statements" Ordinance. (ECF No. 62. ¶ 4.7.2.)**

**The Court entered an Order dismissing Felde, Filicky-Peneski, Salazar, Ramey, Ackley, Perrella, Rust, Dekker, as well as the official capacity claims against Sorenson and Adams from Claim Five – Violation of Mr. Wolf's 14th Amendment Procedural Due Process Rights (Property) of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.8.2. ¶ 4.8.3.)**

The Court entered an Order dismissing Hall and Donohue from Claim Six Violation of Mr. Wolf's 14th Amendment Procedural Due Process Liberty Rights of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.9.2. ¶ 4.9.5.)

Defendants deny any and all allegations of unlawful acts as alleged in paragraph 455 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.

Plaintiff factual assertions in support of Claims Five and Six lack any basis in fact and are entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said allegations from Plaintiff's Amended Complaint.

456.    A declaratory judgment that Mr. Wolf did not make any false statements about the DEIB leaders or about Rendall asking Pelishek to repeat a racial slur on August 22;

ANSWER: Defendants deny any and all allegations of unlawful acts as alleged in paragraph 456 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.

457.    A declaratory judgment that Hilty intentionally published false and misleading information in a joint activity with Sorenson between October 2022 – February 2023 to ensure Mr. Wolf's firing and damage to his reputation to help Sorenson retrieve "power" over public resources for her private and political interest groups.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter (ECF No. 59) and an Order dismissing Claim Seven – State Law Claim – Defamation Per Se. (ECF No. 62.) The Court entered an Order dismissing Plaintiff's claims against Sorenson in Claim Eight State Law – Civil Conspiracy. (ECF No. 62, ¶ 4.12.) Defendants deny any and all allegations of unlawful acts as alleged in paragraph 457 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.**

**Plaintiff factual assertions in support of Claims Eight lack any basis in fact and are entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said allegations from Plaintiff's Amended Complaint.**

458.    A declaratory judgment that Donohue, Sorenson, and Hilty engaged in a civil conspiracy against Mr. Wolf to obtain public or ARPA funds for unlawful purposes.

**ANSWER: The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) The Court entered an Order dismissing Plaintiff's claims against Sorenson in Claim Eight State Law – Civil Conspiracy. (ECF No. 62, ¶ 4.12.) Moreover, with only one Defendant remaining in Claim Eight, Plaintiff fails to state a claim on a theory of civil conspiracy as a matter of law.**

**Defendants deny any and all allegations of unlawful acts as alleged in paragraph 458 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and**

Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.

Plaintiff factual assertions in support of Claims Eight lack any basis in fact and are entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said allegations from Plaintiff's Amended Complaint.

459. A declaratory judgment that Donohue engaged in multiple concerted efforts to influence Sheboygan city officials so that she could obtain public money for her private and political interests.

**ANSWER: Defendants deny any and all allegations of unlawful acts as alleged in paragraph 459 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.**

**Paragraph 459 lacks any basis in fact and are entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said allegations from Plaintiff's Amended Complaint.**

460. An injunction requiring the Defendants to allow Mr. Wolf immediate and full access to his previous office to gather and obtain all his personal belongings without further interference from Adams.

**ANSWER: Defendants deny any and all allegations of unlawful acts as alleged in paragraph 460 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has**

suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages. Defendants affirmatively state that Plaintiff has been given access to his former office and collected his personal belongings.

Paragraph 460 lacks any basis in fact and are entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.

461.    A permanent injunction prohibiting all city Defendants and their agents, officials, employees, or persons acting on their behalf from making further false or otherwise stigmatizing and unlawful public disclosures related to Mr. Wolf, his termination or Hall's "investigation;"

ANSWER: The Court entered an Order dismissing Claim Seven – State Law Claim – Defamation Per Se. (ECF No. 62.) Defendants deny any and all allegations of unlawful acts as alleged in paragraph 461 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.

462.    A permanent injunction requiring the city Defendants and their agents, officials, employees, and any other person acting on their behalf to purge Mr. Wolf's personnel file of any reference to his termination, hall's investigation, and any other negative report that occurred on or around November 7, 2022.

ANSWER: Defendants deny any and all allegations of unlawful acts as alleged in paragraph 462 of Plaintiff's Amended Complaint; Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants; and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.

Paragraph 462 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said this paragraph from Plaintiff's Amended Complaint.

463. Compensatory damages, including, but not limited to, damages for lost income and benefits, severe mental and emotional distress, loss of reputation, humiliation and inconvenience from all Defendants;

ANSWER: Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.

464. Punitive damages against Defendants Sorenson, Adams, Donohue, Felde, Filicky-Peneski, Salazar, Ramey, Dekker, Rust, Perrella, Ackley, Hall and/or Hilty;

ANSWER: The Court entered an Order dismissing Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar from Claim Five of Plaintiff's Amended Complaint. (ECF No. 62 ¶ 4.8.2.) Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.

Paragraph 464 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said this paragraph from Plaintiff's Amended Complaint.

