TODD WOLF,

        Plaintiff,

                                  Case No. 23-cv-149

                                  **JURY TRIAL DEMANDED**

CITY OF SHEBOYGAN, MAYOR RYAN
SORENSON in his individual and official
capacities, CITY ATTORNEY CHARLES
ADAMS in his individual and official capacities,
ALDERPERSONS ON SHEBOYGAN'S
COMMON COUNCIL, BARBARA FELDE,
ROBERTA FILICKY-PENESKI, AMANDA
SALAZAR, ANGELA RAMEY, BETTY
ACKLEY, ZACHARY RUST, DEAN DEKKER,
GRAZIA PERRELLA, all in their individual and
official capacities; SHEBOYGAN AREA
SCHOOL DISTRICT BOARD MEMBER
MARY LYNNE DONOHUE, in her individual
and official capacities; MAYA HILTY, and JILL
PEDIGO HALL;

        Defendants.

## DEFENDANT JILL PEDIGO HALL'S ANSWER TO AMENDED COMPLAINT

Defendant Jill Pedigo Hall ("Defendant"), by her undersigned counsel, Joseph M. Russell of the law firm of von Briesen & Roper, s.c., answer Plaintiff's Amended Complaint as follows:

### INTRODUCTION

1.      Sheboygan's City Administrator, Plaintiff Todd Wolf, was one of the most successful municipal officials Sheboygan County had while he served the citizens and led the employees with integrity and honor. Starting out as a decades-long successful private sector manager & highly admired Common Council President by all sides of the political aisle, Mr. Wolf

began to clean up the wasteful spending at the city and truly work for the citizens and Sheboygan's city employees. Not only did Mr. Wolf help fund the City's long-needed clean water treatment project, he reduced costs to the citizens, cut government spending, and instituted new diversity and harassment training for employees.

**ANSWER:** Defendant denies this paragraph.

2.      After Mr. Wolf turned down multiple requests for public funds from one of the Defendants & her local group, he was publicly placed under investigation, prohibited from accessing public properties or speaking to city workers (including fire or police officers), threatened the day before the 2022 midterm elections, prohibited from gathering his personal belongings, and, without any due process, found "guilty" of violating the Sheboygan's Orwellian "Ministry of Truth" ordinance that imposes punishment, fines or potential jail time on any person that makes a so-called "false statement" about political corruption.

**ANSWER:** Defendant denies this paragraph.

3.      This is an action to stop Sheboygan's own system of justice that declares citizens and employees "guilty until proven innocent" while denying them constitutional due process of law.

**ANSWER:** Defendant denies this paragraph.

4.      This is an action to vindicate Mr. Wolf's reputation that each of the Defendants, in concert, willfully damaged, as well as his rights under the 1st and 14th Amendments to the United States Constitution.

**ANSWER:** Defendant denies this paragraph.

2

## PARTIES

5.      Plaintiff, Todd Wolf, was the City Administrator for the City of Sheboygan from July 7, 2020, to January 9, 2023.  At all times material to the facts alleged in the foregoing complaint, Todd Wolf was a citizen of the United States and resident of the State of Wisconsin, residing in Sheboygan, Wisconsin.

**ANSWER:**  Defendant admits this paragraph.

6.      Defendant City of Sheboygan ("city") is a municipality, organized pursuant to a body politic under the laws of the State of Wisconsin, whose address is 828 Center Avenue, Sheboygan, Wisconsin.

**ANSWER:**  Defendant admits this paragraph.

7.      Defendant Ryan Sorenson ("Sorenson") is the Mayor for the City of Sheboygan and was elected Mayor of Sheboygan on April 6, 2021.  Sorenson been the mayor of Sheboygan at all times material to the claims below.  He is sued in his individual and official capacities.

**ANSWER:**  Defendant admits this paragraph.

8.      Defendant Charles Adams ("Adams") is the City Attorney for the City of Sheboygan and at all times material hereto.  He is sued in his individual and official capacities.

**ANSWER:**  Defendant admits this paragraph.

9.      Defendant Alderwoman Barbara Felde ("Felde") is the President of Sheboygan's Common Council and has been at all times material hereto.  Along with Filicky-Peneski, Felde is considered "Council leadership."  She is sued in her individual and official capacities.

**ANSWER:**  Defendant admits this paragraph.

3

10.     Defendant Roberta Filicky-Peneski ("Filicky-Peneski") is an Alderwoman and Vice President of Sheboygan's Common Council and has been at all times material hereto. Along with Felde, Felde is considered "Council leadership." She is sued in her individual and official capacities.

**ANSWER**: Defendant admits this paragraph.

11.     Defendant Amanda Salazar ("Salazar") is an Alderwoman on Sheboygan's Common Council and has been at all times material hereto. She is sued in her individual and official capacities.

**ANSWER**: Defendant admits this paragraph.

12.     Defendant Angela Ramey ("Ramey") is an Alderwoman on Sheboygan's Common Council and has been at all times material hereto. She is sued in her individual and official capacities.

**ANSWER**: Defendant admits this paragraph.

13.     Defendant Dean Dekker ("Dekker") is an Alderman on Sheboygan's Common Council and has been at all times hereto. He is sued in his individual and official capacities.

**ANSWER**: Defendant admits this paragraph.

14.     Defendant Betty Ackley ("Ackley") is an Alderwoman on Sheboygan's Common Council and has been at all times material hereto. She is sued in her individual and official capacities.

**ANSWER**: Defendant admits this paragraph.

15.     Defendant Zach Rust ("Rust") has been an Alderman on Sheboygan's Common Council at all times material hereto. He is sued in his individual and official capacities.

**ANSWER**: Defendant admits this paragraph.

4

16. Defendant Grazia Perrella ("Perrella") has been an Alderwoman on Sheboygan's Common Council at all times material hereto. She is sued in her individual and official capacities.

**ANSWER:** Defendant admits this paragraph.

17. Defendant Mary Lynne Donohue ("Donohue") is the President of the Sheboygan Area School District Board of Education located at 3330 Stahl Rd., Sheboygan, WI 53081 and has served in that role, or as an Alderwoman on Sheboygan's Common Council at all times material to this Complaint. In addition to her official roles, Donohue is also an attorney, co-chairman of the Democratic Party of Sheboygan County, has served as Chairman of the Board for Planned Parenthood of Wisconsin, and is the founder of the Sheboygan Justice Equity group under her Sheboygan "Diversity, Equity, Inclusion, and Belonging umbrella" (hereinafter "DEIB group"). She is sued in her individual and official capacities.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

18. Defendant Maya Hilty ("Hilty") is a reporter for USA Today-Wisconsin Network's Sheboygan Press and has resided in Sheboygan, Wisconsin at all times material hereto. Between October 2022 – April 2023, Hilty has authored or helped author at least *nine* articles targeting and falsely implying incorrect information about Mr. Wolf. Hilty has used her platform with the Sheboygan Press to advocate for DEIB financing and ideologies.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

19. Defendant Jill Pedigo Hall ("Hall") is an attorney based in Madison, Wisconsin. Hall has known Defendant Donohue for over thirty (30) years. Hall was contracted by the Defendant city officials in Sheboygan, Wisconsin, to investigate Mr. Wolf on Donohue's request

5

and authored a misleading "report" that contained false information about Mr. Wolf. The injuries suffered by Mr. Wolf as a result of Hall's actions material to this complaint occurred in Sheboygan, Wisconsin.

**ANSWER:** Defendant admits that she is an attorney in private practice based in Madison, Wisconsin, and has known Defendant Donohue for over thirty years. Defendant admits she was retained by the City of Sheboygan to investigate Mr. Wolf's conduct but denies the remaining allegations in this paragraph.

## VENUE & JURISDICTION

20. This case arises under the Constitution and laws of the United States, and subject matter jurisdiction is therefore proper under 28 U.S.C. §§ 1331 and 1343. This Court has authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§2201 and 2202, and Fed. R. Civ. P. 57. This Court has authority to award damages and to issue injunctive relief pursuant to 42 U.S.C. § 1983. This Court has authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.

21. The events or omissions giving rise to this cause of action occurred in Sheboygan County, Wisconsin, which is within the Eastern District of Wisconsin, Milwaukee Division. Venue is therefore proper under 18 U.S.C. § 1391(b)(1) and (2).

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.

6

## RELEVANT FACTUAL BACKGROUND

**(I)**     **The City's Unconstitutional Speech Policies and Laws.**

    **a.**   <u>**Sheboygan Municipal Code of Ethics Sec. 2-272 "Confidential Information"**</u>
<u>**Policy**</u>

22.     In June 2021, Defendants Felde and Ackley introduced an amendment to the Municipal Code prohibiting employees from disclosing "confidential information" about "the government or affairs of the city." A true and accurate copy of the relevant portions of the city's *Confidential Information* Policy is attached as Exhibit 1.

    **ANSWER:** The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required and Defendant provides no answer to this paragraph.

23.     The code sections related to this provision do not contain any definition, list, or otherwise information about what constitutes "confidential information."

    **ANSWER:** The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required and Defendant provides no answer to this paragraph.

24.     The *Confidential Information* policy forces employees to obtain prior approval via an "advisory opinion" from the Common Council based on the content of the potential information.

    **ANSWER:** The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required and Defendant provides no answer to this paragraph.

7

25.     The policy states that the city may have "cause" to fire any city officer, employee, or agent that "disclose[s] confidential information concerning the...government or affairs of the city." *Id.*

**ANSWER:**   The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required and Defendant provides no answer to this paragraph.

26.     The policy also prohibits public employees from using undefined "confidential information" about the "government or affairs of the city" to "advance the ... private interest of himself or herself or others" including any "political association" of the employee.

**ANSWER:**   The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required and Defendant provides no answer to this paragraph.

27.     The policy's purpose recognizes that some public officials cannot avoid conflicts of interest and that certain public officials "cannot and should not be without all personal and economic interest in the decisions and policies of government." Sec. 2-263.

**ANSWER:**   The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required and Defendant provides no answer to this paragraph.

28.    There is no definition of "confidential information" in any of the "Ethics Policies" nor in any other municipal ordinance in Sheboygan or state law.

**ANSWER:**    The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required and Defendant provides no answer to this paragraph.

29.    On information and belief, Mr. Wolf was fired, in part, because of his alleged violations of the *Confidential Information* policy.

**ANSWER:**    The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) The allegations of this paragraph are no longer before the Court and, as such, no responsive pleading is required and Defendant provides no answer to this paragraph.

**b.  Sheboygan Municipal Code Section 82-3 – 82-6 "False Statements" Ordinance and Policy.**

30.    In 2014, *then* Alderwoman Donohue, replaced the Personnel Regulations with new provisions that regulated present, future, and *past* employee speech placed after the "Medical Insurance" section entitled "False Statements," "Bribery," "Political Activities," and the enforcement provisions.  A true and accurate copy of the relevant portions of the *False Statements* Ordinances is attached to this complaint as Exhibit 2.

**ANSWER:**  Defendant affirmatively states that the referenced ordinance is a written document that speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

9

31.     The *False Statements* Ordinance threatens employees with discipline, up to termination, for making any "false statement" about public officials' "certification" or involvement in bribery, political activities, or other political corruption schemes. *Id.*

**ANSWER:**  Defendant affirmatively states that the referenced ordinance is a written document that speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

32.     The Ordinance, codified as Sheb. Mun. Ord. Section 82-3 & 82-6 applies to *past* officials and private citizens by threatening citations, fines, and potentially incarceration. *Id.*

**ANSWER:**  Defendant affirmatively states that the referenced ordinance is a written document that speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

33.     There are no provisions that tell employees or private citizens what procedures city officials will use to determine whether a statement is "false."

**ANSWER:**  Defendant affirmatively states that the referenced ordinance is a written document that speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

34.     The Ordinance does not reference which public officials will determine the alleged "truth" or "falsity" of an employees' "statements," nor does it determine whether an official to whom such "statements" may pertain to *will be involved in determining the "falsity" of statements made about them*.

**ANSWER:**  Defendant affirmatively states that the referenced ordinance is a written document that speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

10

35. The *False Statements* Ordinance threatens employees with being labeled as liars, dishonest, or making "false statements" about political corruption in connection with the employees' potential discipline or termination.

**ANSWER:** Defendant affirmatively states that the referenced ordinance is a written document that speaks for itself and inconsistent characterizations thereof are denied. Defendant denies all remaining allegations of this paragraph.

36. On information and belief, the Defendants also fired Mr. Wolf, in part, based on his alleged violations of the *False Statements* Ordinance in his Confidential Email and short recorded radio statement that Sheboygan DEIB leaders had threatened to oppose him after he denied their request for $70,000 at the DEIB lunch in October 2022.

**ANSWER:** Defendant denies this paragraph.

**(II)    The Defendants Target Mr. Wolf as City Administrator.**

  **a.   The City Administrator Position in Sheboygan.**

37. Wisconsin state law allows a municipality to create property interests in specific jobs by city ordinance where such an employee can only be fired for "cause" which is defined under city and state law as neglect of duty, inefficiency, or malfeasance in office. Wis. Stat. 17.12(1)(c)(2)(b).

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein. To the extent this paragraph contains assertions of fact, Defendant denies the allegations therein.

38. Sheboygan has a "Mayor-Council" form of government, where the mayor is the head over the Fire and Police Departments for the City of Sheboygan and acts as the "presiding officer" over the Common Council. *See* Wis. Stat. § 62.09(8)(d).

11

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.

39.    The mayor has not held power or authority over the City budget since 2011, when the City Administrator position was created to remove the mayor's power over the budget to allow a nonpartisan, experienced City Administrator to oversee public funds.[1]

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

40.    Sheboygan's General Ordinance 41-20-21 controls the City Administrator position ("City Administrator Ordinance") and includes a provision that states a City Administrator can only be removed for "cause" by a vote of eight Alderpersons on the Common Council.  Sheb. Mun. Code Sec. 2-341.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.  To the extent this paragraph contains assertions of fact, Defendant denies the allegations therein.

41.    This is no statutory mechanism under city or state law for Sheboygan's City Administrator to address or appeal a violation of his due process rights to notice and a hearing.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.  To the extent this paragraph contains assertions of fact, Defendant denies the allegations therein.

---

[1] *Sheboygan Officials wants to take power from Mayor*, Pioneer Press (Sept. 7, 2011), https://www.twincities.com/2011/09/07/sheboygan-officials-want-to-take-power-from-mayor/.

12

**b. Mr. Wolf's Successes as City Administrator.**

42.     Todd Wolf ("Mr. Wolf") was born in Ventura, California to an impoverished family and has spent the last forty years of his life living in Sheboygan, Wisconsin.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

43.     Forced to be "on his own" at the age of seventeen, Mr. Wolf worked multiple jobs from a young age, eventually rising through the ranks to management because of his integrity, honesty, skill, and work ethic in the private sector.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

44.     Mr. Wolf put himself through college and obtained his master's degree while continuing to work full-time and being a devoted husband, father, and dedicated City of Sheboygan ("city") resident.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

45.     Beginning in 2011, Mr. Wolf began serving on various city commissions and committees to serve the people of Sheboygan and prepare to someday shift to full-time public service in Sheboygan.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

46.     Mr. Wolf was elected as an Alderman on the Sheboygan Common Council in 2015, and from 2016-2020, Mr. Wolf served as Council President.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

13

47.     Donohue became concerned that Mr. Wolf was becoming one of the most influential voices in the city because he could bring all sides of the political aisle together, and as an Alderman and President of the Common Council, Mr. Wolf's character, honesty, and integrity were never questioned.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

48.     Over time, Mr. Wolf's influence in the community began to outshine Donohue's—who is a longtime, well-known left-wing Democrat that opposes working with Republicans while Mr. Wolf was experienced in business management and able to work with all political factions to better the community.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

49.     Mr. Wolf walked away from his successful private sector career when he became Sheboygan's City Administrator in July 2020—at the height of the COVID 19 pandemic.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

50.     Mr. Wolf was concerned about the political climate and makeup of council even with the City Administrator Ordinance "cause" provision, so he asked for additional assurances if he was agreeing to permanently walk away from his private sector career given his need for stability as he provided for his family.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

14

51.     Sheboygan former Mayor and previous Council codified additional assurances for Mr. Wolf in an agreement ("Additional Assurances agreement") that included entitling him to automatic severance pay if the Council took *any action* against him that the agreement defined as a termination including a "reduction in pay," modification of Mr. Wolf's job duties, or a termination without cause.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

52.     The Agreement does *not* state that Mr. Wolf's "termination without cause" is valid, lawful, or effective; only that a "termination without cause" would entitle Mr. Wolf to an automatic payment as an additional benefit of his employment.

**ANSWER:**     Defendant affirmatively states that the referenced agreement is a written document that speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

53.     The Additional Assurances agreement was not waiver the "cause" provision in the City Administrator Ordinance based on Section 16 that expressly states, "nothing in the agreement shall contravene the [City Administrator] ordinance."  A true and accurate copy of Mr. Wolf's Additional Assurances agreement and the City Administrator Ordinance is attached to this Complaint as Exhibit 3.

