# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

TODD WOLF,

        Plaintiff

    v.                                 Case No. 2:23-CV-149

CITY OF SHEBOYGAN, et al.,

        Defendants.

---

**MEMORANDUM AND BRIEF IN SUPPORT OF PLAINTIFF TODD WOLF'S FIRST MOTION TO COMPEL AND FOR AN EXPEDITED TELEPHONIC CONFERENCE ON DISCOVERY ISSUES UNDER FED. RS. CIV. P. 26 & 37**

---

DEMASTER LAW LLC

*/s/ Jennifer DeMaster*
Jennifer DeMaster
Wis. Bar No. 1124201
attorney@jenniferdemaster.com
jennifer@demasterlaw.com

DEMASTER LAW LLC
361 Falls Rd # 610
Grafton, WI 53024
Phone: (414) 235-7488
Fax: (262) 536-0515

*Attorney for Plaintiff*

# Table of Contents

Introduction ................................................................................................................ 1

Background ................................................................................................................ 1

    City fires Wolf: "Citizens, trust us! Todd Wolf lied, and he is guilty. We *had* to fire
him because attorneys told us." .............................................................................. 1

    City's lawsuit response: "Todd Wolf's lawsuit is a sham!" "Sanctions for Wolf! We
only followed what *other* attorneys told us to do! We can't be liable for their
conduct." ................................................................................................................ 3

    City's Discovery strategy: "Heads, we win. Tails, you lose." ................................ 4

Argument .................................................................................................................. 5

    The Court should compel the City to permit discovery of all attorney client communications and
work product information to and from Hall relating to her investigation and reporting thereon. ......... 7

        The Court should find a broad subject matter waiver for all communications to and
from Hall, work product, draft reports, and documents provided to Hall for the
investigation because the City published Hall's investigation report, her opinions,
advising, communications, billing statements, and raised multiple defenses and
arguments pertaining to her reporting in this litigation. ................................................ 7

        Information pertaining to Hall's investigation and reporting is relevant to Wolf's
Fourteenth Amendment and civil conspiracy claims. ................................................ 9

        A broad subject matter waiver finding for Hall's investigation (all attorney client
and work product) is proportional to the needs of this case. .......................................... 10

    The Court should compel the City to permit and produce discovery of all attorney client
communications and work product to and from James Macy between November 2022 – February
2023 relating to the subjects of the January 4 meeting. .................................................... 12

        The City waived attorney client and work product privilege for communications
and materials to and from James Macy on the subject matters discussed at the
January 4 meeting by publishing the minutes, Macy's billing statements, and
raising Macy's advising in this litigation. ................................................................ 12

        Information pertaining to the January 4 meeting subjects is relevant to Wolf's First
and Fourteenth Amendment claims. ........................................................................ 14

        A broad waiver for communications regarding the January 4 meeting subjects is
proportional to the needs of this case. ...................................................................... 15

    The Court should compel the City to permit and produce discovery of all communications to and
from Charles Adams relating to Wolf's leave, investigation, directives, and termination. ................. 16

        Communications to and from Adams about personnel matters or public records are
not privileged. ...................................................................................................... 17

Even if the Court found that communications to and from Adams' relating to Wolf's leave, directives, investigation, and termination were privileged, the City waived privilege when it published selective communications from the October 17, October 24, November 7, and January 4 closed sessions about Wolf. ........................................... 18

Communications to and from Adams relating to Wolf's leave, directives, and termination are relevant to Wolf's prior restraint, liberty, and civil conspiracy claims. ............................................................................................................................... 20

Communications to and from Adams relating to Wolf's leave, directives, investigation, and termination are proportional to the needs of the case. ..................... 21

The Court should compel the City to withdraw their "relevance to a party" objections. ................... 22

Wolf is entitled to reasonable attorney fees and costs for this motion under Rule 37(a)..................... 24

Conclusion ....................................................................................................................... 25

**Introduction**

*"Gaslighting is implanted narratives cloaked in secrecy."*

- Tracy Malone

Sheboygan's former City Administrator, Plaintiff Todd Wolf, alleges that the City of Sheboygan deprived him of any opportunity to defend himself from false allegations that destroyed his reputation and led to his termination. The City has continued that practice in discovery, refusing to provide him with relevant documentation requested unless Wolf agrees to narrow the scope of discoverable information in this case. Not one of the City's disclosures, publications, arguments, or defenses regarding formerly privileged information for three attorneys has been inadvertent. In fact, the City has admitted they intend to withhold disclosure of "privileged" information *even if it has previously been released* as a "public record." The City thinks they can choose which selective information Wolf is entitled to, and anything beyond that is privileged or "irrelevant" merely "because they say so." That is not the law. Wolf must now request this Court's intervention establishing the scope of discoverable information and compelling the City to produce and permit the discovery he requested on November 13.

**Background**

<u>City fires Wolf: "Citizens, trust us! Todd Wolf lied, and he is guilty. We *had* to fire him because attorneys told us."</u>

On November 7, 2022, Sheboygan Common Council publicly announced that Wolf would be placed on leave and they were hiring outside counsel to investigate his conduct hours after he sent a confidential letter to the Council expressing concerns about a political threat and harassment of another employee (Chad Pelishek). *City of Sheboygan,* Fifteenth Regular Common Council Meeting, (Nov. 7, 2022), https://youtu.be/RniRbk67aG0. The City retained two attorneys from von Briesen and Roper to handle Wolf's investigation and advising about his termination, Jill Hall (investigation) and James Macy

1

(advising). *See* City Defs. Answer to Am. Compl., ECF No. 65 at pp. 72 − 73. On January 4, 2023, Hall, Macy, Adams, Sorenson, and the Council members met in closed session to hear Hall's investigation report. *See* City Defs. Answer, ECF No. 65, at pp. 72 − 73. After hearing from the attorneys, eight alderpersons decided to fire Wolf without a hearing. *Id.* at p. 71 − 72; *see* Decl. DeMaster, Ex. 1, at pp. 3 − 4.

