UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

TODD WOLF,

                Plaintiff

v.                                                  Case No. 2:23-CV-149

CITY OF SHEBOYGAN, et al.,

                Defendants.
_____

**TODD WOLF'S OBJECTIONS TO DEFENDANTS PROPOSED ORDER ON PLAINTIFF'S MOTION TO COMPEL (ECF NO. 76)**
_____

Todd Wolf objects to the City's proposed order because it contradicts the parties' agreements and the Court's holdings at the March 4 status conference.

## Background

On February 14, Wolf filed a motion to compel pertaining to the subjects and scope of discoverable information for communications to and from three attorneys (Defendant Jill Hall, James Macy, and Defendant Charles Adams). On February 19, the City filed a response brief agreeing to permit more information, and the Court held a conference on March 4 to clarify the parties' agreements and address any remaining disputes regarding discoverable subjects of communications.

At the March 4 conference, the Court stated that based on the City's agreements, and the parties' arguments, Wolf could discover certain communications to and from Hall, Macy and Adams. The Court noted that Wolf would not be permitted to discover Hall or Macy's work product to the extent his motion requested that. At the conclusion of the conference, the Court asked the City to draft the proposed order that reflected his decisions based, in part, on the parties' agreements. Three MWH Law Group attorneys

appeared for the City Defendants, Kerrie Murphy, Julie Bittner, and Warren Buliox. In their proposed order (ECF No. 86), counsel for the City contradicted the Court's decisions from the March 4 conference and made inaccurate and superfluous statements. Wolf objects to the City's proposed order and asks the Court to enter a modified and accurate version of the Court's decisions and parties' agreements as set forth below.

### *Objection to "notes reflecting" Jill Hall's communications.*

Wolf respectfully requests the Court replace the City's language that states "notes reflecting Hall's communications" and replace that with "communications to and from Jill Hall relating to the investigation" based on the parties' agreement.

In his motion to compel, Wolf requested an order compelling the City to "permit and produce all communications, materials, and information" to and from Hall for her investigation. (ECF No. 76). In their response to Wolf's motion, the City agreed to permit and produce "…[a]ll communications to and from Attorney Hall and all documents provide[sic] to Attorney Hall in relation to the investigation she was hired to complete." ECF No. 81 at p. 4. The Court specifically addressed this at the conference noting correctly that the City's response brief (February 19) broadened what was proposed in the February 9 email. The parties agreed at the March 4 conference to the scope in the City's response brief (ECF No. 81) rather than the February 9 email. Despite this, the City's proposed order contradicts their response brief and agreements from March 4 and instead incorporates their previous language regarding "notes reflecting" Hall's communications. Wolf objects to this language and requests this Court modify the City's language as set forth at the beginning of this section.

### *Objection to communications to and from James Macy.*

Wolf respectfully requests that this Court strike the City's language pertaining to Macy's communications and modify the language to accurately reflect the Court's decision and agreements: "All communications to and from James Macy relating to the January 4 closed session subjects."

In this motion, Wolf requested an order compelling the City to permit and produce all communications, materials and information to and from Macy relating to the January 4 closed session meeting subjects. The City stated that they would only allow Wolf to discover Macy's communications "during" the January 4 closed session about his advising of the options to fire Wolf, and Wolf argued that, in fairness, he should be allowed to discover communications to and from Macy relating to the January 4 meeting subjects (Wolf's contract, options to fire him, Wolf's legal claims, and investigation). *See* Fed. Rs. Evid. 502(a) and 106. Further, the City's assertions of privilege as to communications with Macy about these subjects is inconsistent with the purpose of the privilege where the City has published multiple and selected portions of Macy's communications and used some of this information in litigation. See *University of Pennsylvania v. EEOC,* 493 U.S. 182, 110 S. Ct. 577, 582, 107 L.Ed.2d 571 (1990); *See also* VIII J. Wigmore, Evidence § 2291, at 636 (McNaughton rev. 1961) for the rule that fairness dictates a privilege holder "cannot be allowed, after disclosing as much as he pleases, to withhold the remainder."

Wolf asked that this scope not be narrowed only to the communications "during" the January 4 meeting, but communications with Macy relating to these subjects to address what Macy was told or whether the Defendants knew their conduct could lead to legal liability prior to Wolf's termination. The Court agreed to permit communications to and from Macy regarding the January 4 meeting subjects. But despite the Court's holding at the conference that Wolf could discover communications to and from Macy related to the January 4 subjects, the City, again, mischaracterized the Court's holding in their proposed order stating as follows:

3

"-'…limited to those communications with Attorney Macy *which actually occurred during the January 4, 2023, Common Council closed session meeting*, with one caveat. Based on their advice of counsel defense asserted in Paragraph 28 of City Defendants' Answer to Plaintiffs' Amended Complaint, the City Defendants have agreed to an "at issue" waiver of attorney client privilege related to Attorney Macy's advice regarding Plaintiff's termination irrespective of when those communications occurred." (ECF No. 86, emphasis added).