465. Plaintiff's reasonable attorney fees and costs under 42 U.S.C. § 1988; and

**ANSWER: Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.**

466. Any other relief the court deems appropriate and to which Plaintiff may be entitled.

**ANSWER: Defendants deny that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendants and Defendants deny any and all liability to Plaintiff. Defendants deny that Plaintiff is entitled to any damages.**

467. Plaintiff requests a trial by jury.

**ANSWER: Defendants hereby request a 12-person jury trial on all issues in the above-captioned matter.**

## AFFIRMATIVE DEFENSES

1. Any allegations contained in Plaintiff's Amended Complaint not specifically admitted are hereby denied.

2. Plaintiff's Amended Complaint, and each alleged cause of action contained therein, fails to state a claim against Defendants upon which relief can be granted in relation to any of the claims that survived Defendants Motion to Dismiss.

3. Without admitting any of the allegations contained in Plaintiff's Amended

Complaint, Defendants aver that Claim One - Plaintiff's Section 1983 - Violation of Free Speech claim lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily dismiss Claim One of Plaintiff's Amended Complaint.

4.      Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Donohue avers that Claim One - Plaintiff's Section 1983 - Violation of Free Speech claim fails to state a claim against her because she is a private actor and none of the exceptions which allow for Section 1983 against private actors apply to her.

5.      Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff's Due Process Violation – Property Interest claim against Sorenson and Adams set forth in Claim Five lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily dismiss Plaintiff's Claim Five of Plaintiff's Amended Complaint.

6.      Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff's Due Process Violation – Liberty Interest claim against Sorenson and Adams set forth in Claim Six lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily dismiss Plaintiff's Claim Six of Plaintiff's Amended Complaint.

7.      Without admitting any for the allegations contained in Plaintiff's Amended Complaint, Sorenson avers that he is immune from liability regarding Plaintiff's Due Process Violation – Liberty Interest claim set forth in Claim Six because this Court has ruled that

Sorenson's alleged defamatory statements that form the basis for Plaintiff's claim against Sorenson were absolutely privileged.

8.      Without admitting any for the allegations contained in Plaintiff's Amended Complaint, Sorenson avers that he is immune from liability regarding Plaintiff's Due Process Violation – Liberty Interest claim set forth in Claim Six because the alleged defamatory statements that form the basis for Plaintiff's claim against Sorenson were conditionally privileged.

9.      Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff's Civil Conspiracy claim against Donohue set forth in Claim Eight lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily dismiss Plaintiff's Claim Eight of Plaintiff's Amended Complaint.

10.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Donohue avers that she cannot be held liable for Sorenson's alleged defamatory statements under the law of conspiracy in relation to Plaintiff's Civil Conspiracy claim against Donohue set forth in Claim Eight because this Court has ruled that Sorenson's statements were absolutely privileged.

11.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff's Conversion claim against Adams set forth in Claim Ten lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily dismiss Claim Ten of Plaintiff's Amended Complaint.

12. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Plaintiff's state law claims are barred by the Wisconsin Worker's Compensation Act which is the exclusive remedy for injuries sustained in the workplace.

13. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff is equitably estopped from pursuing the claims in the Complaint, in whole or in part, by reason of the Plaintiff's own actions and course of conduct.

14. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff's claims are barred, in whole or in part, by the doctrines of accord and satisfaction, payment, release, equitable estoppel, illegality, and unclean hands.

15. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that to the extent Plaintiff bases any of his claims on grounds other than 42 U.S.C. § 1983, Plaintiff was at fault and his own fault was the sole proximate cause or a proximate cause of his injuries and damages, if any. Resulting damages, if any, are barred because Plaintiff was more than 50% at fault. In the event Plaintiff is found less than 50% responsible, his damages should be reduced proportionate to his percentage of fault.

16. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that to the extent Plaintiff bases any of his claims on grounds other than 42 U.S.C. § 1983, Defendants are immune from liability under Wis. Stat. § 893.80(4) or other law.

17. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that some / all of the claims against them are barred by the doctrine of sovereign immunity.

155

18. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that the doctrine of absolute, qualified, or other forms of immunity may shield some or all of the Defendants.

19. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff's action is barred because he has not suffered any injury proximately caused by any act or omission attributable to Defendants.

20. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff cannot establish that any acts or omissions of Defendants caused Plaintiff's constitutional deprivations, if any.

21. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff's injuries and/or damages may have been caused in whole or in part by the acts or omissions of persons other than Defendants.

22. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff's injuries and/or damages may have been proximately caused by intervening and/or superseding actions or causes which were not under the Defendants' control.

23. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that to the extent that Plaintiff is attempting to assert claims under *Monell v. Dept. of Social Services of New York City,* 436 U.S. 658 (1978), he has failed to state a claim upon which relief can be granted.

24. Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that no Defendant can be found liable for the actions of any other individual Defendant(s) under a theory of respondeat superior or supervisory liability.