**ANSWER:**     Defendant affirmatively states that the referenced agreement is a written document that speaks for itself and inconsistent characterizations thereof are denied.  Defendant specifically denies the document is entitled "Additional Assurances."  Defendant denies all remaining allegations of this paragraph.

15

54. The City Administrator Ordinance "cause" provision was in effect when Mr. Wolf signed his Additional Assurances Agreement in June 2020.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

55. As City Administrator from 2020-2023, Mr. Wolf was highly admired, respected, and well-liked by nearly every employee and department head who worked with him, and all of Mr. Wolf's performance reviews by the Council were "outstanding" when he was City Administrator.

**ANSWER:** Defendant denies that Plaintiff was highly admired, respected, and well-liked by "nearly every" employee and department head who worked with Plaintiff. As to the remaining allegations of the paragraph, Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

56. Mr. Wolf achieved incredible success as Sheboygan's City Administrator, including *first-ever* internal audits, wage studies and increases, cutting large amounts of wasteful spending, and implementing long overdue processes into Sheboygan's City government.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

57. As City Administrator, Mr. Wolf learned of failures by the City Attorneys' office, when he learned of ongoing complaints and personnel issues from Adams' refusals to advise the city's department heads on legal matters.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

58.     In 2021, Mr. Wolf was informed that a city police officer had filed a sexual harassment complaint based, in some part, on incidents that had occurred before Mr. Wolf was City Administrator.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

59.     When the City Attorney (Adams) was unwilling to investigate or handle the complaint, and the Mayor (Sorenson) was unable to take action as a young, 27-year old, Mr. Wolf helped Sorenson by retaining an outside law firm to investigate how Sheboygan's Police Department Internal Affairs Division ("IAD") handled the sexual harassment complaint.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

60.     Mr. Wolf and Sorenson ensured that the external investigation was fully conducted without any outside interference so that it would be completed.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

61.     At one point, the City's *then* Human Resources Director, Vicky Schneider ("Schneider"), tried to interfere with that external IAD police harassment investigation, and Mr. Wolf, along with Sorenson, did not allow her to interfere.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

62.     The outside investigation into IAD was fully completed, and the complaining officer accepted a settlement from the city in 2021 following the completion of the investigation.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

63.     In 2021, Mr. Wolf was nominated for Sheboygan County Chamber's "Most Valuable Player of the Team" award.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

64.     On August 7, 2022, Mr. Wolf was awarded by Employ Humanity's nationwide search as an "Inspirational Leader" based on his "extraordinary ability to lead, serve and inspire."

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

**c.   The Defendants' ARPA endeavors and targeting campaign against Mr. Wolf.**

65.     The federal government awarded $22.4 million to the City of Sheboygan under the American Rescue Plan Act ("ARPA"), which was passed by Congress on March 11, 2021.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

66.     On March 18, 2021, Donohue, then an Alderwoman, set up a meeting with Mr. Wolf and other city leaders to seek city money for her "Sheboygan Justice Equity" group under her "Sheboygan DEIB umbrella" seeing ARPA and city money for her private groups.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

18

67. On information and belief, prior to Mr. Wolf being named City Administrator, Donohue had unfettered access to public city funds for her private and political endeavors under the former City Administrator Darrell Hofland.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

68. Now the City Administrator, Mr. Wolf explained to Donohue that he would never authorize ARPA funds for her DEI and private social initiatives because her requests did not qualify for ARPA's strict conditions.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

69. On information and belief, in March of 2021, Donohue told several persons, including Defendants Salazar and Sorenson, that she would make sure that the City Administrator (Wolf's) "powers" over the city's financial decisions went back to the mayor because Mr. Wolf rejected her ARPA funding requests.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

70. Donohue ran and supported the campaign of Ryan Sorenson for mayor, and Sorenson was elected Mayor of Sheboygan on April 7, 2021.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

71.     Sorenson has repeatedly referred to Donohue as his "mentor" and "advisor" who he spoke to on an almost daily basis while Mr. Wolf was City Administrator.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

72.     On information and belief, the day after Sorenson was elected Mayor, Schneider exclaimed that the "power" was finally "going to go back to Ryan [Sorenson]" and would be taken away "from Todd [Wolf]."

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

73.     After the 2021 election, Defendant Amanda Salazar, whom Donohue selected to fill her Council seat, also stated that the "powers needed to go back" to the Mayor (Sorenson) and away from the City Administrator (Mr. Wolf).

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

74.     In or around May 2021, Mr. Wolf and the city's Planning and Development Director, Chad Pelishek ("Pelishek"), put together a potential list of long-needed city programs that would lawfully comport with ARPA's guidelines, and Mr. Wolf immediately began to "earmark" ARPA funds including allocating the vast majority of the money to a new water treatment project to benefit all residents in Sheboygan.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

20

75.     Shortly after Mr. Wolf began to earmark ARPA funds in a legally compliant manner, Adams' told Mr. Wolf that ARPA guidelines required the city to pass new "amendments" to their Ethics Policies ("ARPA Amendments").

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

76.     Adams' office drafted *Confidential Information* policy as part of the ARPA Amendments that stated the city would have "cause" to fire any city employee, including Mr. Wolf, who disclosed *undefined alleged* "confidential information" about city affairs and that some public officials "cannot and should not be without all personal and economic interest in the decisions and policies of government."  Sheb. Mun. Code, Sec. 2-263. *See* Ex. 1.

**ANSWER:**    The referenced documents speak for themselves and any inconsistent characterizations thereof are denied. As to the remaining allegations of the paragraph, Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

77.     The federal ARPA terms and conditions do not require municipal recipients to adopt a policy prohibiting disclosures of "confidential information" about city affairs or conflicts of interest for ARPA funds going to private interest groups.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

78.     On information and belief, Donohue helped Adams' staff write the language for the ARPA Amendments *Confidential Information* Policy to discipline potential employees, like Mr. Wolf or Pelishek, who ever disclosed Donohue's efforts to obtain public or ARPA funds for her DEI/Equity groups.

21

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

79. After Mr. Wolf rejected Donohue's ARPA requests, Donohue asked Mr. Wolf to hire a "DEI Consultant" within her DEI/Equity group "umbrella" who would "[i]dentify needed resources within city government to ensure the success of DEI plans."

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

80. The city's ARPA funds are considered "resources within city government."

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

81. Mr. Wolf rejected Donohue's DEI consultant request to use city budget money to assess most pressing department needs and obtain long-needed sexual harassment training for staff.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

82. On information and belief, when Donohue's "original" DEI leadership team agreed with Mr. Wolf that he should not be hiring them as consultants with city money until he assessed department needs, Donohue replaced these original leaders with three women to head the DEIB umbrella collective operations: Ale Guevara ("Guevara"), Jamie Haack ("Haack"), and Heather Cleveland. (Hereinafter "DEIB leaders").

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

22

83.   Sorenson later attempted to hire one of Donohue's DEIB leaders to write government grant proposals for the city that would directly finance one of the DEIB leader's private business, and Mr. Wolf told Sorenson that was illegal.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

84.   On information and belief, Donohue told Sorenson in 2021 that he needed to get female employees to complain about Mr. Wolf so that they could convince eight Alderpersons to turn over "power" of the city's finances to Sorenson and have "cause" to fire Mr. Wolf.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

85.   On information and belief, between 2021 and 2022, Sorenson told several female employees at the city that Mr. Wolf was "toxic" and to "watch out" for him.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

86.   In fall of 2021, Sorenson told Schneider that Mr. Wolf had "a target" on her back and was discriminating and retaliating against her because she tried to interfere with the external IAD investigation.  *See* supra ¶¶ 58-62.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

87.   Based almost exclusively on the false statements from Sorenson, Schneider filed a complaint with the Wisconsin Department of Workforce Development ("DWD") in January 2022, accusing Mr. Wolf "retaliating" against her.

23

**ANSWER:** Defendant admits that Schneider filed a complaint with the DWD alleging that Plaintiff was discriminating and retaliating against her. Defendant asserts that Schneider's complaint is a written document that speaks for itself and any inconsistent characterization thereof is denied. As to the remaining allegations of the paragraph, Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

88. The city retained an accomplished outside attorney to investigate Schneider's claim in 2022.

**ANSWER:** Defendant admits that the City of Sheboygan retained James Macy to defend against Ms. Schneider's DWD Complaint. Defendant denies the remaining allegations of the paragraph.

89. On information and belief, the outside attorney reported to Sorenson, Adams, and the Common Council in the summer of 2022 that Schneider's "retaliation" claim against Mr. Wolf was "meritless," and Mr. Wolf did not do anything wrong.

**ANSWER:** Defendant denies this paragraph.

90. On information and belief, after Donohue was informed that the outside attorney exonerated Mr. Wolf, so Donohue told Sorenson to have the Director of Senior Services, Emily Rendall-Araujo ("Rendall") to file another "retaliation" complaint against Mr. Wolf that would touch on "DEI" related matters so that the Council would find cause to fire Mr. Wolf or force Mr. Wolf to finally hire Donohue's "DEI consultant" to assess where city resources should go.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

24

91.     When Mr. Wolf was awarded the national "Inspirational Leader" award in August 2022, Sorenson refused to publish the award on the city's public webpage or any city platform.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

92.     On information and belief, Donohue, Sorenson, and the Defendant city officials wanted to get rid of Mr. Wolf before the remaining non-earmarked ARPA funds were spent before the original deadline of June 2023.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

93.     On information and belief, Donohue, Sorenson, and Rendall devised a plan to set up Mr. Wolf for another frivolous retaliation complaint by involving a DEI activist and political friend, "journalist" Maya Hilty with the Sheboygan Press.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

94.     On information and belief, Sorenson took over control of the remaining non-earmarked ARPA funds in January 2023 and hired one of Donohue's DEI leaders as a consultant with the city as soon as Mr. Wolf was fired as City Administrator.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

#### d. **The Racial Slur Incident.**

##### *(1) Mr. Wolf defends a city employee who expressed concerns about a citizen racism incident.*

95.     On information and belief, a city employee who attends citizen community neighborhood meetings told Pelishek that a mysterious citizen used a racial slur at a meeting, and the citizens running the meeting did not know how to respond.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

96.     On August 22, Pelishek expressed his concern as a private citizen about the citizen community racism incident at a city department head meeting.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

97.     Rendall, a department head present at the meeting, asked Pelishek what racial slur was used, and Pelishek repeated the slur ("n-word") in responding to Rendall (hereinafter "August 22 meeting" or "slur incident").

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

98.     Within hours of the August 22 meeting, Sorenson told Mr. Wolf that Rendall was telling citizens in the public that there was racism in the city because Pelishek made a racial slur, and Sorenson encouraged Mr. Wolf to talk to Rendall about her misleading disclosures.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

99.     Mr. Wolf immediately arranged an "emergency" meeting for August 26 and properly addressed the August 22 "slur incident" with all department heads, outside expert professionals, and all those involved, as well as with Council Leadership.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

100.    On information and belief, Donohue's DEI leaders called Hilty and told her about the racial slur incident in early September 2022 and told her that Mr. Wolf was responsible for turning down their requests to be hired by the city.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

101.    Hilty emailed only Mr. Wolf on September 12 to comment specifically on Pelishek using a racial slur at the August 22 meeting.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

102.    Mr. Wolf immediately informed Council leadership, Sorenson and Adams that the media (Hilty) was informed about the slur incident, and Council leadership encouraged Mr. Wolf and Sorenson to meet together with Hilty about the slur incident.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

103.    Mr. Wolf set up a meeting for September 20 between himself, Sorenson, and Hilty, but unbeknownst to Mr. Wolf, left City Hall to have a private meeting with Hilty on September 16, when Mr. Wolf was out of the office.

27

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

104. On information and belief, Sorenson told Hilty about Pelishek and Mr. Wolf blocking DEI ARPA funds and about he and Donohue's plan to get funding for the DEIB group on September 16.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

105. In the interviews, Mr. Wolf stated that he was disappointed in another employee (Rendall) who had disclosed the "slur incident" to the public because that hurt the employee (Pelishek) who was trying to address racism and caused harassment and humiliation for that employee (Pelishek).

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

106. Mr. Wolf did not mention a single employee name to Hilty during his interview, nor did he verify that Pelishek was the employee who said the slur, but only referenced "directors" or "employees" at the city.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

107. Following Hilty's interview and his growing concerns about how Hilty's article would harass Mr. Pelishek, Mr. Wolf arranged a "lunch" with Donohue's DEIB leaders for October 5.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

108.    On information and belief, the DEIB leaders told Hilty about the October 5 meeting and asked her to hold off on publishing her article because they believed that Mr. Wolf might finally pay them as "consultants" for the city as Donohue's had requested in 2021.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

109.    Mr. Wolf asked a city employee, Abby Block (Ms. Block), to arrange the meeting because Ms. Block was associated and connected with the DEIB group.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

110.    On October 5, Pelishek, Mr. Wolf and Ms. Block headed to the lunch meeting (hereinafter "DEIB lunch"), and as they headed to the DEIB lunch, Ms. Block warned Mr. Wolf and Pelishek that the DEIB leaders would ask for money during the meeting.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

111.    At the DEIB lunch, one of the leaders, Guevara, asked Mr. Wolf specifically what his budget was for "DEI matters" and then requested a $70,000 budget for their DEIB "services."

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

112.    Mr. Wolf stated he would not pay them any money or hire them.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

113.     Guevara then stated their group would "oppose" Mr. Wolf and any other expert he hired if he did not pay them because their "time is valuable."

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

114.     Ms. Block, Mr. Pelishek, and Mr. Wolf left the DEIB lunch and all commented about how uncomfortable that became following Guevara's statements.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

115.     On information and belief, Guevara contacted Hilty on October 5 after the DEIB lunch and told Hilty to publish the article because Mr. Wolf refused to pay them; and Hilty agreed on or around early October 2022 to publish a series of articles about the slur, how Mr. Wolf was failing to address "racism" in the city, and discussing his incompetence as City Administrator because of "racism" to help Sorenson incite a "public outcry" and force Council to take action against Mr. Wolf.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

116.     Hilty published her first article entitled, "City Leader Uses Racial Slur" on October 10, 2022, and displayed prominently on the online version of her article is a photograph of Mr. Wolf—who has never used a racial slur.  A true and accurate copy of Hilty's October 10 article is attached as Exhibit 4.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

30

117.    On information and belief, Hilty showed "draft versions" of her article to the DEIB leaders, Rendall, Donohue, and Sorenson prior to publication to make sure that her statements would be sufficient to incite "public outcry," and convince the "swing vote" Council members that Mr. Wolf was "so dumb," incompetent and needed to be fired.  A true and accurate copy of text messages between Rendall and Defendant Alderwoman Salazar about Hilty's article is attached as Exhibit 5.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

118.    Hilty quoted Guevara in her article stating that citizens were already "concerned about equity and inclusion issues in [Sheboygan's] government" and Guevara called on "city leaders" to "do something" about it.  *See* Ex. 4.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

119.    On information and belief, Donohue and Sorenson told Rendall to file a "complaint" against Mr. Wolf because of Hilty's article conclusion that Mr. Wolf cared more about the director who leaked the "slur incident" to the public than about the "racial slur."

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

120.    On information and belief, Rendall filed a "complaint" for "retaliation for reporting racism" against Mr. Wolf in October 2022, even though it was *Pelishek* who reported racism on August 22.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

31

121.    Mr. Wolf has never been shown, nor has he ever seen any complaint from Rendall about him, and Rendall never "reported racism" to Mr. Wolf while he was City Administrator.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

122.    On information and belief, Adams and Sorenson concealed Rendall's complaint from Mr. Wolf so they could use it against him to convince the Council to fire him.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

123.    Immediately following Hilty's article, Sorenson asked the "public" to email the Common Council and write "outraged" emails about Mr. Wolf's failures based on Hilty's article.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

124.    One or more of the Defendant Alderwomen joined in the "outcry" against Mr. Wolf in October and were very pleased with the "angry" emails from the DEI/Progressive Women groups because it would convince the "undecided" swing votes to act against Mr. Wolf.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

125.    When one female city employee wrote a long email to every Council member about the "slur incident" and how great a job Mr. Wolf and Pelishek had done to address diversity issues, Defendant Alderwoman Salazar texted Defendant Perrella, "not a good look."  A true and accurate copy of a text message exchange between Salazar and Perrella is attached as Exhibit 6.

**ANSWER**:  Defendant admits that Exhibit 6 is a written document which speaks for itself and any inconsistent characterization thereof is denied. As to the remaining allegations, Defendant

lacks knowledge or information sufficient to admit or deny the allegations and, on that basis, denies the same.

126.     Sorenson bragged to city employees that he made Mr. Wolf "cry" because of Hilty's articles.  A true and accurate copy of text messages from Rendall to Salazar about Def. Ryan Sorenson is attached as Exhibit 7.

**ANSWER:**  Defendant admits that Exhibit 7 is a written document which speaks for itself and any inconsistent characterization thereof is denied. As to the remaining allegations, Defendant lacks knowledge or information sufficient to admit or deny the allegations and, on that basis, denies the same.