On January 9, the council publicly fired Wolf stating their decision to fire and deny Wolf a hearing was based on Hall's investigation reporting. *Sheboygan Common Council*, Third Annual Special Session (Jan. 9, 2023), *available at* https://youtu.be/8bFMX8xqeuU. The citizens at this meeting were angry that the City conducted this published "investigation" in secret and refused to permit a public hearing. *Id.* After this, the City published four closed session meeting minutes relating to Wolf in anticipation of Wolf's potential litigation. *See* Decl. DeMaster, Ex. 1 & Ex 4, at p. 35. In an email to Wolf's attorney, Adams acknowledged that privilege from the four closed sessions was "waived." Ex. 1. Hall drafted a written report reflecting her investigation conclusions from January 4, and the City told the public they would publish the written report as soon as it was finished. *See* City Br. Support Mot. Dismiss, ECF No. 47, at p. 45.

The City published Hall's written report labeled "privileged" and confidential attorney client communication to Wolf and several members of the public, including the media between February and March 2023. Decl. DeMaster, Ex. 4, at pp. 14 − 15, 32. In June 2023, a private citizen requested the billing statements for von Briesen and Roper, s.c. relating to Hall's investigation of Todd Wolf under Wis. Stats. 19.31 − 19.39. *See* Decl. Guenther, Ex. 1. In response, the City produced *all the unredacted billing statements* for attorneys Jill Hall *and James Macy* as a public record, but excluded the month of January 2023 only for Jill Hall. *Id.* Exs. 1 − 3. The citizen posted this public record on his social media account and both the City *and MWH Law Group* saw his profile posts. *Id.* Exs. 4 − 5.

2

<u>City's lawsuit response: "Todd Wolf's lawsuit is a sham!" "Sanctions for Wolf! We only followed what *other* attorneys told us to do! We can't be liable for their conduct."</u>

The City adopted a "kitchen sink" approach to their motions to dismiss and in answering Wolf's amended complaint, filing over 200 pages in briefing and exhibits for their motion to dismiss and 161 pages for their Answer. *See* ECF Nos. 47, 48, 56 & 65. In their 161-page Answer, Adams and Sorenson assert now that it was attorney *James Macy* who advised both them and the Council that Wolf's contract gave the City an option to fire Wolf without a hearing. ECF No. 65 ¶ 233. Specifically, the City asserts that the alderpersons "asked Adams if he agreed with Macy's assessment," and Adams' said yes. *Id.*; *see also* Adams Disc Resp., Decl. DeMaster, Ex. 5, at p. 10. Additionally, Sorenson and Adams argued repeatedly that their statements or publications about Wolf lying about the DEI group and being dishonest were "true," that *Wolf's* conduct led to his reputational injuries, that they thought the publications about Wolf were lawful (i.e. true) and thus are not liable for the unlawful acts of their agents (attorneys Hall or Macy). ECF No. 47 at p. 45, ECF No. 65 at pp. 153 − 158.

Additionally, the Defendant alderpersons claim they never directed Adams about the specific language of Wolf's leave Directives, and they only told Adams to serve general directives on Wolf pertaining to his administrative leave. ECF No. 65, at p. 47 ¶ 149. The City Defendants have repeatedly argued Wolf *and his legal counsel* should be sanctioned under Rule 11 for frivolous factual allegations. *See e.g.* ECF No. 65 at pp. 152-161. Weeks after the City Defendants filed their Answer with these factual arguments, defenses, and Rule 11 sanctions threats, then the City's legal counsel went to the local media for them and implied that the City would win this case in full soon as discovery was over. *See* Sam Bailey, *Judge Rules on Motion to Dismiss,* (Sheboygan Press, Oct. 17, 2023), https://www.sheboyganpress.com/story/news/2023/10/17/sheboygan-former-city-administrator-lawsuit-todd-wolf-judge-rules-on-motion-to-dismiss/70974031007/.

<u>City's Discovery strategy: "Heads, we win. Tails, you lose."</u>

In September 2023, counsel for the parties conferred about their Rule 26 Discovery plan. Wolf expressed a desire to enter into discovery stipulations "to reduce dilatory efforts, endless motions to compel," telling the City they had waived privilege for Hall's investigation. *See* ECF No. 64, at pp. 4 & 6. The City said further discovery stipulations were "not necessary." *Id.* Both parties agreed to not limit discoverable information in the case. *Id.* Based on the City's statements, publications and defenses, Wolf sent his First Set of Discovery Requests to the Defendants on November 13, 2023, seeking information, materials, and communications to and from Hall concerning the investigation, communications to and from James Macy, and communications to and from Charles Adams' about closed session meetings published that related to Wolf, his leave directives, and the investigation. In his requests, Wolf instructed the City to produce a privilege log for any withheld communications or documentation that listed the (1) date of each document; (2) name of its author; (3) sender and each recipient of said document; (4) name of each person who has custody of the document, or any copy thereof; and (5) factual and legal bases for any claim of privilege. *See* Decl. DeMaster, Ex. 2. For his First Set of Discovery requests, Wolf permitted the City two months to respond extending the deadline to January 12, 2024.

On December 18, Wolf served the City with Authorizations for the law firm Von Briesen and Roper, so he could conduct discovery and depositions of Jill Hall and James Macy relating to the information the City released pertaining to the investigation and Wolf's termination. *See* Decl. DeMaster, Ex. 7. But the City objected in full to the authorizations citing various boilerplate privilege objections. *Id.*

On January 12, the City objected to every one of Wolf's discovery requests for information and communications regarding Hall, Macy, and City attorney Charles Adams on various boilerplate grounds including "relevance to the claim against the City" and asserting blanket privilege with a vague log that contained only 9 rows of categorical privilege protections. *See* Decl. DeMaster, Exs. 4 – 6. The City official Defendants combined produced a total of about 55 pages of largely irrelevant information. *Id.*

4

During this time, the City implied that they intended to *withhold information from Wolf* that was *already released* as a public record if it contained "privileged" information. *See* Decl. DeMaster, Ex. 3. Conversely, by January 20, Wolf showed the City Defendants that he had prepared and compiled roughly 1,000 Bates labeled documents and tangible things and readily amended or supplemented any responses or objections the City demanded. Decl. DeMaster ¶ 14.