This provision is unnecessarily confusing and mischaracterizes the Court's holding and the agreements. First, the City did not agree to an "at issue" waiver in the conference nor in their responsive brief. Second, most importantly, the Court held that Wolf could conduct discovery on communications to and from Macy about the January 4 meeting subjects during the conference because it was relevant to the claims and the City's defenses that Macy advised the Council and that the City Defendants did not think they did anything wrong that led to Wolf's injuries. See *Appleton Papers, Inc. v. EPA,* 702 F.3d 1018, 1025 (7th Cir.2012) (holding that waivers regarding intentional disclosures of selective privileged communications are based on fairness considerations). Wolf objects to the City's language because it is inaccurate and requests this Court modify that language to reflect what was decided at the conference.

### *Wolf's objections to the City's proposed order regarding communications to and from Adams.*

Wolf respectfully requests the Court modify the City's proposed order language by striking and replacing the City's language of "communications between City Attorney Adams and the Common Council is limited to" and replacing that with "communications to and from City Attorney Adams relating to…" and the six subjects that the parties agreed to at the March 4 conference. This will simplify the parties' agreements and avoid further obstructions in discovery for Adams' communications about these subjects that were not made to the "common council."

The City agreed to permit communications to and from Adams relating to six subjects: (1) Aug,. 22, 2022 racial slur incident, (2) November directives, (3) Plaintiff's discipline, (4) Plaintiff's

4

administrative leave, (5) The Hall investigation, and (6) Plaintiff's termination. Each of these subjects was discussed in the closed session meetings that Wolf's motion addressed which is relevant to the claims and defenses the City Defendants have argued. In the March 4 conference, Wolf agreed that these *subjects* of communications were sufficient. But neither Wolf nor the Court agreed to limit Adams' communications to "only [those] with the Common Council" that the City's proposed order seeks to impose now (ECF No. 86).

The Eastern District and Seventh Circuit have held that the privilege can "cover[] communications which reflect the lawyer's thinking [or] are made for the purpose of eliciting the lawyer's professional advice or other legal assistance." *United States v. Sikorsky Aircraft Corp.*, 575 F. Supp. 3d 1032, 1040 (E.D. Wis. 2021), quoting *United States v. BDO Seidman, LLP* , 492 F.3d 806, 815 (7th Cir. 2007). Wolf agreed to the *subjects* the City consented to. This should include communications with City officials or employees about these subjects that the parties agreed to.

Wolf has requested and plans to depose Adams' non-lawyer employee who, Wolf believes, may have information about Adams' intent and involvement regarding Wolf's leave, investigation, and termination—all of which would be included within the subjects the City agreed to. Wolf has had to delay and reschedule this deposition to ensure the City does not maintain frivolous or otherwise non-privileged objections for "all" of Adams' communications, and the communications to Adams' employees, that they maintained in their privilege log. *See* ECF No. 78-6. To the extent the City intends to withhold and obstruct discovery about these subjects that were not made "to the Common Council," Wolf requests the Court modify the language as set forth above.

### *Objections to the City's superfluous and inaccurate language.*

The City's proposed order contains an "introductory section" that inaccurately states that the Court finds the City's "February 9" email offers were "fair and reasonable" which is neither true nor
5

accurate specifically as to communications to and from Hall and Macy as stated more fully above. The City themselves broadened their offerings as to Hall's communications in their responsive brief that was filed ten days *after* their February 9 email. ECF No. 81. Importantly, the City's superfluous language is not necessary for the narrow order that the parties and this Court agreed to during the March 4 conferencing. Wolf respectfully requests the Court strike the City's "introductory paragraphs" in full as unnecessary and inaccurate in this proposed order that was supposed to be based on the parties' agreements and Court's decisions at the March 4 conference.

> ***Wolf is entitled to reasonable attorney fees and costs for his motion or, at a minimum, having to file these objections where the City did not accurately portray the parties' agreements and the Court's opinions at the conference.***

Although the parties did not specifically address the issue of fees and costs at the conference based on the parties' agreements, the Defendants' proposed order mischaracterized their own agreements, the parties' agreements, and the Court's decisions at the March 4 conference as set forth more fully above. This further shows that the City's legal counsel has not acted in good faith during discovery proceedings. For the reasons set forth herein, and in Wolf's motion to compel, Wolf is entitled to reasonable attorney fees and costs for having to file his motion, or at a minimum, these objections to ensure the parties and this Court's agreements were accurately represented.

Rather, the City used the proposed order to mischaracterize and narrow the Court's decisions and their own agreements. Sanctions and reasonable fees are necessary at this stage to ensure the City's legal counsel does not continue this practice of delaying and obstructing relevant communications involving Wolf's leave and termination.

Dated: March 15, 2024.

DeMaster Law LLC

/s/ *Jennifer DeMaster*
Jennifer DeMaster
Wis. Bar No. 1124201
attorney@jenniferdemaster.com
jennifer@demasterlaw.com
361 Falls Rd # 610
Grafton, WI 53024
Phone: (414) 235-7488
Fax: (262) 536-0515

*Attorney for Plaintiff*