25.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that no constitutional violation resulted from a practice, policy or custom of the City of Sheboygan.

26.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that any injury or damage to Plaintiff was not caused by a practice, policy or custom of the City of Sheboygan.

27.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that at all times material hereto, Defendants acted in good faith, in accordance with established laws and administrative rules.

28.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that they acted in good faith on the advice of outside counsel in relation to the determination that Plaintiff could be legally terminated without cause.

29.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver Plaintiff cannot recover punitive or other non-economic damages against Defendants because they did not take any action with respect to Plaintiff with malice or any willful, wanton, or reckless disregard for Plaintiff's rights or with the intention of violating the constitution, state law or public policy of the State of Wisconsin.

30.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver at all times relevant to this litigation Defendants acted in good faith with regard to Plaintiff and had reasonable grounds for believing their actions were not in violation of any law.

31.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver Plaintiff's Amended Complaint, and each and every alleged cause

of action contained therein, is barred by the fact that any employment actions Defendants took relating to Plaintiff were for proper, business-related reasons which were not arbitrary, capricious, or unlawful.

32.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that the City of Sheboygan is not responsible for any act of its agents or employees committed outside the scope of their appointment or employment.

33.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that the City of Sheboygan is not liable for the acts of its agents or employees that it did not direct, authorize or ratify.

34.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that the City of Sheboygan is not responsible for any intentional act of any of its agents or employees pursuant to Wis. Stat. § 893.80.

35.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff cannot recover punitive damages for 42 U.S.C. § 1983 claims against the City of Sheboygan, or the individually named Defendants Mayor Sorenson, City Attorney Adams, Sheboygan Area School District President Donohue or Alderpersons Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar.

36.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that to the extent that Plaintiff bases his claim on ground other than 42 U.S. C. Section 1983, Punitive damages are not recoverable against Defendants pursuant to Wis. Stat. § 893.80.

37.     Defendants reserve all defenses against an award of punitive damages, if any are made.

38.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that to the extent that Plaintiff bases his claim on ground other than 42 U.S. C. Section 1983, Plaintiff's recoverable damages, if any, against Defendants are limited under Wis. Stat. § 893.80.

39.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff has failed to state a claim on which declaratory judgment or injunctive relief may be granted.

40.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff may have failed to take certain reasonable and practical steps to mitigate any damages that may have been sustained as a result of the events referred to in the Complaint and therefore, recovery is either barred or must be reduced proportionately.

41.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver any back pay or front pay amounts allegedly owed to Plaintiff must be offset by his interim earnings and/or amounts earnable by Plaintiff with reasonable diligence.

42.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver any alleged loss or earnings liability they might otherwise have is eliminated and/or limited by any after-acquired evidence of wrongdoing by Plaintiff that would have precluded Plaintiff's hire and/or required his termination by Defendants had it previously been known to Defendants.

43.     Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendants aver that Plaintiff is not entitled to any relief or damages.

44.     Without admitting any of the allegations contained in Plaintiff's Amended

Complaint, Defendants aver that Plaintiff is not entitled to prejudgment interest, costs, penalties, or attorney's fees.

45.     Defendants reserve the right to assert additional affirmative defenses that become known during discovery and/or trial.

**WHEREFORE,** Defendants City of Sheboygan, Mayor Ryan Sorenson, City Attorney Charles Adams, Alderperson Barbara Felde, Alderperson Roberta Filicky-Peneski, Alderperson Amanda Salazar, Alderperson Angela Ramey, Alderperson Betty Ackley, Alderperson Zachary Rust, Alderperson Dean Dekker, Alderperson Grazia Perrella, and Sheboygan Area School District Board Member Mary Lynne Donohue respectfully request that this Court dismiss Plaintiff's Amended Complaint in its entirety, assess the costs of this matter to Plaintiff and for such other and further relief as the Court deems just and equitable in the premises.

**JURY DEMAND**

Defendants hereby requests a 12-person jury trial on all issues in the above-captioned matter.

Dated this 19th day of September, 2023.

**MWH LAW GROUP LLP**

Attorneys for Defendants City of Sheboygan, Mayor Ryan Sorenson, City Attorney Charles Adams, Alderperson Betty Ackley, Alderperson Dean Dekker, Alderperson Barbara Felde, Alderperson Roberta Filicky-Peneski, Alderperson Grazia Perrella, Alderperson Angela Ramey, Alderperson Zachary Rust, Alderperson Amanda Salazar, and President Sheboygan Area School District Mary Lynne Donohue

By: /s/ *Electronically signed by Warren E. Buliox*

Warren E. Buliox          SBN 1056215
Julie T. Bittner          SBN 1128144
Kerrie M. Murphy          SBN 1122869
735 N. Water Street, Suite 610
Milwaukee, WI 53202
Telephone: (414) 436-0353
Facsimile: (414) 436-0354
*warren.buliox@mwhlawgroup.com*
*julie.bittner@mwhlawgroup.com*
*kerrie.murphy@mwhlawgroup.com*