127.     As part of Hilty's agreement with Sorenson and Donohue, Hilty published a total of *three articles* specifically targeting Mr. Wolf as retaliatory and failing to address "racism" in City Hall all in the month of October 2022.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

128.     On October 27, in response to Hilty's articles, Donohue sent all ten Council members her proposal for DEI Consultant funding that Mr. Wolf had rejected following Hilty and Sorenson's fabricated public scandal.  A true and accurate copy of Donohue's email to the Council and Defendant Alderwomen posts wanting for "DEI" work is attached as Exhibit 8.

**ANSWER:**  Defendant admits that Exhibit 8 is a written document which speaks for itself and an inconsistent characterization thereof is denied. As to the remaining allegations, Defendant lacks knowledge or information sufficient to admit or deny the allegations and, on that basis, denies the same.

33

129.    On November 1, DEI leaders Guevara and Cleveland met with Sorenson privately in his office.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

130.    On information and belief, Sorenson told Guevara and Cleveland that he would hire them to assess "city resources" once Mr. Wolf was taken care of following Hilty's articles.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

131.    On November 7, 2022, at approximately 3:00 PM—three hours before the next Council meeting—Mr. Wolf sent an urgent email marked "Confidential" to all 10 Council members ("Confidential Email") that expressly addressed exactly how Rendall had set Pelishek up to make the "racial slur," that the DEIB leaders asked for money, and that he was concerned that Hilty's articles and the October "outcry" occurred because he turned down their money request at the DEIB lunch.

**ANSWER:**  Defendant states that any email sent by Plaintiff is a written document which speaks for itself and an inconsistent characterization thereof is denied. As to the remaining allegations, Defendant lacks knowledge or information sufficient to admit or deny the allegations and, on that basis, denies the same.

132.    Mr. Wolf's Confidential Email was not sent to Adams or Sorenson.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

133.    The goal of Mr. Wolf's Confidential Email was to explain the full situation to the Council and express his concern that Pelishek was being harassed for his statements as a concerned citizen, and whether Hilty and the DEI leaders had a connection with certain public officials.

**ANSWER:**  Defendant denies this paragraph.

134.    Mr. Wolf did not make any false statements about Rendall, Pelishek, or the DEIB lunch with Guevara in his Confidential Email.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

135.    On information and belief, Mr. Wolf's confidential letter was immediately sent to Donohue, who told Council members to suspend Mr. Wolf and investigate him under the *False Statements* Ordinance.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

136.    At 6:00 PM on November 7, Mr. Wolf attended the public Council meeting in his usual capacity as City Administrator—receiving no response from any city official.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

**(III)   The Defendants' Public Investigation into Mr. Wolf.**

**a.   11/7 Council Meeting and the November Directives.**

137.    During the Council meeting on November 7, the Council went into closed session with all ten Alderpersons, Adams, and Sorenson.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

35

138.     At approximately 9:00 PM, the Council returned from closed session, and in open session, Felde publicly read the following administrative motion:

"I am making a motion to place Administrator [Todd] Wolf on paid administrative leave effective immediately, for the purpose of investigating allegations and concerns regarding his conduct with direction to authorize the city attorney to hire outside counsel to conduct the investigation."

**ANSWER:**  Defendant admits that any recording of the November 7, 2022 meeting speaks for itself, and any inconsistent characterization thereof is denied.  As to all remaining allegations, Defendant lacks knowledge or information sufficient to admit or deny the allegations and, on that basis, denies the same.

139.     Immediately after the meeting adjourned, Mr. Wolf was approached by Adams and ordered to turn over his work laptop while Adams escorted Mr. Wolf out of City Hall in front of the private citizen attendees present at the meeting.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

140.     Adams did not allow Mr. Wolf any opportunity to collect his personal belongings from his office.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

141.     Neither Adams nor any Council member or Sorenson gave Mr. Wolf any information about what the "allegations" into his "conduct" were, and Mr. Wolf arrived at his home at 9:30 PM.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

36

142.     Mr. Wolf was contacted by a local radio station to provide a recorded comment about the Council's public investigation announcement into him, and Mr. Wolf made a short statement that was pre-recorded from his private home at about 10:30 PM for the next day's morning news show.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

143.     Mr. Wolf's recorded statement mentioned that he was escorted out of the building like a "criminal" after individuals from the Sheboygan DEIB group promised to "oppose" him if he didn't pay them.

**ANSWER:**   Defendant affirmatively states that the recorded statement speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

144.     At the time of Mr. Wolf's statement, the "Sheboygan DEIB" group was not legally registered in the Wisconsin Department of Financial Institutions database and there was no website or public platform that indicated DEIB leaders' names.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

145.     The only reference Mr. Wolf made to City officials in his short, recorded statement was that the DEIB individuals "went to Council and they listened."

**ANSWER:**   Defendant affirmatively states that the recorded statement speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

37

146.    Mr. Wolf made no remark at all about internal matters, Pelishek and Rendall's "slur incident" nor did he name the DEIB "leaders" that he was referring to.

**ANSWER:**    Defendant affirmatively states that the recorded statement speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

147.    Mr. Wolf has never spoken to any media outlet in any way since his short, recorded statement on November 7.

**ANSWER:**    Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

148.    On information and belief, Donohue learned around 9:30 PM that neither Adams nor the Council had placed "directives" on Mr. Wolf during his leave, Donohue drafted language for Felde, Sorenson, and Salazar to serve on Mr. Wolf to keep him silence about her DEIB group.

**ANSWER:**    Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

149.    The Council told Adams to type a letter with the "directives language" and serve that letter on Mr. Wolf late at night after Mr. Wolf had already arrived at his home.

**ANSWER:**    Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

150.    At approximately 11:00 PM, Adams ordered the Sheboygan police department to serve Mr. Wolf with the directives, and Mr. Wolf was served the directive prohibitions ("Leave Directives") at his home, in front of his family, at approximately 11:30 PM on November 7.  A true and accurate copy of the November *Leave Directives* served on Mr. Wolf is attached as Exhibit 9.

38

**ANSWER:** Defendant admits that the November 7 document speaks for itself and any inconsistent characterization thereof is denied. As to the remaining allegations of the paragraph, Defendant lacks knowledge or information sufficient to admit or deny the allegations and, on that basis, denies the same.

151.    The "Leave Directives" served on Mr. Wolf stated in relevant part:

> "Henceforth, you are not authorized to speak with any city employees or individuals conducting city business. This prohibition applied to all means of communications[sic]. You are not authorized to speak to the media about City matters. You are not allowed within all City facilities except upon invitation by council leadership, Mayor Sorenson or the City Attorney. You may not access City emails or computer systems. Failure to abide these restrictions will be deemed insubordination and may subject you to discipline. If you would like to retrieve any of your belongings, please contact Attorney Adams to coordinate that. Mayor Sorenson, council leadership or the City Attorney's office may contact you in the near future regarding the investigation and related issues. Please make yourself available for those discussions." *Id.*

**ANSWER:** Defendant affirmatively states that the referenced "Leave Directives" speaks for itself and inconsistent characterizations thereof are denied. Defendant denies all remaining allegations of this paragraph.

152.    The nationwide November midterm elections were held November 8, 2022, and Mr. Wolf's voting precinct is in the City of Sheboygan with every poll worker being considered a "City employee" on election day.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

39

153.    The letter did not provide any exception for Mr. Wolf to "speak" to poll workers, police, or fire responders, nor did the letter provide any other narrowing instructions or definitions.

**ANSWER:**  Defendant affirmatively states that the referenced "Leave Directives" speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

154.    The Leave Directives did not specify which "City facilities" Mr. Wolf was not to "step foot on," and both the Sheboygan Police and Fire Departments are considered City facilities.

**ANSWER:**  Defendant affirmatively states that the referenced "Leave Directives" speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

155.    At the time Adams served Mr. Wolf with the Leave Directives, the City had no knowledge that Mr. Wolf had recorded his short statement to the local radio station, and Mr. Wolf's only recent communication had been his Confidential Email earlier that afternoon about the DEIB group and his concerns about the harassment of Pelishek.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

156.    Mr. Wolf's short, recorded statement aired on a local radio station on November 8, and in response, Sorenson publicly stated on November 9, that "the statements by the Administrator [Wolf] are false" before any investigation had started into Mr. Wolf.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

40

157.    On information and belief, Adams said in November that he "would do anything" in his power "to get rid of Todd [ Wolf]."

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

158.    In mid-November, the Chairman of the Republican Party of Sheboygan County asked Mr. Wolf to speak at a meeting on November 28.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

159.    On information and belief, Donohue discovered that Mr. Wolf was going to speak at the event and told Sorenson to serve a "cease and desist letter" to Mr. Wolf to stop him from appearing at the event.

**ANSWER:**  Defendant admits a letter was sent to Mr. Wolf.  Defendant otherwise lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

160.    At approximately 4:45 PM on November 28, Adams, once again, had the Sheboygan Police Department personally serve another letter to Mr. Wolf that warned him about speaking at the Republican event based on the *Leave Directives*.  Ex. 9 at p. 2.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

161.    Mr. Wolf turned down the Republican Party speaking event and was scared to attend but stood in the back of the room, declining to say more than a few words to attendees because the *Leave Directives* prohibited "all forms of communication."

41

**ANSWER:**  Defendant denies Mr. Wolf stood in the back of the room.  Defendant otherwise lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

162.    Mr. Wolf's attorney called the Republican Chairman and offered to speak at the Republican event about public issues involving DEI groups trying to influence government officials and using real discrimination by dividing people based on race, gender, and viewpoints.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.  Defendant avers that the speech by Plaintiff's attorney at this event is a recorded statement and as such, it speaks for itself and any inconsistent characterization thereof is denied.

163.    On information and belief, Donohue told the wife of the former City Administrator and member of the Progressive Women group, Lauren Hofland, to attend the event and spy on Mr. Wolf, and Hofland shared her recordings with the Defendants.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

164.    On information and belief, after the Republican event, someone posted on the "Progressive Women of Sheboygan" Facebook page calling for immediate "retaliation" against Mr. Wolf and the Republican Party of Sheboygan County based on Mr. Wolf's attendance, but the post was quickly deleted.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

42

165.    On information and belief, at the early stages of Mr. Wolf's "leave" period during the "investigation" ("investigation leave") Defendant Alderman Dekker was considered the "swing" vote for Mr. Wolf's eight-vote removal requirement.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

166.    Throughout the entirety of Mr. Wolf's "leave," Mr. Wolf never disclosed nor discussed the details of his Confidential Email to Council on November 7.

**ANSWER:** Defendant denies this paragraph.

b. **Hall's "Investigation" while Mr. Wolf was on forced "Leave" and prohibited from accessing work files or entering city properties between November 8, 2022, and January 9, 2023.**

   *(1) Donohue's Role during the "Investigation."*

167.    On information and belief, Donohue contacted multiple "attorney" friends to help her and the Defendant officials to "investigate" Mr. Wolf to convince Dekker or one more Alderperson there was "cause" to fire Mr. Wolf.

**ANSWER:** Defendant denies this paragraph.

168.    On information and belief, Donohue decided to use her friend of "thirty years," Jill Hall out of Madison to conduct a biased investigation to find any "cause" or reason to convince Dekker and the "swing" Alderpersons to fire Mr. Wolf.

**ANSWER:** Defendant denies this paragraph.

169.    On information and belief, Donohue told another colleague attorney friend of hers in Madison, Diane Welsh, in December 2022 to send the city "cease and desist" letters for her DEIB leaders during Hall's "investigation" so that Sorenson and Salazar could tell the Council members to fire Mr. Wolf because he was a "legal liability" even though Mr. Wolf's Confidential Email to the Council on November 7 was privileged.

43

**ANSWER:** Defendant denies this paragraph.

170.    Neither Mr. Wolf nor his attorney have ever received, nor seen, any "cease and desist" letter from Welsh or her associate for the DEIB leaders that was sent in December 2022.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

171.    On information and belief, Donohue told Sorenson, Adams, and Hall to investigate Mr. Wolf under the city's *False Statements* and *Confidential Information* Policies that she drafted as city ordinances so they could claim that Mr. Wolf violated "policies and laws."

**ANSWER:** Defendant denies this paragraph.

### (2) Sorenson's Role during the "Investigation."

172.    On information and belief, Sorenson stated that he intended to use the investigation as "punishment" against Mr. Wolf because Mr. Wolf "embarrassed" the DEIB by exposing their financial endeavors with city funds.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

173.    On information and belief, Sorenson told Hilty on November 8 to entice Mr. Wolf into commenting on Mr. Wolf's Confidential Email so he could tell the Council that Mr. Wolf violated the *Leave Directives* and *Confidential Information* Policies during the investigation.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

174.    On information and belief, Sorenson destroyed and ordered the destruction of public records after Mr. Wolf's attorney requested them for Hall's "investigation," to conceal the defendants' involvement in the plan.

44

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

175.    From November 7, 2022, to the present day, Sorenson has refused to respond to a single public records request from Mr. Wolf's attorney related to the "investigation."

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

176.    On information and belief, Donohue had Sorenson direct Hall's investigation and Sorenson told Hall which "evidence" to use and which to ignore, including informing Hall to ignore all employee witnesses that were "supporters" of Mr. Wolf.

**ANSWER:** Defendant denies this paragraph.

177.    On information and belief, Sorenson told Hilty at the end of November 2022 to publish an article falsely stating that Mr. Wolf was the person who leaked Pelishek's name to her for her "slur" articles so that Hall could use that false information as "evidence" that Mr. Wolf violated the *Confidential Information* Policy and *False Statements* Ordinance.

**ANSWER:** Defendant denies this paragraph.

178.    When Hilty complied in her December 16 article falsely stating that it was *Mr. Wolf* who disclosed Pelishek's name and the "slur incident" to her, Sorenson immediately emailed Hall the article that Hilty wrote.  A true and accurate copy of Sorenson's email to Hall is attached as Exhibit 10.

**ANSWER:**   Defendant admits she received an email from Mayor Sorenson on December 16, 2022, conveying an article from The Sheboygan Press. Defendant admits that Exhibit 10 is a copy of an email from Sorenson, which is a written document that speaks for itself, and any

45

inconsistent characterization thereof is denied and Defendant denies all remaining allegations contained in this paragraph.

179.   On information and belief, Sorenson met with other public officials in December 2022 to tell them that he was successful in getting rid of Mr. Wolf and would be able to offer them other positions soon with other employees he wanted to get rid of.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

180.   On information and belief, Sorenson entered Mr. Wolf's office over the Christmas holiday break in 2022 and destroyed, falsified, or altered Mr. Wolf's work records for Hall's investigation.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

### *(3) Hilty's Role during the "Investigation."*

181.   On information and belief, Hilty agreed on November 8, 2022, to entice Mr. Wolf into violating the city's Leave Directives and Policies by repeatedly requesting comments from Mr. Wolf and his attorney about the investigation, DEIB, and Mr. Wolf's position with the city.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

182.   On information and belief, Hilty met with Sorenson outside of City Hall almost every week in November 2022, and they communicated via private messaging apps on their phones.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

46

183.    Hilty contacted Mr. Wolf's personal phone directly on November 8 even though she received an email at 4:00 AM stating that all media should contact Mr. Wolf's attorney.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

184.    On information and belief, on November 29, Hilty attempted to entice Mr. Wolf and his attorney by sending a single-spaced two-page list of "questions" for her upcoming article asking "what evidence" Mr. Wolf had against the DEIB and city officials so that she could publish the DEIB leader and Rendall's names blaming Mr. Wolf for disclosing that information.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

185.    Mr. Wolf never commented to Hilty at any point during his "investigation leave."

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

186.    Neither Mr. Wolf nor Mr. Wolf's attorney commented nor verified any information from Mr. Wolf's Confidential Email to Hilty for her December article.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

187.    On December 16, Hilty published an article stating that *Mr. Wolf* told her that Sheboygan's "Planning and Development Director Chad Pelishek" made a racial slur even though Hilty knew about Pelishek stating a racial slur more than a week before she reached out to Mr. Wolf to comment on that.  A true and accurate copy of Hilty's first email about the "slur" incident to Mr. Wolf is attached as Exhibit 11.

47

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

188.    On information and belief, Hilty intended for Sorenson to send her December 16 article to Hall immediately to use as "evidence" in finding "cause" to fire Mr. Wolf.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

189.    On information and belief, Hilty published Guevara and Haack's names for the first time in her December 16 article so that Donohue's attorney friend, Diane Welsh, would send a frivolous "cease and desist" letter to the city and scare the Council into firing Mr. Wolf as a "legal liability."