Though he was not required to, Wolf agreed to narrow the scope of a few requests for communications and documents and provided the City Defendants an additional ten days to supplement their privilege log and responses. The City refused to supplement their responses, objections or privilege log. Then, after five months of Wolf's efforts, attempts, authorizations, communications, phone calls, repeated extensions and delays, Wolf prepared this motion for filing on February 9. At the eleventh hour (after five months), the City Defendants told Wolf they might agree to a privilege waiver and to "limited production" *only if Wolf consented to limited discovery* for Hall's "notes" of communications and specific dates with various limited terms. Decl. DeMaster ¶ 18. In their email, the City omitted all of Wolf's efforts to address this, and the City promised to continue withhold all information under their privilege assertions unless Wolf agreed to limit discovery of Hall's investigation, Macy, and Adams. *Id.*

The City's refusal to supplement their responses, privilege log, or withdraw their frivolous objections, as well as their bad faith "compromises" and delaying tactics requires this Court's intervention at this stage. The City and their legal counsel believe that their information and resources dominance over Wolf permits them to delay, confuse, exhaust, and refuse discovery unless Wolf abides by their demands. Without a level playing field, Wolf has been left blindfolded and handcuffed.

## Argument

Between November 2022 and February 2023, Sheboygan citizens and employees were angry at the City for their elusive investigation and termination of their City Administrator (Wolf). The City had a

5

choice. (1) They could maintain all confidentiality about Hall's investigation, quietly resolve any legal action Wolf might bring, and wait until the public anger died down, or (2) they could exonerate themselves to the public and this Court by publishing investigation and attorney communications about Wolf to defend themselves and paint Wolf in a negative light. The City chose the latter.

The City's choice to publish information about their attorney communications "does not entitle [them] to judicial shelter from the consequences of [their] choice" to waive privilege. *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 718-19 (N.D. Ill. 2015) (discussing the choice a party has between pursuing an argument *or* preserving the confidentiality of communications with a lawyer). However, the City now demands that Wolf agree to a "limited waiver" only for the information or "specific dates" of communications that *they* think Wolf is entitled to. They are wrong.

According to the Seventh Circuit, "selective waiver is not an option." See *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). Further, the City is not entitled to anything less than broad subject matter waivers for Hall and Macy because they repeatedly published in this litigation and to the media that Wolf's claims are a sham, frivolous, and they will certainly "win" after discovery. These assertions entitle Wolf to a broader waiver to obtain discovery. See *Patrick*, at 715 (N.D. Ill. 2015) (holding that narrower waivers would disserve public interest where the city defendants "vigorously den[ied] they did anything wrong and that the case is a sham, sinisterly orchestrated by [the Plaintiff]").

The City's promise to maintain their blanket boilerplate objections furthers the vast "information asymmetry" that exists in this case where they City's implanted narratives about Wolf and this case must remain in the minds of this Court and the public, depriving Wolf any opportunity to prove his claims. *See* FED. R. CIV. P. 26(b), 2015 Advisory Committee Notes. "[T]he burden of responding to discovery lies heavier on the party who has more information, and properly so." *Id*. The City, Hall, and Macy have all the information Wolf needs. Wolf has tried to work with the Defendants to no avail, and this Court must

intervene to level the playing field. The City thinks this Court is on their side and will not force them to comport their behavior to the federal rules. That cannot happen. Anything short of fully granting this motion will delay these proceedings furhter and confirm the government defendants are immune from judiciary rules.

**The Court should compel the City to permit discovery of all attorney client communications and work product information to and from Hall relating to her investigation and reporting thereon.**

The Court should compel all the Defendants to permit and produce all attorney client and work product information relating to Hall's investigation and reporting thereon. This includes opinion work product and all communications to and from Hall relating to the scope of her investigation for the City.

<u>The Court should find a broad subject matter waiver for all communications to and from Hall, work product, draft reports, and documents provided to Hall for the investigation because the City published Hall's investigation report, her opinions, advising, communications, billing statements, and raised multiple defenses and arguments pertaining to her reporting in this litigation.</u>

Wolf is entitled to discovery of all attorney client and work product information relating to Hall's investigation subjects because the City published Hall's communications, detailed billing statements, and have raised good faith reliance and truth as a defense in this litigation. Nearly all federal courts that have confronted disclosures of privileged information *far less* than the City's here have found broad subject matter, attorney client, and work product waivers. Voluntary disclosure of attorney client or work product information to a third party (let alone the general public) negates the purpose of the privilege and has long been considered a waiver of the same. See *University of Pennsylvania v. EEOC*, 493 U.S. 182, 110 S. Ct. 577, 582 (1990); *Trammel v. United States*, 445 U.S. 40, 50, 100 S. Ct. 906, 912 (1980).

Federal courts have held that publishing an attorney's internal investigation report, or even portions of that report, is a broad waiver of all attorney client communications and work product privilege for the entire investigation. See *Doe v. Baylor University (lead)*, 320 F.R.D. 430 (W.D. Tex. 2017) (finding broad

subject waiver for defendants' intentional publication of the internal investigation report for *all* communications, materials, and information to and from); see also *Doe v. Hamilton Cnty. Bd. of Educ.*, No. 1:16-CV-373 (lead), (E.D. Tenn. Jan. 12, 2018) (finding broad subject matter waiver for all attorney client and fact and opinion work product communications, materials, and information including all draft reports, etc. where the defendant published portions of the final report and argued facts indicating they intended to rely on the attorney's reporting).

Not only would the City's publication of the written report (even if done only to Wolf) waive all attorney client and work product privilege, but the City's publications went further and included Hall's opinions, advising, *and her unredacted billing statements* for her investigation as a public record to defend themselves, point the blame on Hall (and Macy). "Disclosure of communications may waive both attorney-client and work product protections if that disclosure undermines the purpose behind each privilege." *In re Chevron Corp.*, 633 F.3d 153, at 165 (3rd Cir. 2011). This City's disclosures absolutely undermined the purpose of the privilege to protect confidential attorney client communications. The City knew this, and continued to publish information about Hall. The City's intentional disclosure of privileged information to the public "almost invariably surrenders the privilege with respect to the world at large" because it undermines the purpose behind the privilege. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003); *see* FED. R. EVID. 502(a), 2007 Advisory notes (noting that Rule 502 does not negate Rule 501's common law waivers as to publication of privileged information).

Even if this Court didn't find that publishing Hall's communications, report, *and her billing statements,* was a waiver under common law, the City Defendants have argued used Hall's "factual investigation findings" for Wolf's liberty claim to assert privilege ("truth"), immunity, good faith, and Hall's liability stating that they are not responsible for the unlawful conduct of their agents (Hall). *See* City Answer, ECF No. 65, at pp. 152 – 155 (City not liable for wrongdoing of others). A party waives

privilege by intentionally inserting legal issues into a case. Fed. R. Evid. 502(a); see *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). Here, the City has raised a factual and legal issue that Hall's report was her own doing and Adams and Sorenson had no knowledge her reporting about Wolf's honesty regarding DEI threat and harassment was false. *See* City Defs. Br. Mot. Dismiss, ECF No. 47, at p. 40.