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

190.    Hilty emailed Council Leadership in December 2022 to tell them that Mr. Wolf attended the Republican meeting and that Mr. Wolf's attorney spoke.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

*(4) Adams' Role during the "Investigation."*

191.    On information and belief, Adams stated he was "on the mayor [Sorenson]'s team" in "doing anything in his power" to get rid of Mr. Wolf during Hall's investigation.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

48

192.    Adams authorized the public release of Mr. Wolf's entire Confidential Email to Hilty on November 9.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

193.    Mr. Wolf only authorized the release of his Confidential Email to his attorney to prepare for the investigation on November 10, but Adams did not provide Mr. Wolf's attorney with the Confidential Email for several weeks.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

194.    Adams did not inform Mr. Wolf that he released Mr. Wolf's Confidential Email to Hilty at any point.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

195.    During Mr. Wolf's "investigation leave" period, Adams told Mr. Wolf's attorney she was not allowed to enter Mr. Wolf's office with him to gather Mr. Wolf's personal belongings.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

196.    During the "investigation," Adams did not let Mr. Wolf access a single work or city administrative document.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

49

197. Adams did not provide Mr. Wolf or his attorney with any information about the Hall or the investigation until December 6, 2022.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

198. On December 6 and 7, Adams stated that Hall was only investigating emails Mr. Wolf wrote to Maya Hilty in September 2022.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

199. On information and belief, Adams told Mr. Wolf's attorney that Hall was only investigating emails to Maya Hilty in September 2022 so that Mr. Wolf would not demand his attorney be present for Hall's witch hunt investigation interview with him.

**ANSWER:** Defendant denies she conducted a "witch hunt investigation interview" with Wolf and lacks knowledge or information sufficient to admit or deny the remaining allegations contained in paragraph 199 and, on that basis, denies the same.

200. On December 20, 2022, at 8:43 a.m.—*less than 90 minutes* before his scheduled interview with Hall—Adams sent Mr. Wolf an email and attachment letter with instructions ordering him to comply with Hall's investigation.

**ANSWER:** Defendant admits that Adams sent Plaintiff and his counsel an email and attachment letter. The email and attachment letter are written documents which speak for themselves, and any inconsistent characterization thereof is denied.

201. Adams' December 20 "investigation instructions" letter did not list nor specify the charges and allegations against Mr. Wolf, and stated for the first time, that Mr. Wolf was being investigated for his alleged "communications, conduct and leadership and certain allegations of

50

inappropriate and illegal conduct made by you"—information that Adams never provided to Mr. Wolf or his attorney on December 6 or at *any time* prior to December 20.

**ANSWER:** Defendant denies the allegations of the paragraph as stated The email and attachment letter are written documents which speak for themselves, and any inconsistent characterization thereof is denied.

202.    The December 20 letter did not tell Mr. Wolf that he was being investigated for retaliating against Rendall, making false statements, disclosing confidential information, or violating the *Leave Directives*.

**ANSWER:** Defendant admits that the attachment letter is a document that speaks for itself and any inconsistent characterization thereof is denied. Defendant denies all remaining allegations of the paragraph.

203.    Besides the *Leave Directives*, the only documents Adams sent to Mr. Wolf and his attorney for the purposes of the investigation was the December 20 email and a few September emails between Mr. Wolf and Hilty—all of which were meaningless and showed no wrongdoing.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

204.    Adams dated the December 20 letter "December 19" even though he intended to send Mr. Wolf the letter the day of his interview with Hall.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

205.    Adams' letter demanded Mr. Wolf cooperate with Hall's request for City "records," stating that Mr. Wolf was not to "modify, alter, delete, or destroy any records" related to his

"employment, [or] any official ... City business" even though Adams had prohibited Mr. Wolf from accessing his office or any of his business-related materials during all of Hall's investigation.

**ANSWER:** Defendant admits that the referenced letter is a document that speaks for itself and any inconsistent characterization thereof is denied. As to remaining allegations Defendant lacks knowledge or information sufficient to admit or deny the allegations and, on that basis, denies the same.

206. On information and belief, Adams advised the Common Council on January 4, 2023, to fire Mr. Wolf without cause so there would be no hearing following Sorenson and Hall's statements that the employee witnesses would exonerate Mr. Wolf to the Council.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

207. On information and belief, Adams and Sorenson convinced Dekker, the swing vote, to fire Mr. Wolf *without a hearing* based on Hall's January 4 "oral investigation synopsis."

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

208. From November 7 to April 2023, Adams has refused to allow Mr. Wolf or his attorney access to Mr. Wolf's office to gather his personal belongings and documents to conceal, stop, or prohibit Mr. Wolf from seeing what documents were altered, deleted, or destroyed from his office during Hall's investigation.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

52

*(5) Hall's Role during the "Investigation."*

209.    Hall and Donohue have known each other for over thirty years.

**ANSWER:**  Defendant admits that she first met Donohue more than thirty years ago but that she has not had a professional or personal relationship with Donohoe for more than thirty years and denies all remaining allegations of paragraph 209.

210.    On information and belief, Hall agreed with Donohue and Sorenson in November 2022 to conduct a biased investigation to deliver a report to the Common Council that would convince any swing Council votes to fire Mr. Wolf for "cause."

**ANSWER:**  Defendant denies this paragraph.

211.    On information and belief, during her investigation between mid-November and December 2022, Hall separated city employee witnesses into two categories: those who were "supporters" or Mr. Wolf and those who did not support Mr. Wolf.

**ANSWER:**  Defendant denies this paragraph.

212.    On information and belief, Hall learned from employee eyewitnesses and testimonies that Mr. Wolf told the truth about the DEIB lunch threats and about Rendall setting up Pelishek in order to harass him as "racist" and clam "retaliation for reporting racism" against Mr. Wolf.

**ANSWER:**  Defendant denies this paragraph.

213.    On information and belief, Hall told employee witness they were not allowed to record her interview with him and were not allowed to take handwritten notes of her interview with them.

53

**ANSWER:** Defendant denies that she told employees about recording with unspecified interviews with an unidentified male but admits that she requested they not take notes of her interview in order to preserve confidentiality of the interview.

214.    On information and belief, Hall refused to accept any evidence or records from city employees that she categorized as "supporters" of Mr. Wolf.

**ANSWER:** Defendant denies this paragraph.

215.    Hall accepted emails and documentary evidence from Sorenson in December 2022 and did not prohibit Sorenson from providing her with documentary evidence.

**ANSWER:** Defendant refuses to answer this paragraph on the basis of attorney-client privilege.

216.    On information and belief, Hall conducted all her interviews via video conference and not in person.

**ANSWER:** Defendant admits that due to a debilitating and painful back condition that prevented travel, she conducted all interviews in her investigation via Zoom and denies any remaining allegations of paragraph 216.

217.    In December 2022, despite having conducted all her investigation interviews over video conference, Hall asked Mr. Wolf to drive from his home in Sheboygan to her office in Madison, Wisconsin for her interview with him.

**ANSWER:** Defendant denies this paragraph.

54

218.    When Mr. Wolf agreed to her conditions, Hall stated that she would conduct his interview over video conference.

**ANSWER:**  Defendant admits that she told Mr. Wolf that she would be able to conduct his interview over Zoom so that he would not need to attend an interview in person and denies all remaining allegations contained in paragraph 218.

219.    On information and belief, Hall intended to claim that Mr. Wolf was "not cooperative" with her investigation if he had refused the 4+ hour roundtrip drive to her Madison offices.

**ANSWER:**  Defendant denies this paragraph.

220.    Hall's interview with Mr. Wolf was scheduled many days in advance for December 20, at 10:00 AM.

**ANSWER:**  Defendant admits that she negotiated with Wolf's counsel on the time and date for Wolf's interview beginning on December 12, 2022 and finally reached agreement with her on the afternoon of Friday, December 16, 2022 that Wolf would participate in an interview on Tuesday, December 20, 2022 starting at 10:00 a.m.

221.    Hall did not allow nor offer for Mr. Wolf's attorney to be present at her interview with Mr. Wolf on December 20, and Hall knew that Mr. Wolf had not read Adams' December 20 investigation instructions letter when she started her interview with Mr. Wolf.

**ANSWER:**  Defendant denies this paragraph and avers that Wolf's attorney declined to participate in the interview.

222.    Hall interviewed Mr. Wolf in an interrogation-type prosecution manner for nearly five hours about endless facets of information without his attorney present and never once told Mr. Wolf exactly what the charges or allegations were that she was "investigating."

**ANSWER:** Defendant denies this paragraph.

223. On information and belief, in late December, Hall told Donohue, Sorenson, and Adams that Mr. Wolf's testimony lined up with the employee witnesses and that Mr. Wolf would be fully exonerated to the Council if he and the employees were allowed to testify at a hearing.

**ANSWER:** Defendant denies this paragraph.

224. On information and belief, Hall agreed to suggest to Council that there was "cause" to fire Mr. Wolf but that allowing Mr. Wolf a hearing would be "costly" and "harmful" to the employees in an "oral synopsis" so that the employees would not testify before Council.

**ANSWER:** Defendant denies this paragraph.

225. On information and belief, Donohue told Adams and Sorenson to advise the Council to fire Mr. Wolf "without cause" so that they would not have to endure a "costly" and "burdensome" hearing to help the employees.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

226. On information and belief, as of the end of December 2022, Hall, Adams, Sorenson, and Donohue knew that eight members of the Common Council would not fire Mr. Wolf for "cause," or at all, if Mr. Wolf had a hearing with witnesses.

**ANSWER:** Defendant denies the allegations of paragraph 226 as to her own knowledge and lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

56

### c. Hall's "Oral Investigation Synopsis" to the Council on January 4.

227. On January 4, 2023, Hall appeared via video conference to the Common Council, Adams, and Sorenson in closed session to provide an oral synopsis of her investigation conclusions ("oral synopsis").

**ANSWER:** Defendant denies this paragraph as stated; Defendant admits that on January 4, 2023 she appeared via video conference at a closed session meeting of the Sheboygan Common Council which included Adams and Sorenson in attendance where she provided an oral synopsis of her investigation findings.

228. Hall stated that she discovered Mr. Wolf made false statements about DEIB lunch meeting with Guevara and Haack even though at least one employee eyewitness told her that Mr. Wolf's statements were true.

**ANSWER:** Defendant denies this paragraph.

229. On information and belief, Hall told the Council there was "cause" to fire Mr. Wolf for violating the *Leave Directives*, *False Statements* Policy, and *Confidential Information* Policy.

**ANSWER:** Defendant denies this paragraph.

230. Hall concealed all exonerating information and witness testimony from the employee witnesses and made false statements that Mr. Wolf's account of the DEI lunch was "not credible." A true and accurate copy of the Closed Session Minutes from Hall's "oral synopsis" released by Adams is attached as Exhibit 12.

**ANSWER:** Defendant admits that Exhibit 12 is a copy of the January 4, 2923, Common Council closed session minutes which is a written document that speaks for itself and any inconsistent characterization thereof is denied. Defendant denies that Exhibit 12 is a verbatim

57

record of her comments in the closed session and further denies all remaining allegations of the paragraph.

231.     In her January 4 "oral synopsis," Hall told the Council that a hearing for Mr. Wolf would be "costly" to the city and harmful for the employees' wellbeing.

**ANSWER:**  Defendant admits that she advised that a hearing would require significant time and resources and denies the remaining allegations of the paragraph.

232.     Based on Hall's "oral synopsis," the eight Defendant Alderpersons decided there was cause to fire Mr. Wolf.

**ANSWER:**     Defendant admits that the Council considered three options regarding Plaintiff's employment including reinstating him at work, termination without cause or holding a hearing to determine termination for cause. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations contained in this paragraph and, on that basis, denies the same.

233.     On information and belief, after Hall's synopsis, Adams and Sorenson told the Council Mr. Wolf's "Additional Assurances" agreement allowed the Council to fire Mr. Wolf without cause so that they could avoid the "costly" and "harmful" hearing.

**ANSWER:**     Defendant denies that there was reference to any document entitled "Additional Assurances" in the closed session and admits that Sorenson commented on his concerns over the toll on employees having to participate in a hearing.  Defendant denies the remaining allegations contained in this paragraph.

234.    Adams drafted an administrative resolution that falsely stated Mr. Wolf's "Additional Assurances" agreement gave them an option to fire Mr. Wolf "without cause" despite

the provision that nothing in that agreement would "contravene" the City Administrator Ordinance that Mr. Wolf could only be fired for cause.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

235. Mr. Wolf was not informed of the Council's closed session with Hall or of their decision until January 6 when the Defendant officials published their resolution online stating they intended to vote to fire Mr. Wolf "without cause" on January 9.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

236. On information and belief, a citizen asked Felde what "without cause" meant on January 7, and Felde stated that she "couldn't answer that" but that "Mr. Wolf had no way of defending the charges against him."

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

237. During the January 9 public council meeting, Defendant Dekker made the following statement to the public:

> "After concerns were brought forward...the majority of the council decided to hire an independent investigator. That investigation has concluded. ...[A]fter hearing [Hall's Jan. 4] synopsis, have come to the conclusion that this is in the best interests of our employees...one employee doesn't stand over the rest of our employees. To put our employees through something like this is not right. So that is why I support [firing Mr. Wolf without a hearing]."

**ANSWER:** Defendant affirmatively states that the referenced public statement speaks for itself and inconsistent characterizations thereof are denied. Defendant denies all remaining allegations of this paragraph.

59

238.    On January 9, 2023, the eight Defendant Alderpersons voted to remove Mr. Wolf as City Administrator based on Hall's "investigation" without giving Mr. Wolf any notice of the charges, allegations, or a single hearing opportunity.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

239.    Between November 7, 2022 – January 9, 2023, Mr. Wolf was never once allowed to step foot on city properties, nor did Mr. Wolf enter City Hall at any point during the investigation through the final public Council meeting.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

240.    Mr. Wolf was fired as City Administrator on January 9, 2023.

**ANSWER:**  Defendant admits this paragraph.

**(IV)    The Defendants' False Public Disclosures about Mr. Wolf.**

**a.    Sorenson's public statements on January 10, 2023.**

241.    On January 10, two private citizens emailed Sorenson that they did not approve of Council's decision to fire and remove Mr. Wolf, and Sorenson responded separately to both private citizens with the following statements:

> "This decision was made by the city council after the completion of [Hall's] extensive investigation. The investigation raised significant concerns, including policy violations, ethic violations, and potential law violations, all of which lead to legal liability for the city. We will make sure you get a copy of [Hall's investigation] report once it is made public."

**ANSWER:**    Defendant affirmatively states that the referenced emails speak for themselves and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

60

242.    To one citizen, Sorenson stated that Mr. Wolf's short, recorded statement on November 8 about a "group pushing an agenda" were "false and not what happened." A true and accurate copy of Sorenson's emails to the private citizens is attached as Exhibit 13.

**ANSWER:**    Defendant affirmatively states that the referenced emails speak for themselves and inconsistent characterizations thereof are denied. Defendant denies all remaining allegations of this paragraph.

243.    In addition to the citizen emails, Sorenson made multiple statements to Hilty for publication in her newspaper article on January 10 in the Sheboygan Press that discussed at length how Hall's "investigation" findings resulted in Mr. Wolf's firing as City Administrator. A true and accurate copy of Sorenson's statements in Hilty's January 10 article is attached as Exhibit 14.

**ANSWER:**    Defendant affirmatively states that the referenced statements speak for themselves and inconsistent characterizations thereof are denied. Defendant denies all remaining allegations of this paragraph.

244.    In the January 10 article, Sorenson stated, that Mr. Wolf had "interfered in [the] investigation by leaking details" of the investigation even though Mr. Wolf never received any details nor actual written charges of what Hall was investigating. *Id.*

**ANSWER:**    Defendant affirmatively states that the referenced statements speak for themselves and inconsistent characterizations thereof are denied. Defendant denies all remaining allegations of this paragraph.

245.    Sorenson stated that Mr. Wolf was fired, in part, because the "investigation" found that Mr. Wolf was dishonest and kept "doubling down on" lies that Mr. Wolf "knew [weren't] true" and that Mr. Wolf's statements "could be proven false with other documentation." *Id.*

61

**ANSWER:** Defendant affirmatively states that the referenced statements speak for themselves and inconsistent characterizations thereof are denied. Defendant denies all remaining allegations of this paragraph.

246. Sorenson falsely stated that Mr. Wolf was warned about his dishonesty many times, even though Mr. Wolf had never been accused of dishonesty throughout his entire career nor told that he was being investigated for "dishonesty." *Id.*

**ANSWER:** Defendant affirmatively states that the referenced statements speak for themselves and inconsistent characterizations thereof are denied. Defendant denies all remaining allegations of this paragraph.

247. Sorenson stated Mr. Wolf was fired, in part, because he was retaliating against employees stating, "people should feel safe to come to work...[and not] have to be fearful of retaliation." *Id.*

**ANSWER:** Defendant affirmatively states that the referenced statements speak for themselves and inconsistent characterizations thereof are denied. Defendant denies all remaining allegations of this paragraph.

248. Sorenson stated that the city would publicly release Hall's "investigation" report and hoped Hall's "report" would "come[] sooner than later." *Id.*

**ANSWER:** Defendant affirmatively states that the referenced statements speak for themselves and inconsistent characterizations thereof are denied. Defendant denies all remaining allegations of this paragraph.

62

249.     Sorenson statements in Hilty's January 10 Sheboygan Press article remain publicly available on the internet through the Sheboygan Press website.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

### b.  Hall and Adams' disclosures after Mr. Wolf was fired.

250.     On February 6, 2023, Hall drafted and sent her "final investigation report" to the city Defendants—one month after Sorenson's statements and Mr. Wolf's public firing without a hearing.  A true and accurate copy of Hall's final investigation report is attached as Exhibit 15.