The City's arguments have gone beyond mere denial to affirmatively implying that Hall misled them, which is also a waiver. *Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362, 1369 (N.D. Ill. 1995) (finding broad waiver and rejecting the defendants' arguments that their Answer "denials" did not constitute waiver); *Mitzner v. Sobol*, 136 F.R.D. 359, 361-362 (S.D.N.Y. 1991) (finding broad waiver where defendants asserted immunity, truth, and good faith noting "fundamental unfairness and double standard" where government prevents the plaintiff from discovering information that was used for a purpose adverse to that plaintiff). In fairness, Wolf is entitled to discover all communications to and from Hall and work product (opinion and fact) that led to her reporting and "conclusions" about Wolf's honesty. *See* FED. R. EVID. 502(a), 2007 Advisory Notes, and Rule 106. This is especially true where the City told this Court it plans to file Rule 11 sanctions against Wolf for frivolous factual allegations and told the media they would likely win after discovery.

<u>Information pertaining to Hall's investigation and reporting is relevant to Wolf's Fourteenth Amendment and civil conspiracy claims.</u>

First, both of Wolf's Fourteenth Amendment due process (liberty and property) claims as well as his civil conspiracy claim involve information that Hall investigated and reporting on about Wolf. Rle 26(b) permits discovery of any information that is relevant to any parties' claim or defense, but at discovery, relevancy is construed broadly. FED R. CIV. P. 26(b)(1); see *Aldering Castor Hewitt LLP v. Fletcher*, No.:16-cv-02435-RLY-MJD, 2018 U.S. Dist. LEXIS 110421 at *3 (S.D. Ind. Jan. 26, 2018). Wolf is entitled to conduct discovery on all facets of Hall's investigation (communications and work product about any facet of the investigation) to assess the extent of this conspiracy to defraud the Council

9

(and the public) about Wolf's guilt, honesty, and integrity as City Administrator in conjunction with his firing, specifically where Wolf and his counsel were misled about the scope of an investigation that was conducted like a "witch hunt" to find any wrongdoing.

Second, Wolf is entitled to confront Sorenson and Adams' arguments and defenses that (1) information published about Wolf from Hall's reporting was true, (2) Wolf's injuries are attributed solely to the conduct of "others" (Hall, etc.), (3) Hall conduct a fully "independent" investigation with no false information from anyone. *See* ECF No. 65 at pp. 152 – 161. Given the assertions of immunity, privilege, and "truth," Wolf must confront those defenses to assess whether, and to what extent, Hall's investigation (including *all communications*) were an intentional conspiracy to defraud the Council and the public about Wolf's honesty and character. See *Babb v. Minder,* 806 F.2d 749, 753 (7th Cir. 1986) (the assertion of a qualified privilege is an affirmative defense that goes beyond mere denial).

Third, Wolf believes, if permitted, discovery into Adams, Sorenson's, and *all communications* to and from Hall (attorney client and work product) about her investigation will show that Adams, Donohue, Sorenson, and others conspired with Hall to defraud the Council and the public by falsifying evidence, firing Wolf without a hearing, and publishing false information about Wolf's honesty and character. This would also help with impeachment evidence against Adams, Sorenson, Hall, and Donohue relating to their assertions and arguments that they all acted in good faith or any other factual issue they may inject at deposition.

<u>A broad subject matter waiver finding for Hall's investigation (all attorney client and work product) is proportional to the needs of this case.</u>

First, A broad subject matter waiver for all of Hall's communications and materials is proportional to the needs of this case. Wolf alleges conspiracies with the government to defraud the Council, the public, and destroy Wolf's reputation for political purposes. In *Patrick v. City of Chicago*, the Northen District of Illinois rejected the government's request for a narrower waiver about a fraudulent investigation,

10

holding that a broader scope was necessary given the plaintiff's allegations about the government's corruption, abuse of power, falsification of evidence, and breach of public trust. 154 F. Supp. 3d 705, 715 (N.D. Ill. 2015). The *Patrick* court also held that a narrow waiver, like the "limited" one the City demands (no communications) would disserve the case interests where the defendants "vigorously den[ied] they did anything wrong and that the case is a sham, sinisterly orchestrated by [the Plaintiff]." *Id.* Similarly here, Wolf's allegations concern serious violations, all of which the City Defendants "vigorously deny" while asserting they are not responsible for any fraud perpetuated by Hall in her reporting.

Second, Federal courts have consistently found a broad waiver for all attorney client communications and work product in similar cases to limit endless privilege objections and stop unnecessary delays where a party shows intent to continue using selective disclosures in the litigation while hiding behind privilege about other related communications. See e.g. *United States v. Doe*, 219 F.3d 175, 185 (2d Cir. 2000) (compiling cases) (discussing the purpose behind Court's finding subject matter waivers to avoid continued and repeated disclosures while hiding behind related undisclosed communications as a means to avoid further delays). A broad waiver finding here for all communications to and from Hall and work product would avoid delays and potentially encourage an equitable resolution of this matter.

Third, Wolf has no access at all to any facet of Hall's investigation other than her actual "reporting," communications, and selective billing statements the City published. Wolf needs to conduct discovery and depositions on Hall and cannot do this with the blanket privilege objections the City asserts, nor can Wolf prepare for any deposition with even access to hall's engagement agreement or any communications. Further, given selective disclosures and the City's refusals to produce anything in discovery, Wolf must obtain discovery and depositions of Hall to assess the extent of her involvement with the City. Anything short of a broad waiver finding would only result in obstructing Hall's deposition and

exhausting party resources. Indeed, both the City Defendants and Hall have vast resources and capabilities to compile and produce discovery relating to her investigation, far more than Wolf to continue filing motions and compelling the Defendants to respond or produce information.

**The Court should compel the City to permit and produce discovery of all attorney client communications and work product to and from James Macy between November 2022 – February 2023 relating to the subjects of the January 4 meeting.**

The Court should compel the City to permit and produce all attorney client and work product information to and from James Macy relating to the subject matters of the January 4 meeting including (1) options to fire Wolf and Wolf's contract, (2) Hall's investigation, (3) publications about Wolf, and (4) Wolf's "high liability" claims. *See* Ex. 1 at pp. 3 – 4; *see also* Am. Compl., Ex. 12, ECF No. 36-12.