**ANSWER:**  Defendant denies this paragraph as stated. Defendant admits that on February 7, 2023, she forwarded the final report regarding her investigation to City Attorney Charles Adams and a true and accurate copy of that document was attached to the Amended Complaint as Exhibit 15. Defendant denies all remaining allegations of paragraph 250.

251.     To date, neither Hall nor any of the Defendant city officials have ever provided Mr. Wolf with a preliminary or draft report of her "investigation" findings.

**ANSWER:**  Defendant admits that she has not provided Wolf with any documents at any time and further lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 251.

252.     In her report, Hall stated that Mr. Wolf "retaliated" against Rendall for reporting "racism" despite multiple employee eyewitnesses telling Hall that Rendall asked Pelishek to repeat the "slur" on August 22.

**ANSWER:**   Defendant affirmatively states that the referenced report speaks for itself and inconsistent characterizations thereof are denied.  Defendant denies all remaining allegations of this paragraph.

253.     On information and belief, Hall made false statements in her report when she stated that no employee witness corroborated Mr. Wolf's account of the DEIB lunch and August 22 "slur incident."

**ANSWER**:  Defendant denies this paragraph.

254.     Hall falsely stated that Mr. Wolf sent out press releases and had multiple media appearances even though the only media communication Mr. Wolf had after Hilty's September interview was his short, recorded statement to a local radio station that aired November 8.

**ANSWER**:  Defendant denies this paragraph.

255.     Hall intentionally misquoted Mr. Wolf's interview statements in her report and excluded relevant exculpatory information that favored Mr. Wolf.

**ANSWER**:  Defendant denies this paragraph.

256.     Hall's six-page report contained false statements of fact on every page concluding that Mr. Wolf likely had retaliated and harassed Rendall and made multiple "false statements" about the DEIB lunch.

**ANSWER**:  Defendant denies this paragraph.

257.     On February 7, *one day after Hall sent her report to the Defendant city officials*, Adams' office sent a city-wide email to over 450 city employees prohibiting them from speaking to Mr. Wolf *or Mr. Wolf's* attorney.

**ANSWER**:  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

258.     On information and belief, Adams directed his staff to send the prohibition specifically to prohibit Mr. Wolf and the employee witnesses from disclosing the completely fabricated and false information in Hall's final investigation report.

64

**ANSWER:** Defendant denies this paragraph.

259.    Sorenson and Adams authorized the public release of Hall's report on February 8.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

**c.  Sorenson's statements about Mr. Wolf & Sexual Harassment at the Police Department.**

260.    On November 8, 2022, the day after Mr. Wolf was forcibly removed from City Hall and placed on "leave," Sorenson met with Wisconsin Watch reporters in his office.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

261.    On information and belief, Sorenson told the Wisconsin Watch reporters about the 2021 police sexual harassment complaint.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

262.    On information and belief, Sorenson told the reporters false information that Mr. Wolf was the reason for sexual harassment in the police department, and that Mr. Wolf "stopped" the external investigation into the IAD's handling of the sexual harassment complaint that was fully completed in 2021.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

263.    The Wisconsin Watch reporters asked Mr. Wolf and his attorney for comment on Sorenson's information between November and December 2022—when Mr. Wolf was on "leave."

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

65

264.     Neither Mr. Wolf nor his attorney were able to comment on or correct Sorenson's false statements because of the *Leave Directives* that had been placed on Mr. Wolf.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

265.     On information and belief, in late January 2023, Sorenson told several persons that a "big story" was coming out soon about Mr. Wolf and sexual harassment in the police department.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

266.     The Wisconsin Watch, in conjunction with Hilty, published two articles in February 2023 about the sexual harassment complaints in 2021, and the articles falsely stated that the city's external IAD investigation was stopped early.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

267.     The articles did not ultimately or directly blame Mr. Wolf for the sexual harassment but implied that Mr. Wolf was fired just before the articles came out.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

268.     On information and belief, Hilty told Sorenson that the Wisconsin Watch would not expressly blame Mr. Wolf as they had intended.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

269.     On information and belief, after the articles were published, Sorenson told multiple citizens throughout Sheboygan County that Mr. Wolf was also fired, in part, because he covered

up sexual harassment, stopped the IAD investigation early, and that Mr. Wolf was responsible for the "sexual harassment" in the police department even though Sorenson knew that the investigation was fully completed and Mr. Wolf had no control or authority over the police and fire department employees.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

270.    On information and belief, Sorenson stated to multiple people throughout the public that Mr. Wolf was "hated" by police officers because of his "sexual harassment" cover ups—an outrageously false statement since Mr. Wolf had no authority over the police and fire departments as City Administrator.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

271.    On information and belief, since Mr. Wolf was forced on "leave," Adams and Sorenson have held onto other unrelated sexual harassment complaints to find a way to use those against Mr. Wolf and other political opponent employees still working at the city.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

**(V)    Mr. Wolf's ongoing injuries resulting from the Defendants' actions.**

272.    Mr. Wolf suffered a severe physical reaction based on his emotional stress in October following Hilty's "slur" articles and the negative emotional effects he was observing on many city employees and department heads who saw the harassment and retaliation campaigns that were being waged against Pelishek, city employees, and himself.

67

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same. Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs as the result of any alleged conduct by Defendant, and Defendant denies any and all liability to Plaintiff.

273. Mr. Wolf worked with the city's Employee Assistance Program for medical attention prior to his forced "leave" in October and November 2022.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

274. As a direct result of the city's *Leave Directives* in November, Mr. Wolf suffered embarrassment, humiliation, and damage to his personal relationships when he was not allowed to contact the city's fire or police departments and was prohibited from responding to friends of his that were city employees or did "business" with the city.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same. Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs as the result of any alleged conduct by Defendant, and Defendant denies any and all liability to Plaintiff.

275. Mr. Wolf's friendships were questioned when he could not respond to texts from friends nor discuss what was going on after the City's public announcement launching Hall's "investigation" into his conduct.

**ANSWER:** Defendant denies this paragraph. Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs as the result of any alleged conduct by Defendant, and Defendant denies any and all liability to Plaintiff.

68

276.    Following the Defendants *public announcement* on November 7 investigating Mr. Wolf's conduct, his public firing, the Defendants multiple false public statements about his harassment, retaliation, dishonesty, and character, Mr. Wolf has endured multiple medical visits for several emotional stress, and continuing physical side effects from the humiliation, stress, embarrassment, ridicule, and hostility because of the Defendants' actions.

**ANSWER:**  Defendant denies this paragraph.  Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs as the result of any alleged conduct by Defendant, and Defendant denies any and all liability to Plaintiff.

277.    Following the Defendants' public investigation announcement and *Leave Directives* in November, Mr. Wolf reached out to multiple recruiters and municipalities throughout Wisconsin but has been unable to find any position.

**ANSWER:**  Defendant denies this paragraph.

278.    Mr. Wolf was expressly rejected from one employment opportunity in a city far outside of Sheboygan after Sorenson's public statements to Hilty on January 10.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

279.    Mr. Wolf can no longer receive calls back for his job applications in his chosen field of public administration, and because of the Defendants' actions, Mr. Wolf cannot even find employment back in the *private sector*, let alone in his chosen field.

**ANSWER:**  Defendant denies this paragraph.

280.    Mr. Wolf has been told by municipal recruiters that, despite his long-standing successes and experiences in management, the public releases by the Defendants in November

69

2022 and January 2023 will make it impossible for him to find municipal or public employment in any capacity.

**ANSWER:** Defendant denies this paragraph. Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs as the result of any alleged conduct by Defendant, and Defendant denies any and all liability to Plaintiff.

281. The Defendants public investigation, firing, and false statements about Mr. Wolf have permanently damaged his excellent reputation that he spent over 30+ in Sheboygan building as an excellent supervisor, leader, and financial manager.

**ANSWER:** Defendant denies this paragraph. Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs as the result of any alleged conduct by Defendant, and Defendant denies any and all liability to Plaintiff.

282. Mr. Wolf cannot resurrect his former reputation and status without a favorable judgment because the Defendants conducted a public witch hunt into him and denied him all opportunities to clear his name and falsely stated he was a liar and dangerous to employees.

**ANSWER:** Defendant denies this paragraph. Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs as the result of any alleged conduct by Defendant, and Defendant denies any and all liability to Plaintiff.

283. Mr. Wolf is not able to maintain his friendships with hundreds of people throughout Sheboygan because of the city's current gag orders on employees to not speak to Mr. Wolf.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

70

284.     On information and belief, Sorenson has intimidated city employees from speaking to Mr. Wolf by threatening to subpoena Mr. Wolf's phone records which could result in discipline for any employees found to be communicating with him.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

285.     Mr. Wolf planned to work as Sheboygan's City Administrator for the next fifteen years—until his retirement, which would have earned him 15 years' worth of the City Administrator salary, benefits, and state pension.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

286.     Other positions that Mr. Wolf has been expressly rejected from after those potential employers discovered the Defendants' false public disclosures about Mr. Wolf's character would have earned similar or higher salaries for the next fifteen years of Mr. Wolf's career.

**ANSWER:**  Defendant denies this paragraph.

287.     Mr. Wolf is regularly faced with harassing, false, and defamatory posts from citizens throughout Sheboygan on Facebook and the Progressive women groups calling him a harasser, liar, and danger to employees—celebrating his public firing.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

288.     Even in his private life, Mr. Wolf cannot attend even basic events because he, and his family, are forced to field questions or harassment about why he concealed sexual harassment in the police department or asking him why police officers hated him so much—none of which was true.

71

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

289.    Mr. Wolf has been forced to take side jobs doing home repairs for those people who will still associate with him because of the Defendants' actions.

**ANSWER:**  Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs as the result of any alleged conduct by Defendant, and Defendant denies any and all liability to Plaintiff.  Defendant affirmatively states, on information and belief, that Plaintiff has obtained full time employment.

290.    Since Adams denied Mr. Wolf any opportunity to obtain his personal belongings from his office, Mr. Wolf has suffered the loss of his father's original artwork—a priceless heirloom that Mr. Wolf will never be able to duplicate or replace.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

291.    In addition to his father's artwork that Adams' has denied Mr. Wolf from obtaining, M.r Wolf has lost all the other personal belongings from his prior office at the city including other artwork, decorations, highly sensitive private and personal financial information, personal documents, records, and other personal belongings that Adams has refused to allow Mr. Wolf to obtain from November 7, 2022 – April 2023.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

292.    Mr. Wolf has had to endure four holidays without the only memory of his father's artwork because Adams' had interfered and denied Mr. Wolf any chance to obtain his personal belongings since he was forced on "leave" on November 7, 2022.

72

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

293.     On February 17, after Mr. Wolf filed his Original Complaint (ECF Dkt. 1), Mr. Wolf's attorney received a "cease and desist" letter from Donohue's colleague, Diane Welsh and her associate threatening Mr. Wolf from pleading relevant, factual information about Donohue's DEIB leaders in this judicial proceeding.  A true and accurate copy of the *only* cease and desist letter Mr. Wolf (or his attorney) has received from Welsh and her associate, Eduardo Castro, is attached as Exhibit 16.

**ANSWER:** Defendant admits that Exhibit 16 is a copy of a letter from Diane Welsh which is a written document that speaks for itself and any inconsistent characterization thereof is denied. As to the remaining allegations of the paragraph, Defendant lacks knowledge or information sufficient to admit or deny those allegations and, on that basis, denies the same.

## CAUSES OF ACTION

### CLAIM ONE
### VIOLATION OF MR. WOLF'S FIRST AMENDMENT RIGHTS
### "LEAVE DIRECTIVES"
### (42 U.S.C. § 1983)
*SORENSON, ADAMS, DONOHUE, FELDE, FILICKY-PENESKI, SALAZAR, ACKLEY, RAMEY, DEKKER, RUST, PERRELLA*

294.     Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:**     Defendant reasserts and incorporates her responses to the foregoing paragraphs of this Complaint as if fully set forth herein.

295.     The First Amendment of the United States Constitution applied to the states through the Fourteenth Amendment prohibits the government from placing broad restraints on a public employee's potential expressive activities in their capacity as a private citizen.

73

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

296. The Defendant officials constructively suspended Mr. Wolf when they forced him on "administrative leave" because he was told to turn over his work computer and prohibited from accessing his office and all work files when Adams escorted him out of City Hall on November 7.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

297. Mr. Wolf did not forfeit his First Amendment rights while he was constructively suspended solely because he was still "employed" by the City of Sheboygan.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

298. The Defendants' *Leave Directives* were unconstitutionally overbroad and provided no alternative modes for Mr. Wolf to contact the fire and police departments or express himself as a private citizen by prohibiting "all forms of communication."

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent this paragraph contains assertions of fact, Defendant denies.

299. The *Leave Directives* lacked a close or rational relationship to any legitimate interest the city had in the actual operation of government because denying Mr. Wolf's movement

74

or speech to any of the 450+ city employees had no bearing on the city's efficient provision of services.

**ANSWER:** The allegations in this paragraph call for multiple legal conclusions for which no answer is required; however, to the extent an answer is required, Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

300.    To the extent the *Leave Directives* were content based when Mr. Wolf was prohibited from speaking at "any event where the media might be present" about "city matters," the *Directives* were unconstitutionally overbroad and vague because the Defendants provided no definition of "city matters" nor any narrowing or clarifying instructions about "city matters."

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

301.    By conditioning Mr. Wolf's continued employment with the city on his willingness to surrender nearly endless forms of Mr. Wolf's First Amendment rights to speech, expression, assembly, and association, the *Leave Directives* imposed unconstitutional conditions on Mr. Wolf.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

302.    The Defendants' required Mr. Wolf to surrender his Constitutionally protected rights to freedom of expression, due process, equal protection, assembly, and association to avoid discipline during Hall's investigation; and even when Mr. Wolf tried to comply, the Defendants' lied and fired him anyway for violating the unconstitutional *Leave Directives*.

75

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent this paragraph contains assertions of fact, Defendant denies.

303. The Defendants' harassment and unconstitutional conditions on Mr. Wolf through the *Leave Directives* violated his right to be free from unconstitutional conditions in violation of his First Amendment rights.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent this paragraph contains assertions of fact, Defendant denies.

304. Mr. Wolf's interest in speaking about DEIB group threats and responding to the city's public announcement investigating his conduct outweighed the city's interests in wanting to create the appearance of government "inefficiency" so they could hire the DEIB group and fire Mr. Wolf.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent this paragraph contains assertions of fact, Defendant denies.

305. The Defendants' *Leave Directives* showed a deliberate indifference to Mr. Wolf's rights by prohibiting him from speaking to hundreds of people or stepping foot on City properties.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

76

306.    The *Leave Directives* were the moving force and cause of the violations of Mr. Wolf's First Amendment rights to freedom of speech, expression, association, and assembly while he was constructively suspended.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

307.    The Defendant officials' unconstitutional Leave Directives showed a deliberate indifference to Mr. Wolf's First Amendment rights by confining him to his home unable to step foot on "city properties" in his home city and unable to speak to over 450 city employees as well as countless persons that "do business with the city" which necessarily could mean nearly every citizen in Sheboygan.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

308.    The *Leave Directives* were the moving force behind the chilling of Mr. Wolf's speech and his severe injuries from being largely confined to his home unable to step foot on "city properties," prohibited from speaking to close friends, scared to speak to poll workers on November 8 election day, and unable to contact emergency public services during the holiday season.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

77

309.     Individually and in her official capacity, Donohue directly participated by drafting the language and scope of the *Leave Directives* and sending that to Sorenson, Felde, and Salazar to serve Mr. Wolf.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

310.     Individually and in their official capacities, Sorenson, Felde and Salazar used Donohue's scope, language, and draft of the Directives and directed Adams to re-type the *Leave Directives* into a letter to serve on Mr. Wolf during his constructive suspension.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

311.     Individually and in his official capacity, Adams directly participated by re-typing the language from Donohue, Sorenson, Felde, and Salazar into a letter and ordering the Police Department to service the letter *Directives* on Mr. Wolf at his private home while he was constructively suspended.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

312.     Individually and in their official capacities, Defendant Alderpersons Filicky-Peneksi, Ackley, Rust, Ramey, Perrella, and Dekker knew about the Leave Directives, condoned Adams' serving those on Mr. Wolf, and turned a blind eye to the violations of Mr. Wolf's First Amendment rights by enforcing the Directives in firing Mr. Wolf, based in part, on his failure to comply with the *Leave Directives*.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to

78

Plaintiff. To the extent an answer is required, Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

313.    The named Defendants acted intentionally, maliciously and with callous disregard for Mr. Wolf's First Amendment rights by drafting, overseeing, and enforcing compliance with the unconstitutional Leave Directives.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

314.    Mr. Wolf's injuries and the chilling of his speech was a direct result of the Defendants' *Leave Directives* and their enforcement and threats within those directives.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant denies the allegations of paragraph 314.