<u>The City waived attorney client and work product privilege for communications and materials to and from James Macy on the subject matters discussed at the January 4 meeting by publishing the minutes, Macy's billing statements, and raising Macy's advising in this litigation.</u>

The Court should compel the City to permit all discovery (including a deposition) of James Macy for all communications and work product to and from Macy concerning the subject matters discussed in the January 4 meeting because (1) they published the closed session minutes, (2) Macy's billing statements, and (3) raised Macy's advising in their Answer and discovery responses.

First, the City waived privilege to all subjects discussed at the January 4 meeting by publishing the January 4 minutes and Macy's billing statements pertaining to Wolf's leave and termination to the public, thus defeating the purpose of the privilege. *University of Pennsylvania v. EEOC*, 110 S. Ct., at 582 (1990). The Von Briesen and Roper billing statements published were specifically in response to a citizen request for "von briesen and roper" billing statements regarding *Hall's investigation* into Wolf. *See* Decl. Guenther. Oddly, the City only withheld Hall's billing statements from January 2023, the month she was finalizing her written report, which Wolf alleges was done with Adams. Disclosures of privileged

communications or work product by an attorney waives the privilege as to all other communications on that same subject matter. *Patrick v. City of Chicago*, at 715-16.

Second, the City also waived privilege by inserting facts that it was *Macy* who advised the Council there was an option to fire Wolf without a hearing, and Adams merely agreed with him. Fed. R. Evid. 502(a) "provides that a voluntary disclosure in a federal proceeding …generally results in a waiver" if the disclosure was intentional and inserted in response to an adversarial party. *McCullough v. Hanley*, No. 17 CV 50116, at *20 (N.D. Ill. Aug. 12, 2019); FED. RS. EVID. 502(a) & 106. The City cannot insert a factual issue that it was *Macy* who advised Council to deny Wolf a hearing, while refusing to permit discovery into all communications *to and* from Macy related to his advising at the January 4 meeting. *United States v. Sikorsky Aircraft Corp.*, 575 F. Supp. 3d 1032, 1042-43 (E.D. Wis. 2021) (finding an at issue waiver where a party placed the advice at issue and disclosing or describing an attorney client communication). The City not only disclosed information in their discovery responses, but *in their Answer* about Macy. Wolf is entitled to depose Macy and obtain discovery for all communications from Adams or any City official that led to his advising there was an "option" to fire Wolf.

Third, Wolf is entitled to a broad waiver for all communications and work product to and from Macy concerning the January 4 meeting subjects. To determine what constitutes the subject matter of a waiver, the Seventh Circuit weighs (1) "the circumstances of the disclosure, (2) the nature of the legal advice sought, and (3) the prejudice to the parties of permitting or prohibiting further discovery." *RTC Indus. v. Fasteners for Retail, Inc.*, No. 17 C 3595, at *22 (N.D. Ill. Mar. 9, 2020); citing *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50. Here, the January 4 minutes *that were released to the public* specifically show the subjects that Macy advised about or was involved in. *See* Ex. 1, at pp. 1 − 4, Ex. 4, at p. 35. The City released these minutes (1) to show the public why the Council fired Wolf without a hearing, and (2) specifically to Wolf's legal counsel "in anticipation of litigation" to place blame on Macy

13

(and Hall) to detract from Adams' liability. The City (including Adams) were seeking advice on how to fire Wolf without a hearing and about any legal claims Wolf would have against the City *starting in November 2022. See* Decl. Guenther, Exs.1 − 3. Further, Adams and Sorenson asserted that they are not responsible for Macy's advising, that they relied on Macy's advising in encouraging the Council to fire Wolf without a hearing, and all the City Defendants did not ever believe they did anything wrong imposing directives, firing Wolf, or publishing information about him without a hearing. *See* ECF Nos. 47 & 65.

All of this necessitates a broad waiver finding by this Court so that Wolf can depose and conduct discovery from Macy relating to all communications from and to Adams and the City Defendants related to Wolf's potential legal claims, the City's injuring Wolf, and whether Adams misled Macy about Wolf's contract to elicit his advising (while hiding behind "good faith reliance"). See *RTC*, at *11 (finding a broad subject matter waiver where a privilege holding party intentionally inserted selected information in the litigation to build an immunity defense). Denying Wolf a broad subject matter waiver of all undisclosed communications about the January 4 subjects would be extremely unfair to Wolf given the publications that Wolf's allegations are a sham, that they never believed they did anything wrong (immunity), and inserting Macy's advising as a factual issue. Accordingly, the City Defendants' "strategic use in litigation of otherwise privileged information obliges that party to waive the privilege regarding other information concerning the same subject matter, so that the information being used can be fairly considered in context." FED. R. EVID. 502, 2007 Addendum to Advisory Comm. Notes.

<u>Information pertaining to the January 4 meeting subjects is relevant to Wolf's First and Fourteenth Amendment claims.</u>

First, discovery from Macy about all communications and work product to and from Macy relating to the January 4 "high liability claims" subject is relevant to Wolf's First and Fourteenth Amendment claims because it goes to show whether the City Defendants knew that the leave directives on Wolf and/or his firing without a hearing were unlawful. Wolf believes, if permitted, that discovery from Macy will

14

show that all of the City Defendants knew the November directives violated Wolf's speech rights (and thus failed to revoke or narrow them).

Second, Adams and the City Defendants communications to and from Macy regarding the options to fire Wolf are relevant to Wolf's due process (property) claim to confront Adams and Sorenson's factual issue that they relied on *Macy's* advising to fire Wolf without a hearing. Wolf believes, if permitted, that discovery from Macy (and depositions) will show that Adams misled Macy about Wolf's contract, that he *asked Macy* to advise the Council based on that false information, and that Adams' did this intentionally to shield his own liability and intent to deny Wolf a hearing.

Third, to the extent that Adams continues to hide behind Macy's "expert advising" about publications of information about Wolf, Wolf believes, if permitted, that discovery and depositions of Macy will show that Macy directly advised Adams' (even in February 2023) to not release any portion of Hall's reporting unless they gave Wolf a public hearing opportunity. This would be necessary in the likely event Adams again asserts a new factual issue that Macy advised him since this Court already denied Adams qualified immunity argument for Wolf's liberty violations (ECF No. 62).