315.    The Defendants' joint actions and conduct under color of law all caused the violation of Mr. Wolf's First Amendment rights.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant denies the allegations of paragraph 315.

316.    Mr. Wolf suffered humiliation, embarrassment, ridicule, and harm to his personal friendships because of the unconstitutional Leave Directives unable to attend meetings around Sheboygan to avoid anyone who might "do business" with the city.

79

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant denies the allegations of paragraph 316.

## CLAIM TWO
### VIOLATION OF THE FIRST AMENDMENT (OVERBREADTH) "CONFIDENTIAL INFORMATION" POLICY (SHEB. MUN. CODE SEC. 2-272) (42 U.S.C. § 1983)
*CITY OF SHEBOYGAN, ADAMS*

317.    Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:** Defendant reasserts and incorporates her responses to the foregoing paragraphs of this Complaint as if fully set forth herein.

318.    The First Amendment prohibits the government from enacting overly broad policies that government decision makers can use as an instrument of arbitrary suppression of free expression.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

319.    The Defendants' *Confidential Information* Policy and practices enables the Council to restrain public employees' rights to speak based on a subjective, and discriminatory, standards of what they may label as "confidential" to avoid accountability of their own actions.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant denies the allegations of paragraph 319.

320.    The Policy intentionally reaches endless forms of potential protected speech by present and future employees who may potentially try to disclose public corruption, wrongdoing,

80

or unethical conduct of government officials through all modes of communication—including family conversations or speaking to the media on matters of public concern.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant denies the allegations of paragraph 320.

321.    The city Defendants' interest in allowing certain public officials to have "personal and economic interest[s] in the decisions and policies of government" does not outweigh the interests of potential audiences and countless current and future employees to disclose information about financial corruption by public officials or other matters of public concern.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

322.    The terms of the Policy are inherently susceptible to discriminatory applications because the requirement of employees to get an "advisory opinion" from the Council about whether information is "confidential" before disclosing that permits the Council to have unbridled authority about which information they will allow to be "disclosed" and which will result in "cause" for termination.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

323.    The Policy is overly broad and vague because no reasonable employee, outside of the police and fire departments, can distinguish between alleged "confidential information" that is never defined for them.

81

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

324.    The Policy does not provide alternative avenues for an employee to express his concerns about conduct related to public officials, nor does the Policy provide an exception for subpoenas, judicial testimonies, law enforcement proceedings, or even private conversations.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

325.    By failing to provide a single definition of "confidential information" for a vast majority of city employees, the Defendants policy is unconstitutionally overbroad and vague.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

326.    The Policy does not provide any objective, narrow or definite standards governing whether or when employees will be permitted to speak or how the city will apply the policy to their potential speech as private citizens on matters of public concern regarding concerns about public officials, or in Mr. Wolf's case, private individual threats for city money.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

327.    Allowing Council to permit certain disclosures (even false ones) while denying others does not outweigh the interests of potential public audiences and a vast number of present

82

and future public employees' that wish to disclose, in any setting or judicial proceeding, information about the Defendants' wrongdoing, corruption, or other matters of public concern.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant denies the allegations of paragraph 327.

328.    Mr. Wolf was injured by the Defendants' unconstitutional *Confidential Information* Policy when he was fired, in part, after Hall's "oral synopsis" stating that he violated the Policy by disclosing information about Pelishek and Rendall's "slur incident" on August 22.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant denies the allegations of paragraph 328.

329.    The Policy was unconstitutional in its selective enforcement whereby Mr. Wolf was fired, in part, for "disclosing confidential information," but Rendall and Sorenson, who leaked actual internal complaints and information in a false light are awarded for their efforts that destroy the credibility of the city's operations to target specific employees like Mr. Wolf and others.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant denies the allegations of paragraph 329.

330.    The Defendants' Policy and practices against Mr. Wolf was a strong chilling message to all current and future employees that any criticism of public officials, including corruption, unethical conduct, or financial interests, will be labeled in an "advisory opinion" as "confidential information" ex ante so that the employee is not able to disclose that information as a private citizen or in any other lawful capacity.

83

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

331. Mr. Wolf was injured by the Defendants' unconstitutional *Confidential Information* Policy when he was fired, in part, because of Hilty's October and December articles and Hall's "oral synopsis" that Mr. Wolf disclosed "confidential information" about the August 22 "slur incident" with Rendall and Pelishek.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant denies the allegations of paragraph 331.

332. Alleged "racism" reporting and incidents within the city and throughout the community is certainly a matter of public concern.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

333. Even if Mr. Wolf's speech about the August 22 "slur incident" was not protected based on his job duties, the *Confidential Information* Policy is applied to the potential expressions of countless current and future city employees whose speech is protected.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

84

334.   Individually and in his official capacity as City Attorney, Adams supervised his staff drafting the policy, and knew of its overbroad and unlawful applications when he told Mr. Wolf falsely that the Policy was a "requirement" for federal ARPA funds.

**ANSWER:**  To the extent the allegations in this paragraph call for a legal conclusion for which no answer is required, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

335.   Adams acted intentionally, maliciously, and with callous disregard for Mr. Wolf and countless other employees' First Amendment rights when he used Donohue's draft and supervised the drafting of the Policy so that Felde and Ackley could introduce it for passage under the false pretense of ARPA requirements.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. To the extent an answer is required, Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

**CLAIM THREE**
**VIOLATION OF THE FIRST AMENDMENT**
**"FALSE STATEMENTS" ORDINANCE (SHEB. MUN. CODE SECS. 82-3 & 82-6)**
**(42 U.S.C. § 1983)**
*CITY OF SHEBOYGAN*

336.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:**  Defendant reasserts and incorporates her responses to the foregoing paragraphs of this Complaint as if fully set forth herein.

337.    The First Amendment prohibits the government from enacting laws that criminalize speech content where such restrictions are not necessary to further a compelling government interest.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

338.    The First Amendment also prohibits the government from placing content-based restrictions on the speech of public employees in their capacities as private citizens on matters of public concern.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

339.    Speech regarding bribery or potential political corruption of public officials is a matter of public concern.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

340.    The *False Statements* Ordinance ("Ordinance") and its enforcement mechanisms are facially unconstitutional because they impose fines and potentially jail time on *past employees* and private citizens who make any statements about public corruption that the government determines is "false" information.

86

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

341. The Ordinance is unconstitutionally broad because it not only prohibits and suppresses the potential future speech of all current, past, or *future* employees, the policies are enforced against *private citizens'* speech threatening to fine, imprison, and label them as "liars."

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

342. The Ordinance terms inherently violate countless First Amendment rights of protected speech, expression, and petition—since the Ordinance does not narrow the scope of punishable speech forms, and necessarily can apply to lawsuits or judicial proceedings—an application that was shown when Donohue's friend, Diane Welsh, sent a "cease and desist" letter to Mr. Wolf's attorney solely based on Mr. Wolf's Original Complaint in this civil case.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

343. The Ordinance and its practices give unnamed public officials unbridled discretion to subjectively determine the subjective "truth" of speech content by countless public employees and private citizens about matters of public concern.

**ANSWER:** Defendant denies this paragraph.

344.    The Defendants' Ordinance and practices are highly susceptible to being used against employees—and private citizens—in a manner that discriminates based on speaker, content, or viewpoint.

**ANSWER:**  Defendant denies this paragraph.

345.    The Defendants selectively enforce the Ordinance only against employees and private citizens that make statements about the political corruption of the Defendants' or their political allies whereby *the Defendants* are given the discretion to publicly stigmatize the potential speaker as "dishonest" or fire them without any due process.

**ANSWER:**  Defendant denies this paragraph.

346.    The Ordinance's unconstitutionally broad terms have a severe chilling effect on the protected speech of countless current and future public employees who can be disciplined for statements made even in legal petitions or judicial proceedings—which are protected under the First Amendment.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

347.    The Ordinance's chilling effect on employees' that may speak as private citizens on matters of public concern necessarily applies to statements to family, friends, public forums, judicial proceedings, the media, or any other event.

**ANSWER:**  Defendant denies this paragraph.

348.    The Defendants interest in avoiding accountability or "legal liability" from potential "defamation claims" because of the incompetence of their City Attorney is not a

88

legitimate—let alone compelling—reason to chill the potential expressions of countless current, future, or past employees on matters of public concern.

**ANSWER:** Defendant denies this paragraph.

349. Mr. Wolf was injured by the Ordinance and its related practices when the Defendants' publicly announced an investigation into him without notice, constructively suspended him, and immediately released statements that Mr. Wolf was dishonest before Hall's sham investigation even began, based, in part on the *False Statements* Ordinance.

**ANSWER:** Defendant denies this paragraph. Defendant further denies that Plaintiff has suffered any injuries, or equitable or legal wrongs as the result of any conduct by Defendant and Defendant denies all liability to Plaintiff.

350. As a result of the Defendants' unconstitutional *False Statements* Ordinance and its practices as used against Mr. Wolf chilled his speech and Mr. Wolf suffered several physical, emotional, and mental injuries, including humiliation, harassment, and damage to his reputation as an honest City Administrator of upstanding integrity in Wisconsin.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff. Defendant further denies that Plaintiff has suffered any injuries, or equitable or legal wrongs as the result of any conduct by Defendant and Defendant denies all liability to Plaintiff.

351. Even if the Defendants' alleged facts that Mr. Wolf's speech about the DEIB meeting or other political corruption concerns was not protected based on his status as City Administrator, the *False Statements* Ordinance and its practices chill the speech of countless employees and private citizens whose speech *is protected* under the First Amendment.

89

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

## CLAIM FOUR
### VIOLATION OF THE FOURTEENTH AMENDMENT
### DUE PROCESS (VAGUE)
### "FALSE STATEMENTS" ORDINANCE
### (42 U.S.C. § 1983)
### *CITY OF SHEBOYGAN*

352. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:** Defendant reasserts and incorporates her responses to the foregoing paragraphs of this Complaint as if fully set forth herein.

353. The Fourteenth Amendment prohibits the government from enacting laws that are overly vague where no reasonable person could understand what is expected of them or how such claims against them will be adjudicated.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

354. The *False Statements* Ordinance ("Ordinance") is unconstitutionally vague because it commands compliance with telling the "government's" version of the "truth" while imposing criminal penalties, including potential jail, and stigmatizing public labels, on those who may express any concern about public officials' political corruption which those very officials will simply label as "false" information.

90

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

355. The Policy gives no notice to employees or the private citizens which opinions or "statements" that unnamed public officials believe are "acceptable" versions of the "truth" that will not result in discipline, termination, fines, or potential jail time.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

356. The Policy's imposition of criminal penalties and public stigmatization on public employees *and private citizens'* statements about any bribery or political corruption renders the policy facially void and unconstitutional.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

357. The lack of objective criteria, factors, or standards in Defendants' policies and related practices force employees to guess whether their speech will be labeled as "false" and grounds for discipline, termination, fines, or potential jail.

**ANSWER:** Defendant denies this paragraph.

358. Mr. Wolf was injured when he was fired, in part, under the *False Statements* Policy because Sorenson publicly determined Mr. Wolf's "guilt" the day Mr. Wolf's short, recorded statement was released by stating the "Administrator's statements are false" and then overseeing

91

Hall's biased sham investigation to conceal facts and encourage the Council to fire Mr. Wolf for making "false statements" about the DEIB leaders in violation of the Policy.

**ANSWER:** Defendant denies this paragraph. Defendant further denies that Plaintiff has suffered any injuries, or equitable or legal wrongs as the result of any conduct by Defendant and Defendant denies all liability to Plaintiff.

**CLAIM FIVE**
**VIOLATION OF MR. WOLF'S 14th AMENDMENT**
**PROCEDURAL DUE PROCESS RIGHTS (PROPERTY)**
**(42 U.S.C. § 1983)**
*SORENSON, ADAMS, HALL, HILTY, FELDE, FILICKY-PENESKI, SALAZAR, ACKLEY,*
*RAMEY, DEKKER, RUST, PERRELLA*

359. Plaintiff realleges and incorporates each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:** Defendant reasserts and incorporates her responses to the foregoing paragraphs of this Complaint as if fully set forth herein.

360. The Due Process Clause of the Fourteenth Amendment prohibits the government from "depriv[ing] any person of life, liberty, or property, without due process of law."

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

361. The Due Process Clause requires notice and a hearing before, or reasonably promptly after, a deprivation of a public employee's protected property rights.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein with regard to Plaintiff.

362.     As City Administrator, Mr. Wolf could not be fired or removed except for cause as defined under Wisconsin state law, and Mr. Wolf's employment agreement expressly did "not contravene" the ordinance that Mr. Wolf could only be removed and fired for "cause."

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.  To the extent the paragraph contains assertions of fact, Defendant denies.

363.     Mr. Wolf had a protected property interest in his position.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.  Defendant denies this paragraph.

364.     Mr. Wolf was denied his procedural due process property rights when he was denied actual notice of the charges, subjected to a sham biased "witch hunt" investigation, and then fired without any opportunity for a pre- or post-termination hearing.

**ANSWER:**  Defendant denies this paragraph.

365.     The eight Defendant Alderpersons on Common Council had final decision-making authority to give Mr. Wolf actual notice of the charges, and a hearing before, or reasonably after, he was fired by an administrative vote.

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.

366.     The Defendants' administrative resolution firing Mr. Wolf without a hearing or notice of the charges showed deliberate indifference to Mr. Wolf's procedural due process rights and was the moving force behind the deprivation of Mr. Wolf's right to notice and a hearing.

**ANSWER:**  Defendant denies this paragraph.

93

367. Individually and in their official capacities, Felde, Filicky-Peneski, Salazar, Ramey, Ackley, Perrella, Rust, and Dekker intentionally and with reckless disregard for Mr. Wolf's rights directly participated by voting to fire him "without cause" solely to deny Mr. Wolf any hearing opportunity in violation of his due process rights.

**ANSWER**: Defendant denies this paragraph.

368. Individually and in his official capacity, Sorenson directly participated by refusing to provide any requested records about the investigation, ordering records be deleted and destroyed during Hall's investigation, and telling Hilty to publish false information that Mr. Wolf disclosed "confidential information" about Pelishek and Rendall to her in September so that he could show Hall and Council there was "cause" to fire Mr. Wolf under the *Confidential Information* policy.

**ANSWER**: Defendant denies this paragraph.

369. Individually and in his official capacity, Adams directly participated by concealing Rendall's "complaint" from Mr. Wolf and his attorney, lying about the "charges" Hall was investigating on December 6 and 7 so that Mr. Wolf could not be prepared for Hall's interview, sending "investigation instructions" less than 90 minutes before Hall's interview, and then convincing and advising the Common Council to fire Mr. Wolf "without cause" so that he would not be given a hearing to expose Hall's sham investigation.

**ANSWER**: Defendant denies this paragraph.

370. Hilty acted under color of law by agreeing with Sorenson and Donohue in November 2022 to publish false information that Hall could use as "evidence" for her "investigation" against Mr. Wolf to convince eight members of the Council to fire Mr. Wolf for violating the *Leave Directives*, *Confidential Information* Policy, and *False Statements* Ordinance.

**ANSWER**: Defendant denies this paragraph.

94

371.     Hilty willfully participated with Sorenson by attempting to entice Mr. Wolf to comment on his Confidential Email, meeting every week with Sorenson and communicating with him through private chats in November 2022, and then publishing her December 16 article that falsely stated *Mr. Wolf* disclosed Pelishek's name and the August 22 slur incident for her October "slur articles," so that Sorenson could immediately send her December 16 article to Hall to use as "evidence" that there was cause to fire Mr. Wolf for disclosing "confidential information."

**ANSWER:**  Defendant denies this paragraph.

372.     Hilty acted maliciously and with callous disregard for Mr. Wolf's rights because she knew that Mr. Wolf never disclosed the August 22 "slur incident" to her.

**ANSWER:**  Defendant denies this paragraph.

373.     Hall acted under color of law by agreeing with Donohue and Sorenson in November 2022 to conduct a biased witch hunt investigation, conceal exonerating information, and convince any Council "swing votes" to fire and remove Mr. Wolf.

**ANSWER:**  Defendant denies this paragraph.

374.     Hall willfully participated with Sorenson, Adams, and Donohue to separate employees by "supporters" of Mr. Wolf, conceal their testimonies from the Council, and then, when Hall realized that a hearing with employee witnesses would fully exonerate Mr. Wolf, Hall told the Council in her "oral synopsis" that a hearing would be "costly" and hard on employees so that Sorenson and Adams could convince Council to fire Mr. Wolf without cause or a hearing.

**ANSWER:**  Defendant denies this paragraph.

375.     The joint and combined actions of the Defendants to conduct a biased sham investigation and then specifically deny Mr. Wolf a hearing or any notice of the actual charges against him caused the deprivation of Mr. Wolf's procedural due process property rights.

95

**ANSWER:** Defendant denies this paragraph.

376.    The Defendants acted intentionally, maliciously, and with callous disregard for Mr. Wolf's Fourteenth Amendment property rights.