<u>A broad waiver for communications regarding the January 4 meeting subjects is proportional to the needs of this case.</u>

First, Wolf is entitled to a broad waiver for the January 4 subjects because the City has consistently either refused to permit further discovery than their own statements or only wants a "limited waiver" of the communications *at* the January 4 meeting. It is likely the City will disrupt and claim privilege during Macy's deposition that Wolf must conduct for any information the City defendants (Adams) believes will be damaging. The extent the City has gone to in publishing, broadcasting, and claiming that Wolf should be sanctioned under Rule 11, that his allegations are frivolous, and that all City Defendants' actions were completely "lawful," justified or that they relied on Macy's continued advising about Wolf's leave and termination requires a broader scope of discovery into Macy's knowledge of the factual issues relevant to

15

the claims, defenses, the information he used for his advising, and facts the City has raised and published to citizens involving Macy.

Second, for the same reasons that a broader scope waiver finding is necessary for Hall's investigation, the same is true for communications, materials, and information to and from Macy about the January 4 subjects given the seriousness of the issues of multiple constitutional rights violations. This is especially true where Wolf is the one who originally retained Macy in early 2022 for the City and wanted to lower Adams' budget to give Macy more legal work because of Adams' incompetence in representing or advising City department heads. Now, Adams essentially argues, based on this Court's order (ECF No. 65) that Macy committed malpractice by advising the Council that there was an option to fire Wolf without a hearing and Adams merely "agreed" with his advising. The implications of Adams committing perjury and his impeachment require thorough discovery of Macy directly especially if the City is unwilling to permit discovery on communications to or from Macy outside of the January 4 meeting.

Third, this is not a long span considering the public billing statements for Macy indicate his general advising about Wolf's leave, investigation, potential legal claims against the City prior to his firing, and his termination options. *See* Ex. 1 & Decl. Guenther, Ex. 3. Wolf conducting this discovery specifically from Macy (given Adams' factual arguments and the City's publications) is certainly proportional to the needs of the case and imposes no substantial burdens on any party other than Wolf if he is forced to litigate the City's selective disclosures without obtaining Macy's depositions or discovery.

**The Court should compel the City to permit and produce discovery of all communications to and from Charles Adams relating to Wolf's leave, investigation, directives, and termination.**

Wolf requests an order compelling the City Defendants permit and produce discovery of all communications to and from Adams relating to the Wolf's leave, directives, investigation, termination, and public records about Wolf (the subjects of the October 17, October 24, November 7, and January 4 closed session meetings). The City believes that all City officials and employees can conceal information

16

if it was spoken to, by, or in the presence of their City Attorney *or his staff*. *See* Ex. 6. Adams believes that every word he speaks is privileged because he is the City Attorney. The City and Adams are wrong.

<u>Communications to and from Adams about personnel matters or public records are not privileged.</u>

The City's categorical privilege over every single communication involving Adams *and his office* is frivolous, vague, and inexcusable. *See* Ex. 6. It is not Wolf's burden to argue why a communication is *not* privileged, but rather, the burden was on the City and Adams to argue that. *See* Fed. R. Civ. P. 26(b)(5) (noting burden is on party asserting privilege to specify its application). "Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse v. Republic of the Phil.*, 951 F.2d 1414, 1423 (3d Cir. 1991), citing *Radiant Burners, Inc. v. American Gas Association,* 320 F.2d 314, 323 (7th Cir. 1963). The City Defendants cannot conceal information merely because they communicated it in the presence of their city attorney (Adams). See *State ex rel. Dudek* v. *Circuit Court*, 34 Wis.2d 559, 580 (1967). But that is what they claim.

The October 17, October 24, and November 7 meetings were all about "personnel issues" according to the City's agendas (citing Wis. Stat. 19.85(f)).[1] They were not about legal advising for matters the City may become involved in under Wis. Stat. 19.85(g). The City inserts new factual issues now that the Defendant Alderpersons never directed Adams to use "that" language and did not know the final language Adams and Sorenson ended up using. ECF No. 65, at p. 47, ¶ 149. While this is a convenient argument, the communications *that the City Defendants have raised publicly here* were clearly not asking Adams to render legal advising on a legal matter but directing him to engage in a human resources

---

[1] *See* City of Sheboygan Common Council, (Nov. 7, 2022), https://mccmeetings.blob.core.usgovcloudapi.net/sheboygnwi-pubu/MEET-Agenda-f3dc12fac53c47d1b2e20782e46534aa.pdf; Sheboygan Council agenda, (Oct. 17, 2022), https://mccmeetings.blob.core.usgovcloudapi.net/sheboygnwi-pubu/MEET-Agenda-a07d96674585490db84c5d131a474a48.pdf; City Sheboygan Council Agenda, (Oct. 24, 2022), https://mccmeetings.blob.core.usgovcloudapi.net/sheboygnwi-pubu/MEET-Agenda-229cece11d834ce6a8248c6892f2e247.pdf.

administrative capacity *with* the Mayor (Sorenson), and not in his capacity as City Attorney. *See id.* All communications relating to the language of those directives during and following the November 7 meeting are not privileged, nor are communications in the October meetings about a racial slur personnel matter and Wolf's handing of that. Decl. DeMaster, Ex. 1 at pp. 7 – 9.

> Even if the Court found that communications to and from Adams' relating to Wolf's leave, directives, investigation, and termination were privileged, the City waived privilege when it published selective communications from the October 17, October 24, November 7, and January 4 closed sessions about Wolf.

Even if the Court found that communications to and from Adams about Wolf, the City Defendants (including Adams) waived all privilege (to the extent privilege existed), by (1) publishing the October, November, and January closed session minutes, (2) refusing to provide detailed privilege objections and log entries with their responses to Wolf's discovery requests, and (3) inserting selective communications to and from Adams in this litigation. For the same reasons set forth in the above sections for Macy regarding the January 4 meeting subjects, all communications to and from Adams at and about the January 4 meeting subjects is waived and the Court should compel the City Defendants to permit and produce all discovery for those communications.

First, the closed session meetings that were published (to third persons and Wolf) all refer to issues involving Wolf that Hall's investigation purportedly covered as well as his leave and directives. *See* ECF No. 47 (regarding Hall's investigation scope about a racial slur incident, etc.). The City published the October and November closed session minutes *after Wolf was fired* specifically to show details about Hall's investigation and why the Council fired Wolf, even acknowledging this waived privilege for those meetings. *See* Decl. DeMaster, Ex. 1 & Ex. 4 at p. 35 (admitting giving minutes to Wolf's counsel). See *Chevron*, 633 F.3d at 165 (disclosing communications waives both attorney client and work product if the disclosure undermines the purpose of the privilege). The City's selective publications are "not an option" and Wolf is allowed to conduct discovery of all communications relating to the subjects of the October,

November, and January closed sessions, including communications about the November leave directives to and from Adams.