**ANSWER:** Defendant denies this paragraph.

377.    Mr. Wolf has suffered severe financial and emotional damage and injuries as well as the deprivation of his job, title, reputation, and standing in the community based on the intentional actions and omissions by the defendants.

**ANSWER:** Defendant denies this paragraph.

**CLAIM SIX**
**VIOLATION OF MR. WOLF'S 14th AMENDMENT DUE PROCESS**
**LIBERTY RIGHTS**
**(42 U.S.C. § 1983)**
*SORENSON, ADAMS, DONOHUE, HALL*

378.    Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:**    Defendant reasserts and incorporates her responses to the foregoing paragraphs of this Complaint as if fully set forth herein.

379.    Mr. Wolf had a liberty interest in his excellent reputation, honesty, and integrity throughout the Sheboygan public and private sector as an award-winning Manager, City Administrator, and "Inspirational Leader" in Sheboygan County.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim.  Dkt. 62.  To the extent an Answer is required, Defendant denies this paragraph.

380.    The government is prohibited from disclosing stigmatizing information that hurts the reputation of a public employee in connection with the employees firing without notice of the allegations and an opportunity for a name-clearing hearing before an impartial tribunal—

specifically in regard to stigmatizing charges and allegations that the government has made or intends to make public.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, the allegations contained in this paragraph call for a legal conclusion for which no answer is required and, on such basis, Defendant denies this paragraph.

381. The Fourteenth Amendment entitled Mr. Wolf to notice and an opportunity to clear his name in a hearing before the Council before the Defendants publicly disclosed on January 9 and 10, and then again on February 8, that Mr. Wolf was dangerous to employees, habitually dishonest, and guilty of retaliation, harassment, and "violations of laws" and ethics policies as justification for his firing on January 9.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

382. Mr. Wolf has never waived or relinquished his right to a public name clearing hearing before the Council.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

383. Mr. Wolf was deprived of his constitutional liberty interests when Sorenson and Adams disclosed and authorized the public release of statements that Mr. Wolf was dishonest, dangerous and retaliatory to employees, and violated "laws" pursuant to the city's unconstitutional *False Statements* policy and practices.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

97

384. The Defendants' *False Statements* policy and practices showed a deliberate indifference to Mr. Wolf's Fourteenth Amendment rights whereby Sorenson labeled Mr. Wolf "dishonest" on several occasions, including before Hall ever began her "investigation," to make sure that he was stigmatized as "dishonest" and then accused of "violating laws" in conjunction with his firing.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

385. Individually and in his official capacity, Sorenson directly participated in repeatedly and intentionally violating Mr. Wolf's liberty rights after Mr. Wolf was fired and denied a hearing by emailing private citizens that Mr. Wolf violated the law, lied about the DEIB leaders, and then publicly stating for Sheboygan Press January 10 article that Mr. Wolf was dangerous to employees, retaliated against them, was a habitual liar, and that Mr. Wolf was "warned" about his dishonesty— all of which Sorenson knew was categorically false.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

386. Sorenson acted maliciously and with reckless disregard for Mr. Wolf's due process liberty rights to punish Mr. Wolf for exposing the DEIB leaders—one of whom Sorenson has now hired in Mr. Wolf's absence.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

387. Individually and in his official capacity, Adams directly participated by authorizing the public release of Hall's February 6 "investigation" report one month after Mr. Wolf had been

publicly fired without any hearing based solely on Hall's investigation stating that Mr. Wolf made "false statements" about the DEIB leaders.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

388. Adams acted maliciously and with reckless disregard for Mr. Wolf's liberty rights when he immediately authorized the full public release of Hall's final report two days after a public announcement was posted that Mr. Wolf was a finalist for another City Manager position.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

389. Individually and in her official capacity, Donohue directed Sorenson to publicly stigmatize Mr. Wolf as being a "liar" about her DEIB leaders with malice and callous disregard for Mr. Wolf's liberty rights knowing that Mr. Wolf was fired without any opportunity for a public name clearing hearing.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

390. Hall acted under color of law by agreeing with Donohue and Sorenson in January 2023 to draft a "final report" about her sham "investigation" that the city Defendants could immediately authorize for release to the public without any draft or preliminary report to Mr. Wolf.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

391. Hall willfully participated with Sorenson and Adams by drafting and sending her report on February 6, 2023, that stated false and stigmatizing information that Mr. Wolf was

99

retaliatory and harassing against female employees, repeatedly dishonest, and committed violations of policies.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

392. Hall acted maliciously and with callous disregard for Mr. Wolf's liberty rights because Hall knew, or should have known, that Mr. Wolf was publicly fired solely based on her "investigation," that Mr. Wolf was denied a name clearing hearing opportunity prior to his firing, and that Sorenson publicly stated on January 10 he intended to immediately release Hall's report to the public in conjunction with Mr. Wolf's firing.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

393. As a direct result of the Defendants statements, public releases, and combined acts of the Defendants, Mr. Wolf's Fourteenth Amendment liberty rights were violated, and he has lost multiple employment opportunities in his chosen field—now even being denied employment in the private sector.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

394. The Defendants' joint actions and conduct under color of law all caused the violation of Mr. Wolf's Fourteenth Amendment liberty rights.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

100

395. The Defendants conduct and actions have caused Mr. Wolf to suffer severe financial and emotional damages and inability to find any profession in his chosen field.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

**CLAIM SEVEN**
**STATE LAW CLAIM: DEFAMATION PER SE**
*SORENSON*

396. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:** Defendant reasserts and incorporates her responses to the foregoing paragraphs of this Complaint as if fully set forth herein.

397. Wisconsin state law finds defamation per se where one communicates to a third person a false statement that tends to harm one's reputation, lowering him "in the estimation of the community or deterring third persons from associating or dealing with him." *Ladd v. Uecker*, 2010 WI App 28, 323 Wis.2d 798, 780 N.W.2d 216.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.

398. The defamatory statement will be considered defamation per se is the statements are "apparent from the words themselves," and where the words "do not need an innuendo." *Bauer v. Murphy*, 191 Wis. 2d 517, 530, 530 N.W.2d 1, 6 (Ct.App.1995).

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.

399. Sorenson made multiple unprivileged false statements to several citizens and third persons about Mr. Wolf since he was fired as City Administrator on January 9 including claiming

Mr. Wolf was harassing and retaliating against employees, responsible for sexual harassment at the police department, guilty of violations of "law" and ethics while he was the City Administrator.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

### False Statements to the Sheboygan Press in a January 10, 2023 publication implying that Mr. Wolf interfered in the investigation, was dangerous to employees and had retaliated or would retaliate against employees.

400.    On January 10, Sorenson defamed Mr. Wolf in his statements to the Sheboygan Press by stating that employees were "fearful" of Mr. Wolf's "retaliation" against them as City Administrator and implying Mr. Wolf regularly retaliated against employees who should "feel safe to come to work."

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

401.    Sorenson's statements were defamation per se in the January 10 Sheboygan Press article because they implied Mr. Wolf, as the City Administrator, was harassing and retaliating against employees, such as Rendall and Schneider.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

402.    Sorenson knew his statements implying that Mr. Wolf unlawfully retaliated and harassed Schneider were false because he was present when the outside attorney said that Schneider's claims against Mr. Wolf were meritless, and he did nothing wrong.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

102

403. Sorenson knew his statements implying that Mr. Wolf was unsafe and retaliated against Rendall were completely false because Sorenson knew that Rendall never "reported racism" and was the one that asked Pelishek to repeat the "slur."

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

404. Sorenson also defamed Mr. Wolf by stating that Mr. Wolf's Confidential Email statements to Council about Guevara and Haack made Mr. Wolf, as City Administrator, a legal liability because Mr. Wolf's email was absolutely privileged, and Sorenson knew he and Adams released Mr. Wolf's Confidential Email to the public (Hilty) without Mr. Wolf's knowledge or authorization.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

**False Statements to Multiple Third Parties between November 2022 and February 2023 that Mr. Wolf was responsible for sexual harassment at the Sheboygan Police Department.**

405. Sorenson defamed Mr. Wolf on November 8, 2022, by telling two Wisconsin Watch reporters that Mr. Wolf was covering up sexual harassment in the Sheboygan Police Department—a department that *Sorenson* is the head of under State and municipal law.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

406. Sorenson's false statements that Mr. Wolf, as City Administrator, stopped the external investigation into the Police Department IAD's handling of a sexual harassment complaint to cover up sexual harassment. *See* supra ¶¶ 58-62.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

103

407. Sorenson knew Mr. Wolf helped him hire the outside investigator when Sorenson and Adams were unable or refused to and that that 2021 investigation was fully completed. *Id.*

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

408. Sorenson's defamatory statements about Mr. Wolf as responsible for sexual harassment cover-ups at the police department were malicious, willful, and intentional based on Sorenson's repeated excited claims to multiple persons in January 2023 that a "big story was coming out" about Mr. Wolf "and the police department." *Id.*

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

409. Sorenson acted with actual malice by telling multiple third persons—after Mr. Wolf was fired—that Mr. Wolf was responsible for the Wisconsin Watch/Hilty sexual harassment articles in February 2023 because Sorenson is the head of the fire *and police departments* in the city, and he knew Mr. Wolf had no control over day-to-day police officer operations. *Id.*

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

410. Sorenson assassinated Mr. Wolf's character and reputation by telling multiple third persons in February and March 2023 that Mr. Wolf covered up and condoned sexual harassment in the police department and was hated by police officers because of his cover ups—none of which were true statements.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

104

411.    Sorenson's multiple defamatory statements about Mr. Wolf condoning sexual harassment, being dangerous for employees, retaliatory, and hated in the city and community because of his failures as City Administrator were all unprivileged.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

412.    The false and defamatory statements by Sorenson in November 2022 and January - March 2023 have lowered Mr. Wolf in the estimation of the community as well as deterred many people from associating with Mr. Wolf.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

413.    Sorenson's multiple false and defamatory statements about Mr. Wolf between November 2022 and February 2023 were made willfully, intentionally, and with actual malice to destroy Mr. Wolf's excellent name, reputation, and status in the community so that Mr. Wolf's credibility would be damaged given Mr. Wolf's knowledge of Sorenson and Donohue's financial and private interests with city money.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

414.    Sorenson has written, spoken, and caused all of these false and defamatory statements about Mr. Wolf to become general public knowledge with actual malice and knowledge that all of his statements and implications were false.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

105

415.    Sorenson continues to engage in causing defamatory statements about Mr. Wolf to be published with malice and in efforts to cover up his own corruption as Mayor by assassinating the character of the real city leader (Mr. Wolf) who had to repeatedly tell Sorenson that his payments and hiring of he and Donohue's DEIB leaders was unlawful.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

416.    Mr. Wolf has suffered severe and permanent damages to his reputation and status enduring scorn, harassment and ridicule in the community, and throughout the state, being labeled as "dangerous" to employees, covering up sexual harassment, and hated by employees and police officers—none of which are true or even remotely true statements.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

**CLAIM EIGHT**
**STATE LAW CLAIM: CIVIL CONSPIRACY**
*SORENSON, DONOHUE, HILTY*

417.    Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:**  Defendant reasserts and incorporates her responses to the foregoing paragraphs of this Complaint as if fully set forth herein.

418.    Under Wisconsin law a civil conspiracy is found where an injured plaintiff shows "[t]he formation and operation of the conspiracy; the wrongful act or acts done pursuant thereto; and the damage resulting from such act or acts."  *Onderdonk v. Lamb*, 79 Wis. 2d 241, 247, 255 N.W.2d 507 (1977).

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.

106

419. A civil conspiracy is found where two or more persons engage in "some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." *Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, 1168, 701 N.W.2d 523.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.

420. Donohue and Sorenson reached an agreement and common objective in April 2021 to incite public scandals and frivolous complaints against Mr. Wolf that would force the Council to remove Mr. Wolf or give Mr. Wolf's financial "powers" to Sorenson so that Sorenson could give Donohue and her private DEI groups ARPA funds or hire her DEI consultant to allocate "city resources."

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

421. Giving ARPA funds or public money to private interest groups that are not involved in ongoing infrastructure or are personally and politically connected to public officials in violation of public spending protocols for such public funds is unlawful.

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein. To the extent an answer is required, Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

422. Fabricating or falsifying "evidence" to defame and destroy the character of someone through false disclosures and statements so that public funds can be diverted to interested personal and private groups is an unlawful means to accomplish a public employee's removal from office.

107

**ANSWER:** The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein. To the extent an answer is required, Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

423.    In furtherance of this agreement, Donohue told Sorenson to have Rendall incite a "race-related" scandal and frivolous retaliation claim against Mr. Wolf to get the DEI consultant position that would assess City resources as he and Donohue wanted—rather than Mr. Wolf.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

424.    Donohue and Sorenson acted maliciously, intentionally, and willfully in a civil conspiracy to remove Mr. Wolf's authority over the city's budget and ARPA funds and giving that back to Sorenson as mayor by destroying Mr. Wolf's reputation in the community so that he could not expose Donohue's private efforts for public funds—all to ensure DEIB consultant and reallocation of public resources with ARPA and public funds once Mr. Wolf was out of the way.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

425.    Hilty joined this agreement with Donohue and Sorenson on September 16, 2022, when she agreed to scare Mr. Wolf through an interview into writing an article harassing Pelishek as a "racist" to force him to pay the DEIB leaders as consultants to allocate city resources.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

426.    In furtherance of this agreement, when Mr. Wolf rejected the DEIB threats for money in October, Hilty published a series of misleading and inflammatory articles that she

108

showed Sorenson, Rendall, and Donohue first for approval, and falsely stated that Mr. Wolf was enabling pervasive "racism" in the city because of the "slur incident" while using Mr. Wolf's photo online as the face of her article "City Leader Uses Racial Slur"—which was false.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

427.    Hilty acted out of an irrational desire to destroy Mr. Wolf's reputation by joining Donohue and Sorenson's civil conspiracy and acted intentionally to further their objectives to get Sorenson power for DEIB funding by fabricating false information for Hall and the Council to use against Mr. Wolf to remove him.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

428.    The respective, joint, and concerted actions of Donohue, Sorenson, and Hilty in furtherance of their plan severely injured Mr. Wolf's credibility, employment, and reputation in the community and throughout the nation.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

429.    The co-conspirator Defendants' unlawful actions in a single common objective to cast Mr. Wolf publicly as failing in his position, dangerous, and retaliatory for DEI funding formed the basis of a civil conspiracy that severely and substantially injured Mr. Wolf.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

109

## CLAIM NINE
## STATE LAW CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *DONOHUE, SORENSON, HALL*

430.    Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:**   Defendant reasserts and incorporates her responses to the foregoing paragraphs of this Complaint as if fully set forth herein.

431.    Under Wisconsin state law, a Plaintiff may bring a separate claim for intentional infliction of severe emotional distress where one or more Defendants intentionally by word, conduct, or the circumstances in which the events occurred, caused emotional distress by extreme and outrageous conduct.  *Rabideau v. City of Racine*, 243 Wis.2d 486, 2001 WI 57 (2001).

**ANSWER:**  On September 5, 2023, the Court granted Defendant's motion to dismiss this claim.  Dkt. 62.  To the extent an Answer is required, the allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.

432.    Donohue engaged in extreme and outrageous conduct that caused Mr. Wolf severe emotional damage when she told Sorenson what to tell female employees so that Mr. Wolf could be fired as harassing and retaliatory, told Sorenson to publicize stigmatizing information about Mr. Wolf to the public, sent Lauren Hofland to harass and "spy" on Mr. Wolf at the Republican event, and directed her attorney friends, including Diane Welsh, to send letters to Mr. Wolf's attorney threatening Mr. Wolf from pleading relevant facts in this current judicial proceeding.

**ANSWER:**  On September 5, 2023, the Court granted Defendant's motion to dismiss this claim.  Dkt. 62.  To the extent an Answer is required, Defendant denies this paragraph.

433.    Donohue's actions over a one-and-a-half-year period were intended to cause Mr. Wolf severe emotional distress in the hopes that he would be subjected to such mental,

110

emotional, and physical anguish that he would lose his influence over city resources, businesses, and public opinion based on his severe emotional distress being labeled as one who condoned sexual harassment, retaliation, perpetual dishonesty, and other misconduct.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

434. Donohue acted maliciously, willfully, and intentionally in causing Mr. Wolf severe emotional distress to retaliate against him and punish him for denying her requests for ARPA funds and her DEI consultant position to assess city resources.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

435. Sorenson engaged in extreme and outrageous conduct by lying to female employees that Mr. Wolf was toxic and retaliating against them so they would file complaints against Mr. Wolf forcing the Council to fire Mr. Wolf or remove Mr. Wolf's "powers" over city money to give back to Sorenson.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

436. Sorenson's extreme and outrageous conduct were intended to cause Mr. Wolf several emotional distress based on Sorenson telling Rendall excitedly that he was making Mr. Wolf "cry" in October 2022 in the hopes that Mr. Wolf would quit or be fired by the Council and stating to Wisconsin Watch in November 2022 that Mr. Wolf was responsible for sexual harassment in the police department knowing that Mr. Wolf was prohibited from correcting that information under the *Leave Directives* so that it would be published.