Second, the City Defendants failed to supplement or provide a single detailed explanation as to why specific communications to or from Adams requested in Wolf's First Discovery Set were privileged specifically where they pertain to administrative, human resources, or personnel matters. *See* Ex. 6. In October, this Court ordered the parties to specifically describe objections without boilerplate language. ECF No. 68 at p. 2; *see* FED. R. CIV. P. 26(b)(5)(A)(ii). The City Defendants did not even try to compile or Bates label any so-called privileged communications to or from Adams in their privilege log nor did they explain *why* the communications Wolf requested pertaining to the leave directives and meetings were privileged. *See* Exs. 4 – 6.

Accordingly, to the extent Wolf's First Set of Discovery requests sought communications or information to and from Adams about the subjects of these four closed sessions, the City Defendants (including Adams) waived privilege by refusing to produce a sufficient privilege log or detailed objections as to why such communications are privileged. FED. R. CIV. P. 26(b)(5)(A)(ii); see *Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996) (finding waiver for failure to follow rules regarding privilege log entries); *105 Street Assocs., LLC v. Greenwich Ins. Co.*, No. 05 Civ. 9938, 2006 WL 3230292, at *3-4 (S.D.N.Y. Nov. 7, 2006) (suggesting waiver for failure to list privileged documents on the required log in a timely and proper manner). The City's objections even copied and pasted language that *Wolf* failed to explain a "substantial need" for the documents (referencing Rule 26(b)(3)) where they refused to list a single document or communication in their privilege log on which Wolf could assess his need. It was the City's burden to argue that. Any privilege that existed for Wolf's requests for production on the City in his First Set of Discovery requests has been waived. *See* Decl. DeMaster, Appendix A.

Third, the City Defendants have claimed (1) the alders told Adams to draft the leave directives during the November 7 closed session but had "no idea" what language Adams used; and (2) the alderpersons "asked Adams" if he agreed with Macy's advising about the options to fire Wolf on January 4 and Adams told them that he "agreed." *See* ECF No. 65 at pp. 47 & 73. Additionally, Adams and Sorenson have asserted that (1) Wolf's behavior was the cause of his issues, (2) they had valid justification to impose directives and fire him without a hearing, and (3) they did not believe they did anything unlawful. *Id.* at pp. 152 – 161.

These arguments were certainly intentional, and it would be extremely unfair to deny Wolf an opportunity to conduct discovery of *all communications* relating to the directives language, Adams' intent, or his communications encouraging any Alders to fire Wolf without a hearing, publish false information about Wolf, or silence him. *See* FED. R. EVID. 502(a)(iii). Rule 502(a) "prevents a party" from disclosing selective parts of communications "in a manner that is unfair or misleading." *Id.*; *see also* FED. R. EVID. 106. All of the City Defendants' disclosures are "selective" and vague, and the Rule requires that Wolf be permitted to conduct discovery as to all communications on Wolf's leave, the directives, and termination options in fairness.

<u>Communications to and from Adams relating to Wolf's leave, directives, and termination are relevant to Wolf's prior restraint, liberty, and civil conspiracy claims.</u>

Communications and any opinion work product to or from Adams regarding Wolf's leave, directives, investigation, and termination are relevant to Wolf's prior restraint, due process, and conspiracy claims. Specific communications at the November 7 meeting about the leave directives is relevant to assessing which, and to what extent, any of the Defendant Alders directed the language in the leave directives. The City Defendants all acknowledge that they "collectively" vaguely directed Adams, but Wolf must assess which alders directed Adams, if for no other reason than narrowing the claims or liability of the Defendant alders.

Wolf believes, if permitted, that discovery and depositions relating to the October and November meeting subjects (personnel matters involving a slur incident and Wolf's response, Wolf's leave, investigation, and leave directives) will show that one of more Defendant Alders, Sorenson, and Adams intended to gag and silence Wolf from exposing the DEI threats and involvement in harassment, that the Alderpersons knew exactly the language and scope of the directives on Wolf and facilitated, condoned and turned a blind eye. Further, Wolf believes, if permitted, that discovery and depositions will show that Adams and Sorenson specifically convinced the alderpersons to fire Wolf *without* a hearing at or prior to the January 4 meeting. All of this information is relevant to proving Wolf's constitutional and civil conspiracy claims against all of the individual Defendants in this case, including their intent, involvement, and liability.

<u>Communications to and from Adams relating to Wolf's leave, directives, investigation, and termination are proportional to the needs of the case.</u>

The City still believes (via their arguments) that they are 100% justified in all of Wolf's injuries (even blaming him) *and for* unconstitutionally gagging employees from speaking to private citizens, Wolf, *or Wolf's legal counsel during judicial proceedings* whom they disagree with. *See* City Defs. Answer, ECF No. 65 at p. 83, ¶ 257. All of this on advising by their City attorney (Adams) and legal counsel in this matter. *Id.* There is a strong likelihood that the City will continue to advise employees or non-party official witnesses to refuse to answer questions about Adams' communications at depositions based on their misunderstanding of the definitions of privileged information (to be generous).

Wolf has expressed wanting to depose an employee that works in the City Attorney's office and a non-party Alderman who was present at these four meetings and communicated with Adams about Wolf's leave, directives, investigation, and termination. Such depositions would be typical were it not for the *current* gag orders on employees and officials to not speak to Wolf's attorney or the "legal advising" to not provide "confidential or privileged information" even if that information is neither confidential nor

21

privileged. Specifically, where the City Defendants, Adams, *and their legal counsel* at MWH Law Group believe that all communications with and from Adams *or anyone in his office* are privileged simply because they work in the City Attorney's office. That is not the law. Accordingly, a broad waiver for any actually privileged communications (to the extent any exist) relating to the closed session meeting subjects is necessary to permit discovery and depositions without further delays.