111

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

437. Hall engaged in extreme and outrageous conduct by using her internal "investigation" to conduct a five-hour "interrogation" of Mr. Wolf without his attorney present, refusing to ever once tell Mr. Wolf exactly what she was investigating, knowing Mr. Wolf had no knowledge of the "charges" she was investigating, and then intentionally concealing and *falsifying* employee witness evidence in her "oral synopsis" and "final report" so that the city officials could "immediately" publish that Mr. Wolf was harassing and retaliating against Rendall, a habitual liar, and guilty of multiple policy and ethical violations as City Administrator—all based on knowing and intentional false information.

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

438. Hall intended to cause Mr. Wolf severe emotional distress in December when she interrogated him for five hours about statements of his *attorney*, when she intentionally falsified witness information to force him to lash out against employees or suffer a breakdown from believing they lied about him, and then again intended to cause him emotional distress when she authored and released her "final report" for the city to immediately release to the public that would cause him to be hated and ridiculed by citizens based on her false statements—all hoping that Mr. Wolf's emotional breakdown would make him seem "unstable" in any claim he may have against her---a longtime "attorney."

**ANSWER:** On September 5, 2023, the Court granted Defendant's motion to dismiss this claim. Dkt. 62. To the extent an Answer is required, Defendant denies this paragraph.

112

439.   The emotional distress that Mr. Wolf has suffered because of the named Defendants' extreme and outrageous conduct has been physically and mentally debilitating causing Mr. Wolf to cease his prior engagements in different commissions, lose friends and colleagues, unable to engage in public events for fear of harassment and blame as dangerous and a liar, all of which have cause physical ailments to his body that have required continual and lasting psychological and physical medical attention.

**ANSWER:**  On September 5, 2023, the Court granted Defendant's motion to dismiss this claim.  Dkt. 62.  To the extent an Answer is required, Defendant denies this paragraph.

## CLAIM TEN
## STATE LAW CLAIM: CONVERSION
### *ADAMS*

440.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

**ANSWER:**   Defendant reasserts and incorporates her responses to the foregoing paragraphs of this Complaint as if fully set forth herein.

441.   Wisconsin state law recognizes a claim for conversion where a defendant exercises dominion or control over the personal property of a plaintiff by wrongfully refusing to surrender property originally lawfully obtained."  *Production Credit Assosication v. Nowatzski*, 90 Wis. 2d 344, 354, (1979) (citations omitted).

**ANSWER:**  The allegations in this paragraph call for a legal conclusion for which no answer is required and, on that basis, Defendant denies the allegations therein.

442.   Mr. Wolf has suffered severe injuries being deprived of a priceless artwork from his father that is a very valuable family heirloom, valuable decorations and other items of personal value, countless, private and very sensitive documents involving personal, family, and financial information, and other personal belongings.

113

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

443. Adams' converted Mr. Wolf's personal belongings from his former office when he prohibited Mr. Wolf from obtaining his personal belongings on November 7, refused to allow Mr. Wolf or Mr. Wolf's attorney access to his office in City Hall to gather Mr. Wolf's personal belongings while Mr. Wolf was on leave, and then refused to respond or allow Mr. Wolf or his attorney access to Mr. Wolf's office to gather his personal belongings after Mr. Wolf was fired on January 9, 2023.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

444. As of April 2023, Mr. Wolf has not been permitted to gather his personal belongings from his City Administrator office and has no knowledge of whether those items have been destroyed, damaged, or otherwise converted unlawfully by Adams' refusals to allow Mr. Wolf access to his former office in City Hall.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

445. Adams' refusal to surrender Mr. Wolf's personal property has resulted in severe injuries, deprivation of his personal belongings, and interference with Mr. Wolf's use and enjoyment of his personal belongings since he was constructively suspended on November 7 and then fired on January 9.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

114

446.    Mr. Wolf never consented to Adams' or the city retaining his personal belongings, documents, and possessions in his office after Mr. Wolf was fired.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

447.    Adams was bound by a ministerial duty to turn over Mr. Wolf's personal belongings from his office when Adams' assumed the duty as the only contact for Mr. Wolf to retrieve his "personal belongings" when the *Leave Directives* letter that told Mr. Wolf to contact Adams to coordinate retrieving his belongings.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

448.    Even if Adams' claimed his duty was discretionary, Adams' acted maliciously, willfully, and intentionally by denying Mr. Wolf and his attorney from gathering his personal belongings between November 7, 2022, up to April 2023 solely to conceal evidence that might show Mr. Wolf's office records were destroyed, altered, removed, or fabricated for Hall's sham investigation—all of which Mr. Wolf would know if he entered his office.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

449.    As a result of Adams' unlawful conversion of Mr. Wolf's personal belongings in his office, Mr. Wolf has suffered incalculable damages from the loss of his father's artwork that can never be duplicated or replaced, as well as sensitive and personal documents, financial, and historical family records, all of which Mr. Wolf maintained in his City Administrator office.

**ANSWER:**  Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

115

450. Adams' malicious, willful, and intentional conversion of Mr. Wolf's personal belongings and priceless family heirlooms injured Mr. Wolf and resulted in priceless amounts of severe damage to his personal belongings in his former office in City Hall.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny the allegations contained in this paragraph and, on that basis, denies the same.

**REQUESTED RELIEF**

Plaintiff Todd Wolf, therefore, requests the following relief:

451. A declaratory judgment that the City of Sheboygan's False Statements Ordinance and practices (82-3 & 82-6) is facially void and unconstitutional under the First Amendment.

**ANSWER:** The Court entered an Order dismissing Claim Four of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.7.2.) Defendant denies any and all allegations of unlawful acts as alleged in paragraph 451 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages.

452. A declaratory judgment that the City's Confidential Information Policy (Mun. Code Sec. 2-272) and practices of selective enforcement is unconstitutional.

**ANSWER:** The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.). Defendant denies any and all allegations of unlawful acts as alleged in paragraph 452 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any injuries,

116

equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages.

453.    A permanent injunction prohibiting the city Defendants from enforcing their Confidential Information policy and practices against public employees protected speech on matters of public concern.

**ANSWER:**    The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). (ECF No. 62.) Moreover, as a former employee, Plaintiff lacks standing to assert this claim for relief. Defendant denies any and all allegations of unlawful acts as alleged in paragraph 453 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages.

454.    A declaratory judgment that the Defendants violated Mr. Wolf's First Amendment rights.

**ANSWER:**    The Court entered an Order dismissing Claim One in relation to Plaintiff's claim that the Leave Directives were unconstitutionally overbroad. (ECF No. 62, pg. 55.) The Court entered an Order dismissing Claim Two – Violation of the First Amendment (Overbreadth) "Confidential Information Policy" (Sheb. Mun. Code Sec. 2-272). Defendant denies any and all allegations of unlawful acts as alleged in paragraph 454 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages.

117

455.    A declaratory judgment that the Defendants violated Mr. Wolf's Fourteenth Amendment due process rights.

**ANSWER:**    The Court entered an Order dismissing Claim Four – Violation of the Fourteenth Amendment Due Process (Vague) "False Statements" Ordinance. (ECF No. 62. ¶ 4.7.2.) The Court entered an Order dismissing Felde, Filicky-Peneski, Salazar, Ramey, Ackley, Perrella, Rust, Dekker, as well as the official capacity claims against Sorenson and Adams from Claim Five – Violation of Mr. Wolf's 14th Amendment Procedural Due Process Rights (Property) of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.8.2. ¶ 4.8.3.)  The Court entered an Order dismissing Defendant and Donohue from Claim Six Violation of Mr. Wolf's 14th Amendment Procedural Due Process Liberty Rights of Plaintiff's Amended Complaint. (ECF No. 62, ¶ 4.9.2. ¶ 4.9.5.) Defendant denies any and all allegations of unlawful acts as alleged in paragraph 455 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages.  Plaintiff's factual assertions in support of Claims Five and Six lack any basis in fact and are entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said allegations from Plaintiff's Amended Complaint.

456.    A declaratory judgment that Mr. Wolf did not make any false statements about the DEIB leaders or about Rendall asking Pelishek to repeat a racial slur on August 22.

**ANSWER:** Defendant denies any and all allegations of unlawful acts as alleged in paragraph 456 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any

118

injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages.

457. A declaratory judgment that Hilty intentionally published false and misleading information in a joint activity with Sorenson between October 2022 – February 2023 to ensure Mr. Wolf's firing and damage to his reputation to help Sorenson retrieve "power" over public resources for her private and political interest groups.

**ANSWER:** The Court entered an Order dismissing Maya Hilty as a Defendant in this matter (ECF No. 59) and an Order dismissing Claim Seven – State Law Claim – Defamation Per Se. (ECF No. 62.) The Court entered an Order dismissing Plaintiff's claims against Sorenson in Claim Eight State Law – Civil Conspiracy. (ECF No. 62, ¶ 4.12.) Defendant denies any and all allegations of unlawful acts as alleged in paragraph 457 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages. Plaintiff's factual assertions in support of Claims Eight lack any basis in fact and are entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said allegations from Plaintiff's Amended Complaint.

458. A declaratory judgment that Donohue, Sorenson, and Hilty engaged in a civil conspiracy against Mr. Wolf to obtain public or ARPA funds for unlawful purposes.

**ANSWER:** The Court entered an Order dismissing Maya Hilty as a Defendant in this matter. (ECF No. 59.) The Court entered an Order dismissing Plaintiff's claims against Sorenson

119

in Claim Eight State Law – Civil Conspiracy. (ECF No. 62, ¶ 4.12.) Moreover, with only one Defendant remaining in Claim Eight, Plaintiff fails to state a claim on a theory of civil conspiracy as a matter of law. Defendant denies any and all allegations of unlawful acts as alleged in paragraph 458 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages. Plaintiff's factual assertions in support of Claims Eight lack any basis in fact and are entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said allegations from Plaintiff's Amended Complaint.

459.     A declaratory judgment that Donohue engaged in multiple concerted efforts to influence Sheboygan city officials so that she could obtain public money for her private and political interests.

**ANSWER:**     Defendant denies any and all allegations of unlawful acts as alleged in paragraph 459 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages. Paragraph 459 lacks any basis in fact and are entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said allegations from Plaintiff's Amended Complaint.

460.     An injunction requiring the Defendants to allow Mr. Wolf immediate and full access to his previous office to gather and obtain all his personal belongings without further interference from Adams.

**ANSWER:** Defendant denies any and all allegations of unlawful acts as alleged in paragraph 460 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages. Paragraph 460 lacks any basis in fact and are entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove this paragraph from Plaintiff's Amended Complaint.

461. A permanent injunction prohibiting all city Defendants and their agents, officials, employees, or persons acting on their behalf from making further false or otherwise stigmatizing and unlawful public disclosures related to Mr. Wolf, his termination or Hall's "investigation."

**ANSWER:** The Court entered an Order dismissing Claim Seven – State Law Claim – Defamation Per Se. (ECF No. 62.) Defendant denies any and all allegations of unlawful acts as alleged in paragraph 461 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages.

462.     A permanent injunction requiring the city Defendants and their agents, officials, employees, and any other person acting on their behalf to purge Mr. Wolf's personnel file of any

reference to his termination, hall's investigation, and any other negative report that occurred on or around November 7, 2022.

**ANSWER:** Defendant denies any and all allegations of unlawful acts as alleged in paragraph 462 of Plaintiff's Amended Complaint; Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant; and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages. Paragraph 462 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said this paragraph from Plaintiff's Amended Complaint.

463. Compensatory damages, including, but not limited to, damages for lost income and benefits, severe mental and emotional distress, loss of reputation, humiliation and inconvenience from all Defendants

**ANSWER:** Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages.

464. Punitive damages against Defendants Sorenson, Adams, Donohue, Felde, Filicky-Peneski, Salazar, Ramey, Dekker, Rust, Perrella, Ackley, Hall and/or Hilty.

**ANSWER:** The Court entered an Order dismissing Ackley, Dekker, Felde, Filicky-Peneski, Perrella, Ramey, Rust, and Salazar from Claim Five of Plaintiff's Amended Complaint. (ECF No. 62 ¶ 4.8.2.) Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant and Defendant denies any and all

122

liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages. Paragraph 464 lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff, and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily remove said this paragraph from Plaintiff's Amended Complaint.

465. Plaintiff's reasonable attorney fees and costs under 42 U.S.C. § 1988; and

**ANSWER:** Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages.

466. Any other relief the court deems appropriate and to which Plaintiff may be entitled.

**ANSWER:** Defendant denies that Plaintiff has suffered any injuries, equitable or legal wrongs, as the result of any alleged conduct by Defendant and Defendant denies any and all liability to Plaintiff. Defendant denies that Plaintiff is entitled to any damages.

467. Plaintiff requests a trial by jury.

**ANSWER:** Defendant hereby requests a 12-person jury trial on all issues in the above-captioned matter.

## AFFIRMATIVE DEFENSES

1. Any allegations contained in Plaintiff's Complaint not specifically admitted are hereby denied.

2. Plaintiff's Complaint, and each alleged cause of action contained therein, fails to state a claim against Defendant upon which relief can be granted.

123

3.      Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendant avers that Plaintiff's remaining claim against her fails to state a claim against her because she is a private actor and none of the exceptions which allow for Section 1983 against private actors apply to her.

4.      Without admitting any of the allegations contained in Plaintiff's Amended Complaint, Defendant avers that Plaintiff's Due Process Violation – Property Interest claim set forth in Claim Five lacks any basis in fact and is entirely without merit, thereby subjecting Plaintiff and his counsel to a Motion for Sanctions pursuant to Fed. R. Civ. P. Rule 11 if they fail to voluntarily dismiss Plaintiff's Claim Five of Plaintiff's Amended Complaint.

5.      Without admitting any of the allegations contained in Plaintiff's Complaint, Defendants aver that Plaintiff's conspiracy claims lack any basis in fact and are entirely without merit.

6.      Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that Plaintiff is equitably estopped from pursuing the claims in the Complaint, in whole or in part, by reason of the Plaintiff's own actions and course of conduct.

7.      Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that Plaintiff's action is barred because he has not suffered any injury approximately caused by any act or omission attributable to Defendant.

8.      Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that Plaintiff cannot establish that any acts or omissions of Defendant caused Plaintiff's constitutional deprivations, if any.

9.      Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that to the extent Plaintiff bases any of his claims on grounds other than 42U.S.C.

§ 1983, Plaintiff was at fault and his own fault was the sole proximate cause or a proximate cause of his injuries and damages, if any. Resulting damages, if any, are barred because Plaintiff was more than 50% at fault. In the event Plaintiff is found less than 50% responsible, his damages should be reduced proportionate to his percentage of fault.

10.     Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that Plaintiff's injuries and/or damages may have been caused in whole or in part by the acts or omissions of persons other than Defendant.

11.     Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that Plaintiff's injuries and/or damages may have been proximately caused by intervening and/or superseding actions or causes which were not under the Defendant's control.

12.     Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that at all times material hereto, Defendant acted in good faith, in accordance with established laws.

13.     Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers Plaintiff cannot recover punitive or other non-economic damages against Defendant because she did not take any action with respect to Plaintiff with malice or any willful, wanton, or reckless disregard for Plaintiff's rights or with the intention of violating the constitution, state law or public policy of the State of Wisconsin.

14.     Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers at all times relevant to this litigation Defendant acted in good faith with regard to Plaintiff and had reasonable grounds for believing her actions were not in violation of any law.

15.     Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that Plaintiff has failed to state a claim on which any declaratory judgment or injunctive relief may be granted.

16.     Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that Plaintiff may have failed to take certain reasonable and practical steps to mitigate any damages that may have been sustained as a result of the events referred to in the Complaint and therefore, recovery is either barred or must be reduced proportionately.

17.     Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that Plaintiff is not entitled to any relief or damages.

18.     Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that Plaintiff is not entitled to prejudgment interest, costs, penalties, or attorney's fees.

19.     Without admitting any of the allegations contained in Plaintiff's Complaint, Defendant avers that Plaintiff's claims are barred, in whole or in part, by the doctrines of accord and satisfaction, payment, release, equitable estoppel, illegality, and unclean hands.

20.     Defendant reserves all defenses against an award of punitive damages, if any are made.

21.     Defendant reserves the right to assert additional affirmative defenses that become known during discovery and/or trial.


**WHEREFORE**, Defendant respectfully request that this Court dismiss Plaintiff's Complaint in its entirety, assess the costs of this matter to Plaintiff and for such other and further relief as the Court deems just and equitable in the premises.

126

**JURY DEMAND**

Defendant hereby requests a 12-person jury trial on all issues in the above-captioned matter.

Dated this 19th day of September, 2023.

<span>VON</span> BRIESEN & ROPER, <span>S.C.</span>

By: *s/ Joseph M. Russell*
     Joseph M. Russell, SBN 1092211
     411 E. Wisconsin Ave., Suite 1000
     Milwaukee, WI 53202
     P: 414-287-1414
     F: 414-276-6281
     E: joseph.russell@vonbriesen.com

*Attorney for Defendant Jill Pedigo Hall*