Additionally, none of this information is overly burdensome or broad for the City with their resources, servers and backups of data as required, specifically where such communications to or from Adams requested span no more than eight months, all related solely to Wolf (from the time of the racial slur incident to the publication of Hall's report to the media that Adams' authorized). It is vitally important where a City Attorney is either wholly incompetent or intentionally advising government officials to violate the Constitution with impunity that this Court permit discovery of relevant information about the scope and extent of Adams' intent to publish false information about Wolf and participate in a fraudulent investigation to fire him, specifically knowing a hearing would have exposed his involvement to the Council. Accordingly, this requires, at this stage, a broad waiver from this Court outlining subjects of communications to or from Adams so that depositions do not waste thousands of dollars, hours, and further delay these proceedings.

**The Court should compel the City to withdraw their "relevance to a party" objections.**

The Court should compel the City to withdraw their relevance "to the claim against the City" objections to Plaintiff's First Set of Discovery Requests because (1) relevance at discovery is different from relevance at trial under the Federal Rules of Evidence, and (2) Wolf's requests for communications, metadata, and documents on the City are permitted and appropriate under the rules. The City's objection is frivolous under Rule 26(g), and this Court should sanction the City and their legal counsel for refusing to supplement their responses or withdraw these.

22

First, relevance at the discovery phase is broader than relevance at the trial stage under the federal rules of evidence. *Aldering Castor Hewitt LLP*, at *3 (S.D. Ind. Jan. 26, 2018) (holding that relevancy at discovery is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case) (internal quotations omitted).

Relevance at depositions and discovery is determined under Rule 26(b)(1), not under the Federal Rules of Evidence (Rule 401). See *McCullough v. Hanley*, No. 17 CV 50116, at *10 (N.D. Ill. Aug. 12, 2019), citing *In re Cooper Tire & Rubber Co*., 568 F.3d 1180, 1189 (10th Cir. 2009). Here, the City has refused to produce any documents if, according to them, those documents are "not relevant to the overbreadth claim against the City." *See e.g.* Ex. 4. All the City Defendants have raised this objection regarding "relevance to a party." *See e.g. id.* & Ex. 5.

Second, Wolf's serving the City for emails, documents, City Clerk office records, and other tangible items with City servers is permissible and preferred where the requests are served on a party with custody, control, and access to documents "relevant to any party's claim or defense." *See* FED. R. CIV. P. 26(b)(1). The City forcing Wolf to repeat the same requests on each and every City official (thus exhausting Wolf and their own resources) is not only frivolous, but a waste of time and resources for all parties. This delaying tactic is in bad faith, and the City and their counsel must withdraw these objections. The City cannot impose an evidentiary standard to a specific party on Wolf at discovery, specifically where that party *is the City of Sheboygan* who has servers, archives, backups, and custodial access to documentation and communications Wolf requires. Wolf is not required to narrow his requests to pertain to an evidentiary standard of a specific claim based on his pleadings at this stage. But that is what the City and their counsel demand. Accordingly, the Court should compel the City to withdraw their objections and produce the documents requested attached as Appendix A. *See* Decl. DeMaster, Appendix A.

**Wolf is entitled to reasonable attorney fees and costs for this motion under Rule 37(a).**

There is no excuse for the City and their legal counsel to assert blanket vague privilege over *public records and non-confidential* information and then seek multiple extensions over a two-month period just to copy and paste boilerplate categorical privilege objections for Hall, Macy, or "all" communications to or from Adams simply because he is the "city attorney." Counsel for the City and their clients knew the City waived privilege and acknowledged that they intended to refuse disclosure of privileged information *that was already released by the City* as public records. *See* Ex. 3.

"The Seventh Circuit has held that Rule 37 'presumptively requires every loser to make good the victor's costs,' suggesting that the fee shifting requirements encourage the voluntary resolution of discovery disputes by the parties." *FinishMaster, Inc. v. GMP Cards Collision Fairfield, LLC, et al*., No. 1:20-cv-00299-RLY-MJD, 2020 WL 4473001, at *1 (S.D. Ind. Aug. 3, 2020) (J. Dinsmore) (citations omitted). Neither the City nor their legal counsel have shown they take this case seriously. They have admitted as such to the media and in their filings to this Court. Now, Wolf is now forced to pay for expert reports with no produced documents by the City Defendants, and Wolf is unable to prepare for any depositions he wanted to conduct in March of non-party alderpersons, Macy, Hall, or employees that has already been delayed, if the City intends to merely object to everything that touches on a communication involving Adams, Hall, or Macy. Had the City and their legal counsel conducted themselves properly, they would have made a single effort at the Rule 26 conferencing, December authorizations for Hall and Macy, or even in the *counsels' two-hour phone conference* to come to an agreement on the broad scope of the City's waivers to permit and facilitate discovery in this matter.

Rule 37(a) states that if the Court grants a motion for dilatory tactics or failure to participate in discovery, "the non-complying party or its attorney or both must pay the moving party's reasonable expenses, including attorneys' fees, unless the non-complying party's position was substantially justified." FED. R. CIV. P. 37(a)(5). No part of the City or their legal counsel MWH Law Group's delays, extensions,

24

and refusals to even *acknowledge any waiver until February 9* was substantially justified. The City and their legal counsel knew about the publications, acknowledged those publications were authentic in their court filings, and then raised multiple new arguments and defenses pertaining to privileged information. There is no justification in the City's refusing to supplement or produce even substantial privilege logs unless Wolf agrees to limit his own rights to obtain discoverable information. This is especially true where Wolf tried to address his in the September Rule 26 conference regarding discovery stipulations to avoid these exact motions. The City Defendants and their legal counsel should be sanctioned for this conduct, their intentional delays, and Wolf awarded reasonable attorney fees and costs under Rules 26(g) and 37(a) of the Federal Rules for this motion.

Most importantly, granting this motion now to level the playing field will remind the City and their legal counsel of their obligations in federal discovery proceedings given their disclosures, arguments, publications, defenses, and media statements. This reminder will encourage fairness in discovery and potentially result in a just and equitable resolution of this matter without endless motions, delayed proceedings, or vastly asymmetrical discovery postures.

## Conclusion

For the foregoing reasons, Wolf respectfully requests an order to compel.

Dated: February 14, 2024

Respectfully Submitted,

DeMaster Law LLC

*/s/ Jennifer DeMaster*
Jennifer DeMaster
Wis. Bar No. 1124201
attorney@jenniferdemaster.com
jennifer@demasterlaw.com

361 Falls Rd, Ste 610
Grafton, WI 53024
Phone: (414) 235-7488
Fax: (262) 536-0515

*Attorney for Plaintiff*